**McCARTER & ENGLISH, LLP**
Lanny S. Kurzweil, Esq.
Alison Morrissey, Esq.
Amanda Dumville, Esq.
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
Telephone: (973) 639-2044
Facsimile: (973) 297-3810
lkurzweil@mccarter.com
amorrissey@mccarter.com
adumville@mccarter.com
*Attorneys for E.I. du Pont de Nemours*
*and Company, The Chemours Company, and*
*The Chemours Company FC, LLC*

**BALLARD SPAHR**
Glenn A. Harris
David A. Haworth
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1163
harrisg@ballardspahr.com
haworthd@ballardspahr.com
*Attorneys for E.I. du Pont de Nemours*
*and Company*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; THE COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; and THE ADMINISTRATOR OF THE NEW JERSEY SPILL COMPENSATION FUND,** | **Case No.** |
| **Plaintiffs,** | **NOTICE OF REMOVAL ON BEHALF OF E.I. DU PONT DE NEMOURS AND COMPANY** |
| **v.** | |
| **E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; THE 3M COMPANY; AND "ABC CORPORATIONS" 1-10 (NAMES FICTITIOUS),** | |
| **Defendants.** | |

ME1 30841161v.2

**TO:   THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

Defendant, E.I. du Pont de Nemours and Company ("DuPont") hereby removes the

above-captioned case pursuant to 28 U.S.C. §1442 from the Superior Court of New Jersey, Law

Division, Salem County to the United States District Court for the District of New Jersey. The

grounds for removal are as follows:

**I.     BACKGROUND**

1.      This suit involves claims against DuPont for acts that were taken under the

express authority and control of agencies and officers of the United States.  It is thus removable

under 28 U.S.C. § 1442(a)(1).

2.      On March 27, 2019, Plaintiffs, the New Jersey Department of Environmental

Protection, the Commissioner of the Department of Environmental Protection, and the

Administrator of the New Jersey Spill Compensation Fund (collectively "Plaintiffs")  filed a

Complaint in the Superior Court of New Jersey, Law Division, Salem County in a case captioned

as New Jersey Department of Environmental Protection, et. al. v. E.I. du Pont de Nemours and

Company, et. al., Case No. SLM-L-000057-19.

3.      On May 31, 2019, Plaintiffs filed a First Amended Complaint against Defendants

DuPont, The Chemours Company, The Chemours Company FC, LLC, the 3M Company, and

"ABC Corporations" 1-10 (names fictitious).  *See* a true and correct copy of the First Amended

Complaint attached hereto as Exhibit "A."

4.       Plaintiffs served DuPont with the First Amended Complaint on June 7, 2019.

DuPont was not served with the original Complaint at an earlier time.

5.      In the First Amended Complaint, Plaintiffs claim, *inter alia*, that throughout

DuPont's 125 years of operation of a plant located at 67 Canal Road and Route 130, in

Pennsville and Carneys Point Townships, Salem County ("Chambers Works" or the "Site"), DuPont has produced, utilized, and discharged pollutants and other hazardous substances, including semi-volatile organic compounds ("SVOCs"), volatile organic compounds ("VOCs"), metals, pesticides, polychlorinated biphenyls ("PCBs"), and per- and polyfluoroalkl substances ("PFAS") into the environment. Exhibit "A". Id. at 3, ¶ 2. (Emphasis added.)

6.      The First Amended Complaint alleges that the Site is comprised of the former Carneys Point Works, and the Chambers Works manufacturing area. Id. at 15-16, ¶ 56.

7.      Plaintiffs aver that operations at the Site first began in approximately 1892 when Carneys Point Works began manufacturing smokeless gunpowder, nitrocellulose, and other products. Plaintiffs further allege that to manufacture these products, DuPont used various materials including ether, amines, plasticizers, nitroglycerin salts, nitric acid and sulfuric acid; and that operations at Carneys Point Works continued through 1979. Id. at 17, ¶ 63. (Emphasis added.)

8.      The First Amended Complaint also states that in or about 1917, DuPont began manufacturing and producing dye and specialty chemicals at the Dye Works (n/k/a Chambers Works) part of the Site. These operations are alleged to have used numerous chemicals including organic mercury, amino compounds, benzene, nitrobenzene, chlorobenzene, phenols, acids, aniline, toluene, nitrotoluene, toluidine, sulfur, naphthalene, sodium hydroxide, sodium hydrosulfide, aluminum chloride, aromatic hydrocarbons, chlorinated aromatics, polymers, elastomers, methylamines, and ethyl chloride. Id. at 17, ¶ 64. (emphasis added)

9.      Plaintiffs' First Amended Complaint contends that the aforementioned historical manufacturing processes and waste disposal practices at Chambers Works caused significant soil, sediment, and groundwater contamination at the Site. Id. at 18, ¶ 71.

ME1 30841161v.2

10.     Throughout the World War II period, DuPont entered into numerous contracts with the United States for the manufacturing of chemical compounds to be produced at Chambers Works and to be used by the United States and its Allies to support the war effort.

11.     These government contracts, as described below, compelled DuPont in some circumstances to build additional manufacturing plants at Chambers Works, and to vastly increase the volume of chemical compounds manufactured at Chambers Works. The manufacture of these chemical compounds necessarily resulted in air and water discharges inherently associated with DuPont's manufacturing processes.  Plaintiffs now claim that these discharges must be remediated by DuPont and the other Defendants, and they also request natural resource damages stemming from these emissions.

12.     On April 23, 1942, DuPont entered into contract No. W-670-ORD-2210 with the United States that required the production of 1,550,000 pounds of dinitrotoluene at a Chambers Works plant.

13.     Contract W-670-CRD-2210 mandated that DuPont produce dinitrotoluene in strict accordance with United States Army specifications.

14.     On November 17, 1942, DuPont entered into contract No. W-7412-Eng-2 with the United States to erect a plant to be located at the Chambers Works Site. The new plant was intended to produce 20,000 pounds of perfluoroheptane at the earliest possible date.

15.     DuPont accepted the terms of the government's contract No. W-7412-Eng-2 with several conditions, including that the parties would agree on the correct specifications for the production of perfluoroheptane. Because DuPont had no experience manufacturing perfluoroheptane, nor any history of building a plant for the production of this chemical prior to

4

doing so at the government's behest, any failure to perform the government's work successfully would not subject DuPont to liability nor prejudice it's right to be paid.

16.     Thereafter, the United States Army Corps of Engineers ("Corps of Engineers") authorized DuPont, by Letter Contract W-7412-Eng-6, to construct and operate a large-scale plant at Chambers Works for the manufacture of perfluoroxylene and fluorolube.  DuPont was requested to furnish labor, material, tools, machinery, equipment, facilities, and supplies not furnished by the United States to complete this project.    DuPont was instructed by the government to do everything necessary for the construction of a plant to produce 3550 pounds of perfluoroxylene per day and 215 pounds of fluorolube per day.  The plant would be owned by the government and located on DuPont's land at Chambers Works, which would be leased or licensed to the government for the period of the contract.  The plant was to be in operation no later than September 1, 1943.

17.      A formal contract, memorializing the terms of Letter Contract W-7412-Eng-6 between DuPont and the United States was executed on June 1, 1944.

18.     On November 20, 1942, the Corps of Engineers, by Letter Contract W-7412-Eng-3, placed an order with DuPont to furnish, in the shortest possible time, all labor, material and equipment to construct plants at Chambers Works for the:  (1) manufacture of uranium dioxide; (2)  the conversion of uranium dioxide to uranium tetrafluoride; and (3) the conversion of uranium tetrafluoride to metallic uranium.

19.     Full-scale operation of the above plants was ordered by the government to be complete by May 25, 1943.

20.     Because DuPont had no experience in the design, construction or operation of plants of this nature, except for the production of uranium tetrafluoride, the terms of Letter

ME1 30841161v.2

Contract W-7412-Eng-3 protected DuPont's right to be paid by the government and shielded them from liability in the event that a goal outlined in the Letter Contract was not fulfilled.

21.     A formal contract between DuPont and the United States government, memorializing the terms of Letter Contract W-7412-Eng-3, was executed on May 10, 1944.

22.     DuPont and the United States government thereafter entered into Letter contract No. W-7412-Eng-22.  This contract called for the erection of a Recovery Plant at Chambers Works to convert tetracal slag and dross and tetramag slag and dross, which would be supplied to DuPont by the government, into a satisfactory feed material to manufacture uranium dioxide as authorized by Letter Contract W-7412-Eng-3.

23.     The Recovery Plant was to have an estimated capacity to produce feed material in sufficient quantity so that DuPont could operate the uranium dioxide plant at a capacity to produce 47 tons of uranium dioxide per month.

24.     For the purposes of housing production equipment to be used to manufacture uranium dioxide, DuPont buildings at Chambers Works were to be rented by the government; and temporary buildings constructed at Chambers Works were to be owned and paid for by the government.

25.     Letter Contract W-7412-Eng-22 mandated that the Recovery Plant be ready for full scale operation not later than September 1, 1943.

26.     The formal contract, as executed on May 10, 1944, provided for the conversion of two types of slag and dross to peruranic acid as a feed material for the manufacture of uranium dioxide.  The plant at Chambers Works was designed to have a processing capacity of 130 tons of slag and 14.5 tons of dross per month to produce 44.5 tons of peruranic acid.

ME1 30841161v.2

27.     Additionally, by Letter Contract W-7412-Eng-8, issued on December 31, 1942, the Corps of Engineers requested that equipment be installed in buildings situated within Chambers Works for the purpose of producing 300,000 pounds of redistilled anhydrous hydrofluoric acid.

28.     As further explained below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1442(a)(1) because Plaintiffs bring claims for or relating to actions that occurred while DuPont was acting under a federal officer or agency.

## II.     REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. § 1442(a).

29.     This Court has subject matter jurisdiction under 28 U.S.C. § 1442(a) because this is a suit against a "person acting under [an] officer[] of the United States or of any agency thereof . . . for or relating to an[] act under color of such office."

30.     "Unlike the general removal statute, the federal officer removal statute [Section 1442(a)] is to be 'broadly construed' in favor of a federal forum." Papp v. Fore-Kast Sales Co., 842 F.3d 805, 811 (3d Cir. 2016).

31.     The case is removable pursuant to Section 1442(a) because "(1) [DuPont] is a 'person' within the meaning of the statute; (2) the plaintiffs' claims are based upon [DuPont's] conduct 'acting under' the United States, its agencies, or its officers; (3) the plaintiffs' claims against [DuPont] are 'for, or relating to' an act under color of federal office; and (4) [DuPont] raises a colorable federal defense to the plaintiff's claims." Papp, 842 F.3d at 812 (brackets omitted).

7

**A.      DuPont is a "Person" Under 28 U.S.C. § 1442(a)**

32.      DuPont is a corporate entity, and corporations are "person[s]" pursuant to Section 1442(a)(1). Papp, 842 F.3d at 812 (for purposes of Section 1442(a), "a corporation[] is in legal fact a person" (citing 1 U.S.C. § 1)).

**B.      Plaintiffs' Claims Are Based on DuPont's Conduct While "Acting Under" the United States**

33.      The "acting under" requirement, like the federal removal statute overall, is to be "liberally construe[d]" to cover actions that involve "an effort to assist, or to help carry out, the federal supervisor's duties or tasks." Ruppel v. CBS Corp., 701 F.3d 1176, 1181 (7th Cir. 2012)(*quoting* Watson v. Philip Morris Cos., Inc., 551 U.S. 142 (2007)); *see also* Defender Ass'n, 790 F.3d 457, 468 (2015).

34.      Although the Supreme Court has not precisely determined "whether and when particular circumstances may enable private contractors to invoke the statute," it has noted with approval that "lower courts have held that Government contractors fall within the terms of the federal officer removal statute, at least when the relationship between the contractor and the Government is an unusually close one involving detailed regulation, monitoring, or supervision." Watson at 153-154.

35.      The classic case of government assistance as it relates to government contractors is when "the private contractor acted under a federal officer or agency because the contractors 'help[ed] the Government to produce an item that it need[ed].'" Defender Ass'n, 790 F.3d at 468 (quoting Watson, 551 U.S. at 153, 127 S.Ct. 2301). When "the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete," that contractor is "acting under" the authority of a federal officer. Ruppel, 701 F.3d at 1181; *see also* Defender Ass'n, 790 F.3d at 468–70.

ME1 30841161v.2

36.     Here, DuPont was acting under the U.S. government when it performed pursuant to government contracts including but not limited to, W-7412-Eng-2, W-7412-Eng-6, W-7412-Eng-3, W-7412-Eng-22, W-7412-Eng-8, and 670-ORD-2210 ("Chambers Works Contracts") to produce chemicals including but not limited to perfluoroheptane, perfluoroxylene, fluorolube, uranium dioxide, anhydrous hydrofluoric acid, and dinitrotoluene ("Chemical Compounds") to make ammunition and other products required by the government for the war effort.

37.     DuPont was acting under the supervision of the United States government at Chambers Works as the Chambers Works Contracts contain provisions which dictate the government specifications that DuPont was required to follow in manufacturing each chemical compound.

38.     Moreover, DuPont's contractual relationship with the government fits the classic government assistance scenario as the Chambers Works Contracts required DuPont to work for the government by producing Chemical Compounds that it needed to advance the war effort.

39.     In fact, DuPont contracted with the government to manufacture products that DuPont had never historically produced, including, but not limited to perfluorheptane, uranium dioxide, and metallic uranium. Thus, DuPont's sole purpose in manufacturing these chemicals was due to government demand.

40.     Thus, DuPont was acting under government supervision at Chambers Works in manufacturing the Chemical Compounds as DuPont's production was done pursuant to government specifications, and DuPont was producing the Chemical Compounds to assist the government with products that the United States government needed during a time of war.

ME1 30841161v.2

**C.      Plaintiffs' Claims against DuPont Are "For, or Relating To" Acts under Color of Federal Office**

41.      The next requirement, often referred to as the "nexus" or "causation" requirement, demands that the alleged conduct have been undertaken "for or relating to" a federal office. To meet this requirement, "it is sufficient for there to be a connection or association between the act in question and the federal office." Defender Ass'n, 790 F.3d at 471.

42.      In the matter at bar, Plaintiffs allege that for the past 125 years, DuPont produced, utilized, and discharged pollutants and other hazardous substances into the environment at Chambers Works.  Exhibit "A" at 3, ¶ 2.

43.      As demonstrated by the Chambers Works Contracts, in the 1940s, DuPont was producing and utilizing hazardous substances at Chambers Works as ordered by the U.S. government.

44.      Therefore, the "for or relating to" prong is satisfied because the production of hazardous substances ordered by the government at Chambers Works makes up a significant portion of Plaintiffs' alleged harm.

**D.      DuPont Has A Colorable Federal Defense to Plaintiffs' Claims**

45.      "At the removal stage," DuPont need "only show" that a federal defense is "legitimate and could reasonably be asserted, given the facts presented and the current law." Papp, 842 F.3d at 815 (brackets omitted).

46.      DuPont is immune from Plaintiffs' state tort claims[1] based on the government contractor defense as articulated in Boyle v. United Technologies Corp., 487 U.S. 500 (1988) which stated  that the "uniquely federal interest" of "getting the Government's work done" requires that under certain circumstances, a private contractor must be protected from tort

---

[1] Plaintiffs' Complaint alleges the following state tort claims against DuPont:  Public Nuisance, Trespass, Negligence, and Abnormally Dangerous Activity.  Exhibit "A" at 85 – 101, ¶¶ 289 – 322.

ME1 30841161v.2

liability associated with its performance of a government procurement contract. Id. at 504–05. The Boyle Court held that federal interests preempt state law duties and immunize defendants when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Id. at 512.

47.     Given Plaintiffs' allegations, namely, that DuPont is liable in tort due to its production, utilization and discharge of hazardous materials over a 125 year period at Chambers Works, and considering the Chambers Works Contracts requiring DuPont to produce hazardous materials in the relevant timeframe, it is reasonable for DuPont to assert the government contractor defense articulated in Boyle, *supra*.  *See* New Jersey D.E.P. v. Exxon Mobil Corp., 381 F.Supp.2d 398, 404 (2008) (finding that Defendant's government contractor defense was colorable where certain of its production activities during World War II were under the control of the federal government).

## III.     DUPONT SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

48.     DuPont files this Notice of Removal "together with a copy of all process, pleadings, and orders served upon such defendant or defendants" during the state-court proceedings as Exhibit "B."  *See* 28 U.S.C. § 1446(a).

49.     This Court is the United States District Court for the district and division embracing the place where the state court complaint was filed. As such, it is the appropriate venue for removal. *See* 28 U.S.C. § 1446(a).

50.     This Notice of Removal is timely as a named defendant's time to remove is triggered by [the] simultaneous service of the summons and complaint … not by mere receipt of

the complaint unattended by any formal service. <u>Murphy Bros., Inc. v. Michetti Pipe Stringing,</u>

<u>Inc.</u>, 119 S.Ct. 1322, 1324 (1999).

51.     On June 7, 2019, Plaintiffs served DuPont with a Summons and First Amended

Complaint.

52.     Thus, this Notice of Removal has been filed timely as, consistent with 28 U.S.C. §

1446(b), it has been "filed within 30 days after the receipt by the defendant, through service or

otherwise, of a copy of the initial pleading."

53.     No previous application has been made for the relief requested herein.

54.     Pursuant to 28 U.S.C. § 1446(d), DuPont will promptly serve written notice of

this Notice of Removal upon counsel for Plaintiffs and file a copy of this Notice of Removal

with the Clerk of the New Jersey Superior Court.

55.     If there are any questions concerning this removal, DuPont respectfully requests

the opportunity to present briefing and oral argument in support of removal.

> */s/ Lanny S. Kurzweil*
> Lanny S. Kurzweil
> Alison Morrissey
> Amanda Dumville
> McCarter & English, LLP
> Four Gateway Center
> 100 Mulberry St.
> Newark, NJ 07102
> Telephone: (973) 639-2044
> Facsimile: (973) 297-3810
> lkurzweil@mccarter.com
> amorrissey@mccarter.com
> adumville@mccarter.com
> *Attorneys for E.I. du Pont de Nemours*
> *and  Company, The Chemours Company,*
> *and The Chemours Company FC, LLC*

ME1 30841161v.2

Glenn A. Harris
David A. Haworth
Ballard Spahr
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1163
harrisg@ballardspahr.com
haworthd@ballardspahr.com
*Attorneys for E.I. du Pont de Nemours*
*and Company*

Dated:  July 5, 2019

ME1 30841161v.2

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of July, 2019, I caused true and correct copies of the Notice of Removal and exhibits, Civil Cover Sheet, the Notice to the Clerk of the Superior Court of the Filing of the Notice of Removal, Rule 7.1 Corporate Disclosure Statements, and Statement of Filing and Service of Removal to be served via electronic delivery and United States Postal Service Priority Mail upon the following counsel:

**As to Plaintiffs**:

Gwen Farley
**STATE OF NEW JERSEY**
Deputy Attorney General
Richard J. Hughes Justice Complex
25 Market Street; PO Box 093
Trenton, New Jersey 08625-0093
Gwen.farley@law.njoag.gov

Leonard Z. Kaufmann
Joseph A. Maurice
**COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP**
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
lkz@njlawfirm.com
jam@njlawfirm.com

William J. Jackson
John Gilmour
**KELLEY DRYE & WARREN LLP**
515 Post Oak Blvd. Suite 900
Houston, Texas 77027
bjackson@kelleydrye.com
jgilmour@kelleydrye.com

John K. Dema
Scott E. Kauff
**LAW OFFICES OF JOHN K. DEMA, P.C.**
1236 Strand Street, Suite 103
Christiansted, St. Croix
U.S. Virgin Islands 00820-5034
jdema@demalaw.com
skauff@demalaw.com

ME1 30867349v.1

**As to The 3M Company**:

Donald J. Camerson, II
**BRESSLER AMERY & ROSS**
325 Columbia Turnpike
Suite 301
Florham Park, NJ  07932
djcamerson@bressler.com

Richard F. Bulger
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, IL  60606
rbulger@mayerbrown.com

_/s/ *Lanny Kurzweil*_
Lanny Kurzweil