**MEYNER AND LANDIS LLP**
Albert Telsey, Esq. (N.J. Attorney ID # 016961985)
One Gateway Center, Suite 2500
Newark, New Jersey 07102
Telephone: (973) 602-3439
Facsimile: (973) 624-0356
atelsey@meyner.com
*Attorneys for Intervenor, Carneys Point Township*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; et al.,<br>*Plaintiffs*,<br><br>v.<br><br>E.I. DU PONT DE NEMOURS AND COMPANY; et al.<br>*Defendants*,<br><br>and<br><br>CARNEYS POINT TOWNSHIP,<br>*Intervenor*. | Civil Action No. 1:19-cv-14766<br>.<br><br>Hon. Renee Marie Bumb, Chief, U.S.D.J.<br><br>**Intervenor's COUNTERCLAIMS Against Plaintiffs and Defendants** |

June 21, 2024

Intervenor, Carneys Point Township ("Carneys Point" or "Township"), files these Counterclaims against the New Jersey Office of Attorney General, the New Jersey Department of Environmental Protection ("NJDEP" or "Department"), the Commissioner of NJDEP, and the Administrator of the New Jersey Spill

Compensation Fund (collectively, “Plaintiffs”); and E. I. DuPont de Nemours and Company, Corteva, Inc., and DuPont de Nemours, Inc., (collectively “DuPont”); The Chemours Company and The Chemours Company FC, LLC (collectively, “Chemours”), and the 3M Company (“3M”) (DuPont, Chemours and 3M collectively, “Defendants”) upon information and belief as to all matters as follows. The Counterclaims include five claims summarized as follows:

Claim 1 – Jurisdiction/Collateral Estoppel/Abstention

Plaintiffs are collaterally estopped from relitigating the duplicative ISRA deed transfer/penalty claim because the claim was already litigated to finality in state court, this court does not have jurisdiction over the claim, and this court must abstain from exercising supplemental jurisdiction over the claim.

Count 1 – ERA collateral estoppel
Count 2 – Common law collateral estoppel
Count 3 – Lack of jurisdiction
Count 4 – *Burford* Abstention
Count 5 – *Colorado River* Abstention
Count 6 – Permissive Abstention

Claim 2 – Natural Resource Damages (“NRD”) Restoration Project Participation

Carneys Point is entitled by the New Jersey State Constitution and applicable law as a “first priority” pollution impacted municipality to participate in this matter to identify reasonable NRD restoration projects and their attendant costs for the site and the surrounding impacted community.

Count 7 – Federal Declaratory Judgment Act
Count 8 – State Declaratory Judgment Act
Count 9 – ERA
Count 10 – Writ of Mandamus

Claim 3 – Feasibility Study, Public Hearing and Public Participation Plan regarding Remediation

Carneys Point is entitled by law to participate in this matter regarding the mandatory feasibility study, the hearing regarding that study, and preparation of a Public Participation Plan for the remediation of the Chambers Works site and the surrounding impacted community because DuPont and Chemours are unreliable parties subject to NJDEP direct oversight.

Count 11 – Federal Declaratory Judgment Act
Count 12 – State Declaratory Judgment Act
Count 13 – ERA
Count 14 – Writ of Mandamus

Claim 4 – Form and Content of the Remediation Funding Source ("RFS")

DuPont and Chemours are required by law to post the RFS as a cash Remediation Trust Fund and the RFS must include the cost to remediate on-site *and off-site* pollution.

Count 15 – Fed. Dec. Judgment Act – Cash Remediation Trust Fund
Count 16 – State Dec. Judgment Act – Cash Remediation Trust Fund
Count 17 – ERA – Cash Remediation Trust Fund
Count 18 – Writ of Mandamus – Cash Remediation Trust Fund
Count 19 – Fed. Dec. Judgment Act – Offsite costs included
Count 20 – State Dec. Judgment Act – Offsite costs included
Count 21 – ERA – Offsite costs included
Count 22 – Writ of Mandamus – Offsite costs included

Claim 5 – Property Tax Recovery and Pollution Tax Assessment

Carneys Point is permitted by law to recover lost property taxes due to the Chambers Works pollution and to assess a pollution tax because of that pollution.

Count 23 – Spill Act – Lost Property Taxes Claim
Count 24 – Fed. Dec. Judgment Act – Pollution Tax Assessment

Count 25 – State Dec. Judgment Act – Pollution Tax Assessment

**A. Background**

1. The Chambers Works site comprises more than 1,000 acres along the Delaware River in Carneys Point Township and occupies much of the Township.

2. This parcel was a huge chemical manufacturing site, with much of the parcel now demolished and reduced to contaminated wetlands. The parcel also has a hazardous wastewater treatment plant, a hazardous waste landfill, and solid waste landfills.

3. This parcel has been sitting moribund for years. The site is a health hazard to the community and in need of remediation and redevelopment.

4. The Township has just launched an investigation to designate the site an area in need of redevelopment that will include the Township's ability to condemn the Chambers Works parcel and other Chemours parcels along the Salem River and Mannington Meadows.[1] That plan may be adopted within the next several months. See Figure 1 below showing the redevelopment area identified in brown.

[1] Township of Carneys Point Resolution No. 2024-48 adopted February 21, 2024, approving the investigation of Chambers Works as a Condemnation Redevelopment Area.

<u>Figure 1</u>
Redevelopment Area in brown



5. This matter is primarily an NRD claim. The 2017 Amendment to the New Jersey State Constitution provides that NRD restoration projects are the number one goal of NRD litigation.[2]

6. The Department also prefers NRD restoration projects over NRD cash payments pursuant to its 2023 Administrative Order addressing NRD protocol.

7. The 2017 Amendment and Department protocol also provides that a pollution impacted municipality is given "first priority" to identify NRD restoration projects because their community represents the nexus to pollution injury.

8. Once the state launches an NRD claim, the pollution-impacted municipality becomes a necessary party to identify and develop reasonable NRD restoration projects.

9. Plaintiffs and Defendants have not contacted the Township about NRD restoration projects for the Chambers Works site even though NRD restoration is the primary goal of this matter.

10. Carneys Point has hired The TBLS Group, a team of NRD professionals, to describe with particularity reasonable and necessary NRD restoration projects for the Chambers Works parcel and surrounding impacted neighborhoods, which are the ground zero locations of dense non-aqueous phase

[2] Article VIII, Section II, para. 9, eff. December 7, 2017

liquid ("DNAPL") and per-and polyfluoroalkyl substances ("PFAS") pollution in this matter.

11. Professionals with The TBLS Group developed the Department's resource equivalency analysis and habitat equivalency analysis NRD protocols (a) to support and justify NRD restoration projects at and surrounding the Chambers Works site and (b) to calculate their costs.

12. These NRD restoration projects may include wetland upgrade projects, flood control projects, drinking water projects, and infrastructure improvement projects, among others.

**B. <u>Procedural History</u>**

13. Carneys Point Township is "ground zero" regarding pollution from the huge Chambers Works site, which has been in operation for over 100 years.

14. Carneys Point has been an active participant in this matter for a long time and initiated a 2016 lawsuit against DuPont and Chemours regarding violations of the Industrial Site Recovery Act ("ISRA") and the failure to post a remediation funding source ("RFS").

15. In 2016, the Township launched an intensive investigation to figure out what was happening with the cleanup at and surrounding the Chambers Works Site given that DuPont, in 2015, had just spun off the Site to a subsidiary of Chemours.

16. The Township hired counsel and The TBLS Group, a consulting firm experienced with RACER® software. RACER® is approved by NJDEP to calculate cleanup costs for hugely contaminated sites.

17. After months of reviewing documents and remediation data obtained from NJDEP and the United States Environmental Protection Agency ("EPA") spanning more than 40-years, the Township and the TBLS Group concluded the site was contaminated with over 100 million pounds of hazardous wastes known as DNAPL, the surrounding Township of Carneys Point is contaminated with PFAS discharged from smokestacks at the Site; hundreds of homes in the Township had to be fitted with filtration equipment to remove PFAS from their drinking water wells; only a small percentage of the contamination is remediated; it make take many decades to remediate the problem; and the cost to remediate the onsite and offsite pollution is more than $1 Billion.

18. This has led to real health concerns for residents in the Township; and has created a blight on the Township that has harmed its property tax base, ability to promote redevelopment and jobs, its reputation, and its natural resources.

Natural Resource Damages

19. Plaintiffs identify in its complaint in this matter the natural resources damaged by the Chambers Works pollution, both onsite and in the surrounding Carneys Point community, including groundwater; drinking water wells; surface

water (such as the Salem Canal, lakes, streams, and the Mannington Meadows); wetlands; sediments; soils; biota; and air.

Direct oversight protocols

20. If a defendant is an unreliable remediating party, in that the defendant has failed to comply with statutory remediation deadlines, polluted large areas, been the subject of multiple enforcement actions, or other reasons, then that defendant must comply with direct oversight protocols within 90-days because the party is deemed an unreliable remediation party. N.J.S.A. 58:10C-27; N.J.A.C. 7:26C-14.

21. Direct oversight protocols include posting an RFS only as a cash Remediation Funding Agreement, preparing a feasibility study of remediation alternatives, holding a public hearing to discuss those options pursuant to 42 U.S.C. 9617(a)(2), and preparing a Public Participation Plan, among other requirements.

22. DuPont is subject to direct oversight protocols because DuPont has failed to comply with remediation deadlines, polluted larges areas, and been the subject of multiple enforcement actions.

23. Chemours is also subject to direct oversight. By taking title to the Chambers Works site, Chemours has inherited the direct oversight obligation because they run with the land. N.J.S.A. 58:10C-27.

24. RFS. An RFS is a financial security posted by a defendant in the form of a cash Remediation Trust Fund Agreement, line of credit, letter of credit, insurance policy, surety, or self-guarantee.

25. The RFS is a critical financial component because it permits the state and local impacted municipalities from having to later sue a defendant to try and recover remediation funds when those funds may be unavailable due to corporate spin offs, dissolution or bankruptcy.

26. In the event a defendant fails to remediate, NJDEP or an impacted municipality, with NJDEP consent, can access the RFS to complete the remediation. N.J.A.C. 7:26C-5.13(d).

27. A unreliable remediating party, like DuPont and Chemours under direct oversight, can only post the RFS as a cash Remediation Trust Fund Agreement.

28. NJDEP's regulations eliminated all other forms of RFS, except for a cash Remediation Trust Fund Agreement, because cash is the most secure and accessible form of financial security. N.J.A.C. 7:26C-5.2(k). ["Notwithstanding (h) or (j) above, a person responsible for conducting the remediation that is subject to direct oversight pursuant to N.J.S.A. 58:10C-27 shall establish and maintain a remediation trust fund in accordance with N.J.A.C. 7:26C-5.4."].

29. NJDEP stated in response to comments about N.J.A.C. 7:26C-5.2(k), "notwithstanding N.J.A.C. 7:26C-5.5(h) or (j), which give the person responsible for conducting the remediation flexibility in choosing which financial mechanism to use to establish a remediation funding source or financial assurance, respectively, *the person must establish and maintain a remediation trust fund when that person becomes subject to direct oversight*." 2011 NJR 267318 proposal August 15, 2011.

30. Pursuant to the non-waiver rule, N.J.A.C. 7:1B-2.1(b)8, the State Defendants and Outside Counsel do not have the discretion to waive the regulation that requires DuPont and Chemours to post an RFS as a cash Remediation Trust Fund.

31. Despite the above, Plaintiffs take the position that the Defendants, under direct oversight, can post an RFS in non-cash forms such as a line of credit, letter of credit, insurance policy, surety, or self-guarantee or, if posted in a cash form, can be posted in a discretionary escrow and not a Remediation Trust Fund.

Feasibility study/public hearing/Public Participation Plan

32. As unreliable remediating parties under NJDEP direct oversight, DuPont and Chemours must provide NJDEP and the public with a feasibility study of remediation options, which study must be prepared in accordance with EPA guidelines. This includes holding a public hearing regarding the feasibility study

pursuant to 42 U.S.C. 9617(a)(2), and permitting the Township, as a pollution impacted municipality, to thereafter prepare and submit a Public Participation Plan.

DuPont violated ISRA

33. In January 2015, DuPont transferred the deed to the Site to Chemours, which triggered ISRA.

34. In June 2015, DuPont transferred stock and assets to Chemours, which also triggered ISRA.

35. ISRA requires the posting of an RFS to cleanup onsite and offsite contamination prior to the transfer of real property, stocks, or assets.

36. The Township discovered that DuPont posted $0 ISRA RFS dollars for onsite and offsite cleanup, which was a violation of ISRA.

*Carneys Point v DuPont (2016)*

37. In December 2016, Carneys Point sued DuPont and Chemours pursuant to the ERA in *Carneys Point v DuPont (2016)*.[3]

38. The Township's Complaint in *Carneys Point v DuPont (2016)* seeks the posting of an RFS, and a penalty for ISRA non-compliance, among other things.

39. In January 2017, Carneys Point wrote to the NJDEP to inform him about its lawsuit against DuPont and its RACER® findings and demanded

[3] *Carneys Point Township v. E.I. DuPont de Nemours and Company et al.,* No. SLM-L-251-16 (N.J. Super. Ct. Law Div. filed Dec. 12, 2016),

participation fearing the Site might become a huge unfunded abandoned facility and a danger to the community. The NJDEP never responded to Carneys Point.

40. The Site Remediation Reform Act, N.J.S.A. 58:10C-1 et. seq. and its regulations ("SRRA") provide the public with the opportunity to petition NJDEP to demand participation if at least 25 people sign on.

41. In March 2017 the Township submitted a petition to NJDEP demanding public participation. More than 1,000 residents signed the Township's petition. NJDEP refused to respond to the petition until the Township's legislative representatives intervened. NJDEP then set a meeting for May 12, 2017.

42. On May 12, 2017, NJDEP and EPA representatives held a meeting with Township representatives, including the Township's Mayor, councilmen, attorneys, RACER® consultant, LSRP, and environmental consultant.

43. At the meeting, Township representatives told NJDEP that the Township wanted to be involved in the RFS process because its residents were in immediate harm's way of an unfunded remediation. NJDEP told the Township that if it wanted to participate to send a letter and did not permit any further participation.

44. Unbeknownst to Carneys Point, at the time of the May 12, 2017 meeting, NJDEP was already in secret negotiations with DuPont and Chemours to have them develop a remediation plan for the Site and calculate an RFS.

45. Chemours told NJDEP that based on its own internal calculations, the RFS for the Site was going to be $51M posted as a credit letter.

46. When Carneys Point discovered these secret negotiations were occurring, the Township demanded NJDEP provide it with documents related to the secret remediation plan and the proposed RFS. NJDEP provided the Township with redacted correspondence, emails, and memos with all the text blacked out.

2017 removal and remand

47. On January 13, 2017, DuPont and Telford filed a Notice of Removal to remove *Carneys Point v. DuPont (2016)* to federal court pursuant to 28 U.S.C. § 1332. The Notice of Removal alleged that, although the Township and Telford were both citizens of the State of New Jersey, the federal court should disregard Telford's New Jersey citizenship claiming fraudulent joinder in violation of 28 U.S.C. 1441(b). Upon removal, the matter was docketed in federal court as *Carney's Point Township v. E.I. DuPont De Nemours and Company, and Sheryl A. Telford,* Civil Action No. 1:17-cv-00264-NLH-JS.

48. On January 27, 2017, the Township filed a Motion to Remand the matter back to state court arguing that Telford was properly joined as a defendant, and DuPont's and Telford's sole reason for removing the matter was to derail the date for the order to show cause hearing that had been set before the state court judge.

49. On July 26, 2017, the Honorable District Judge Noel L. Hillman, U.S.D.J. entered an Order and Opinion granting the Township's Motion to Remand on the grounds that the filing of the removal application on the eve of the Township's order to show cause return date was "suspicious," and because the allegations made against Telford orchestrating DuPont's ISRA violations were pled with detail and substance.

50. Judge Hillman concluded that Telford was not fraudulently joined in *Carneys Point v. DuPont (2016)*, and that the ISRA claims must be remanded back to state court.[4]

Preclusion and Abstention

51. Judge Hillman also concluded the ISRA claims should not be in federal court, even if original jurisdiction was appropriate, because ISRA involves solely a state regulatory program. Judge Hillman stated:

> This point raises the issue of whether the matter belongs in this Court even if subject matter jurisdiction existed. A federal court has the "virtually unflagging obligation" to exercise the jurisdiction given it, but abstention from the exercise of federal jurisdiction is appropriate and necessary in several contexts. See *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 817 (1976). One area where abstention may be required was announced in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), where the Supreme Court "held that federal courts should exercise equitable discretion and refrain from exercising authority over questions involving basic problems of state policy pertaining to the regulation of important state natural resources, even

[4] Telsey Cert. Ex-16 (July 26, 2017 Order and Opinion of Judge Hillman concluding defendant Sheryl Telford was not fraudulently joined in Carneys Point v. DuPont (2016))

> if federal court jurisdiction is predicated on diversity of citizenship." *Grode v. Mutual Fire, Marine and Inland Ins. Co.*, 8 F.3d 953, 956–57 (3d Cir. 1993) (discussing Burford and other abstention doctrines). The *Burford* abstention is usually applied to state regulatory matters such as establishing rates for natural gas or transportation, discontinuing railroad passenger services, discontinuing intrastate air service, or applying state eminent domain procedures. Id. (citing cases).
>
> A strong argument could be made that even if subject matter jurisdiction could be established in this case, the Court would nevertheless be compelled to abstain under *Burford* and remand the matter because ISRA is a complex regulatory environmental statute unique to New Jersey which presents substantial public importance, and in which the federal court should not become enmeshed. See *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (explaining that "*Burford* is concerned with protecting complex state administrative processes from undue federal interference"). The Court does not need to make such a determination, however, because the matter must be remanded for lack of diversity jurisdiction.

*Carneys Point v NJDEP (2018)*

52. The Township sued NJDEP in May 2018 in an action in lieu of prerogative writ. Salem County Docket No. SLM-C-7-18 ("*Carneys Point v NJDEP (2018)*").

53. This action sought to compel NJDEP to cease its secret negotiations with DuPont and Chemours and to allow the Township to participate in the RFS process because a proposed $51M RFS was insufficient given the Township's calculation of an RFS of $1B based on the TBLS Group RACER® calculation. The court signed an Order to Show Cause. NJDEP appeared in court.

54. NJDEP continued to take the position in court that it was not going to sue DuPont for ISRA violations. In a May 2018 Certification of NJDEP Assistant Director Kevin Kratina, Mr. Kratina stated, “Rather than fight about legal requirements, in particular whether ISRA was triggered, in 2017 DEP met with DuPont and Chemours on a number of occasions.” Kratina went on to state NJDEP was not going to sue DuPont because he was hopeful DuPont and Chemours would voluntarily agree to post an adequate RFS.

55. Carneys Point wins ISRA Motion. On February 13, 2019, Judge Ann McDonnell ruled that Carneys Point had standing under the ERA, and that DuPont violated ISRA by transferring the deed to Chemours without posting an RFS (Count 1 *Carneys Point v DuPont (2016)).*

***D. 2019 DuPont-Chambers Works Matter***

56. On March 27, 2019, a few weeks after the state court ruled DuPont violated ISRA by transferring the Chambers Works deed to Chemours in 2015, plaintiffs filed this matter (“the *2019 DuPont-Chambers Works Matter*”) seeking NRD, RFS, lost property taxes, and ISRA penalties, among other things.

57. Given that DuPont and Chemours failed to meet remediation deadlines, and polluted wide areas with PFAS, among other reasons, DuPont and Chemours are each deemed untrustworthy and unreliable and subject to Department direct oversight protocols.

58. In January 2022, the Department's consultant used RACER® to calculate the remediation of onsite DNAPL contamination at Chambers Works is $943M, excluding offsite remediation.

59. In January 2023, this court administratively dismissed the *2019 DuPont-Chambers Works Matter* while the Plaintiffs and Defendants mediated the NRD and RFS with a private mediator.

**E. <u>Mediation</u>**

60. Plaintiffs, Defendants, and Carneys Point have been mediating the RFS since 2019.

61. <u>Table 1</u> below identifies the RFS line items.

<u>Table 1</u>

| RFS | Description |
|---|---|
| 1 | Investigation of NAPL in Delaware River Off Shore of AOC 1 |
| 2 | Completion of RCRA Facility Investigation |
| 3 | Completion of SPB in AOC 1 |
| 4 | Remediation of Selected Ditches |
| 5 | Remediation of SWMU 8 |
| 6 | Protective Cover in Selected Areas on Site to address soil exposure |
| 7 | Remedial Design AOC1 DNAPL |
| 8 | Vapor Intrusion Investigation O&M |
| 9 | Salem Canal Sediment MNR O&M |
| 10 | Inspection and Reporting of Seven (7) RCRA SWMUs |
| 11 | O&M of DNAPL Recovery Systems |
| 12 | O&M of IWS Groundwater Pump and Treat System |
| 13 | Revised Eco Investigation of Delaware River |
| 14 | O&M of Groundwater Monitoring System |
| 15 | RCRA Corrective Measures Studies |
| 16 | Post Closure Care of RCRA SWMUs 21, 25, 26, 28 |

| | |
|---|---|
| 17 | Post Closure Care of RCRA SWMUs 15 and 16 (A & B Basins) |
| 18 | RCRA Closure and Post Closure of Operating Units (Landfill C and Chem Waste Pad) |
| 19 | Future Closure and Post Closure of Sanitary Landfills (A&B) |
| 20 | Off-Site PFAS Potable Well Invest. and POET Water Replacement Treatment System O&M |
| 21 | Site-Wide DNAPL Treatment Corrective Measures Study |
| 22 | Onsite PFAS Soil Boring/Sediment Investigation to fill air emissions and other onsite sources pathway data gaps |
| 23 | Off-Site PFAS AOC PA/SI to fill source data gaps, & IRM CEA Boundary Extension for PFOA exceeding groundwater remediation standards (Missing offsite AOC 23 PA, SI, & Institutional Controls) |
| 24 | Onsite PFAS Monitoring Well & Groundwater Investigation to fill air emissions and other onsite sources pathway data gaps |
| 25/CP 27 | Additional Historic Ditch Removal & Offsite Disposal |
| 26/CP 25 | Off-site PFAS impacted Residential Aquifer Cleanup via Pump & Treat (Missing Off-site AOC 23 Cleanup in beneficial use area of aquifers/residential areas) |
| 27/CP 26 | Off-Site PFAS AOC Risk Assessment, Bioaccumulation, Surface Water, Sediments and IRM Fish Advisories for Recreational Areas Affected by air emissions (Missing AOC 23) |

62. The blue line items are those line items regarding onsite and offsite investigation and remediation work that generally remain in dispute.

63. Carneys Point also participated in the NRD mediation by providing the mediator and litigants with its proposed NRD restoration projects for the Chambers Works site and surrounding community.

64. RFS and NRD mediation was unsuccessful and concluded in early 2024. In April 2024 this matter was returned to the active list.

**F. Carneys Point seeks to condemn and redevelop Chambers Works**

65. In February 2024, the Township launched an investigation to designate the Chambers Works site an area in need of redevelopment that will include the Township's ability to condemn the 1,000-acre Chambers Work parcel and other Chemours parcels along the Salem River and Mannington Meadows. Township of Carneys Point Resolution No. 2024-48 adopted February 21, 2024.

**G. Standing**

66. Pollution impacted municipality. Carneys Point and its residents have been impacted by both perfluorooctanoate acid ("PFOA") and Perfluorononanoate ("PFNA") discharges from Chambers Works pursuant to data collected by DuPont and Chemours over the years.[5] PFOA and PFNA are forms of PFAS. These direct pollution impacts give Carneys Point standing in this matter to protect the interests of its communiity.

67. ISRA claims. Carneys Point has standing under ISRA because ISRA requires notice to Carneys Point regarding compliance and non-compliance, and because Carneys Point has already litigated and won judgment in *Carneys Point v. DuPont (2016)* for the deed transfer ISRA violation.

68. 2017 NRD Constitutional Amendment. The 2017 NRD Constitutional Amendment recognizes a community impacted by the discharge of

[5] The table and data can be found at the Chemours website: https://www.chemours.com/en/about-chemours/global-reach/chambers-works/residential-water-sampling-program

hazardous substances as a ground zero community entitled to NRD restoration projects on a "first priority" basis. Carneys Point has standing to present its NRD restoration projects to this court as required by the 2017 NRD Constitutional Amendment.

69. Environmental Rights Act ("ERA"). The ERA provides that "any person may commence a civil action in any court of competent jurisdiction for declaratory and equitable relief against any other person for the protection of the environment, or the interest of the public therein, from pollution, impairment or destruction." N.J.S.A. 2A:35A-4(b). This includes impairment to post an RFS and impairment to "natural resources of the state." N.J.S.A. 2A:35A-3. Carneys Point has standing under the ERA to address impairments to the RFS and NRD in this matter.

70. Federal Declaratory Judgment Act. 28 U.S.C. § 2201(a) provides that, "In a case of actual controversy within its jurisdiction, except [certain matters not applicable here], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." This statute gives Carneys Point

standing regarding the Township's rights pursuant to the 2017 NRD Constitutional Amendment, and New Jersey environmental laws and regulations.

71. State Declaratory Judgment Act. The Declaratory Judgment Act, N.J.S.A. 2A:16-53 ("DJA") provides that a person "whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." This statute gives Carneys Point standing regarding the Township's rights pursuant to the 2017 NRD Constitutional Amendment, and New Jersey environmental laws and regulations.

72. Writ of Mandamus. Carneys Point has standing to bring a Writ of Mandamus because compliance with the 2017 NRD Conditional Amendment and applicable state environmental laws and regulations are not discretionary but are required ministerial functions, and Plaintiffs failure to comply harms Carneys Point Township.

73. NJDEP Mission Statement. Carneys Point has standing to compel the Plaintiffs and Outside Counsel to comply with the NJDEP mission statement that states the Department will "follow the law" and "be transparent and honest with the public." N.J.A.C. 7:1-1.1. Carneys Point has standing because NJDEP is not following its Mission Statement.

74. The above establishes Carneys Point's standing, individually and collectively, because they raise clear, identifiable, substantial, and real interests held by Carneys Point in this matter.

**COUNT 1**
**ERA collateral estoppel – ISRA deed transfer claim/penalty**
**N.J.S.A. 2A:35A-10**
**Plaintiffs**

75. Intervenor repeats all prior allegations as if set forth herein at length.

76. Carneys Point alleged in *Carneys Point v DuPont (2016)* that DuPont violated ISRA by transferring the Chambers Works deed to Chemours without posting an RFS.

77. On February 13, 2019, Carneys Point won judgment in *Carneys Point v DuPont (2016)* against DuPont for transferring the Chambers Works deed to Chemours without posting an RFS in violation of ISRA.

78. On March 27, 2019, Plaintiffs duplicated the same ISRA claim in this matter alleging that DuPont transferred the Chambers Works deed to Chemours without posting an RFS.

79. The ERA permits a municipality, like Carneys Point, to file an ERA action without prior notice to NJDEP based on the municipality's inherent policy power to protect its residents from harm.

80. Carneys Point filed *Carneys Point v DuPont (2016)* as an ERA action, including a claim against DuPont for transferring the Chambers Work deed to

Chemours without posting an RFS in violation of ISRA because NJDEP had failed to take action against the Defendants for this violation.

81. The ERA recognizes the need to preclude the State from duplicating a claim if a municipality has already taken action, and vice versa, in accordance with the principles of collateral estoppel and res judicata. N.J.S.A. 2A:35A-10.

82. The court in *Howell Tp. v. Waste Disposal, Inc.*, 207 N.J. Super. 80, 96 (App. Div. 1986) stated that a municipality that proceeds ahead pursuant to the ERA because NJDEP failed to take action can preclude the state from later interfering with the municipal claim when, "DEP has failed in its mission, neglected to take action essential to fulfill an obvious legislative purpose, or where it has not given adequate and fair consideration to local or individual interests. In other words where the state agency has failed or neglected to act in the best interest of the citizenry or has arbitrarily, capriciously, or unreasonably acted, then a court should permit interested persons to continue with enforcement under the Environmental Rights Act."

83. The court in *Howell* further stated, "In enacting the Environmental Rights Act the Legislature has recognized that the DEP may fail to act to correct a particular problem or not take proper and necessary action where conflicting interests appear. Further, in a given situation, DEP may seek less than full relief available under relevant legislation. In such a case, there is a clear right granted to

other "persons" to seek such relief under the Environmental Rights Act. No court should enforce grudgingly that right simply because of supervisory difficulties which may be encountered." Id.

84. Plaintiffs neglected to take action essential to fulfill an obvious legislative purpose under ISRA; failed to give adequate and fair consideration to Carneys Point's interests; and acted arbitrarily, capriciously, or unreasonably for the following reasons –

a. Plaintiffs failed to compel DuPont to enter into an Administrative Consent Order ("ACO") to comply with ISRA and post an RFS for the Chambers Works site in 2015 at the behest of Sheryl L. Telford, a former NJDEP official then working for DuPont as its Director of remediation, even though the Department required DuPont to enter into an ACO to comply with ISRA and post an RFS for DuPont's Repauno, Parlin, and Pompton Lakes sites.

b. Plaintiffs failed to respond to the Township's communications with the Department in January 2017 regarding the Chambers Works ISRA violations.

c. Plaintiffs failed to provide relief to the Township after the Township submitted a petition in March 2017 signed by over 1,000 residents seeking assistance regarding the ISRA violations at Chambers Works.

d. Plaintiffs failed to compel DuPont to post adequate RFS during the Department's confidential negotiations with DuPont in 2017-2018.

e. Plaintiffs failed to join in the Township's state court action against DuPont for its ISRA violations.

f. Plaintiffs' conduct forced the Township to sue the Department in *Carneys Point v NJDEP (2018)* for interfering with the Township's ISRA and RFS claim.

g. The Department informed the court in *Carneys Point v NJDEP (2018)* that the Department did not intend to sue DuPont for its ISRA violations leaving the Township to pursue its ISRA claims pursuant to the ERA.

85. The ISRA claim involving DuPont's transfer of Chambers Works to Chemours without posting an RFS has already been litigated to conclusion in the Township's state court action and the state court has already found DuPont violated ISRA by transferring Chambers Works to Chemours without posting an RFS.

*86.* The state court's ruling in *Carneys Point v DuPont (2016),* that DuPont violated ISRA by transferring the Chambers Works deed to Chemours without posting an RFS, extinguishes the claim and precludes Plaintiffs' relitigating the claim as a result of collateral estoppel. *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008).

87. Relitigating the deed transfer ISRA claim again in this matter is a waste of judicial resources because (a) it has already been litigated to conclusion

by a state court of competent jurisdiction, (b) it will involve the same acts complained of in the state court action, the same relief sought, the same witnesses, the same documentary evidence, and the same facts, and (c) it creates a risk of multiple judgments and resultant confusion.

88. The Full Faith and Credit Act, 28 U.S.C. § 1783 requires the federal court to give preclusive effect to a state-court judgment.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Plaintiffs:

A. The court preclude Plaintiffs from relitigating the Chambers Works deed transfer ISRA violation and penalty claim in this matter based on the collateral estoppel provisions in the ERA, N.J.S.A. 2A:35A-10, given the judgment on that claim in *Carneys Point v DuPont (2016)*.

B. Provide any other relief the court deems prudent and reasonable.

**COUNT 2**
**Common law collateral estoppel – ISRA deed transfer claim/penalty Plaintiffs**

89. Intervenor repeats all prior allegations as if set forth herein at length.

90. Collateral estoppel precludes Plaintiffs from relitigating the deed transfer ISRA trigger and penalty claim in this matter for the reasons set forth in Count 1 and because (a) the identical claim was previously adjudicated in *Carneys Point v DuPont (2016)*; (b) the claim was adjudicated with finality by way of

summary judgment in *Carneys Point v DuPont (2016)*; (c) the determination of ISRA responsibility for the deed transfer ISRA trigger in *Carneys Point v DuPont (2016 )* was necessary to the ISRA violation decision; and (d) Plaintiffs admit their interest in the ISRA claim was fully represented by Carneys Point in *Carneys Point v DuPont (2016)* and informed the state court in *Carneys Point v NJDEP (2018)* that they did not intend to sue DuPont for DuPont's ISRA violations.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following:

A. The court preclude Plaintiffs from relitigating the Chambers Works deed transfer ISRA violation and penalty claim in this matter based on collateral estoppel given the judgment on that claim in *Carneys Point v DuPont (2016).*

B. Provide any other relief the court deems prudent and reasonable.

**COUNT 3**
**Lack of jurisdiction – ISRA deed transfer claim/penalty**
**Plaintiffs**

91. Intervenor repeats all prior allegations as if set forth herein at length.

92. Federal courts have limited jurisdiction and are permitted to adjudicate cases and controversies only as permitted under Article III of the Constitution. U.S. Const. art. III, § 2. *See also*, *Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319, 322-23 (3d Cir. 1998).

93. Unless affirmatively demonstrated, a federal court is presumed to lack subject matter jurisdiction. *See, Ridge*, 150 F.3d at 323.

94. The party seeking to invoke federal jurisdiction has the burden of persuasion to establish subject-matter jurisdiction. *See Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009).

95. Under Federal Rule of Civil Procedure 12(h)(3, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action" or claim.

96. This court does not have original jurisdiction over the ISRA deed transfer/penalty claim because, having already been litigated to conclusion, collateral estoppel prevents the claim from being a "justiciable case or controversy" in need of resolution by this court. 28 U.S.C. §§1330-69.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Plaintiffs:

A. The court preclude Plaintiffs from relitigating the Chambers Works deed transfer ISRA violation and penalty claim in this matter for this court's lack of jurisdiction given the judgment on that claim in *Carneys Point v DuPont (2016).*

B. Provide any other relief the court deems prudent and reasonable.

**COUNT 4**
***Burford* Abstention – ISRA deed transfer claim/penalty Plaintiffs**

97. Intervenor repeats all prior allegations as if set forth herein at length.

98. In *Burford v Sun Oil*, 319 U.S. 315, 332-334 (1943), the Supreme Court concluded that a federal court should refuse to exercise its jurisdiction in a manner that would interfere with a state's efforts to regulate an area of law in which state interests predominate and in which adequate and timely state review of the regulatory scheme is available."

99. The purpose of *Burford* is to "avoid federal intrusion into matters of local concern and which are within the special competence of local courts." *Id.* (citation omitted).

100. Regarding the *Burford* abstention doctrine, the Third Circuit in *Chiropractic America v. Lavecchia*, 180 F.3d 99, 104 (3d Cir. 1999) stated:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

101. ISRA is a unique New Jersey statute that compels an industrial establishment undergoing a change in ownership to cleanup up its pollution or post

an RFS before the transaction can occur. It is designed to prevent contaminated industrial sites from becoming abandoned. New Jersey enacted ISRA in 1983 given the state's long industrial history. No other state has a comparable law.

102. The *Burford* abstention doctrine usually applies to a claim that has not yet been litigated.

103. The ISRA claim involving DuPont's transfer of Chambers Works to Chemours without posting an RFS has already been litigated to conclusion in the Township's state court action, *Carneys Point v DuPont (2016),* and the state court has already found DuPont violated ISRA by transferring Chambers Works to Chemours without posting an RFS.

104. The state court's ruling that DuPont violated ISRA by transferring the Chambers Works deed to Chemours without posting an RFS extinguishes the claim, or cause of action in controversy, making relitigating the claim improper.

105. The state court decision that DuPont did violate ISRA is of substantial public importance to the Township.

106. Judge Hillman stated in his opinion remanding the ISRA claims in this matter back to state court in *Carney's Point Township v. E.I. DuPont De Nemours and Company, and Sheryl A. Telford,* Civil Action No. 1:17-cv-00264-NLH-JS, that "a strong argument could be made that, even if subject matter jurisdiction could be established in this case, the Court would nevertheless be

compelled to abstain under *Burford* and remand the matter because ISRA is a complex regulatory environmental statute unique to New Jersey which presents substantial public importance, and in which the federal court should not become enmeshed. See *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (explaining that "*Burford* is concerned with protecting complex state administrative processes from undue federal interference")."

107. The *Burford* abstention doctrine precludes Plaintiffs from relitigating the deed transfer ISRA trigger and penalty claim in this matter for the reasons set forth above in Count 1 and Count 2.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Plaintiffs:

A. The court preclude Plaintiffs from relitigating the Chambers Works deed transfer ISRA violation and penalty claim in this matter based on the *Burford* abstention doctrine given the judgment on that claim in *Carneys Point v DuPont (2016).*

B. Provide any other relief the court deems prudent and reasonable.

**COUNT5**
***Colorado River* Abstention – ISRA deed transfer claim/penalty Plaintiffs**

108. Intervenor repeats all prior allegations as if set forth herein at length.

109. Under the *Colorado River* doctrine, a federal court may abstain from hearing a case "when there is a parallel ongoing state court proceeding." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc*., 571 F.3d 299, 307 (3d Cir. 2009) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

110. Cases are considered parallel when they involve the same parties and claims. *Id.*

111. The deed transfer ISRA claim in the Township's state court matter is the same as the deed transfer ISRA claim in this matter.

112. The parties are the same. That is, DuPont is the ISRA defendant in the Township's state court matter and this matter regarding the ISRA deed transfer violation. Also, the Township as plaintiff standing in for the state in accordance with the ERA, is the same in both matters.

113. Given the parallel nature of the two claims the court must consider if abstention is warranted by considering six factors: "(1) which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." *Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir. 1999).

114. Applying these factors: (1) The state court had initial jurisdiction of this claim in 2016 and decided it to judgment. (2) Forum inconvenience is not relevant since Camden and Salem are close. (3) Relitigating the claim will create confusion and piecemeal litigation. (4) The 2016 state court action was filed before the 2019 federal court action. (5) State law controls – ISRA. (6) The state court can protect the interests of the party because the Plaintiffs are relying on the state court judgment in this matter.

115. Judge Hillman stated in his opinion remanding the ISRA claims in this matter back to state court in *Carney's Point Township v. E.I. DuPont De Nemours and Company, and Sheryl A. Telford*, Civil Action No. 1:17-cv-00264-NLH-JS, that the ISRA claims here are state court matters not federal court matters. Judge Hillman stated, "This point raises the issue of whether the matter belongs in this Court even if subject matter jurisdiction existed. A federal court has the "virtually unflagging obligation" to exercise the jurisdiction given it, but abstention from the exercise of federal jurisdiction is appropriate and necessary in several contexts. See *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 817 (1976).

116. The *Colorado River* abstention doctrine precludes Plaintiffs from relitigating the deed transfer ISRA trigger and penalty claim in this matter for the reasons set forth above in Count 1 and Count 2.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Plaintiffs:

A. The court preclude Plaintiffs from relitigating the Chambers Works deed transfer ISRA violation and penalty claim in this matter based on the *Colorado River* abstention doctrine given the judgment on that claim in *Carneys Point v DuPont (2016)*.

B. Provide any other relief the court deems prudent and reasonable.

**<u>COUNT 6</u>**
**Permissive abstention – ISRA deed transfer/penalty claim**
**28 U.S.C. 1367(c)(1)**
**Plaintiffs**

117. Intervenor repeats all prior allegations as if set forth herein at length.

118. Assuming this Court has original jurisdiction under 28 U.S.C. 1442 for Plaintiff NRD claims, which it does not, this Court would have supplemental jurisdiction over Plaintiffs ISRA claims by virtue of 28 U.S.C. §1367(a), *but only if* the ISRA claim is so related to the NRD claims that they form part of the same case or controversy.

119. "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the claim raises a novel or complex issue of State law...." 28 U.S.C. § 1367(c)(1) [permissive abstention].

120. The court does not have original jurisdiction over the ISRA claim for reasons set forth herein.

121. The court has no reason to exercise its supplemental jurisdiction over the ISRA claim because the ISRA claim is strictly a state law claim.

122. The court has no reason to exercise its supplemental jurisdiction over the ISRA claim because this claim has already been litigated to judgment in state court, and because the principals of collateral estoppel, the *Burford* abstention doctrine, and the *Colorado River* abstention doctrine apply.

123. The court's exercise of supplemental jurisdiction for the ISRA claim would interfere with the principle of comity and promote multiple judgments and confusion.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Plaintiffs:

A. The court preclude Plaintiffs from relitigating the Chambers Works deed transfer ISRA violation and penalty claim in this matter based on 28 U.S.C. § 1367(c)(1) [permissive abstention] given the judgment on that claim in *Carneys Point v DuPont (2016).*

B. Provide any other relief the court deems prudent and reasonable.

**COUNT 7**
**Federal Declaratory Judgment Act – NRD project participation**
**28 U.S.C. §2201(a)**
**Plaintiffs and Defendants**

124. Intervenor repeats all prior allegations as if set forth herein at length.

**2017 Constitutional Amendment**[6]

125. The 2017 NRD Constitutional Amendment provides as follows:

a. Repair, restore, replace. The primary purpose of NRD litigation is "to repair, restore or replace damaged or lost natural resources of the State."

b. Local municipality gets first-priority (nexus-to-injury preference). The NRD Constitutional Amendment recognizes that the repair, restoration, or replacement of natural resources damaged or lost to pollution focuses on NRD restoration projects at the ground-zero municipalities impacted by the pollution on a "first priority" basis. The Amendment states, "The first priority for the use of any moneys by the State to repair, restore, or replace damaged or lost natural resources of the State, or permanently protect the natural resources of the

---

[6] Article VIII, Section II, paragraph 9 added effective December 7, 2017.

There shall be credited annually to a special account in the General Fund an amount equivalent to the revenue annually derived from all settlements and judicial and administrative awards relating to natural resource damages collected by the State in connection with claims based on environmental contamination.

The amount annually credited pursuant to this paragraph shall be dedicated, and shall be appropriated from time to time by the Legislature, for paying for costs incurred by the State to repair, restore, or replace damaged or lost natural resources of the State, or permanently protect the natural resources of the State, or for paying the legal or other costs incurred by the State to pursue settlements and judicial and administrative awards relating to natural resource damages. The first priority for the use of any moneys by the State to repair, restore, or replace damaged or lost natural resources of the State, or permanently protect the natural resources of the State, pursuant to this paragraph shall be in the immediate area in which the damage to the natural resources occurred in connection with the claim for which the moneys were recovered. If no reasonable project is available to satisfy the first priority for the use of the moneys, or there are moneys available after satisfying the first priority for their use, the second priority for the use of any moneys by the State to repair, restore, or replace damaged or lost natural resources of the State, or permanently protect the natural resources of the State, pursuant to this paragraph shall be in the same water region in which the damage to the natural resources occurred in connection with the claim for which the moneys were recovered. If no reasonable project is available to satisfy the first or second priority for the use of the moneys, or there are moneys available after satisfying the first or second priority for their use, the moneys may be used by the State to repair, restore, or replace damaged or lost natural resources of the State, or permanently protect the natural resources of the State, pursuant to this paragraph without geographic constraints. Up to 10 percent of the moneys appropriated pursuant to this paragraph may be expended for administrative costs of the State or its departments, agencies, or authorities for the purposes authorized in this paragraph.

State, pursuant to this paragraph shall be in the immediate area in which the damage to the natural resources occurred in connection with the claim for which the moneys were recovered." The Constitutional Amendment further states that, only if there are no reasonable NRD restoration projects in the ground-zero impacted communities will the Legislature fund NRD restoration projects located somewhere else, such as the "same water region in which the damage occurred," or if not there, then anywhere else "without geographic constraints."

126. The Plaintiffs have no administrative discretion to vary from these constitutional requirements.

2023 NJDEP NRD Administrative Order

127. The Department acknowledges its obligation to comply with the NRD Constitutional Amendment. In March 2023, the NJDEP published Administrative Order 2023-08, which stated that, "It is the policy of the Department to engage directly with the public whose natural resources the State holds in trust concerning the Department's identification, selection, planning, and implementation of restoration projects, and to provide information and seek input on restoration projects from communities affected by the relevant discharges(s) of hazardous substances, contaminants, or other pollutants."

128. The Administrative Order also stated that the Order is not "intended to diminish any existing legal rights or remedies of the Department or any third

party," and that "Nothing in this Order shall be construed to supersede any federal, State, or local law."

2023 Ciba-Geigy NRD settlement

129. The Department has already implemented the "nexus to injury" preference for NRD restoration projects over the recovery of NRD cash payments. In 2023, the Department approved an NRD settlement at the Ciba-Geigy site in Toms River that provided for onsite NRD restoration projects and stated in responses to public comments regarding that settlement, "Per the New Jersey Constitution, natural resource damages recoveries shall be prioritized as close to the injury as possible. In the case of the Ciba-Geigy site, natural resource damage compensation will take place at the location of injury in accordance with the Constitutional mandate."

130. Carneys Point has a legal right to participate in the development of NRD restoration projects for the Chambers Works site and surrounding pollution impacted neighborhoods and to present those projects, and costs for construction, to this court in this matter for the following reasons:

(1) Carneys Point is a first-priority pollution impacted municipality as defined by the 2017 NRD Constitutional Amendment and is undertaking a plan to redevelop the Chambers Works site with the power to acquire the site through

condemnation. As such, Carneys Point is a necessary party and must be given an opportunity to present its NRD restoration projects to the parties and the court.

(2) The Constitution, NJDEP protocol, and NJDEP practice prefer nexus-to-injury NRD restoration projects over NRD cash payments.

(3) NJDEP NRD policy recognizes the need to hear from the pollution-impacted community regarding NRD restoration projects, as evidenced by the 2023 NJDEP NRD policy order, and the 2023 Ciba-Geigy NRD settlement.

(4) Carneys Point is developing NRD restoration projects for the site and surrounding pollution impacted neighborhoods.

(5) Carneys Point has standing to participate in this matter.

(6) The participation of Carneys Point will not prejudice the parties because (i) NRD restoration projects are the focus of NRD litigation, (ii) the parties have failed to resolve the NRD issue through mediation, (iii) the parties can comment on and address the NRD restoration projects to be presented by the Township in this matter, (iv) the Township's input regarding appropriate NRD restoration projects for the site and surrounding area is practical, necessary, and helpful to the resolution of this matter, (v) this matter has been inactive for over a year having been administratively dismissed pending unsuccessful mediation, and (vi) the trial is a year away.

131. 28 U.S.C. § 2201(a) provides that, "In a case of actual controversy within its jurisdiction, except [certain matters not applicable here], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

132. Carneys Point is an interested party entitled to have this court determine its rights and legal relationship to the NRD restoration projects at and surrounding the Chambers Works site.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Plaintiffs and Defendants:

A. That, pursuant to 28 U.S.C. § 2201(a), this Court declare that the Township is permitted to present NRD restoration projects, and costs for construction, to this court in this matter in accordance with case management procedures to be determined by the court.

B. Provide any other relief the court deems prudent and reasonable.

**COUNT 8**
**State Declaratory Judgment Act – NRD project participation**
**N.J.S.A. 2A:16-53**
**Plaintiffs and Defendants**

133. Intervenor repeats all prior allegations as if set forth herein at length.

134. The New Jersey Declaratory Judgment Act, N.J.S.A. 2A:16-53 provides that a person "whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

135. For the reasons set forth in Count 8, Carneys Point has a legal right, pursuant to the 2017 NRD Constitutional Amendment, the NJDEP 2023 NRD protocol, and the NJDEP practice as referenced in the Ciba Geigy NRD settlement to present NRD restoration projects to this court.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Plaintiffs and Defendants:

A. That, pursuant to N.J.S.A. 2A:16-53, this Court declare that the Township is permitted to present NRD restoration projects, and costs for construction, to this court in this matter in accordance with case management procedures to be determined by the court.

B. Provide any other relief the court deems prudent and reasonable.

**COUNT 9**
**Environmental Rights Act – NRD project participation**
**N.J.S.A. 2A:35A-1 et seq.**
**Plaintiffs and Defendants**

136. Intervenor repeats all prior allegations as if set forth herein at length.

137. The Environmental Rights Act, N.J.S.A. 2A:35A-1 et seq. ("ERA") provides that "any person may commence a civil action in any court of competent jurisdiction for declaratory and equitable relief against any other person for the protection of the environment, or the interest of the public therein, from pollution, impairment or destruction." N.J.S.A. 2A:35A-4(b). This includes impairment to "natural resources of the state." N.J.S.A. 2A:35A-3.

138. A local governmental entity, such as Carneys Point Township, is not required to provide Plaintiffs or Defendants advanced notice before commencing an ERA claim because, as a political subdivision of the state, Carneys Point is entitled to take unilateral action to protect its local citizens and community pursuant to its own inherent policy power. N.J.S.A. 2A:35A-11.

139. Prohibiting Carneys Point, a first priority pollution impacted municipality, from presenting NRD restoration projects and budgets in this matter "impairs the environment" in that nexus-to-injury NRD restoration projects preferred by the 2017 NRD Constitutional Amendment and NJDEP protocol will not be considered or constructed for the benefit of the Chambers Works site and the surrounding Township of Carneys Point.

140. This failure to repair, restore or replace natural resources through reasonable NRD restoration projects at and surrounding the Chambers Works site, that will address onsite and offsite polluted groundwater; drinking water wells;

surface water; wetlands; sediments; soils; and biota, will keep those polluted natural resources damaged, thereby frustrating the goals of the 2017 NRD Constitutional Amendment and NJDEP protocols.

141. When seeking equitable relief pursuant to paragraph 4(b) of the ERA, as in this instance, the court can impose such conditions "as may be necessary to protect the environment, or the interest of the public therein, from pollution, impairment, or destruction." N.J.S.A. 2A:35A-6. Those conditions may include imposing "a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare." N.J.S.A. 2A:35A-7.

142. Permitting Carneys Point the opportunity to present NRD restoration projects and budgets to this court as required by the 2017 NRD Constitutional Amendment and NJDEP protocols is a feasible and prudent alternative to proceeding with this matter without the Township's participation.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Plaintiffs and Defendants:

A. That, pursuant to N.J.S.A. 2A:35A-1 et seq., this Court declare that the Township is permitted to present NRD restoration projects, and costs for construction, to this court in this matter in accordance with case management procedures to be determined by the court.

B. Provide any other relief the court deems prudent and reasonable.

**COUNT 10**
**Writ of Mandamus – NRD project participation**
**Plaintiffs**

143. Intervenor repeats all prior allegations as if set forth herein at length.

144. The 1947 State Constitution continues to recognize the distinction and separation of powers between the Executive, Legislative, and Judicial Branches of government. However, the courts still have the power to compel the Executive branch and its departments and agencies to perform their ministerial obligations, which do not require the exercise of discretion in the mode of performance of that obligation.

145. The New Jersey Supreme Court in *Switz v. Middletown Tp*., 23 N.J. 580, 588-89 (1957) described mandamus as follows: "It is a coercive process that commands the performance of a ministerial act or duty, or commands the exercise of a discretionary function, but does not seek to interfere with or control the mode and manner of its exercise or to influence or direct a particular result. Mandamus lies to compel but not control the exercise of discretion."

146. The Supreme Court in *Switz* further described the difference between a ministerial act and discretionary act as follows: A Writ of Mandamus can be used "to compel the performance, in a specified manner, of ministerial duties so plain in point of law and so clear in matter of fact that no element of discretion is left as to the precise mode of their performance, but as to all acts or duties

depending upon a jurisdiction to decide questions of law or to ascertain matters of fact, on the part of the officer or body at whose hands the performance is required, mandamus will not lie." Id.

147. The Plaintiffs obligation to comply with the 2017 NRD Constitutional Amendment to allow Carneys Point to participate in this matter as a necessary party to present NRD restoration projects and budgets is clear, and requires no finding of fact, interpretation of law, or application of administrative discretion to understand the intent of the 2017 NRD Constitutional Amendment.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Plaintiffs:

A. That, pursuant to a Writ of Mandamus regarding the interpretation of the 2017 NRD Constitutional Amendment, this Court declare that the Plaintiffs must permit the Township to present NRD restoration projects, and costs for construction, to this court in this matter in accordance with case management procedures to be determined by the court.

B. Provide any other relief the court deems prudent and reasonable.

**COUNT 11**
**Federal Declaratory Judgment Act – Feasibility Study/Public Participation Plan**
**29 U.S.C. §2201(a)**
**Plaintiffs and Defendants**

148. Intervenor repeats all prior allegations as if set forth herein at length.

149. The SRRA requires public participation in the remediation process when the remediating party is unreliable and subject to NJDEP direct oversight, as is the case with DuPont and Chemours. That is because the community is in direct harm's way of a recalcitrant remediating party and is permitted to protect itself and its residents.

150. Public participation under the SRRA comes in two parts. N.J.S.A. 58:10C-27c. Part one is that the remediating party, like DuPont and Chemours, must prepare a feasibility study that addresses remedial options and remedy selection for on-site and off-site contamination within 90 days of being subject to compulsory direct oversight. N.J.S.A. 58:10C-27c(2), N.J.A.C. 7:26C-14.2(b)3. For DuPont and Chemours, the feasibility study was due many years ago. It has not been prepared to this date, and NJDEP is not compelling them to prepare it.

151. The Department requires that the feasibility study be prepared in accordance with the requirements of the Comprehensive Environmental Response, Compensation and Liability Act 42 U.S.C. 103 ("CERCLA"),[7] which includes scheduling a public hearing so that impacted residents understand what the

[7] NJDEP Guidance Document "Earning Adjustments to the Direct Oversight Requirements Administrative Requirements for the Remediation of Contaminated Sites (ARRCS) N.J.S.A. 7:26C-14" 08/13/2019. This Guidance Document states, the responsible party shall "submit to the Department a feasibility study (conducted and prepared in accordance with the U.S. Environmental Protection Agency, "The Feasibility Study: Detailed Analysis of Remedial Action Alternatives," (March 1990) OSWER 9355.3-01FS4, NTIS: PB90-2726751NX)," prepared in accordance with the CERCLA requirements set forth at 40 C.F.R. §300.430.

remedial plan of action will be and can ask questions about it. 40 C.F.R. §300.430(f)(3)(D).

152. After information about the remediation planning process is in the hands of the public, the SRRA entitles the pollution-impacted municipality, like Carneys Point Township, to propose a Public Participation Plan to DuPont, Chemours and NJDEP that meets the needs of the Township and its residents. N.J.S.A. 58:10C-27c(7).

153. The Department issued a 2023 Guidance Document about preparing a Public Participation Plan that focuses on the concerns of the pollution-impacted municipality. It stated the Plan must be "commensurate with site conditions and the level of public interest at the site, and remain[] flexible to accommodate ongoing changes in community concerns," especially for "a site that has an off-site ground water plume located in a residential area," like Chambers Works in Carneys Point Township. That is because, as the Guidance Document states, there is a "heightened community concern when there is off-site migration of contamination, resulting in questions regarding health and property value." "Engaging in public dialogue allows the [responsible party] and their LSRP to learn of community concerns and to adjust planned remedial activities, accordingly, thus avoiding complications and delays." "In addition, to assess the level of public interest, the [responsible party] and their LSRP should conduct

interviews with local municipal officials, health officials, and representatives of local environmental organizations."

154. The feasibility study public meeting is an integral precondition of community outreach necessary for preparing a Public Participation Plan.

155. Carneys Point has been demanding participation in the remediation of the Chambers Works site since 2016 when it filed its state court ERA action against Defendants. The state court action included a count to compel Defendants to provide the Township with a Public Participation Plan.

156. The Township also filed a 2017 petition to NJDEP signed by 1,000 residents demanding participation as permitted by regulation. The Department held a meeting and told the Township to write letters if it had any questions about the Chambers Works remediation process leaving the Township without participation as permitted by law.

157. Since 2016 the state has interfered with the Township's efforts to compel a Public Participation Plan prompting the Township to sue the Department in 2018.

158. The Public Participation Plan issue was thereafter mediated with Judge Michael Hogan, J.S.C. (ret) for years and never resolved.

159. Carneys Point is and has been an active participant in the remediation process because the law allows municipal involvement in the remediation process,

and because Carneys Point has been taking advantage of its legal rights to protect its residents.

160. Carneys Point is not a passive bystander to the remediation process. For example, Carneys Point, as the host municipality to Chambers Works, is a stakeholder in the ISRA RFS process in that, by law, the Township must receive a copy of all ISRA documents sent to NJDEP so the Township can monitor ISRA compliance and take enforcement action pursuant to the ERA and/or petition NJDEP for access to the RFS in the event of non-compliance. N.J.A.C. 7:26B-3.2.

161. Carneys Point did not receive ISRA compliance documents when DuPont spun off Chemours in 2015, and that is what sparked the Township's 2016 ERA lawsuit.

162. Carneys Point is also the host community for DuPont/Chemours' current remediation plan that uses the onsite hazardous wastewater treatment plant and onsite hazardous waste landfill as remediation treatment and depository elements, which are considered a major hazardous waste facility pursuant to Major Hazardous Waste Facilities Siting Act, N.J.S.A. 13:1E-49. As such, Carneys Point is a stakeholder in the actual remediation process being employed at the Chambers Works site.

163. The discharge of PFAS from incinerator stacks at Chambers Works caused PFAS to drift offsite and contaminate groundwater in the entire surrounding

community of Carneys Point. This has required that groundwater drinking wells for hundreds of homes be put on filter systems. As such, Carneys Point is also a stakeholder in the health, safety, and welfare of its residents, especially since Plaintiffs have failed to compel Defendants to remediate offsite PFAS contamination as required by ISRA.

164. Carneys Point is also an "overburdened community" pursuant to the New Jersey Environmental Justice Law, N.J.S.A. 13:1D-157, in that it is polluted by Chambers Works, host to a major hazardous waste facility, and within 15-miles of the Salem Nuclear power plant, which stores spent hazardous waste material onsite and has done so for years. These pollution risks, real and foreboding, make Carneys Point an overburdened community.

165. Plaintiffs seek to compel Defendants to prepare a Public Participation Plan in its proposed Third Amended Complaint. However, the Plaintiffs are not requiring Defendants to prepare a feasibility study or hold a public hearing regarding the feasibility study, which is the key precondition necessary for the Township to prepare a Public Participation Plan.

166. The Township is a necessary party regarding the feasibility study, the public hearing and the Public Participation Plan.

167. Carneys Point has a lawful right to compel DuPont and Chemours to prepare a feasibility study and hold a feasibility study public hearing, and Carneys

Point has a lawful right to submit a reasonable Public Participation Plan to the litigants. These are significant protectable interests.

168. 28 U.S.C. § 2201(a) provides that, "In a case of actual controversy within its jurisdiction, except [certain matters not applicable here], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

169. Carneys Point is an interested party entitled to have this court determine its legal rights and remedies regarding the feasibility study, hearing related to the feasibility study, and Public Participation Plan.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Plaintiffs and Defendants:

A. That, pursuant to 28 U.S.C. § 2201(a), this Court declare that the DuPont and Chemours must prepare and submit to Plaintiffs and Carneys Point Township a feasibility study compliant with law, schedule and hold a public hearing regarding the feasibility study, and permit Carneys Point Township to provide Plaintiffs and Defendants with a Public Participation Plan as permitted by law.

B. Provide any other relief the court deems prudent and reasonable.

**<u>COUNT 12</u>**
**Federal Declaratory Judgment Act – Feasibility Study/Public Participation Plan**
**N.J.S.A. 2A:16-53**
**Plaintiffs and Defendants**

170. Intervenor repeats all prior allegations as if set forth herein at length.

171. The New Jersey Declaratory Judgment Act, N.J.S.A. 2A:16-53 provides that a person "whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

172. For the reasons set forth in <u>Count 11</u>, Carneys Point has a legal right to compel DuPont and Chemours to prepare and submit to Plaintiffs and Carneys Point Township a feasibility study complaint with law, schedule and hold a public hearing regarding the feasibility study, and permit Carneys Point Township to provide Plaintiffs and Defendants with a Public Participation Plan as permitted by law.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Plaintiffs and Defendants:

A. That, pursuant to N.J.S.A. 2A:16-53, this Court declare that the DuPont and Chemours must prepare and submit to Plaintiffs and Carneys Point

Township a feasibility study compliant with law, schedule and hold a public hearing regarding the feasibility study, and permit Carneys Point Township to provide Plaintiffs and Defendants with a Public Participation Plan as permitted by law.

B. Provide any other relief the court deems prudent and reasonable.

**COUNT 13**
**Environmental Rights Act – Feasibility Study/Public Participation Plan**
**N.J.S.A. 2A:35A-1 et seq.**
**Plaintiffs and Defendants**

173. Intervenor repeats all prior allegations as if set forth herein at length.

174. The Environmental Rights Act, N.J.S.A. 2A:35A-1 et seq. ("ERA") provides that "any person may commence a civil action in any court of competent jurisdiction for declaratory and equitable relief against any other person for the protection of the environment, or the interest of the public therein, from pollution, impairment or destruction." N.J.S.A. 2A:35A-4(b).

175. A local governmental entity, such as Carneys Point Township, is not required to provide Plaintiffs or Defendants advanced notice before commencing an ERA claim because, as a political subdivision of the state, Carneys Point is entitled to take unilateral action to protect its local citizens and community pursuant to its own inherent policy power. N.J.S.A. 2A:35A-11.

176. DuPont and Chemours' failure to timely prepare a feasibility study for the onsite and offsite remediation of pollution from the Chambers Works site, and

failure to hold a public hearing regarding that study "impairs the environment" and "the interest of the public" by denying the public information they need to understand the risks posed by the pollution at and emanating from the Chambers Works site, the remedial options available to protect the public and the environment from that harm, and the reasons why one remedy is or may be selected over other remedial options.

177. When seeking equitable relief pursuant to paragraph 4(b) of the ERA, as in this instance, the court can impose such conditions "as may be necessary to protect the environment, or the interest of the public therein, from pollution, impairment, or destruction." N.J.S.A. 2A:35A-6. Those conditions may include imposing "a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare." N.J.S.A. 2A:35A-7.

178. Requiring DuPont and Chemours to prepare a feasibility study, hold a public hearing regarding the feasibility study, and accept a Public Participation Plan from Carneys Point as required by law is feasible and prudent.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Plaintiffs and Defendants:

A. That, pursuant to N.J.S.A. 2A:35A-1 et seq., this Court declare that DuPont and Chemours must prepare and submit to Plaintiffs and Carneys Point Township a feasibility study compliant with law, schedule and hold

a public hearing regarding the feasibility study, and permit Carneys Point Township to provide Plaintiffs and Defendants with a Public Participation Plan as permitted by law.

B. Provide any other relief the court deems prudent and reasonable.

**COUNT 14**
**Writ of Mandamus – Feasibility Study/Public Participation Plan**
**Plaintiffs**

179. Intervenor repeats all prior allegations as if set forth herein at length.

180. The 1947 State Constitution continues to recognize the distinction and separation of powers between the Executive, Legislative, and Judicial Branches of government. However, the courts still have the power to compel the Executive branch and its departments and agencies to perform their ministerial obligations, which do not require the exercise of discretion in the mode of performance of that obligation.

181. The New Jersey Supreme Court in *Switz v. Middletown Tp.*, 23 N.J. 580, 588-89 (1957) described mandamus as follows: "It is a coercive process that commands the performance of a ministerial act or duty, or commands the exercise of a discretionary function, but does not seek to interfere with or control the mode and manner of its exercise or to influence or direct a particular result. Mandamus lies to compel but not control the exercise of discretion."

182. The Supreme Court in *Switz* further described the difference between a ministerial act and discretionary act as follows: A Writ of Mandamus can be used "to compel the performance, in a specified manner, of ministerial duties so plain in point of law and so clear in matter of fact that no element of discretion is left as to the precise mode of their performance, but as to all acts or duties depending upon a jurisdiction to decide questions of law or to ascertain matters of fact, on the part of the officer or body at whose hands the performance is required, mandamus will not lie." Id.

183. The Plaintiffs obligation to compel DuPont and Chemours to prepare a feasibility study, hold a public hearing regarding the feasibility study, and accept a Public Participation Plan from Carneys Point Township is clear, and requires no finding of fact, interpretation of law, or application of administrative discretion to understand the intent of N.J.S.A. 58:10C-27c(2) and (7), and N.J.A.C. 7:26C-14.2(b)3.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Plaintiffs:

A. That, pursuant to a Writ of Mandamus regarding the interpretation of N.J.S.A. 58:10C-27c(2) and (7), and N.J.A.C. 7:26C-14.2(b)3, this Court declare that the Plaintiffs must compel DuPont and Chemours to prepare

a feasibility study, hold a public hearing regarding the feasibility study, and accept a Public Participation Plan from Carneys Point Township.

B. Provide any other relief the court deems prudent and reasonable.

**COUNT 15**
**RFS must be a cash Remediation Trust Fund**
**Federal Declaratory Judgment Act**
**28 U.S.C. § 2201(a)**
**Plaintiffs and Defendants**

184. Intervenor repeats all prior allegations as if set forth herein at length.

185. An RFS is posted as a financial backstop to cover the cost of remediation.

186. In the event Defendants fail to complete the work, a pollution impacted municipality, like Carneys Point, can access the funds to complete the work with NJDEP approval. N.J.A.C. 7:26C-5.13(d).

187. Defendants are subject to Department direct oversight. N.J.S.A. 58:10C-27.

188. Only a cash Remediation Trust Fund Agreement is permitted by N.J.S.A. 58:10C-27c(4) and N.J.A.C. 7:26C-5.2(k) as a form of RFS for a party under direct oversight because they are untrustworthy remediation parties.

189. The Department's regulations require a direct oversight party to post only a cash Remediation Trust Fund Agreement because cash is the most secure and accessible form of financial security. N.J.A.C. 7:26C-5.2(k).

[“Notwithstanding (h) or (j) above, a person responsible for conducting the remediation that is subject to direct oversight pursuant to N.J.S.A. 58:10C-27 shall establish and maintain a remediation trust fund in accordance with N.J.A.C. 7:26C-5.4.”].

190. NJDEP stated in response to comments about N.J.A.C. 7:26C-5.2(k), “notwithstanding N.J.A.C. 7:26C-5.5(h) or (j), which give the person responsible for conducting the remediation flexibility in choosing which financial mechanism to use to establish a remediation funding source or financial assurance, respectively, *the person must establish and maintain a remediation trust fund when that person becomes subject to direct oversight*.” 2011 NJR 267318 proposal August 15, 2011.

191. The Department adopted regulations that permit the Department, in its discretion, to “waive strict compliance with any of its rules in a manner consistent with the core missions of the Department to maintain, protect, and enhance New Jersey's natural resources and to protect the public health, safety, and welfare, and the environment” if certain rules conflict with each other, there would be a net environmental benefit, the rule in unduly burdensome, or there is a public emergency. N.J.A.C. 7:1B-1.1, -1.2.

192. Despite this relaxation of strict compliance in certain circumstances, the waiver rules identified a list of Department rules that would never be

compromised. They include rules related to the posting of an RFS. N.J.A.C. 7:1B-2.1(b) states, "The Department shall not under this chapter waive: 8. A rule providing for a remediation funding source, claim or other reimbursement, grant, loan, or other financial assistance."

193. The RFS non-waiver rule, N.J.A.C. 7:1B-2.1(b)8, means that the Department cannot waive N.J.A.C. 7:26C-5.2(k) that requires all direct oversight parties post a cash Remediation Trust Fund, and no other form of non-cash RFS.

194. The ARRCS rules, that include N.J.A.C. 7:26C-5.2(k), do not have any variance provisions.

195. The Defendants do not fit any of the exemptions set forth in the ARCCS rules, N.J.A.C. 7:26C-1.4.

196. The Plaintiffs have not adopted emergency regulations to override the RFS non-waiver rule.

197. The Administrative Procedures Act, N.J.S.A. 52:14B-1 ("APA") sets forth the procedures for adopting, amending, and repealing regulations, which involves due process by way of public notice and an opportunity for public comment. The Plaintiffs have not undertaken any action to amend or repeal N.J.A.C. 7:26C-5.2(k). As such, the regulation is in effect and applicable to all regulated entities, including Defendants.

198. The Plaintiffs do not have authority to ignore or selectively enforce the RFS non-waiver rule.

199. 28 U.S.C. § 2201(a) provides that, "In a case of actual controversy within its jurisdiction, except [certain matters not applicable here], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

200. For the reasons set forth herein, Carneys Point has a legal right to compel Plaintiffs and Defendants to post the RFS in this matter as a cash Remediation Trust Fund only.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Plaintiffs and Defendants:

A. That, pursuant to 28 U.S.C. § 2201(a), this Court declares that the Plaintiffs and Defendants must post the RFS in this matter only as a Remediation Trust Fund as required by N.J.A.C. 7:26C-5.2(k) and the non-waiver rule N.J.A.C. 7:1B-2.1(b)8.

B. Provide any other relief the court deems prudent and reasonable.

**COUNT 16**
**RFS must be a cash Remediation Trust Fund**
**State Declaratory Judgment Act**
**N.J.S.A. 2A:16-53**
**Plaintiffs and Defendants**

201. Intervenor repeats all prior allegations as if set forth herein at length.

202. The New Jersey Declaratory Judgment Act, N.J.S.A. 2A:16-53 provides that a person "whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

203. For the reasons set forth in Count 15, Carneys Point has a legal right to compel Plaintiffs and Defendants to post the RFS in this matter as a cash Remediation Trust Fund only.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Plaintiffs and Defendants:

A. That, pursuant to N.J.S.A. 2A:16-53, this Court declares that the Plaintiffs and Defendants must post the RFS in this matter only as a Remediation Trust Fund as required by N.J.A.C. 7:26C-5.2(k) and the non-waiver rule N.J.A.C. 7:1B-2.1(b)8.

B. Provide any other relief the court deems prudent and reasonable.

**COUNT 17**
**RFS must be a cash Remediation Trust Fund**
**Environmental Rights Act**
**N.J.S.A. 2A:35A-1 et seq.**
**Plaintiffs and Defendants**

204. Intervenor repeats all prior allegations as if set forth herein at length.

205. The ERA provides that "any person may commence a civil action in any court of competent jurisdiction for declaratory and equitable relief against any other person for the protection of the environment, or the interest of the public therein, from pollution, impairment or destruction." N.J.S.A. 2A:35A-4(b). This includes impairment to "natural resources of the state." N.J.S.A. 2A:35A-3.

206. Not requiring the Plaintiffs and Defendants to post the RFS in this matter as a cash Remediation Trust Fund as required by law and regulation "impairs the environment" in that cash will not be available to the state or Carneys Point as a pollution-impacted municipality to complete onsite and offsite remediation in the event Defendants fail to do so.

207. When seeking equitable relief pursuant to paragraph 4(b) of the ERA, as in this instance, the court can impose such conditions "as may be necessary to protect the environment, or the interest of the public therein, from pollution, impairment, or destruction." N.J.S.A. 2A:35A-6. Those conditions may include imposing "a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare." N.J.S.A. 2A:35A-7.

208. Compelling Plaintiffs and Defendants to comply with applicable RFS statutes and regulations requiring the posting of a cash Remediation Trust Fund only is a feasible and prudent alternative to non-compliance.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Plaintiffs and Defendants:

A. That, pursuant to N.J.S.A. 2A:35A-4(b), this Court declares that the Plaintiffs and Defendants must post the RFS in this matter only as a Remediation Trust Fund as required by N.J.A.C. 7:26C-5.2(k) and the non-waiver rule N.J.A.C. 7:1B-2.1(b)8.

B. Provide any other relief the court deems prudent and reasonable.

**COUNT 18**
**RFS must be a cash Remediation Trust Fund**
**Writ of Mandamus**
**Plaintiffs**

209. Intervenor repeats all prior allegations as if set forth herein at length.

210. The New Jersey Supreme Court in *Switz v. Middletown Tp.*, 23 N.J. 580, 588-89 (1957) described mandamus as follows: “It is a coercive process that commands the performance of a ministerial act or duty, or commands the exercise of a discretionary function, but does not seek to interfere with or control the mode and manner of its exercise or to influence or direct a particular result. Mandamus lies to compel but not control the exercise of discretion.”

211. The Supreme Court in *Switz* further described the difference between a ministerial act and discretionary act as follows: A Writ of mandamus can be used "to compel the performance, in a specified manner, of ministerial duties so plain in point of law and so clear in matter of fact that no element of discretion is left as to the precise mode of their performance, but as to all acts or duties depending upon a jurisdiction to decide questions of law or to ascertain matters of fact, on the part of the officer or body at whose hands the performance is required, mandamus will not lie." Id.

212. The Plaintiffs obligation to comply with the RFS statutes and regulations is clear, and requires no finding of fact, interpretation of law, or application of administrative discretion to understand the intent of law that only a cash Remediation Trust Fund can be posted in this matter.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Plaintiffs:

A. That, pursuant to a Writ of Mandamus regarding the interpretation of N.J.A.C. 7:26C-5.2(k) and the non-waiver rule N.J.A.C. 7:1B-2.1(b)8, this Court declares that the Plaintiffs must compel Defendants to post the RFS as a cash Remediation Trust Fund only.

B. Provide any other relief the court deems prudent and reasonable.

**COUNT 19**
**RFS must include cost of offsite remediation**
**Federal Declaratory Judgment Act**
**28 U.S.C. § 2201(a)**
**Plaintiffs and Defendants**

213. Intervenor repeats all prior allegations as if set forth herein at length.

214. The Supreme Court in, *In re Adoption of N.J.A.C. 7:26B*, 128 N.J. 442 (1992), addressed the ISRA onsite/offsite issue and concluded, "Hazardous wastes that ooze off site are as much a threat to the environment as wastes that remain on site. We conclude that ECRA's [ISRA's] definitions of "cleanup plan" and "negative declaration" are sufficiently broad to extend ECRA's [ISRA's] reach to wastes discharged on site that have migrated off site."

215. The Supreme Court further stated, "The requirement that owners or operators must clean up wastes that have spread off site is consistent with the legislative goal of protecting against the danger of those risks."

216. The concept that remediation includes onsite and offsite cleanup has been incorporated into the fabric of New Jersey environmental laws and regulations:

(1) The ISRA definition of "remedial action" includes the concept of offsite remediation, N.J.S.A. 13:1k-8.

(2) The Site Remediation Reform Act definition of "remedial action" includes the concept of offsite remediation, N.J.S.A. 58:10C-2.

(3) The Brownfields and Contaminated Site Remediation Act definition of "remedial action" includes the concept of offsite remediation, N.J.S.A. 58:10B-1.

(4) The Spill Compensation and Control Act definition of "remedial action" includes the concept of offsite remediation, N.J.S.A. 58:10-23.11b.

(5) The Technical Requirements for Site Remediation regulations include the concept of offsite remediation, N.J.A.C. 7:26E-3.9(a)1 [Site investigation - determination of off-site source of contamination in soil and ground water].

217. When posting an RFS, the responsible party must post the amount necessary to complete the remedial action, which includes onsite and offsite costs. N.J.A.C. 7:26C-5.3.

218. An RFS is posted as a financial backstop to cover the cost of remediation. In the event Defendants fails to complete the work, a pollution impacted municipality, like Carneys Point, can access the funds to complete the work with NJDEP approval. N.J.A.C. 7:26C-5.13(d).

219. The Defendants do not fit any of the exemptions set forth in the ARCCS rules, N.J.A.C. 7:26C-1.4.

220. The Plaintiffs have not adopted emergency regulations to override the definition of "remedial action" to exclude offsite remediation.

221. The APA sets forth the procedures for adopting, amending, and repealing regulations, which involves due process by way of public notice and an opportunity for public comment. The Plaintiffs have not undertaken any action to amend or repeal the definition of "remedial action." As such, the definition is in effect and applicable to all regulated entities, including Defendants.

222. The Plaintiffs and Defendants are not posting an RFS for the remediation of offsite pollution. They are only installing filtration systems on certain residential dwellings, which is not a remediation solution to PFAS contaminated groundwater.

223. The Plaintiffs do not have authority to ignore or selectively enforce the definition of "remedial action" to exclude the requirement to post the cost of offsite remediation as part of the RFS.

224. 28 U.S.C. § 2201(a) provides that, "In a case of actual controversy within its jurisdiction, except [certain matters not applicable here], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

225. For the reasons set forth herein, Carneys Point has a legal right to compel Plaintiffs and Defendants to post an RFS that includes the cost of offsite remediation.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Plaintiffs and Defendants:

A. That, pursuant to 28 U.S.C. § 2201(a), this Court declare that the Plaintiffs and Defendants must post the RFS in this matter to include the cost of offsite remediation.

B. Provide any other relief the court deems prudent and reasonable.

**COUNT 20**
**RFS must include cost of offsite remediation**
**State Declaratory Judgment Act**
**N.J.S.A. 2A:16-53**
**Plaintiffs and Defendants**

226. Intervenor repeats all prior allegations as if set forth herein at length.

227. The New Jersey Declaratory Judgment Act, N.J.S.A. 2A:16-53 provides that a person "whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

228. For the reasons set forth in Count 19, Carneys Point has a legal right to compel Plaintiffs and Defendants to post the RFS in this matter to include the cost of offsite remediation.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Plaintiffs and Defendants:

A. That, pursuant to N.J.S.A. 2A:16-53, this Court declare that the Plaintiffs and Defendants must post the RFS in this matter to include the cost of offsite remediation.

B. Provide any other relief the court deems prudent and reasonable.

**COUNT 21**
**RFS must include cost of offsite remediation**
**Environmental Rights Act**
**N.J.S.A. 2A:35A-1 et seq.**
**Plaintiffs and Defendants**

229. Intervenor repeats all prior allegations as if set forth herein at length.

230. The ERA provides that "any person may commence a civil action in any court of competent jurisdiction for declaratory and equitable relief against any other person for the protection of the environment, or the interest of the public therein, from pollution, impairment or destruction." N.J.S.A. 2A:35A-4(b). This includes impairment to "natural resources of the state." N.J.S.A. 2A:35A-3.

231. Not requiring the Defendants to post the cost of offsite remediation as part of the RFS in this matter as required by law and regulation "impairs the

environment" in that cash will not be available to the state or Carneys Point as a pollution-impacted municipality to complete offsite remediation in the event Defendants fail to do so.

232. When seeking equitable relief pursuant to paragraph 4(b) of the ERA, as in this instance, the court can impose such conditions "as may be necessary to protect the environment, or the interest of the public therein, from pollution, impairment, or destruction." N.J.S.A. 2A:35A-6. Those conditions may include imposing "a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare." N.J.S.A. 2A:35A-7.

233. Compelling Plaintiffs and Defendants to comply with applicable RFS statutes and regulations to post the cost of offsite remediation as part of the RFS is a feasible and prudent alternative to non-compliance.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Plaintiffs and Defendants:

A. That, pursuant to N.J.S.A. 2A:16-53, this Court declare that the Plaintiffs and Defendants must post the RFS in this matter to include the cost of offsite remediation.

B. Provide any other relief the court deems prudent and reasonable.

**COUNT 22**
**RFS must include cost of offsite remediation**
**Writ of Mandamus**
**Plaintiffs**

234. Intervenor repeats all prior allegations as if set forth herein at length.

235. The New Jersey Supreme Court in *Switz v. Middletown Tp*., 23 N.J. 580, 588-89 (1957) described mandamus as follows: "It is a coercive process that commands the performance of a ministerial act or duty, or commands the exercise of a discretionary function, but does not seek to interfere with or control the mode and manner of its exercise or to influence or direct a particular result. Mandamus lies to compel but not control the exercise of discretion."

236. The Supreme Court in *Switz* further described the difference between a ministerial act and discretionary act as follows: A Writ of mandamus can be used "to compel the performance, in a specified manner, of ministerial duties so plain in point of law and so clear in matter of fact that no element of discretion is left as to the precise mode of their performance, but as to all acts or duties depending upon a jurisdiction to decide questions of law or to ascertain matters of fact, on the part of the officer or body at whose hands the performance is required, mandamus will not lie." Id.

237. The Plaintiffs obligation to require Defendants to post the cost of offsite remediation as part of the RFS is clear, and requires no finding of fact, interpretation of law, or application of administrative discretion to understand the

intent of law that only a cash Remediation Trust Fund required in this matter must include the cost of offsite remediation as well as the cost of onsite remediation.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Plaintiffs:

A. That, pursuant to a Writ of Mandamus regarding the interpretation of "remedial action" in New Jersey statutes and regulations, this Court declare that the Plaintiffs must compel Defendants to post the RFS in this matter to include the cost of offsite remediation.

B. Provide any other relief the court deems prudent and reasonable.

**<u>COUNT 23</u>**
**Lost Property Taxes**
**Defendants**

238. Intervenor repeats all prior allegations as if set forth herein at length.

239. NJ.S.A. 58:10-23.11g.a.(4) provides, "The fund shall be strictly liable, without regard to fault, for all cleanup and removal costs and for all direct and indirect damages no matter by whom sustained, including but not limited to: (4) Loss of tax revenue by the State or *local governments* for a period of one year due to damage to real or personal property proximately resulting from a discharge.

240. N.J.A.C. 7:1J-1.4 defines "damages" as, "all cleanup and removal costs and all direct and indirect damages actually incurred, no matter by

whom sustained, arising in connection with a discharge of a hazardous substance, or in connection with a threatened discharge, which costs and damages include, but are not limited to, the following: 4. Loss of tax revenue by a state or local government for a period not to exceed one year, due to damage to real or personal property proximately resulting from a discharge (which one-year period, in the case of lost real property tax revenue, commences on the effective date of the first reduction in the assessed value of real property for damage proximately resulting from the discharge).

241. Carneys Point suffered a loss in property taxes as a result of the Defendants discharge of hazardous substances at and emanating from the Chambers Works site.

242. The loss of property taxes was actually incurred by the Township.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against Defendants:

A. That, pursuant to NJ.S.A. 58:10-23.11g.a.(4) and N.J.A.C. 7:1J-1.4, the Defendants, individually and collectively, pay Carneys Point Township the one-year loss of property taxes resulting from the discharge of hazardous substances at and emanating from the Chambers Works site for each property in the Township impacted or stigmatized by the

discharge of hazardous substances at and emanating from the Chambers Works site.

B. Provide any other relief the court deems prudent and reasonable.

**COUNT 24**
**Pollution Tax Assessment**
**N.J.S.A. 58:10B-3.2**
**Federal Declaratory Judgment Act**
**28 U.S.C. § 2201(a)**
**The Chemours Company, FC**

243. Intervenor repeats all prior allegations as if set forth herein at length.

244. N.J.S.A. 58:10B-3.2 [Annual Pollution Surcharge] provides as follows:

a. Except as provided in subsection b. of this section, whenever an industrial property that is subject to any federal or State court order, or administrative action or order, for environmental remediation becomes vacant or underutilized, the municipality in which the property is located may assess an annual charge to ensure the prompt remediation of the property. The charge shall not exceed the difference between the amount of property taxes paid on the property in the last year of full industrial operation and the amount of property taxes paid on the property for the current year. Unpaid charges shall constitute a lien on the property and shall be collected in the same manner as property taxes. The municipality shall deposit any funds collected pursuant to this section with the Commissioner of Environmental Protection, who shall credit the amounts deposited against the property owner's environmental remediation liability pursuant to law.

b. The provisions of this section shall not apply to any property for which a remediation trust fund has been established pursuant to the provisions of section 25 of P.L. 1993, c.139 (C.58:10B-3).

245. The Chambers Works site is an industrial property.

246. In 1988, the EPA issued the Chambers Works site a Hazardous and Solid Waste Amendment ("HSWA") of its 1984 RCRA permit (No. NJD002385730).

247. On March 25, 2019, NJDEP issued the Defendants an administrative Directive to remediate PFAS discharges.

248. The Chambers Works site is underutilized and in need of redevelopment.

249. The Chambers Work site does not have an RFS established for onsite and offsite remediation.

250. 28 U.S.C. § 2201(a) provides that, "In a case of actual controversy within its jurisdiction, except [certain matters not applicable here], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

251. For the reasons set forth herein, Carneys Point is an interested party regarding this matter and is entitled to have this court declare the following:

(1) Carneys Point is entitled to annually charge Chemours Company, FC the differential tax amount provided in N.J.S.A. 58:10B-3.2.

(2) Carneys Point is entitled to lien the Chambers Work site for unpaid taxes assessed pursuant to N.J.S.A. 58:10B-3.2.

(3) Carneys Point shall deposit the annual charge collected in a cash Remediation Trust Fund as a credit to the obligation of the Defendants to establish an RFS.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against The Chemours Company, FC:

A. That, pursuant to 28 U.S.C. § 2201(a), this Court declares that (a) Carneys Point is entitled to annually charge The Chemours Company, FC the differential tax amount provided in N.J.S.A. 58:10B-3.2; (b) Carneys Point is entitled to lien the Chambers Work site for unpaid taxes assessed pursuant to N.J.S.A. 58:10B-3.2; and (c) Carneys Point shall deposit the annual charge collected in a cash Remediation Trust Fund as a credit to the obligation of the Defendants to establish an RFS.

B. Provide any other relief the court deems prudent and reasonable.

**COUNT 25**
**Pollution Tax Assessment**
**N.J.S.A. 58:10B-3.2**
**State Declaratory Judgment Act**
**N.J.S.A. 2A:16-53**
**The Chemours Company, FC**

252. Intervenor repeats all prior allegations as if set forth herein at length.

253. The New Jersey Declaratory Judgment Act, N.J.S.A. 2A:16-53 provides that a person "whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

254. For the reasons set forth in Count 24, Carneys Point is entitled to assess an annual tax as permitted by N.J.S.A. 58:10B-3.2.

**WHEREFORE**, for the foregoing reasons, Carneys Point Township demands the following relief against the Department and The Chemours Company, FC:

A. That, pursuant to N.J.S.A. 2A:16-53, this Court declares that (a) Carneys Point is entitled to annually charge The Chemours Company, FC the differential tax amount provided in N.J.S.A. 58:10B-3.2; (b) Carneys Point is entitled to lien the Chambers Work site for unpaid taxes assessed pursuant to N.J.S.A. 58:10B-3.2; and (c) Carneys Point shall deposit the annual charge collected in a cash Remediation Trust Fund as a credit to the obligation of the Defendants to establish an RFS.

B. Provide any other relief the court deems prudent and reasonable.

**MEYNER AND LANDIS LLP**

*Attorneys for Intervenor, Carneys Point Township*

Dated: June 21, 2024

By: **/s/ Albert I. Telsey**
Albert I. Telsey (*ID#016961985*)
atelsey@meyner.com
One Gateway Center, Suite 2500
Newark, New Jersey 07102
P: 973.602.3439
F: 973.624.0356