**MEYNER AND LANDIS LLP**
Albert Telsey, Esq.
One Gateway Center, Suite 2500
Newark, New Jersey 07102
Telephone: (973) 602-3439
Facsimile: (973) 624-0356
atelsey@meyner.com
*Attorneys for Intervenor, Carneys Point Township*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; et al.,<br>*Plaintiffs*,<br><br>v.<br><br>E.I. DU PONT DE NEMOURS AND COMPANY; et al.<br>*Defendants*,<br><br>and<br><br>CARNEYS POINT TOWNSHIP,<br>*[Proposed] Intervenor*. | Civil Action Nos.<br>1:19-cv-14766<br>.<br><br>Hon. Renée Marie Bumb, Chief U.S.D.J.<br>James B. Clark, III, U.S.M.J. |

**BRIEF IN SUPPORT OF CARNEYS POINT TOWNSHIP'S MOTION TO INTERVENE**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** .......... i

**TABLE OF AUTHORITIES** .......... ii

**SUMMARY** .......... **Error! Bookmark not defined.**

**LEGAL ARGUMENTS** .......... 14

THE TOWNSHIP IS ENTITLED TO INTERVENE TO FILE COUNTERCLAIMS .......... 14

A. The Township Is Entitled to Intervention As Of Right .......... 14

B. Permissive Intervention Should Be Granted .......... 49

**CONCLUSION** .......... 51

# TABLE OF AUTHORITIES

## CASES

*Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assoc.*, 844 F.2d 1050 (3d Cir. 1988) .......... 23

*Brody v. Spang*, 957 F.2d 1108 (3d Cir. 1992) .......... 18,19,20

*Burford v. Sun Oil Co.*, 319U.S. 315 (1943) .......... 21,22

*Colorado River Water Conservation Dist.v. U. S.*, 424 U.S. 800, 817 (1976) .......... 21

*Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39 (1st Cir. 1992) .......... 20

*Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156 (3d Cir. 1995) .......... 14,

*Donaldson v. United States*, 400 U.S. 517 (1971) .......... 25

*Harris v. Pernsley*, 820 F.2d 592 (3d Cir. 1987) .......... 15

*Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1982) .......... 27

*Hoots v. Pennsylvania*, 672 F.2d 1133 (3d Cir. 1982) .......... 20

*Howell Tp. v. Waste Disposal, Inc.*, 207 N.J. Super. 80, 96 (App. Div. 1986) 22,23

*In re Adoption of N.J.A.C. 7:26B*, 128 N.J. 442 (1992) .......... 8,43

*In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997) .......... 26

*In re Fine Paper Antitrust Litig.*, 695 F.2d 494 (3d Cir. 1982) .......... 15

*In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) .......... 25

*In Re New Jersey Department of Environmental Protection, Direct Oversight Determination Against Solvay Specialty Polymers USA, LLC*, 2023 WL 125229 (January 9, 2023) .......... 42,43

*Kleissler v. United States Forest Serv.*, 157 F.3d 964 (3d Cir. 1998) .......... 14,18

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361 (3d Cir. 1995) .......... 14,15,16,18

*NAACP v. New York*, 413 U.S. 345 (1973) .......... 22, 23

*New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) .......... 22

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994) .......... 15

*Pennsylvania v. Rizzo*, 530 F.2d 501 (3d Cir. 1976) .......... 15

*Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319, 322-23 (3d Cir. 1998) .......... 26

*Suarez v. Camden County Bd. Of Chosen Freeholders*, 790 2F. Supp 269 (NJ Dist. Ct. 1997) .......... 26

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) .......... 20

*United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174 (3d Cir. 1994) .......... 23

**STATUTES**

28 U.S.C. §§1330-69 .......... 26

28 U.S.C. §1367 .......... 26

42 U.S.C. 103 .......... 9,34

N.J.S.A. 2A:35A-1 et seq. .......... 1

N.J.S.A. 2A:35A-9 .......... 21

N.J.S.A. 2A:35A-10(b) .......... 22,27

N.J.S.A. 2A:58-11f .......... 27

N.J.S.A. 13:1k-8 .......... 44

N.J.S.A. 58:10-23.11b .......... 44

N.J.S.A. 58:10-23.11u(b)(2) .......... 42

N.J.S.A. 58:10B-1 .......... 44

N.J.S.A. 58:10B-3.2 .......... 12

N.J.S.A. 58:10C-2 .......... 44

N.J.S.A. 13:1D-157 .......... 8,38

N.J.S.A. 13:1E-49 .......... 28,37

N.J.S.A. 13:1K-6 .......... 1

N.J.S.A. 52:13D-12 .......... 30

N.J.S.A. 58:10-23.11g.a.(4) .......... 11,47

N.J.S.A. 58:10B-3.2 .......... 47,48

N.J.S.A. 58:10B-17.1b(1) .......... 19

N.J.S.A. 58:10C-27 .......... 8,9,33,34,40

U.S. Const. Art. III, § 2 .......... 26

NJ Const. Article VIII, Section II, paragraph 9 eff. Dec. 7, 2017 .......... 28

**REGULATIONS**

40 C.F.R. §300.430(f)(3)(D) .......... 9,34

N.J.A.C. 7:1B-1.1, -1.2 .......... 41

N.J.A.C. 7:1B-2.1(b) .......... 41

N.J.A.C. 7:26B-3.2 .......... 37

N.J.A.C. 7:26C-1.3 .......... 11, 30

N.J.A.C. 7:26C-1.4 .......... 41,45

N.J.A.C. 7:26C-5.2(k) .......... 10,40,41,42

N.J.A.C. 7:26C-5.3 .......... 44

N.J.A.C. 7:26C-5.4 .......... 40,42

N.J.A.C. 7:26C-5.5 .......... 40

N.J.A.C. 7:26C-5.13(d) .......... 10,43,45

N.J.A.C. 7:26C-14.2(b)3 .......... 33

N.J.A.C. 7:26E-1.8 .......... 11

N.J.A.C. 7:26E-3.9(a)1 .......... 44

**OTHER AUTHORITIES**

7C Wright, Miller & Kane, Fed. Practice & Procedure (2d ed. 1986) .......... 18

2011 NJR 267318 proposal August 15, 2011 .......... 40

Fed. R. Civ. P. 24(a) .......... 14

Fed. R. Civ. P. 24(b) .......... 49

## SUMMARY

Intervenor, Township of Carneys Point ("Carneys Point" or "Township") seeks intervention as of right, and by permission, to file a counterclaim against Plaintiffs and Defendants in this matter asserting the following five claims and 25-counts:

1. Jurisdiction/Collateral Estoppel/Abstention

   Plaintiffs are collaterally estopped from relitigating the duplicative ISRA deed transfer/penalty claim because the claim was already litigated to finality in state court, this court does not have jurisdiction over the claim, and this court must abstain from exercising supplemental jurisdiction over the resolved claim.

   Count 1 – ERA collateral estoppel
   Count 2 – Common law collateral estoppel
   Count 3 – Lack of jurisdiction
   Count 4 – *Burford* Abstention
   Count 5 – *Colorado River* Abstention
   Count 6 – Permissive Abstention

In December 2016, Carneys Point filed a claim against E. I. DuPont de Nemours and Company ("DuPont") pursuant to the Environmental Rights Act, N.J.S.A. 2A:35A-1 et seq. ("ERA") seeking compliance and penalties for DuPont transferring the Chambers Works deed to the Chemours Company subsidiary, The Chemours Company, FC (together "Chemours"), without posting a $1 Billion+ remediation funding source ("RFS") in violation of the Industrial Site Recovery

Act, N.J.S.A. 13: 1K- 6 et seq. ("ISRA"). *Carneys Point v DuPont (2016).*[1] The Township's complaint also included claims for other environmental violations. (Certification of Albert I. Telsey, Esq., paragraph 1, Exhibit 1 ("Telsey Cert. ¶1 Ex1")).

In January 2017, DuPont and Chemours removed the Township's complaint to Federal District Court. (Telsey Cert. ¶2.) In July 2017, Judge Noel L. Hillman ruled, as part of the Township's remand motion, that the Federal Court did not have subject matter jurisdiction, and even if it did, the ISRA claim should be litigated in state court pursuant to the *Burford* abstention doctrine and the *Colorado River* abstention doctrine because the ISRA claims involve uniquely state law issues. The Township's complaint was remanded and litigated in state court. (Telsey Cert. ¶3 Ex2.)

Also, in 2017, Carneys Point reached out to the New Jersey Department of Environmental Protection ("NJDEP") regarding the ISRA violations at Chambers Works. The Department did not respond to the Township. (Telsey Cert. ¶4.)

In March 2017, the Township submitted a petition to NJDEP signed by over 1,000 residents demanding to participate in the remediation process in accordance with Department regulations. (Telsey Cert. ¶5 Ex3.) In May 2017, the Department set up a meeting, provided some information, and told the

[1] *Carneys Point v. DuPont, Telford, and Chemours*, Salem County Docket No. SLM-L-251-16.

Township and its representatives to write letters if the Township wanted more information but it could not otherwise participate. (Telsey Cert. ¶¶5-6.)

In 2018, the Township found out the Department was trying to settle the RFS with DuPont and Chemours for $51 Million. The Department never told the Township about these negotiations. The Township objected and told the Department to stop because the RFS was $1 Billion+ and $51 Million did not protect its residents. The Department did not stop its efforts trying to settle the RFS for $51 Million despite the Township's objections. (Telsey Cert. ¶¶7-8.)

The Township then sued the Department in 2018 to make them stop moving forward with an untenable negotiated RFS settlement without the Township's input. *Carneys Point v NJDEP (2018)*. (Telsey Cert. ¶9 Ex4.) The Department appeared and told the court it did not intend to sue DuPont for its ISRA violations. In a May 2018 Certification of NJDEP Assistant Director Kevin Kratina, he stated, "Rather than fight about legal requirements, in particular whether ISRA was triggered, in 2017 DEP met with DuPont and Chemours on a number of occasions." (Telsey Cert. ¶10 Ex5.)

NJDEP and the Township agreed to mediate the RFS issue with the Defendants. That mediation effort extended for many years through several mediators. (Telsey Cert. ¶11 Ex6.)

After considerable discovery was taken in 2017-2018, the Township filed a motion for summary judgment in state court in 2018 to have the court find DuPont in violation of ISRA by transferring the Chambers Work deed to Chemours without posting a $1 Billion+ RFS.

On February 13, 2019, the Township won that motion after a year of hard-fought briefing and hearings. Judge Anne McDonnell ruled that the January 2015 Chambers Works deed transfer "triggered the requirement for DuPont to comply with [ISRA] at Chambers Works and surrounding impacted areas." (Telsey Cert. ¶¶12-14 Ex7.)

A month after that state court decision, in March 2019 (later amended), Plaintiffs in this matter filed a duplicate ISRA claim that DuPont transferred the Chambers Works deed to Chemours without posting an RFS. [Document 57 – Amended Complaint, Third Count]. The Third Count also alleged ISRA violations for the July 2015 DuPont/Chemours asset/stock transfer and a subsequent lease ISRA trigger. Plaintiffs also confirmed the Township's calculation that the RFS for Chambers Works was about $1 Billion, not $51 Million. [Document 207 – January 2022 Motion for Injunction to post $943M filed in 2:19-cv-14758 consolidated].

For reasons discussed herein, the Plaintiffs are collaterally estopped from relitigating the deed transfer ISRA claim in this matter because Judge Hillman

remanded the claim to state court in 2017 as a state law matter; the 2019 state court summary judgment decision is dispositive of the claim; the state court ruling is entitled to full faith and credit; and this court is precluded from assuming jurisdiction of the claim under its original or supplemental jurisdiction since it is no longer a justiciable claim having been decided over five years ago.

2. Natural Resource Damages ("NRD") Restoration Project Participation

> Carneys Point is entitled by the New Jersey State Constitution and applicable law as a "first priority" pollution impacted municipality to participate in this matter to identify reasonable NRD restoration projects and their attendant costs for the site and the surrounding impacted community
>
> Count 7 – Federal Declaratory Judgment Act
> Count 8 – State Declaratory Judgment Act
> Count 9 – ERA
> Count 10 – Writ of Mandamus

The primary focus of the Plaintiffs' complaint in this matter is to compel Defendants to repair, restore, or replace NRD caused by the Chambers Works facility, both onsite and offsite.

Carneys Point is working with the TBLS Group to prepare NRD restoration projects. TBLS are NRD experts who assisted NJDEP design the Department's NRD injury and project valuation methodology. (Telsey Cert. ¶17.)

Carneys Point, with the assistance of the Carneys Point Industrial Commission for Economic Development, the TBLS Group, and other

professionals, has already identified NRD restoration projects at and adjacent to the Chambers Works site and has shared proposed NRD restoration projects with the NRD mediator and parties in this matter. Those projects include wetland restoration projects, flood control projects, drinking water projects, infrastructure upgrades, and other projects. (Telsey Cert. ¶16, Ex14.)

Carneys Point Township is designating the Chambers Works site as an area in need of redevelopment with the power to control and own the site through condemnation. This ability to assume ownership of the site heightens the Township's already strong constitutional entitlement to participate in the NRD restoration process. (Telsey Cert. ¶15 Ex8.)

Carneys Point is a necessary party to the NRD claims in this matter, and is entitled to present to the court and the parties reasonable NRD restoration projects, and their attendant costs, to be constructed at and adjacent to the Chambers Works site, because (i) the 2017 amendment to the New Jersey Constitution gives a pollution impacted municipality, like Carneys Point, "first-priority" to identify reasonable NRD restoration projects for its community (Article VIII, Section II, para. 9, eff. December 7, 2017), (ii) the March 2023 NJDEP NRD Administrative Order promotes the Constitutional prioritization and preference for NRD restoration projects at the site of the pollution injury (NJDEP Administrative Order 2023-08), and (iii) the Department has already begun

enforcing this nexus-to-injury preference for NRD restoration projects in its 2023 NJDEP Ciba-Geigy NRD settlement, which was executed shortly after issuance of the March 2023 NRD Administrative Order. (Telsey Cert. ¶18 Ex9.)

3. Feasibility study, Public Hearing and Public Participation regarding Remediation

Carneys Point is entitled by law to participate in the remediation of the Chambers Works site by way of a mandatory feasibility study, a public hearing regarding that study, and the Township's right to prepare a Public Participation Plan for the remediation of the site and the surrounding impacted community because DuPont and Chemours are unreliable remediating parties subject to NJDEP direct oversight.

Count 11 – Federal Declaratory Judgment Act
Count 12 – State Declaratory Judgment Act
Count 13 – ERA
Count 14 – Writ of Mandamus

Carneys Point is (i) polluted with over 100 million pounds of hazardous waste discharged over a 100-year operational history at Chambers Works; (ii) host to one of the world's largest hazardous wastewater treatment plants located at the Chambers Works site; (iii) host to a hazardous waste landfill located at the site; (iv) host to nuclear waste dumps located at the site (originating from the WWII Manhattan project); (v) subject to flooding from the adjacent Delaware River as a result of global warming; and (vi) located only a few miles away from the Salem nuclear generating facility, which is home to decades of spent nuclear waste rods that have been stored there for decades. (Telsey Cert. ¶19.)

This exposure to hazardous risk is on top of the $1B unfunded remediation projected needed to be performed at Chambers Works, not including PFAS that has impacted residential drinking water wells throughout the entire Township. (Telsey Cert. ¶20.)

All of this actual pollution exposure, and risk of further exposure, harms the health, safety, and welfare of Carneys Point Township and its residents, and makes Carneys Point a New Jersey "overburdened community" entitled to the rights and protections afforded by the New Jersey Environmental Justice Law, N.J.S.A. 13:1D-157. (Telsey Cert. ¶21.)

The Site Remediation Reform Act, N.J.S.A. 58:10C-27 ("SRRA") recognizes that a party that fails to meet statutory and regulatory remediation deadlines and/or pollutes large areas of its community is unreliable and must be placed under NJDEP direct oversight. DuPont and Chemours are under direct oversight for missing remediation deadlines and polluting a large area of Carneys Point Township with PFAS.

Direct oversight affords a pollution impacted municipality with rights of precipitation in the remediation process because the municipality and its residents are in actual and threatened harm's way from the discharges of the unreliable remediating party.

In particular, the SRRA requires DuPont and Chemours to prepare a feasibility study in accordance with the Comprehensive Environmental Response, Compensation and Liability Act 42 U.S.C. 103 ("CERCLA") that addresses the various options for the remediation of on-site and off-site pollution originating from the Chambers Works site. N.J.S.A. 58:10C-27c(2), N.J.A.C. 7:26C-14.2(b)3. This includes scheduling a public hearing after preparation of the feasibility study is completed so that impacted residents understand what the remediation plan of action is and can ask questions. 40 C.F.R. §300.430(f)(3)(D). This feasibility study had to be done years ago and has not been done. There has also been no public hearing regarding it. (Telsey Cert. ¶22.)

Once the remediation plan is in the hands of the public, the SRRA entitles Carneys Point Township to propose a Public Participation Plan to DuPont, Chemours and NJDEP that meets the needs of the Township and its residents. N.J.S.A. 58:10C-27c(7). There has been no Public Participation Plan provided to Carneys Point Township and every Public Participation Plan presented by Carneys Point Township to DuPont and Chemours over the years has been rejected and left unsigned. (Telsey Cert. ¶23.)

For the reasons discussed herein, these issues trigger the Township's right to intervene and participate because the Township is a necessary party regarding

the feasibility study, the public hearing associated with it, and the preparation of the Public Participation Plan that will follow the public hearing.

4. Form and Content of RFS

> DuPont and Chemours are required by law to post the RFS as a cash Remediation Trust Fund and the RFS must include the cost to remediate on-site *and off-site* pollution
>
> Count 15 – Fed. Dec. Judgment Act – Cash Remediation Trust Fund
> Count 16 – State Dec. Judgment Act – Cash Remediation Trust Fund
> Count 17 – ERA – Cash Remediation Trust Fund
> Count 18 – Writ of Mandamus – Cash Remediation Trust Fund
> Count 19 – Fed. Dec. Judgment Act – Offsite costs included
> Count 20 – State Dec. Judgment Act – Offsite costs included
> Count 21 – ERA – Offsite costs included
> Count 22 – Writ of Mandamus – Offsite costs included

DuPont and Chemours are unreliable remediation parties subject to NJDEP direct oversight. As such the SRRA and its regulations require them to post the RFS as a cash Remediation Trust Fund because cash is the most accessible form of financial assurance, N.J.A.C. 7:26C-5.2(k), and because the Township is entitled to access the RFS by petition to the Department in the event DuPont and/or Chemours fail to remediate. N.J.A.C. 7:26C-5.13(d). The RFS for a direct oversight party cannot be posted as a non-cash line of credit, letter of credit, surety, insurance product, or self-guarantee.

The Plaintiffs have permitted Solvay, a large chemical company in West Deptford, subject to direct oversight, to post non-cash financial assurances in

violation of the SRRA, and to post a cash RFS as a discretionary cash escrow, which does not comport with the requirements of a cash Remediation Trust Fund. (Telsey Cert. ¶24 Ex10.)

Plaintiffs intend to permit Defendants in this matter to also post the RFS for Chambers Works in a non-cash form and, if a component of the RFS is cash, to permit Defendants to post the cash component as a discretionary cash escrow instead of a cash Remediation Trust Fund. (Telsey Cert. ¶25).

The Plaintiffs in this matter have also excluded the cost of remediating off-site contamination from being included for the Chambers Works site RFS in violation of applicable law that requires the RFS to cover the cost of onsite *and offsite* remediation. (Telsey Cert. ¶26).

5. Property Tax Recovery and Pollution Tax Assessment

Carneys Point is permitted by law to recover lost property taxes due to the Chambers Works pollution and to assess a pollution tax because of that pollution.

Count 23 – Spill Act – Lost Property Taxes Claim
Count 24 – Fed. Dec. Judgment Act – Pollution Tax Assessment
Count 25 – State Dec. Judgment Act – Pollution Tax Assessment

The Spill Compensation and Control Act, NJ.S.A. 58:10-23.11g.a.(4) ("Spill Act") permits Carneys Point Township to recover one year of its lost property taxes due to the diminution in value of Township property caused by the pollution at and emanating from Chambers Works. Plaintiffs initially included

this claim in their complaint but have since withdrawn it. Carneys Point is entitled to litigate the lost taxes damage claim.

The Brownfields and Contaminated Site Remediation Act, N.J.S.A. 58:10B-3.2 ("Brownfields Act") permits Carneys Point Township to assess an annual pollution tax against the current property owner, Chemours Company, FC, for the loss in taxes suffered as a result of the Chambers Works site becoming polluted and underutilized, which taxes must be applied to the remediation of the site and surrounding impacted areas. Carneys Point is entitled to declaratory judgment confirming its right to assess this pollution tax.

Carneys Point submits that Plaintiffs do not, and cannot, represent the Township's interests because Plaintiffs' conduct and actions are counterproductive to the Township and its residents.

First, Plaintiffs are unlawfully duplicating the ISRA deed transfer claim already litigated and won by the Township so that Plaintiffs can take the penalty money for that violation and use it for their own purposes. That would deprive the Township of those funds. The ERA entitles the Township to keep penalty funds for necessary remediation and restoration projects within its community. Plaintiffs unlawful usurpation of penalty funds harms the Township.

Second, Plaintiffs failed to solicit reasonable NRD restoration projects from Carneys Point and failed to consider the NRD restoration projects already

provided to the NRD mediator. These projects are beneficial to the Chambers Works site and the community. Carneys Point has a constitutional right to present these projects as a "first-priority" pollution impacted municipality and as a necessary party to this NRD lawsuit. Plaintiffs' dismissal of these projects harms the Township and its residents.

Third, despite receiving a petition signed by 1,000 residents, Plaintiffs have failed to compel Defendants to prepare a feasibility study or hold a public hearing regarding the proposed options for onsite and offsite remediation and have failed to consider any form of Public Participation Plan submitted by the Township.

Fourth, Plaintiffs are not requiring Defendants to post the RFS as a cash Remediation Trust Fund that includes the costs of onsite *and offsite* remediation, which leaves the Township and its residents without a proper and sufficient financial assurance.

Fifth, Plaintiffs dropped the claim to recover lost property taxes due to Chambers Work pollution. This abdication requires that the Township litigate the claim.

Sixth, the Township must be permitted to employ a statutory self-help pollution tax remedy because the Defendants have not posted any RFS for Chambers Works and Plaintiffs are not requiring that they post any RFS for the remediation of offsite PFAS pollution.

## LEGAL ARGUMENTS

## POINT ONE

## THE TOWNSHIP IS ENTITLED TO INTERVENE TO FILE COUNTERCLAIMS

### A. The Township in entitled to intervene as of right

Federal Rule of Civil Procedure 24(a) provides that upon timely application anyone shall be permitted to intervene in an action "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2).

An applicant must prove four elements, "first, a timely application for leave to intervene; second, a sufficient interest in the litigation; third, a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and fourth, inadequate representation of the prospective intervenor's interest by existing parties to the litigation." *Kleissler v. United States Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998); *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 365-66 (3d Cir. 1995); *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 161-62 (3d Cir. 1995).

These requirements are "intertwined," and, thus, "a very strong showing that one of the requirements is met may result in requiring a lesser showing of another requirement." *Harris v. Pernsley*, 820 F.2d 592, 596 & n.6 (3d Cir. 1987). As discussed herein, the Township meets the prerequisites for intervention as of right.

The Township will address the timeliness of this motion followed by the other three factors, which will be discussed together since they are intertwined.

*The Township's Application for Intervention Is Timely*

Legal framework. "The timeliness of a motion to intervene is 'determined from all the circumstances' . . ." *Mountain Top Condo. Ass'n,* 72 F.3d at 369 quoting, *In re Fine Paper Antitrust Litig*., 695 F.2d 494, 500 (3d Cir. 1982), in turn citing *NAACP v. New York*, 413 U.S. 345, 366 (1973). When deciding whether an applicant's motion is timely, courts consider three factors: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." Id. (citation omitted). *See also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 779-80 (3d Cir. 1994) (discussing prejudice factor in timeliness analysis); *Pennsylvania v. Rizzo*, 530 F.2d 501, 506 (3d Cir. 1976) (adopting tripartite balancing test as a "useful framework" for informing a district court's determination of whether an application for intervention is timely "under all the circumstances").

The Third Circuit has emphasized that the mere passage of time will not render an application untimely. *Mountain Top Condo*, 72 F.3d at 369 (finding application for intervention timely where four years had elapsed before applicant filed motion to intervene). Rather, "the critical inquiry is: what proceedings of substance on the merits have occurred?" *Id*.

As explained in *Mountain Top Condo*, "[t]his is because the stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved." Id. (further noting that intervention is, at times, allowed even after the entry of a judgment). *See also Alcan Aluminum*, 25 F.3d at 1181 ("As used here, timeliness is not just a function of counting days; it is determined by the totality of the circumstances.") (Citing NAACP, 413 U.S. at 366.)

Analysis

This application for intervention is filed timely and not prejudicial to the parties for the following reasons: (i) the Township filed a Motion to Intervene in November 2022, only to withdraw it when the state told Carneys Point it intended to mediate issues with the Township's participation, (Telsey Cert. ¶27), (ii) this matter was thereafter administratively dismissed in March 2023 for over a year pending mediation, (iii) Carneys Point participated in the NRD mediation by submitting materials to the mediator regarding the Township's proposed NRD

restoration projects, (Telsey Cert. ¶16), (iv) when the matter was reinstated after mediation failed, the Township wrote to the court on April 26, 2024 informing the court it intended to refile its Motion for Intervention [Document 286], (v) when the court issued its Case Management Order ("CMO") on May 13, 2024, the court acknowledged the Township's intention to refile its Motion for Intervention without objection by the parties [Document 297], (vi) none of the trial management milestones in the CMO have been reached because the matter has just been reinstated, (vii) Plaintiffs' just filed a Motion to file a Third Amended Complaint, which has not yet been approved by the court, (viii) the Defendants have not yet answered the Third Amended Complaint, (ix) discovery has yet to begin, and (x) the collateral estoppel issue regarding the ISRA deed transfer/penalty claim is a jurisdictional issue that can be raised at any time, Fed. R. Civ. P. 12.

For these reasons, this application is timely and not prejudicial to the parties.

*The Township must be permitted to intervene in this matter to avoid the impairment of its significant and protectible interests that are not being represented or protected by the existing parties*

Legal framework

Significant protectable interest. "To justify intervention as of right, the applicant must have an interest 'relating to the property or transaction which is

the subject of the action' that is 'significantly protectable.'" *Kleissler*, 157 F.3d at 969 (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971). The interest asserted "must be a cognizable legal interest and not simply an interest 'of a general and indefinite character.'" *Brody v. Spang*, 957 F.2d 1108, 1116 (3d Cir. 1992) (quoting *Harris*, 820 F.2d at 601). While this requisite interest has not been assigned a "precise and authoritative definition," *Mountain Top Condo*., 72 F.3d at 366, the Third Circuit has observed that circuit precedent reflects "adherence to the elasticity that Rule 24 contemplates." *Kleissler*, 157 F.3d at 970.

The *Kleissler* court noted that Rule 24, as currently promulgated, was intended to liberalize, and expand the class of appropriate intervenors. *See id.* (quoting 7C *Wright, Miller & Kane, Fed. Practice and Procedure*: Civil 2d § 1908: "The central purpose of the 1966 amendment was to allow intervention by those who might practically be disadvantaged by the disposition of the action and to repudiate the view, [under the former rule], that intervention must be limited to those who would be legally bound as a matter of res judicata. *7C Wright, Miller & Kane, Fed. Practice & Procedure* § 1916, at 425-26 (1986)." The court explicitly declined to endorse a narrow approach that would "minimize[ ] the flexibility and spirit" of Rule 24. *Id.* at 971.

Impairment of that interest. Under the third intervention factor, the intervenor must demonstrate that its "interest might become affected or impaired, as a practical matter, by the disposition of the action in [its] absence." *Mountain Top Condo.*, 72 F.3d at 368 (emphasis in original). "Incidental effects on legal interests are insufficient; 'rather, there must be a 'tangible threat' to the applicant's legal interest.'" *Alpha Hous. & Health Care*, 54 F.3d at 162 (quoting *Brody*, 957 F.2d at 1122-23, in turn quoting *Harris*, 820 F.32 at 601).

Consistent with the language of Rule 24, the Third Circuit has directed courts to assess "the practical consequences of the litigation" when analyzing the impairment factor. *Brody*, 957 F.2d at 1122 (quoting *Harris*, 820 F.2d at 601). Significantly, however, the Third Circuit has repeatedly held that "[a]n applicant need not . . . prove that he or she would be barred from bringing a later action or that intervention is the only possible avenue of relief." Id. at 1123; accord *Alpha Hous. & Health Care*, 54 F.3d at 162 (citing *Brody* for the proposition and reaffirming *Brody's* admonition that a contrary policy would undermine the circuit's policy preference for judicial economy) *Brody v. Spang*, 957 F.2d 1108, 1116 (3d Cir. 1992).

Inadequate representation. The fourth and final element to justify intervention of right is inadequate representation of the Township's interest by existing parties to the litigation. The burden of showing inadequate representation

is minimal. See, *Trbovich v. United Mine Workers of Am*., 404 U.S. 528, 538 n.10 (1972); *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 1982). "An intervenor need only show that representation may be inadequate, not that it is inadequate." *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992), cited in *Kleissler*, 157 F.3d at 974. Representation will be considered inadequate where, "although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests." *Brody*, 957 F.2d at 1123 (citing *Hoots*, 672 F.2d at 1135).

Analysis

Carneys Point seeks to file a counterclaim against Plaintiffs and Defendants to address the following five key issues that are germane to this litigation, unique to Carneys Point Township, and which cannot be handled by any of the existing parties, except the Township, for reasons discussed herein.

1. Jurisdiction and collateral estoppel – Duplicative ISRA deed transfer/penalty claim

In December 2016, Carneys Point filed an ERA action against DuPont, Chemours and Sheryl L Telford, the DuPont Remediation Director, for DuPont transferring the Chambers Works deed to Chemours in 2015 without posting a $1

Billion+ RFS in violation of ISRA, among other claims. *Carneys Point v DuPont (2016).* (Telsey Cert. Ex1).

The Township hired the TBLS Group, experts in RACER® software technology, to review 30 years of environmental documents pertaining to the Chambers Works site. Using RACER® software, they calculated that it would cost over $1 Billion to remediate the site. (Telsey Cert. ¶28).

The ERA permits a municipality, like Carneys Point, to file an ERA action without prior notice to NJDEP based on the municipality's inherent policy power to protect its residents from harm when NJDEP has failed to take action. N.J.S.A. 2A:35A-9. Here, NJDEP failed to take action against DuPont for the deed transfer ISRA violation, among other violations.

In January 2017, DuPont and Chemours removed *Carneys Point v DuPont (2016)* to federal court.[2] Judge Noel L. Hillman remanded *Carneys Point v DuPont (2016)* back to state court determining the federal court had no subject matter jurisdiction, and even if it did, he found that the *Burford* abstention doctrine and the *Colorado River* abstention doctrine made it more reasonable for the state court to resolve the ISRA matter because it was a state issue. (Telsey Cert. ¶3, Ex2).

---

[2] *Carney's Point Township v. E.I. DuPont De Nemours and Company, and Sheryl A. Telford,* Civil Action No. 1:17-cv-00264-NLH-JS.

Judge Hillman stated in his opinion on remand that "a strong argument could be made that, even if subject matter jurisdiction could be established in this case, the Court would nevertheless be compelled to abstain under *Burford* and remand the matter because ISRA is a complex regulatory environmental statute unique to New Jersey which presents substantial public importance, and in which the federal court should not become enmeshed. See *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (explaining that "*Burford* is concerned with protecting complex state administrative processes from undue federal interference")." (Telsey Cert. ¶3, Ex2).

Plaintiffs cannot claim that, as the state environmental agency, their authority to litigate the ISRA deed transfer liability and penalty claim supersedes Carneys Point's authority under the ERA to litigate the claim. The ERA provides that the state is precluded from duplicating the claim under the doctrine of collateral estoppel if a municipality litigates it to finality before the state acts. N.J.S.A. 2A:35A-10(b). [The doctrines of collateral estoppel and res judicata may be applied by the court to prevent multiplicity of suits."].

The court in *Howell Tp. v. Waste Disposal, Inc.*, 207 N.J. Super. 80, 96 (App. Div. 1986) stated that a municipality that proceeded ahead pursuant to the ERA because NJDEP failed to take action can preclude the state from later interfering with the municipal claim when, "DEP has failed in its mission,

neglected to take action essential to fulfill an obvious legislative purpose, or where it has not given adequate and fair consideration to local or individual interests. In other words where the state agency has failed or neglected to act in the best interest of the citizenry or has arbitrarily, capriciously, or unreasonably acted, then a court should permit interested persons to continue with enforcement under the Environmental Rights Act."

The court in *Howell* further stated, "In enacting the Environmental Rights Act the Legislature has recognized that the DEP may fail to act to correct a particular problem or not take proper and necessary action where conflicting interests appear. Further, in a given situation, DEP may seek less than full relief available under relevant legislation. In such a case, there is a clear right granted to other "persons" to seek such relief under the Environmental Rights Act. No court should enforce grudgingly that right simply because of supervisory difficulties which may be encountered." Id.

From 2015 to 2019, Plaintiffs neglected to take action against DuPont essential to fulfill an obvious legislative purpose under ISRA; failed to give adequate and fair consideration to Carneys Point's interests; and acted arbitrarily, capriciously, or unreasonably. For instance –

a. Plaintiffs failed to compel DuPont to enter into an Administrative Consent Order ("ACO") to comply with ISRA and post an RFS for the Chambers

Works site in 2015 even though the Department required DuPont to enter into an ACO to comply with ISRA and post an RFS for DuPont's Repauno, Parlin, and Pompton Lakes sites. (Telsey Cert. ¶29).

b. Plaintiffs failed to provide relief to the Township after the Township submitted a petition in March 2017 signed by over 1,000 residents seeking assistance and participation regarding the ISRA violations at Chambers Works. (Telsey Cert. ¶¶4-6).

c. Plaintiffs failed to compel DuPont to post an adequate RFS. The Department was actually negotiating a $51 Million RFS with DuPont and Chemours in 2017-2018 before the Township disrupted that effort. (Telsey Cert. ¶¶7-8).

d. The Township was forced to sue the Department in *Carneys Point v NJDEP (2018)* for interfering with the Township's ISRA and RFS claim. In that lawsuit, NJDEP informed the state court it did not intend to sue DuPont for ISRA violations, leaving the Township to do so. In a May 2018 Certification of NJDEP Assistant Director Kevin Kratina, Mr. Kratina stated, "Rather than fight about legal requirements, in particular whether ISRA was triggered, in 2017 DEP met with DuPont and Chemours on a number of occasions." Kratina went on to state NJDEP was not going to sue DuPont because he was hopeful DuPont and

Chemours would voluntarily agree to post an adequate RFS. (Telsey Cert. ¶¶9-10, Ex5).

After a year or more of protracted motion practice and millions of dollars spent by the Township, on February 13, 2019, Carneys Point won summary judgment against DuPont in state court for DuPont transferring the Chambers Works deed to Chemours without posting an RFS in violation of ISRA. (Telsey Cert. ¶¶12-14, Ex7).

On March 27, 2019, a month after Carneys Point won its summary judgment motion, Plaintiffs duplicated the same deed transfer ISRA claim in its complaint in this matter (Third Count) as if the claim had never been litigated to finality by the Township.

Plaintiffs are collaterally estopped from relitigating the ISRA deed transfer/penalty claim because (i) the issue is identical to the Township's state court claim, (ii) the issue was actually litigated to conclusion, and (iii) the state court issued a ruling granting summary judgment. Relitigating the deed transfer ISRA claim again in this matter will create the kind of disruption that claim preclusion, such as collateral estoppel, is intended to prevent. *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008).

This court must accept the state court's summary judgment ruling on the ISRA deed transfer violation as support for the Township's collateral estoppel

argument, *In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997) because that decision is due full faith and credit by this court. *Suarez v. Camden County Bd. Of Chosen Freeholders*, 790 2F. Supp 269 (NJ Dist. Ct. 1997).

Lack of original jurisdiction. Unless affirmatively demonstrated, a federal court is presumed to lack subject matter jurisdiction. *See*, *Ridge*, 150 F.3d at 323. This court does not have original jurisdiction over the ISRA deed transfer/penalty claim because, having already been litigated to conclusion, collateral estoppel prevents the claim from being a "justiciable case or controversy" in need of resolution by this court. 28 U.S.C. §§1330-69. U.S. Const. Art. III, § 2. *See also*, *Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319, 322-23 (3d Cir. 1998). Judge Hillman remanded the ISRA claim to state court in 2017, where it was resolved with finality.

Lack of supplemental jurisdiction. This court also cannot exercise supplemental jurisdiction to permit Plaintiffs to relitigate the ISRA deed transfer/penalty claim because, without original jurisdiction, this court cannot exercise supplemental jurisdiction. 28 U.S.C. §1367.

Law of the case reliance is not available. This court can also not rely on law of the case precedent to permit Plaintiffs to litigate the penalty portion of the ISRA deed transfer/penalty claim because this court did not make the summary judgment ruling on the ISRA deed transfer/penalty claim so law of the case

doctrine does not apply. *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1982).

Conflict of interest. In addition, even if this court had original jurisdiction, supplemental jurisdiction, or law of the case discretion over the ISRA deed transfer liability and penalty claim, which it does not, the Plaintiffs cannot represent the interests of Carneys Point Township on the penalty portion of the claim. Pursuant to the ERA, the Township is entitled to keep the penalties assessed by the court for that ISRA violation, subject to a plan for its use approved by the court, N.J.S.A. 2A:35A-10. The Township intends to use the penalty money for environmental and redevelopment purposes in Carneys Point Township consistent with the ERA. (Telsey Cert. ¶30). The Plaintiffs, however, must deposit penalties to the State Treasury. N.J.S.A. 2A:58-11f. Plaintiffs are therefore at cross purposes with the Township and cannot represent the interests of the Township.

Nullification of state court judgment is not available. The state also has no authority, as the state environmental agency, to unilaterally nullify or dismiss the state court judgment on the ISRA deed transfer/penalty claim as if it never occurred and to relitigate the claim in Federal Court. The state has made no effort to nullify or dismiss the state court judgment. (Telsey Cert. ¶30).

The Plaintiffs cannot represent the Township's interests because (i) this court has no jurisdiction over the ISRA deed transfer/penalty claim, (ii) the court is collaterally estopped, even if it did have jurisdiction, (iii) Plaintiffs failed to take action against Defendants for ISRA violations leaving the Township to do so, and (iv) Plaintiffs intention to divert penalty funds away from the Township is against the Township's interests.

For these reasons, Carneys Point has substantial and cognizable legal interests in this matter that will be impaired or affected, as a practical matter, if the Township is not permitted to intervene. Carneys Point is entitled to intervene and to file claims in its proposed counterclaim as follows:

Count 1 – ERA collateral estoppel
Count 2 – Common law collateral estoppel
Count 3 – Lack of jurisdiction
Count 4 – *Burford* Abstention
Count 5 – *Colorado River* Abstention
Count 6 – Permissive Abstention

2. NRD Restoration Projects

2017 Constitutional Amendment – "First priority." The 2017 amendment to the New Jersey Constitution significantly changed the dynamics of NRD litigation. (Article VIII, Section II, paragraph 9 eff. December 7, 2017). The NRD amendment made repair, restoration, and replacement of polluted natural resources, such as wetlands, the first priority issue in NRD litigation.

In particular, the amendment gave a pollution impacted municipality "first priority" to identify reasonable NRD restoration projects for its municipality. The Amendment states, "The first priority for the use of any moneys by the State to repair, restore, or replace damaged or lost natural resources of the State, or permanently protect the natural resources of the State, pursuant to this paragraph shall be in the immediate area in which the damage to the natural resources occurred in connection with the claim for which the moneys were recovered." In other words, the constitutional amendment promotes a nexus-to-injury preference for NRD restoration projects.

<u>2023 NJDEP NRD Administrative Order</u>. In March 2023, NJDEP published Administrative Order 2023-08 which stated that, "It is the policy of the Department to engage directly with the public whose natural resources the State holds in trust concerning the Department's identification, selection, planning, and implementation of restoration projects, and to provide information and seek input on restoration projects from communities affected by the relevant discharges(s) of hazardous substances, contaminants, or other pollutants." (Telsey Cert. ¶31, <u>Ex11</u>). The Administrative Order also stated that the Order is not "intended to diminish any existing legal rights or remedies of the Department or any third party," and that "Nothing in this Order shall be construed to supersede any federal, State, or local law." The Administrative Order acknowledges the

constitutional focus on nexus-to-injury NRD restoration projects, and a pollution impacted municipality's "first priority" to promote reasonable NRD restoration projects for its community.

2023 Ciba-Geigy NRD settlement. In 2023, NJDEP entered into an NRD settlement with Ciba-Geigy in Toms River that involved the implementation of reasonable NRD restoration projects at and surrounding the contaminated industrial site because it promoted the nexus-to-injury preference as set forth in the constitutional amendment and the NJDEP NRD Administrative Order. (Telsey Cert. ¶18, Ex9). In response to public comments regarding that settlement, NJDEP stated, "Per the New Jersey Constitution, natural resource damage recoveries shall be prioritized as close to the injury as possible. In the case of the Ciba-Geigy site, natural resource damage compensation will take place at the location of injury in accordance with the Constitutional mandate." (Telsey Cert. ¶33, Ex12).

Carneys Point has hired The TBLS Group, which includes NRD professionals who assisted the Department prepare their NRD valuation methodologies, to describe with particularity reasonable and necessary NRD restoration projects for the Chambers Works parcel and surrounding impacted neighborhoods. (Telsey Cert. ¶34). These include wetland upgrade projects, flood control projects, drinking water projects, and infrastructure improvement

projects, among others. (Telsey Cert. ¶35). These proposals were already shared with the NRD mediator.

Plaintiffs and Defendants in this matter are not preparing NRD restoration projects at all, let alone projects preferred by the community and, therefore, they cannot represent the Township's interests. In addition, and to the point, pursuant to the 2017 Constitutional Amendment, the Township's proposed NRD restoration projects are the ultimate focus of the state's NRD litigation in this matter.

In February 2024, the Township also launched an investigation to designate the Chambers Works site an area in need of redevelopment. (Telsey Cert. ¶15, Ex8). This plan will include the Township's ability to condemn the Chambers Works parcel and other Chemours parcels along the Salem River and Mannington Meadows. The plan may be adopted within the next several months. Once adopted, the redevelopment plan with condemnation will add even more resiliency to the Township's constitutional entitlement to participate in the selection of reasonable NRD restoration projects that are the focus of this litigation.

The Chambers Works site is over 1000 acres and is the largest site in the Township. The site includes hundreds of acres of polluted wetlands in need of repair, restoration, or replacement. The Township is currently developing NRD

restoration projects for these parcels. <u>Figure 1</u> below shows the redevelopment area in brown, which is all of the Chemours property.



For these reasons, Carneys Point is entitled to intervene and file claims in its proposed counterclaim against Plaintiffs and Defendants to assert its constitutional right to participate in the NRD restoration planning process that is the focus of this lawsuit. Those rights will be asserted as follows:

Count 7 – Federal Declaratory Judgment Act
Count 8 – State Declaratory Judgment Act
Count 9 – ERA
Count 10 – Writ of Mandamus

3. Public Hearing and Public Participation regarding remediation

The SRRA permits a community polluted by an unreliable remediating party, and subject to NJDEP direct oversight, to protect itself and its residents by providing the community with the right of active participation in the remediation process. N.J.S.A. 58:10C-27. This participation comes in two parts.

Part one is that the remediating party, in this case DuPont and Chemours, must prepare a feasibility study that addresses remedial options and remedy selection for on-site and off-site pollution within 90 days of being subject to compulsory direct oversight. N.J.S.A. 58:10C-27c(2), N.J.A.C. 7:26C-14.2(b)3. The Department requires that the feasibility study be prepared in accordance with the requirements of the Comprehensive Environmental Response, Compensation

and Liability Act 42 U.S.C. 103 ("CERCLA"),[3] which includes scheduling a public hearing so that impacted residents understand what the remedial plan of action will be and can ask questions about it. 40 C.F.R. §300.430(f)(3)(D).

For DuPont and Chemours, the feasibility study was due many years ago. It has not been prepared to this date, and NJDEP is not compelling them to prepare it or hold a public hearing thereafter. (Telsey Cert. ¶22). This is unacceptable.

The second part to public participation is the Public Participation Plan. After the feasibility study and public hearing are completed, and information about the remediation planning process is in the hands of the public, the SRRA entitles the pollution-impacted municipality, like Carneys Point Township, to propose a Public Participation Plan to DuPont, Chemours and NJDEP that meets the participation needs of the Township and its residents. N.J.S.A. 58:10C-27c(7).

The Department issued a 2023 Guidance Document about preparing a Public Participation Plan that focuses on the concerns of the pollution-impacted

[3] NJDEP Guidance Document "Earning Adjustments to the Direct Oversight Requirements Administrative Requirements for the Remediation of Contaminated Sites (ARRCS) N.J.S.A. 7:26C-14" 08/13/2019. This Guidance Document states, the responsible party shall "submit to the Department a feasibility study (conducted and prepared in accordance with the U.S. Environmental Protection Agency, "The Feasibility Study: Detailed Analysis of Remedial Action Alternatives," (March 1990) OSWER 9355.3-01FS4, NTIS: PB90-2726751NX)," prepared in accordance with the CERCLA requirements set forth at 40 C.F.R. §300.430.

municipality. (Telsey Cert. ¶22 Ex13). It stated the Plan must be "commensurate with site conditions and the level of public interest at the site, and remain[] flexible to accommodate ongoing changes in community concerns," especially for "a site that has an off-site ground water plume located in a residential area," like Chambers Works in Carneys Point Township. That is because, as the Guidance Document states, there is a "heightened community concern when there is off-site migration of contamination, resulting in questions regarding health and property value."

The Guidance Document further states, "Engaging in public dialogue allows the [responsible party] and their LSRP to learn of community concerns and to adjust planned remedial activities, accordingly, thus avoiding complications and delays." "In addition, to assess the level of public interest, the [responsible party] and their LSRP should conduct interviews with local municipal officials, health officials, and representatives of local environmental organizations."

The purpose of the feasibility study and public hearing is to provide meaningful information to the public to promote meaningful dialogue with the responsible party and public participation. The feasibility study and public hearing is a necessary precondition for the community to prepare its Public Participation Plan.

Carneys Point has been demanding participation in the remediation of the Chambers Works site since 2016 when it filed its state court ERA action against Defendants. (Telsey Cert. ¶1 Ex1). The state court action included a count to compel Defendants to provide the Township with a Public Participation Plan. The Township even filed a 2017 petition to NJDEP signed by 1,000 residents demanding participation as permitted by regulation. (Telsey Cert. ¶5 Ex3). The Department held a meeting and told the Township to write letters if it had any questions about the Chambers Works remediation process leaving the Township in the dark. This is unacceptable.

Since 2016 the state has interfered with the Township's efforts to compel a Public Participation Plan prompting the Township to sue the Department in 2018. (Telsey Cert. ¶¶6-9). The Public Participation Plan issue was thereafter mediated with Judge Michael Hogan, J.S.C. (ret) for years and never resolved. (Telsey Cert. ¶37).

Carneys Point is and has been an active participant in the remediation process because the law allows municipal involvement in the remediation process, and because Carneys Point has been taking advantage of its legal rights to protect its residents. Carneys Point is not a passive bystander to the remediation process.

Carneys Point, as the host municipality to Chambers Works, is a stakeholder in the ISRA RFS process in that, by law, the Township must receive a copy of all ISRA documents sent to NJDEP so the Township can monitor ISRA compliance and take enforcement action pursuant to the ERA and/or petition NJDEP for access to the RFS in the event of non-compliance. N.J.A.C. 7:26B-3.2. Carneys Point did not receive ISRA compliance documents when DuPont spun off Chemours in 2015, and that is what sparked the Township's 2016 ERA lawsuit. (Telsey Cert. ¶38).

Carneys Point is also the host community for DuPont/Chemours' current remediation plan that uses the onsite hazardous wastewater treatment plant and onsite hazardous waste landfill as remediation treatment and depository elements, which are considered a major hazardous waste facility pursuant to Major Hazardous Waste Facilities Siting Act, N.J.S.A. 13:1E-49. As such, Carneys Point is a stakeholder in the actual remediation process being employed at the Chambers Works site.

The historic discharge of PFAS from incinerator stacks at Chambers Works caused PFAS to drift offsite and contaminate groundwater in the entire surrounding community of Carneys Point. This has required that groundwater drinking wells for hundreds of homes be put on filter systems. (Telsey Cert. ¶39). As such, Carneys Point is also a stakeholder in the health, safety, and welfare of

its residents, especially since Plaintiffs have failed to compel Defendants to remediate offsite PFAS contamination as required by ISRA.

Carneys Point is also an "overburdened community" pursuant to the New Jersey Environmental Justice Law, N.J.S.A. 13:1D-157, in that it is polluted by Chambers Works, host to a major hazardous waste facility, and within 15-miles of the Salem Nuclear power plant, which stores spent hazardous waste material onsite and has done so for years. These pollution risks, real and foreboding, make Carneys Point an overburdened community. (Telsey Cert. ¶¶19-21).

Plaintiffs are now seeking to compel Defendants to prepare a Public Participation Plan in its proposed Third Amended Complaint. However, the Plaintiffs are not requiring Defendants to prepare a feasibility study or hold a public hearing regarding the feasibility study, which is the key precondition necessary for the Township to prepare a meaningful Public Participation Plan as set forth in the Department's own Guidance Document.

The Township has a right to intervene and participate in this matter because the Township is a necessary party regarding the feasibility study, the public hearing and the Public Participation Plan. Carneys Point has a lawful right to compel DuPont and Chemours to prepare a feasibility study and hold a feasibility study public hearing, and Carneys Point has a lawful right to submit a reasonable

Public Participation Plan to the litigants. These are significant protectable interests.

Plaintiffs cannot represent the Township's interest regarding the feasibility study because they have failed to compel Defendants to prepare a feasibility study or hold a public hearing despite the passage of many years. Plaintiffs cannot represent the Township's interest regarding the preparation of a Public Participation Plan because the necessary preconditions, the feasibility study and public hearing, are missing. (Telsey Cert. ¶36 Ex13).

For these reasons, Carneys Point is entitled to intervene and file claims in its proposed counterclaim against Plaintiffs and Defendants to assert its right to a feasibility study, public hearing, and meaningful Public Participation Plan. Those rights will be asserted as follows:

Count 11 – Federal Declaratory Judgment Act
Count 12 – State Declaratory Judgment Act
Count 13 – ERA
Count 14 – Writ of Mandamus

4. Form and Content of RFS

DuPont and Chemours are required by law to post the RFS as a cash Remediation Trust Fund and the RFS must include the cost to remediate on-site *and off-site* pollution

Cash Remediation Trust Fund. The Department's regulations require a direct oversight party, like DuPont and Chemours, to post only a cash

Remediation Trust Fund Agreement because cash is the most secure and accessible form of financial security. N.J.A.C. 7:26C-5.2(k). ["Notwithstanding (h) or (j) above, a person responsible for conducting the remediation that is subject to direct oversight pursuant to N.J.S.A. 58:10C-27 shall establish and maintain a remediation trust fund in accordance with N.J.A.C. 7:26C-5.4."].

NJDEP stated in response to comments about N.J.A.C. 7:26C-5.2(k), "notwithstanding N.J.A.C. 7:26C-5.5(h) or (j), which give the person responsible for conducting the remediation flexibility in choosing which financial mechanism to use to establish a remediation funding source or financial assurance, respectively, *the person must establish and maintain a remediation trust fund when that person becomes subject to direct oversight*." 2011 NJR 267318 proposal August 15, 2011.

No-waiver. The Department adopted relaxation rules; however, they do not apply to the RFS rules. The relaxation rules state that the Department, in its discretion, can "waive strict compliance with any of its rules in a manner consistent with the core missions of the Department to maintain, protect, and enhance New Jersey's natural resources and to protect the public health, safety, and welfare, and the environment" if certain rules conflict with each other, there would be a net environmental benefit, the rule in unduly burdensome, or there is a

public emergency. N.J.A.C. 7:1B-1.1, -1.2. However, this relaxation rule specifically does not apply to RFS rules.

N.J.A.C. 7:1B-2.1(b) states, "The Department shall not under this chapter waive: 8. A rule providing for a remediation funding source, claim or other reimbursement, grant, loan, or other financial assistance." The RFS non-waiver rule, N.J.A.C. 7:1B-2.1(b)8, means that the Department cannot waive N.J.A.C. 7:26C-5.2(k), which required a direct oversight party, like DuPont and Chemours, to post only a Cash Remediation Trust Fund as an RFS.

No variance, exemption or selective enforcement. The ARRCS rules, that include N.J.A.C. 7:26C-5.2(k), do not have any variance provisions; DuPont and Chemours do not fit any of the exemptions set forth in the ARCCS rules, N.J.A.C. 7:26C-1.4; and the Plaintiffs do not have discretion to selectively enforce the cash Remediation Trust Fund rule given the non-waiver rule.

Plaintiffs have not amended N.J.A.C. 7:26C-5.2(k) that requires the cash Remediation Trust Fund for direct oversight parties; they have not amended their RFS non-waiver rule, N.J.A.C. 7:1B-2.1(b)8, to permit relaxation of N.J.A.C. 7:26C-5.2(k); and they have not adopted emergency regulations.

In other words, the Plaintiffs must compel DuPont and Chemours to post a cash Remediation Trust Fund for the Chambers Works RFS and DuPont and Chemours cannot post RFS in any other form. Plaintiffs cannot permit DuPont

and Chemours to post a non-cash RFS like a line of credit, letter of credit, surety, insurance policy, or self-guarantee.

Plaintiffs claim they may be amending the cash Remediation Trust Fund regulation, N.J.A.C. 7:26C-5.2(k), in the future, so they are going to ignore the rule. (Telsey Cert. ¶40). This is unacceptable.

<u>No discretionary escrow in lieu of Remediation Trust Fund</u>. The RFS cash must be deposited with a recognized trustee using a form of Remediation Trust Fund Agreement that has been preapproved by regulation. N.J.A.C. 7:26C-5.4. Plaintiffs, nevertheless, claim they have authority, pursuant to N.J.S.A. 58:10-23.11u(b)(2), to permit a direct oversight party to ignore the Remediation Trust Fund Agreement form of cash RFS and to post the cash RFS into a discretionary cash escrow held by the state. (Telsey Cert. ¶41).

N.J.S.A. 58:10-23.11u(b) provides that, "The department may commence a civil action in Superior Court for, singly or in combination: (2) the costs of any investigation, cleanup or removal, and for the reasonable costs of preparing and successfully litigating an action under this subsection."

This is a cost recovery statute that only permits reimbursement for the Plaintiffs past remediation and litigation costs incurred in its enforcement efforts against recalcitrant parties. *In Re New Jersey Department of Environmental Protection, Direct Oversight Determination Against Solvay Specialty Polymers*

*USA, LLC*, 2023 WL 125229 (January 9, 2023). (Telsey Certif. ¶44, Ex15).[4] This cost recovery statute has nothing to do with cash posted to securitize a responsible party's future non-performance of remediation work as required by a cash Remediation Trust Fund RFS.

In other words, Plaintiffs cannot redirect a cash RFS to a discretionary cash escrow controlled by Plaintiffs instead of having the cash posted into a dedicated Remediation Trust Fund. This interpretation violates N.J.A.C. 7:26C-5.2(k), which required that the cash be posted into a Remediation Trust Fund Agreement, it violates the non-waiver rule, N.J.A.C. 7:1B-2.1(b)8, which prohibits Plaintiffs from ignoring the Remediation Trust Fund rule, and it deprives Carneys Point access to the RFS funds, if DuPont and Chemours fail to remediate, as permitted by N.J.A.C. 7:26C-5.13(d).

The RFS must include the cost of *offsite* remediation. The Supreme Court in, *In re Adoption of N.J.A.C. 7:26B*, 128 N.J. 442 (1992), addressed the ISRA onsite/offsite issue and concluded, "Hazardous wastes that ooze off site are as much a threat to the environment as wastes that remain on site. We conclude that

[4] N.J.S.A. 58:10-23.11u(b) provides: "The department may commence a civil action in Superior Court for, singly or in combination: (1) a temporary or permanent injunction; (2) the costs of any investigation, cleanup or removal, and for the reasonable costs of preparing and successfully litigating an action under this subsection; (3) the cost of restoring, repairing, or replacing real or personal property damaged or destroyed by a discharge, any income lost from the time the property is damaged to the time it is restored, repaired or replaced, and any reduction in value of the property caused by the discharge by comparison with its value prior thereto; (4) the cost of restoration and replacement, where practicable, of any natural resource damaged or destroyed by a discharge; and (5) any other costs incurred by the department pursuant to P.L.1976, c.141. Compensatory damages for damages awarded to a person other than the State shall be paid to the person injured by the discharge.

ECRA's [ISRA's] definitions of "cleanup plan" and "negative declaration" are sufficiently broad to extend ECRA's [ISRA's] reach to wastes discharged on site that have migrated off site." The Supreme Court further stated, "The requirement that owners or operators must clean up wastes that have spread off site is consistent with the legislative goal of protecting against the danger of those risks."

The concept that remediation includes onsite *and offsite* cleanup has been incorporated into the fabric of New Jersey environmental laws and regulations. Onsite *and offsite* remediation is included in (1) The ISRA definition of "remedial action," N.J.S.A. 13:1k-8, (2) the SRRA definition of "remedial action," N.J.S.A. 58:10C-2, (3) the Brownfields and Contaminated Site Remediation Act definition of "remedial action," N.J.S.A. 58:10B-1, (4) the Spill Compensation and Control Act definition of "remedial action," N.J.S.A. 58:10-23.11b, and (5) the Technical Requirements for Site Remediation regulations, N.J.A.C. 7:26E-3.9(a)1 [Site investigation - determination of off-site source of contamination in soil and ground water].

When posting an RFS, the responsible party must post the amount necessary to complete the remedial action, which includes onsite and offsite costs. N.J.A.C. 7:26C-5.3. An RFS is posted as a financial backstop to cover the cost of remediation. In the event Defendants fails to complete the work, a pollution

impacted municipality, like Carneys Point, can access the funds to complete the work with NJDEP approval. N.J.A.C. 7:26C-5.13(d).

The Defendants do not fit any of the exemptions set forth in the ARCCS rules, N.J.A.C. 7:26C-1.4; the Plaintiffs have not adopted emergency regulations to override the definition of "remedial action" to exclude offsite remediation; and the Plaintiffs have not otherwise amended the definition of "remedial action" to exclude offsite remediation.

Based upon the Township's efforts to mediate an RFS with DuPont, Chemours and NJDEP, DuPont and Chemours are not posting an RFS for the remediation of offsite pollution and NJDEP is not requiring them to do so. DuPont and Chemours are only installing filtration systems on certain residential dwellings, which is not a remediation solution to PFAS contaminated groundwater in Carneys Point. (Telsey Cert. ¶42).

The Township has a right to intervene and participate in this matter to compel the Defendants to post an RFS in the form of a cash Remediation Trust Fund that includes the cost of onsite *and offsite* remediation because these are significant protectable interests. The Chambers Works site involves a $1 Billion cleanup. This is, perhaps, the one and only time that the Township can make sure that the RFS gets posted correctly to protect the community for generations to come.

There is a real and tangible threat that the huge $1 Billion RFS will not be posted correctly because Plaintiffs take the position that the RFS does not have to be cash, and if it is posted as cash, it does not have to be posted as a dedicated cash Remediation Trust Fund but can be posted into a discretionary cash escrow held by Plaintiffs. Plaintiffs' legal position is diametrically opposed to the legal position taken by Carneys Point. As such, Plaintiffs cannot represent the interests of Carneys Point.

For these reasons, Carneys Point is entitled to intervene and file claims in its proposed counterclaim against Plaintiffs and Defendants to assert its right to compel the RFS be posted as a cash Remediation Trust Fund that includes the cost of onsite and offsite remediation. Those rights will be asserted as follows:

Count 15 – Fed. Dec. Judgment Act – Cash Remediation Trust Fund
Count 16 – State Dec. Judgment Act – Cash Remediation Trust Fund
Count 17 – ERA – Cash Remediation Trust Fund
Count 18 – Writ of Mandamus – Cash Remediation Trust Fund
Count 19 – Fed. Dec. Judgment Act – Offsite costs included
Count 20 – State Dec. Judgment Act – Offsite costs included
Count 21 – ERA – Offsite costs included
Count 22 – Writ of Mandamus – Offsite costs included

5. <u>Property Tax Recovery and Pollution Tax Assessment</u>

Carneys Point is permitted by law to recover lost property taxes due to the Chambers Works pollution and to assess a pollution tax because of that pollution.

Past tax lost due to pollution. The Spill Compensation and Control Act, NJ.S.A. 58:10-23.11g.a.(4) ("Spill Act") permits Carneys Point Township to recover one year of its lost property taxes due to the diminution in value of Township property caused by the pollution at and emanating from Chambers Works. Plaintiffs initially included this claim in their complaint but have since withdrawn it.

Future tax assessed due to pollution. The Brownfields and Contaminated Site Remediation Act, N.J.S.A. 58:10B-3.2 ("Brownfields Act") permits Carneys Point Township to assess an annual pollution tax against the Chemours Company, FC for the loss in taxes suffered as a result of the Chambers Works site becoming polluted and underutilized, which taxes must be applied to the remediation of the site and surrounding impacted areas.[5]

---

[5] N.J.S.A. 58:10B-3.2 [Annual Pollution Surcharge] provides as follows:

a. Except as provided in subsection b. of this section, whenever an industrial property that is subject to any federal or State court order, or administrative action or order, for environmental remediation becomes vacant or underutilized, the municipality in which the property is located may assess an annual charge to ensure the prompt remediation of the property. The charge shall not exceed the difference between the amount of property taxes paid on the property in the last year of full industrial operation and the amount of property taxes paid on the property for the current year. Unpaid charges shall constitute a lien on the property and shall be collected in the same manner as property taxes. The municipality shall deposit any funds collected pursuant to this section with the Commissioner of Environmental Protection, who shall credit the amounts deposited against the property owner's environmental remediation liability pursuant to law.
b. The provisions of this section shall not apply to any property for which a remediation trust fund has been established pursuant to the provisions of section 25 of P.L. 1993, c.139 (C.58:10B-3).

The Chambers Works site is an underutilized industrial property in need of redevelopment (Telsey Cert. 15, Ex8); it is subject to a 1988 amendment of its 1984 RCRA permit (No. NJD002385730) and a 2019 NJDEP sitewide PFAS Directive (Telsey Cert. 43); and there is no RFS established for the site. As such, the Township is entitled to assess a special pollution tax pursuant to N.J.S.A. 58:10B-3.2.

According to N.J.S.A. 58:10B-3.2, Carneys Point can annually charge Chemours Company, FC the differential tax amount caused by devaluation due to pollution, lien the property if the differential tax is not paid, and credit the amount against the RFS DuPont and Chemours must post to remediate pollution. These tax assessments are significant protectable interests of Carneys Point Township.

Plaintiffs initially sought to recover Carneys Point's past lost tax due to pollution in its initial complaint. However, Plaintiffs have dropped that claim in its amended complaint. As a practical consequence, unless the Township litigates this dropped claim, the Township's interests will be impaired.

Regarding the claim for future tax assessments due to pollution, the Township must be permitted an opportunity to assess this tax because, as a practical consequence, it is part and parcel of the RFS effort of the Plaintiffs' complaint. Plaintiffs are not representing the Township's interests regarding the

past pollution tax and future pollution tax. As such, the Township must be permitted to intervene to protect these interests.

For these reasons, Carneys Point is entitled to intervene and file claims in its proposed counterclaim against Defendants to recover lost property tax and assess a pollution tax. Those rights will be asserted as follows:

Count 23 – Spill Act – Lost Property Taxes Claim
Count 24 – Fed. Dec. Judgment Act – Pollution Tax Assessment
Count 25 – State Dec. Judgment Act – Pollution Tax Assessment

**B. <u>Permissive Intervention Should Be Granted</u>**

Rule 24(b) states, in part:

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b).

As discussed above in conjunction with the Rule 24(a) analysis, herein incorporated, the Township's application for intervention is timely. In addition,

the Township's proposed counterclaims address common questions of law and fact pertaining to the Plaintiffs' complaint.

In particular, Claim 1 – collateral estoppel of the deed transfer ISRA trigger raises common questions of law and fact to the Plaintiffs' identical ISRA claim; Claim 2 – the Township's participation in proposing reasonable NRD restoration projects raises common questions of law and fact to all of the Plaintiffs' counts seeking NRD from Defendants; Claim 3 – the feasibility study, public hearing, and Public Participation Plan raises common questions of law and fact to the Plaintiffs' proposed claim for a Public Participation Plan; Claim 4 – the form and content of the RFS raises common questions of law and fact to Plaintiffs' demand for an RFS; and Claim 5 – the pollution tax issues raises common questions of law and fact regarding Plaintiffs' damage claims and demand for RFS funding.

The Township's participation as intervenor would neither unduly delay the proceedings nor prejudice the adjudication of the rights of the original parties. As such, the court should grant the Township's application for permissive intervention to file its proposed Counterclaims.

## CONCLUSION

For the reasons set forth above, Carneys Point respectfully requests that this court grant the Township's Motion for Intervention to file its proposed Counterclaims.

Dated: June 20, 2024

**MEYNER AND LANDIS LLP**

By: ***/s/ Albert I. Telsey, Esq.***
Albert I. Telsey (ID # 016961985)
atelsey@meyner.com
One Gateway Center, Suite 2500
Newark, New Jersey 07102
P: 973.602.3439 F. 973.624-0356
*Attorneys for Proposed Intervenor,*
*Carneys Point Township*