**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>E.I. DU PONT DE NEMOURS AND COMPANY, ET AL.,<br><br>Defendants. | C.A. No. 2:19-cv-14758-RMB-JBC<br>(Pompton Lakes Works Site)<br><br>C.A. No. 2:19-cv-14766-RMB-JBC<br>(Chambers Works Site)<br><br>(Hon. Renee M. Bumb, C.U.S.D.J.) |

**SPECIAL MASTER ORDER NO. 1**
**(DECIDING PLAINTIFFS' MOTIONS TO AMEND)**

The matter is before the Special Master ("SM") on Plaintiffs' motions to amend filed in the Pompton Lakes Works ("PLW") (19-14758) (Dkt. No. 388) and Chambers Works ("CW") (19-14766) (Dkt. No. 304) cases. The SM received Defendants' oppositions (PLW Dkt. No. 401; CW Dkt. No. 319), Plaintiffs' omnibus reply (PLW Dkt. No. 403; CW Dkt. No. 321), and recently held oral argument. For the reasons to be discussed Plaintiffs' motions are granted.[1]

**BACKGROUND**

The parties are familiar with the background of this matter so only a brief summary will be provided. These cases were originally filed in state court and were removed to federal court on July 5, 2019. As to Defendants, the essence of the cases involves the State's effort to require

[1] For purposes of this motion, "Defendants" collectively refers to Defendants EIDP, Inc. f/k/a E. I. du Pont Nemours and Company, the Chemours Company, the Chemours Company FC, LLC, DuPont Specialty Products USA, LLC ("DSP"), Corteva, Inc. ("Corteva"), and DuPont de Nemours, Inc. ("DuPont"). "Plaintiffs" or the "State" refer collectively to the New Jersey Department of Environmental Protection, the Commissioner of the New Jersey Department of Environmental Protection, and the Administrator of the New Jersey Spill Compensation Fund.

Defendants to investigate and remediate the contamination on or emanating from the PLW and CW sites, and to pay natural resource and other damages caused by the contamination.[2]

The early part of this litigation involved motion practice and discovery related to the State's motion for preliminary injunction. As the parties know, however, the cases were stayed from March 2023 through May 2024, pending court-ordered mediation which proved unsuccessful. The cases were effectively reactivated on May 13, 2024 when CMO No. 2 was entered. As to the PLW and CW cases, the fact discovery deadline is November 1, 2024. CMO No. 2 ¶ 2.g. The expert discovery deadline is March 14, 2025. Id. at ¶ 2.i. The deadline to file the Joint Final Pre-Trial Order in the CW case is May 1, 2025. Id. at ¶ 3.b. The parties were recently notified that the trial in the CW case will commence on June 2, 2025. The instant motions were filed on May 24, 2024.

According to Plaintiffs, their motions seek leave to make the following changes in their proposed Third Amended Complaint ("TAC") in the PLW and CW cases:

1. The express reference to penalties available to the State under the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 to -23.24 (the "Spill Act"), to the First Count in the Second Amended Complaint;

2. The express reference to penalties available to the State under the Water Pollution Control Act, N.J.S.A. 58:10A-1 to -20 (the "WPCA"), within the Second Count of the Second Amended Complaint;

3. The express reference to penalties available to the State under the Solid Waste Management Act, N.J.S.A. 13:1E-1, et seq. (the "SWMA"), within the Third Count of the PLW Second Amended Complaint and the Fifth Count of the CW Second Amended Complaint; and

4. The inclusion of additional facts that have come to light or have been clarified since the filing of the Second Amended Complaint. According to the State, these primarily relate to the Fraudulent Transfer Claims contained in existing Counts Seven through Ten in the PLW Second

[2] The State filed two other related cases involving the Repauno (19-14765) and Parlin (19-14767) sites. Pursuant to CMO No. 2 entered on May 13, 2024, these two cases have been administratively terminated without prejudice.

> Amended Complaint and existing Counts Thirteen through Sixteen in the CW Second Amended Complaint.

CW and PLW Briefs at 4. Further, Plaintiffs have removed from the Spill Act Claim (First Count) their request to recover the loss of State tax revenues due to damage to real or personal property from defendants' discharges.

Additionally, in the PLW case only, Plaintiffs seek to assert a new claim (set forth as Count Eleven) against all Defendants for Abnormally Dangerous Activity under New Jersey common law. PLW Brief at 4.

In the CW case only, Plaintiffs request leave to make the following additional changes:

1. The express reference to penalties available to the State under the Industrial Site Recovery Act, N.J.S.A. 13:1K-6 to -13.1 (the "ISRA"), in the Third Count in the Second Amended Complaint;

2. The express reference to penalties available to the State under the Brownfield and Contaminated Site Remediation Act, N.J.S.A. 58:10B-1 to 58:10B-31 (the "Brownfield Act"), in the Fourth Count of the Second Amended Complaint;[3]

3. The addition of a count not previously asserted pursuant to the New Jersey Safe Drinking Water Act, N.J.S.A. 58:12A-1 et seq. ("NJSDWA") (new Count Seventeen).[4]

CW Brief at 4.

Defendants object to Plaintiffs' proposed amendments on the "bases of undue delay, prejudice and judicial economy." PLW Opp. at 4. Defendants argue that Plaintiffs unduly delayed asserting an abnormally dangerous activity claim, a NJSDWA claim, and civil penalties. Id. at 4-5; CW Opp. at 6. They allege all the facts necessary to assert these claims were known years ago. Defendants also argue they will be prejudiced by the proposed amendments because,

[3] After oral argument Plaintiffs withdrew their claim for penalties under the Brownfield Act.

[4] Plaintiffs initially sought leave to assert a federal Safe Drinking Water Act claim but have since withdrawn this request. See G. Farley Letter (CW Dkt. No. 312).

"Plaintiffs seeks to infuse significant new issues that change the scope of the proceedings." PLW Opp. at 6. According to Defendants, "the parties will need to shift their focus away from the remediation that Plaintiffs allege needs to take place, and instead litigate over Defendants' past regulatory compliance." Id. Defendants also argue, "the parties will need to devote significant resources to new discovery[.]" Id. In addition, Defendants argue judicial economy justifies denial of Plaintiffs' motion. According to Defendants, "[g]iven the posture of this litigation, the delay associated with the instant amendments, and the short interval to trial precipitated in no small part by Plaintiffs unilaterally declaring a mediation impasse, Defendants respectfully submit the denial of leave to amend is entirely appropriate here." Id. at 7.

Defendants also argue Plaintiffs' proposed amendments related to civil penalties are futile. Defendants contend that they have not been given fair notice of the factual bases for the newly asserted civil penalties, that the assertion of civil penalties against DuPont, Corteva, and DSP is improper, and that Plaintiffs cannot seek retroactive penalties. Not surprisingly, Plaintiffs contest all of Defendants' arguments.

**LEGAL DISCUSSION**

Pursuant to Fed. R. Civ. P. 15(a), leave to amend pleadings "shall be freely given when justice so requires." Leave shall be freely given in the absence of undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies in previous amendments, undue prejudice, or futility of the amendment. Foman v. Davis, 371 U.S. 178, 182 (1962); see also Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). "[A]bsent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless denial [can] be grounded in bad faith or dilatory notice, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." Long v. Wilson,

393 F.3d 390, 400 (3d Cir. 2004) (emphasis in original) (quoting Lundy v. Adamar of New Jersey, Inc., 34 F.3d 1173, 1196 (3d Cir. 1994)).

**I. Undue Delay, Prejudice and Judicial Economy**

No evidence exists, and none has been raised, that Plaintiffs' motions were filed in bad faith, with a dilatory motive, or that there have been repeated failures to cure deficiencies in previous amendments. As to Defendants' undue delay, prejudice, and judicial economy arguments, they have no merit. It has long been held that prejudice is the touchstone for the denial of leave to amend. Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978). In the absence of undue or substantial prejudice, leave to amend should be granted. Long, 393 F.3d at 400. As will be explained, Defendants cannot show they will be prejudiced by Plaintiffs' amendments.

The SM does not agree that Plaintiffs' amendment were unduly delayed. The mere fact that an amendment could have been filed earlier is not dispositive. Delay alone is an insufficient reason to deny amendment – the delay must be undue or prejudicial. See Formosa Plastics Corp., USA v. v. ACE Am. Ins. Co., 259 F.R.D. 95, 99-100 (D.N.J. 2009). The early phases of these cases progressed slowly due to pending motions to remand and dismiss, as well as Plaintiffs' motion for preliminary injunction. Then the cases were stayed pending mediation. Plaintiffs' motions were filed shortly after the cases were reactivated after the mediation stay and only eleven (11) days after CMO No. 2 was entered. In addition, the SM has no reason to contest Plaintiffs' representation that they "recently obtained data and facts demonstrating that penalties are absolutely appropriate here." Reply at 8. Thus, the SM finds that Plaintiffs' motions were not unduly delayed.

The SM also disagrees with Defendants' argument that they will be prejudiced by Plaintiffs' amendment. The parties have more than a sufficient opportunity to conduct relevant

discovery and to prepare for trial. As noted, fact discovery does not expire until November 1, 2024 and trial does not start until June 2, 2025. Given these extended dates, all parties have the necessary time and resources to address Plaintiffs' new claims before trial starts. It is also not the case that the parties will have to "shift their focus away from … remediation" if Plaintiffs' amendments are added to the case. Given Plaintiffs' claims and efforts to date, the SM expects that remediation will always be at the forefront of Plaintiffs' claims. Further, the SM rejects the notion that Plaintiffs' amendments will add material or significant new issues into the litigation. Plaintiffs' amendments relate largely to claims that have been raised since the inception of these cases.

Defendants' judicial economy argument is not persuasive. Plaintiffs' amendments will not necessitate significant new discovery or materially increase the complexity and length of these already complex cases. Nor will the amendments materially impact the case management of the cases. As noted, Plaintiffs' amendments relate to and arise out of claims and contentions that have been in the cases since they were filed.

**II. Futility of the Amendments**

Plaintiffs seek to add express references to penalties available to the State under the Spill Act, WPCA, and SWMA. Defendants oppose these amendments as futile "because Plaintiffs would not overcome a motion to dismiss related to these claims." PLW Opp. 7; CW Opp. 8. Defendants further argue that civil penalties under these environmental statutes are improper against DuPont, Corteva, and DSP. PLW Opp. 10-11; CW Opp. 11-13. Also, Defendants contend that Plaintiffs cannot seek retroactive penalties and so, to the extent Plaintiffs seek to recover civil penalties related to acts that predate the enactment of each statute, the amendments must be denied. PLW Opp. 11; CW Opp. 13.

**A. The Civil Penalties Amendments are not Futile**

Defendants contend that the proposed civil penalty amendments to the Spill Act and WPCA claims fail to comply with the pleading standards required by Rule 8 as they do not provide Defendants with fair notice of the factual basis for the asserted civil penalties and, therefore, would not survive a motion to dismiss under Rule 12(b)(6).[5] Defendants are correct that to assess futility a court must apply the same "standard of legal sufficiency as applies under Rule 12(b)(6)." Talley v. Wetzel, 15 F.4th 275, 286, n.6 (3d Cir. 2021). This, however, is a "liberal standard." Id. "[C]ourts place a heavy burden on opponents who wish to declare a proposed amendment futile." Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co., 106 F. Supp. 2d 761, 764 (D.N.J. 2000).

The proposed TAC spans over 100 pages and over 500 paragraphs, the bulk of which outline the allegations of misconduct that form the basis of the civil penalties sought. See, e.g., CW TAC ¶¶ 81-106, 149-58, 187-96, 312-21, 334-40, 367-76; PLW TAC ¶¶ 82-108, 235-41, 252-59. At the pleading stage, these allegations must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). What's more, the civil penalty amendments relate to environmental statutes asserted in previously filed complaints that have already been challenged and survived motions to dismiss. Indeed, as noted during oral argument, the operative complaints already include claims under the Spill Act, the WPCA, and the SWMA, and request all available relief under these statutes. Plaintiffs' proposed amendments seek only to make explicit that such relief includes civil penalties.

---

[5] As Plaintiffs point out, Defendants do not challenge the amendments to the ISRA claim in the CW case or the abnormally dangerous activity claim in the PLW case as futile on this basis. Reply at 11 n.4. Although not entirely clear, Defendants apparently do not challenge the addition of civil penalties to the SWMA claim. Nonetheless, the SM's reasoning set forth herein applies equally to the SWMA claim.

At this stage of the cases, Plaintiffs are only required to set forth facts that entitle them to civil penalties under the various environmental statutes; there is no heightened requirement that Plaintiffs set forth in detail how exactly the penalties will be measured or calculated. See, e.g., United States v. SB Bldg. Assocs., Ltd. P'ship, No. CIV. 08-5298 (AET), 2009 WL 1559793, at *3 (D.N.J. June 1, 2009) (finding CERCLA penalty claim properly pled where plaintiff "set forth sufficient facts that, if taken as true, . . . would entitle it to relief in the form of civil penalties"); United States v. M/V COSCO BUSAN, 557 F. Supp. 2d 1058, 1065 (N.D. Cal. 2008) (civil penalty claim properly asserted where allegations support award of penalties, despite lack of allegations as to amount of penalties). Whether civil penalties are in fact warranted and, if so, in what amount, are issues for a later day. The allegations of misconduct set forth in the proposed TAC establish an entitlement to civil penalties under the asserted environmental statutes. Plaintiffs need not do more at this stage. The details Defendants allege are missing from the proposed complaints may be addressed in discovery. Thus, the SM finds that the proposed TAC gives Defendants "fair notice" of the basis of Plaintiffs' civil penalty claims and, as a result, the civil penalty amendments are not futile.[6]

**B. At this Stage, Defendants Do Not Presently Dispute the Assertion of Civil Penalties Against DuPont, Corteva, and DSP, Without Prejudice to Assert Their Defenses in the Future**

In their opposition, Defendants contend that Plaintiffs cannot assert civil penalties against DuPont, Corteva, and DSP directly because there are no allegations that these entities themselves violated any of the environmental statutes at issue, which is a requirement to establish

[6] The SM likewise rejects Defendants' argument that the civil penalties amendments are futile because certain discharges were permitted under an Administrative Consent Order. See CW Opp. at 9-10. As Plaintiffs point out, this is "at best previews [Defendants'] anticipated defense(s)," but has no bearing on futility at the pleading stage. See Reply at 13.

entitlement to civil penalties. According to Defendants, these entities are merely successors to Old DuPont and their contractual assumption of Old DuPont's liabilities is not a proper basis for the imposition of civil penalties against them directly. At oral argument Defendants' counsel clarified that at this time they are only challenging the civil penalty claims against these entities insofar as Plaintiffs seek to directly impose liability. For present purposes, Defendants do not presently contest whether these entities could ultimately be held liable for civil penalties because they contractually assumed Old DuPont's liabilities. Plaintiffs' counsel represented that Plaintiffs do not seek to establish liability for civil penalties against these entities based on any theory other than their contractual assumption of liability. As a result, the parties agreed during oral argument to table the merits of this issue for another day. For purposes of these motions for leave to amend only, the SM finds that this argument is now moot without prejudice to Defendants' right to file a motion for summary judgment or other appropriate motion at a later date to contest the basis of liability.

**C. Plaintiffs Do Not Seek Retroactive Penalties**

Defendants argue that retroactive penalties are impermissible and, therefore, Plaintiffs' amendments are futile to the extent Plaintiffs seek penalties in connection with acts predating the enactment of each of the environmental statutes in question. Plaintiffs concede they do not seek retroactive penalties. Plaintiffs, however, appear to argue that "the penalties sought are not for the discharge itself," whether it occurred before or after the statute's enactment, "but rather, for the failure to report the discharges." Reply at 22 (quoting N.J. Dep't of Envt'l Protection v. Monsanto Co., No. GLO-L-000800-22, 2023 WL 9420336, at *9 (N.J. Super. L. Aug. 04, 2023)). Although this nuance may prove to be significant, the SM agrees with the Monsanto court that "[w]hile this may be a technical legal argument subject to an interpretation by the

Court on a later date, it would be premature to dismiss the requested relief at this stage of the litigation." Id.

**CONCLUSION**

Accordingly, for all the reasons stated herein, Plaintiffs' motions for leave to file their proposed Third Amended Complaints in the PLW and CW cases will be granted.

**ORDER**

The Special Master having received Plaintiffs' motions for leave to file the Third Amended Complaint (PLW Dkt. No. 388; CW Dkt. No. 304), as well as Defendants' oppositions (PLW Dkt. No. 401; CW Dkt. No. 319) and Plaintiffs' omnibus reply (PLW Dkt. No. 403; CW Dkt. No. 321); and oral argument having been conducted; and accordingly,

IT IS HEREBY ORDERED this 20th day of August, 2024, that Plaintiffs' motions for leave to file the Third Amended Complaint in the PLW and CW cases are GRANTED; and it is further

ORDERED that Plaintiffs shall file the operative versions of their Third Amended Complaints on the PLW and CW dockets within five (5) days of the entry of this Order; and it is further

ORDERED that all Defendants' responses to the Third Amended Complaints are STAYED until the parties address with the SM the most efficient manner to respond.

By: *s/ Joel Schneider*
Hon. Joel Schneider
Special Master

Dated: August 20, 2024