## UNITED STATE DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; THE COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; and THE ADMINISTRATOR OF THE NEW JERSEY SPILL COMPENSATION FUND, | CIV. NO. 19-14766 (RMB/JBC) (Chambers Works) |

                                    Plaintiffs,

            v.

E.I. DUPONT DE NEMOURS AND CO., INC., ET AL.,

                                    Defendants.

## SPECIAL MASTER ORDER NO. 6 - OPINION AND ORDER DECIDING CARNEY POINT TOWNSHIP'S MOTION TO INTERVENE

This matter is before the Special Master ("SM") on the Motion to Intervene Pursuant to Fed. R. Civ. P. 24(a) and (b) filed by Carneys Point Township ("CPT").  The SM received the opposition of plaintiffs and all defendants, the parties' supplemental submissions, and recently held oral argument.  For the reasons to be discussed, CPT's motion to intervene is denied.  CPT's request for mandatory intervention pursuant to Fed. R. Civ. P. 24(a) is denied because plaintiffs adequately represent CPT's interests and CPT's interests do not diverge from those of plaintiffs.  CPT's request for permissive intervention under Rule 24(b) is denied because its joinder will unduly delay and complicate the case and duplicate plaintiffs' ongoing efforts.  In addition, CPT's proposed claims are preempted by plaintiffs' ongoing enforcement of this action and CPT otherwise lacks standing to assert its proposed claims.

## BACKGROUND

This matter concerns the Chambers Works Facility (hereinafter "Site"), a 1,445-acre site located at the foot of the Delaware Memorial Bridge that is located in part within the boundary of the proposed intervenor, Carney's Point Township. According to plaintiffs, the Site has been operational for 125 years and is responsible for on and off-Site PFAS (including PFOA and PFNA), SVOC, VOC and PCB contamination. See Third Amended Complaint ("TAC") at ¶¶2, 4, No. 232. Due to the soil, sediment and groundwater contamination at the Site, the State is seeking a judgment requiring defendants, "to pay all of the costs necessary to fully investigate and delineate all of the PFAS compounds and other pollutants and hazardous substances that were discharged, released, and/or emitted from the Site, wherever they may have come to rest." Id. at ¶7. The State is also asking defendants to "pay all costs necessary to investigate, remediate, assess, and restore the Site itself and all of the off-site areas and natural resources of New Jersey that have been contaminated from Chambers Works[.]" Id.[1] The State is seeking, inter alia, natural resource, property, economic and punitive damages, penalties, an injunction requiring defendants to cease all ongoing unpermitted releases of contaminants from the Site, as well as restitution and disgorgement of "ill-gotten profits." Id. at ¶8.

The named defendants are E.I. du Pont de Nemours and Company ("Old DuPont") (n/k/a EIDP), The Chemours Company, The Chemours Company FC (together "Chemours"), The 3M Company ("3M"), DuPont Specialty Products USA, LLC, Corteva, and New DuPont.[2] In this context it is not necessary to set forth the DuPont defendants' complicated corporate history but

---

[1] The State is reserving its claims to remediate and restore the Delaware River. Also, the State is not asserting claims associated with AFFF in this litigation. Id.

[2] For ease of use the term "DuPont defendants" refers to all defendants except for 3M..

a few transactions will be highlighted.[3]  On January 23, 2015, Old DuPont transferred the ownership of the Site to Chemours.  TAC at ¶350.  Prior to July 1, 2015, Chemours was a wholly owned subsidiary of Old DuPont.  Id. at ¶227.   On July 1, 2015, Old DuPont spun off Chemours as an independent company.  Id.  In connection with the spinoff the Site was transferred to Chemours.  Id. at ¶70.  Plaintiffs allege that under the June 26, 2015 Chemours Separation Agreement, Chemours assumed the liabilities of Old DuPont arising from the Site.  Id. at ¶¶18, 19.  After the Chemours spinoff Corteva was formed after the assets of Old DuPont and Old Dow were combined and reorganized.  Id. at ¶269.  On June 1, 2019, DowDuPont spun off Corteva as an independent public company.  Id. at ¶278.  Corteva is now Old DuPont's parent company.  Id. at ¶303.  Plaintiffs contend Corteva is responsible for 29% of Old DuPont's PFAS liabilities once certain conditions are satisfied.  Id. at ¶¶274, 303.  On January 1, 2023, Old DuPont changed its name to EIDP, Inc.  Id. at ¶282.

A brief summary of the procedural history of this litigation is helpful to put CPT's motion into context.  This matter was originally filed in state court in Salem County on March 27, 2019, and was removed to federal court on July 5, 2019.  Plaintiffs filed their First Amended Complaint on May 31, 2019, and their Second Amended Complaint on August 31, 2020.  ECF No. 57.  The currently operative Third Amended Complaint was filed on August 26, 2024.  ECF No. 332.

There is little question plaintiffs are vigorously pursuing comprehensive and complete relief for all on and off-site environmental problems resulting from the historical and present operations at the Site.  The detailed record demonstrates that plaintiffs have vigorously litigated this case for over five (5) years and are taking necessary actions to protect the public interest,

---

[3] The history is set forth in the TAC at ¶¶197-303.

including the interests of CPT. Plaintiffs seek comprehensive relief from defendants in order to secure the Site's effective cleanup, including all impacted off-site areas.[4] This is evidenced from plaintiffs' Seventeen Count, 514 paragraph TAC, in which they seek relief under the Spill Act (N.J.S.A. 58:10-23.11 to 23.24), the Water Pollution Control Act (N.J.S.A. 58:10A-1 to 20 ("WPCA"), the Industrial Site Recovery Act ("ISRA") (N.J.S.A. 13:1K-6 to 13.1), the Brownfield Act (N.J.S.A. 58:10B-1 to 50:10B-31), the Solid Waste Management Act (N.J.S.A. 13:15-1, et seq. ("SWMA"), the Air Pollution Control Act (N.J.S.A. 26:2C-1, et seq.), the New Jersey Safe Drinking Water Act (N.J.S.A. 58:12A.2 et seq.) ("NJSDWA"), and the common law of New Jersey. Plaintiffs seek to compel defendants to conduct a full investigation and remediation of all contamination at and from the Site, secure funding for future remediation and restitution, and disgorgement of any earned economic benefit from defendants' noncompliance under the law. In addition, plaintiffs seek reimbursement of their incurred and future costs, and the delineation and cleanup of all on and off-site natural resource damages from the Site. Plaintiffs also seek to compel defendants to establish an RFS as required by ISRA, as well as a public participation plan. Id. at First Count, Prayer for Relief. Plaintiffs are also seeking an injunction to stop all unpermitted releases from the Site. Plaintiffs are pursuing all cognizable relief and claims CPT seeks to assert and more.

On October 17, 2022, CPT filed its first Motion to Intervene. ECF No. 231. CPT withdrew its motion on November 14, 2022. ECF No. 244. On March 27, 2023, the case was ordered to mediation (ECF No. 268) and the litigation was stayed. In April 2024 (ECF No. 286) the case was restored to the active docket after unsuccessful mediation efforts. On May 13, 2024 Case Management Order No. 2 was entered (ECF No. 296) setting a fact discovery deadline of

---

[4] The SM takes no position on the merits of plaintiffs' claims.

November 1, 2024. Subsequently, the fact discovery deadline was extended to November 15, 2024 in CMO No. 3 (ECF No. 336), and later to December 20, 2024 in CMO No. 4 (ECF No. 365). Trial is scheduled to start on June 2, 2025. CPT's present Motion to Intervene (ECF No. 313) was filed on June 21, 2024. All plaintiffs and defendants oppose CPT's motion. CPT seeks to assert counterclaims against all plaintiffs and defendants. See Intervenor's Proposed Counterclaims, ECF No. 313-1.

The regulatory and environmental enforcement history at Chambers Works spans decades. Rather than setting forth the long history in detail, the SM simply notes that for decades the DEP and EPA have worked cooperatively to enforce federal and state environmental laws at the Site. Importantly, as noted by defendants, "[s]ince the 1980's, the EPA has been leading oversight of EIDP's and now Chemours's remediation of Chambers Works pursuant to the Federal regulatory framework established by RCRA and the Federal Government Performance and Results Act ("GPRA") 2020 Corrective Action Program." DuPont Defendants' Supplemental Letter Brief ("DSLB") at 3, ECF No. 341; see also Plaintiffs' Supplemental Letter Brief ("PSLB") at 3, ECF No. 340. As will be discussed, EPA is the lead regulatory agency for the remediation of the Site. Contrary to CPTs belief, the Site is not subject to DEP's "direct oversight." Plaintiffs acknowledge this fact when they state, "[t]he Chambers Works site is not in compulsory direct oversight." Id. at 15. Instead, the Site is under the oversight of the EPA pursuant to the Resource Conversation and Recovery Act ("RCRA"), 42 U.S.C. §6901 et seq., under a RCRA/Hazardous and Solid Waste Amendments of 1984 ("HSWA") permit no. NJD002385730, and the GPRA 2020 Corrective Action Program for Remedial Activities. DuPont Defendants' Opposition Brief ("DB") at 4, ECF No. 323. At sites where RCRA and

GPRA 2020 apply, remediation is conducted under a regime referred to as "RCRA traditional oversight."  PSLB at 3.  What this means is as follows:

> [t]he EPA and DEP work jointly at the site to satisfy EPA RCRA/HSWA corrective action and NJDEP remediation requirements.  EPA is the lead agency with the RCRA/HSWA corrective action permit and NJDEP provides technical support.  The agencies' goals are to coordinate and meet both federal and state requirements.

See DEP's July 24, 2013 Letter to CPT at 2, ECF No. 323-2.  Although EPA is the lead agency, "NJDEP has been closely involved in the oversight and review process for Chemours's remediation submissions both before and after the Site gained federal attention."  PSLB at 13.

A good part of CPT's motion relates to its state court complaint naming E.I. DuPont de Nemours and Company, Sheryl A. Telford, and Chemours pursuant to New Jersey's Environmental Rights Act (N.J.S.A. 2A:35A-1 et seq.) ("ERA")) seeking relief under ISRA. CPT's complaint was first filed in December 2016.  Among other relief requested in CPT's state court complaint it seeks the posting of a Remediation Funding Source ("RFS") and a penalty for ISRA non-compliance.  After CPT filed its complaint, its case was removed to federal court in January 2017.  The case was remanded back to state court in July 2017.  In 2018 CPT filed a motion for summary judgment alleging DuPont triggered ISRA and violated the statute.  On February 13, 2019, Judge Anne McDonnell issued a tentative oral opinion finding that DuPont's transfer of the Site to Chemours triggered the requirement to comply with ISRA, and DuPont failed to comply.  On August 8, 2019, an Order to this effect was entered.  The SM has been informed that the Order is currently the subject of a motion for reconsideration which remains to be decided.

When plaintiffs filed their original complaint in state court on March 27, 2019, they included an ISRA count that mirrors in part the ISRA claim CPT filed in December 2016.

6668339v1

Plaintiffs' ISRA claim against Old DuPont, Corteva and New DuPont is included as the Third Count (¶¶343-363) in the TAC. Noteworthy is the fact that plaintiffs' ISRA claim involves different alleged ISRA violations in addition to the transactions CPT raised. The State also brings claims under the Brownfield Act and claims against different defendants. Unlike CPT's ISRA complaint, plaintiffs assert ISRA claims against Corteva and New DuPont. Plaintiffs also assert additional ISRA triggers and violations. <u>See</u> TAC at ¶¶ 358, 359.

The crux of plaintiffs' ISRA claim is that despite triggering ISRA, Old DuPont, Corteva and New DuPont did not comply with the requirements in the statute. Plaintiffs seek an order requiring these parties to fully comply with ISRA and its regulations, including the submission of a General Information Notice, Remediation Certification, Response Action Outcome, and the establishment of a RFS in compliance with the applicable statutes and regulations. <u>See</u> TAC, Third Count, ¶¶343-363, Prayer for Relief. CPT does not request any ISRA relief not being pursued by plaintiffs. However, plaintiffs seek ISRA relief not pursued by CPT.

CPT's motion to intervene seeks to assert four (4) claims. First, CPT alleges plaintiffs are collaterally estopped from relitigating their ISRA/deed transfer claim because the claim was already litigated to finality in state court. CPT also alleges the court lacks jurisdiction over the ISRA claim, and the court should abstain from exercising supplemental jurisdiction over the claim. <u>See</u> Proposed Intervenor's Counterclaims, Counts 1-6, ECF No. 313-1. Second, CPT alleges that pursuant to the New Jersey State Constitution and applicable law, as a "first priority" impacted municipality CPT is entitled to intervene to identify reasonable NRD restoration projects for the Site and surrounding impacted areas. <u>Id.</u> at Counts 7-10. Third, CPT seeks to intervene to require a mandatory feasibility study, a public hearing regarding the study, and the right to prepare a Public Participation Plan for the remediation of the Site and the surrounding

community.  CPT contends the relief is appropriate because DuPont and Chemours are unreliable remediating parties subject to DEP direct oversight.  Id. at Counts 11-14.  Four, CPT wants to intervene to require DuPont and Chemours to post the RFS as a cash Remediation Trust Fund and to require the RFS to include the cost to remediate on-site and off-site pollution.  Id. at Counts 15-22.  CPT's third and fourth claims assume the Site is under DEP's direct oversight.

Plaintiffs and all defendants oppose CPT's motion.  Plaintiffs argue that since they are exercising their primary enforcement authority, CPT does not have standing to enforce New Jersey's environmental laws and their claims are preempted by the State's primary enforcement jurisdiction.  In addition, plaintiffs generally contend CPT cannot meet the requirements in Fed. R. Civ. P. 24.  In particular, plaintiffs contend they are adequately representing CPT's interests in the litigation and CPT cannot make a "compelling showing" this is not the case.  Plaintiffs also argue CPT's motion is untimely and intervention is not necessary since CPT can pursue non-duplicative claims in its state court action.  EIDP, Chemours, DuPont and Corteva filed a joint opposition.  These defendants argue plaintiffs are adequately representing CPT's interests and plaintiffs' involvement preempts CPT's right to intervene.  They also contend CPT cannot satisfy the requirements in Rule 24.  3M argues CPT's motion is futile as it relies on an impermissible group pleading as to 3M.  3M also argues CPT's motion is untimely.

## LEGAL DISCUSSION

### 1.    Intervention Under Fed. R. Civ. P. 24

#### A.    Mandatory Intervention

CPT seeks mandatory intervention pursuant to Rule 24(a).  In order to intervene as of right CPT must satisfy all requirements in Rule 24(a) which provides as follows:

Rule 24.  Intervention

(a)    Intervention of Right.  On timely motion, the court must permit anyone to intervene who:

(1)    is given an unconditional right to intervene by a federal statute; or

(2)    claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

CPT seeks mandatory intervention pursuant to Rule 24(a)(2).  Pursuant to this Rule four (4) requirements must be met: (1) the application for intervention must be timely; (2) the applicant must have a sufficient interest in the litigation; (3) the interest may be affected or impaired as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.  In re: Community Bank of Northern Virginia, 418 F.3d 277, 314 (3d Cir. 2005) (citation and quotations omitted).  Although CPT's motion suffers from other infirmities, the SM will focus on the requirement that CPT show plaintiffs are not adequately representing its interests.  Since CPT cannot make this showing, there is no need to address the other requirements in Rule 24(a)(2).

Third Circuit precedent reveals that CPT has three possible grounds to argue inadequate representation: (1) that its interests diverge sufficiently from the State's interests such that plaintiffs "cannot devote proper attention to CPT's interests; (2) that there is collusion between the representative party and the opposing party; or (3) that the existing party is not diligently prosecuting the suit.  United States v. Territory of Virgin Islands, 748 F.3d 514, 519-20 (3d Cir. 2014).  The burden is on CPT to show that its interests are not adequately protected.  Delaware Valley Citizens' Council for Clean Air v. Com. of Pa,, 674 F.2d 970, 974 (3rd Cir. 1982).  A

presumption of adequacy exists when, like here, plaintiffs are charged by law with representing CPT's interests. <u>Territory of Virgin Islands</u>, 748 F.2d at 520. This presumption can only be overcome by making a compelling showing "to demonstrate why the government's representation is not adequate." <u>Id</u>.

CPT does not allege collusion. As to diligent prosecution, the SM has already discussed plaintiffs satisfy this requirement. Plaintiffs have been vigorously litigating the case for more than five years and are seeking comprehensive and complete relief regarding the Site's on and off-Site contamination. The only avenue available to CPT to satisfy the inadequate representation requirement in Rule 24(a)(2) is to argue its interests diverge from those of plaintiffs and are not adequately represented. CPT's arguments in this regard are rejected. The SM finds that since plaintiffs adequately represent CPT's interests in the case, Rule 24 mandatory intervention is denied.

As to its first claim, CPT argues its interests diverge from those of plaintiffs because it is entitled to keep the penalties from its ISRA claim. CPT argues plaintiffs, "can take the [ISRA] money … and use it for its own purposes. … The ERA entitles the Township to keep penalty funds for necessary remediation and restoration projects within its community. N.J.S.A. 2A:35A-10. Plaintiffs' unlawful usurpation of penalty funds harms the Township." CPT's Brief ("Brief") at 11-12. CPT's argument is rejected. The cited provision of the ERA (N.J.S.A. 2A-35-10d) does not require penalties to be paid to a prevailing party, and only refers to the use of settlements or judgments, not penalties. In addition, CPT erroneously believes it keeps penalty payments made under ISRA. However, as plaintiffs point out, ISRA's penalty provisions incorporate the Penalty Enforcement Law (<u>see</u> N.J.S.A. 13:1K-13.1e), which provides that payments, "shall be remitted to the State Treasurer of New Jersey, unless other disposition is

provided for in the statute imposing the penalty."  N.J.S.A. 2A:58-11f.  ISRA does not provide for any other disposition of penalties.  Thus, if CPT were to recover ISRA penalties they would be remitted to the State.  Therefore, as to its first claim, CPT's interests do not diverge from plaintiffs' interests.

As to its second claim, CPT's arguments as to why its NRD interests are not being protected also have no merit.  CPT argues it is entitled to present reasonable NRD restoration projects due to: (1) the 2017 Amendment to the New Jersey Constitution (Art. VIII, Section II, Paragraph 9, eff. Dec. 7, 2017) which gives a pollution impacted municipality like CPT, "first priority" for the use of money recovered to repair, restore or replace damaged or lost natural resources, or permanently protect the natural resources of the State, and (2) the March 2023 DEP NRD Administrative Order (2023-08) promoting the preference for restoration projects at the site of the pollution injury.  Brief at 6.  CPT argues it is entitled, "to participate in the selection of reasonable NRD restoration projects that are the focus of this litigation."  Id. at 27.  However, neither of the cited authorities creates a private right of action to pursue NRD relief.  Nor do they create an independent basis for standing to assert an NRD claim.  The SM agrees with defendants that, "[b]y its clear terms, the [Constitutional] Amendment neither confers litigation rights on affected communities with respect to restoration projects, nor creates a private right of action[.]"  DB at 31-32.  Further the SM agrees with defendants that AO 2023-08's plain language does not create a private right of action for intervention purposes.  Id. at 33.

Further, since plaintiffs agree with CPT, CPT cannot show that plaintiffs' NRD efforts are deficient or that its interests are not being protected.  Plaintiffs agree that CPT is the "exact constituent" the State seeks to protect in this litigation.  Opposition Brief ("OB") at 24, ECF No. 325.  Plaintiffs also agree that the "State's pursuit and protection of Carney's Point's

interests in the use of NRD funds is specifically provided for by law." Id. at 25. Plaintiffs further acknowledge they are bound to prioritize natural resource restoration and protection projects in the immediate areas of the Site. Id. Plaintiffs also agree that "Carney's Point's interests will – must – be protected[.]" Id. at 26 (emphasis in original). To the extent CPT insists it has a right to dictate the natural resource projects to be implemented, CPT is wrong. See NJDEP v. Exxon Mobil Corp., 453 N.J. Super. 272, 293 (App. Div. 2018). In addition, "[a]t all times and in all cases, the selection of restoration projects, including but not limited to the investment of any monetary recoveries from the litigation or settlement [of] NRD liabilities, shall remain in the sole discretion of the Commissioner [of the DEP]." 2023-08 AO at 8.

Not only is intervention denied as to CPT's second claim because plaintiffs are adequately pursuing NRD relief and protecting CPT's interests, but also because CPT's concerns are premature. As to its second claim, CPT seeks to intervene to make sure the value of restoration projects meet valuation metrics and that it has an opportunity to weigh in on the remediation projects to be completed. CPT Supplemental Letter Brief ("CPTSLB") at 29. However, these concerns are premature since the remedy selection decision will not be addressed until defendants' liability is decided. See Transcript of September 5, 2024 Oral Argument ("Tr.") at 16:14-23 (the State plans to get a judgment of liability and dollar judgment and then go through the administrative process to decide how the money should be used for restoration projects). When and if defendants' liability is adjudged the parties' attention will be directed to remedy selection which is likely to be addressed in the administrative process and not this litigation. Since the State is adequately pursuing NRD relief and representing CPT's interests, the State recognizes its obligations to CPT, the NRD remedy selection process is not now at issue, and New Jersey's constitutional amendment and the DEP's AO do not create an

independent basis to intervene, intervention as to CPT's proposed second claim is denied.  CPT's private claim, "must await DEP action in order to assess the sufficiency of [DEP's] efforts, actions and remedy."  Superior Air Products Co. v. NL Industries, Inc., 216 N.J. Super. 46, 61 (App. Div. 1987).

As to its third claim, CPT argues its interests are not protected by plaintiffs because plaintiffs failed to compel defendants to prepare a feasibility study or hold a public hearing regarding the proposed options for on and off-site remediation and failed to consider CPT's Public Participation Plan.  Brief at 12.  CPT's arguments are rejected for several reasons.  One, as will be discussed in detail infra, the argument is based on the erroneous assumption that the Site is subject to DEP's direct oversight.  Two, as will also be discussed infra, the relief requested by plaintiffs is already being pursued.  For example, the TAC seeks to compel the creation of a Public Participation Plan for the Site.  See TAC Count 1, Prayer for Relief.  In addition, the feasibility study requested by CPT is essentially the same as the Corrective Measures Study required for the Site under RCRA.  PSLB at 7.

As to its fourth claim, CPT argues its interests diverge from those of plaintiffs because plaintiffs are not requiring defendants to post the RFS as a cash Remediation Trust Fund that includes the cost of on-site and off-site contamination.  Brief at 12.  This argument is rejected because the Remediation Trust Fund requirement cited by CPT fell under direct oversight regulations which are not applicable here.  Further, the Trust Fund regulation CPT relies upon has been superseded by statute.  See N.J.S.A. 58:10C-27c(4).  There is also no reason to believe plaintiffs will not require the RFS at the Site to conform to all applicable statutory and regulatory requirements.  In addition, plaintiffs are seeking comprehensive off-site relief.  Thus, since CPT

cannot show that its interests diverge from plaintiffs and that plaintiffs are not adequately

representing its interests, mandatory intervention pursuant to Rule 24(a) is denied.

### B.    Permissive Intervention

CPT also requests permissive intervention under Fed. R. Civ. P. 24(b) which provides:

> (b)    Permissive Intervention.
>
>> (1)    In General.  On timely motion the court may permit anyone to intervene who:
>>
>>> (A)    is given a conditional right to intervene by a federal stature; or
>>>
>>> (B)    has a claim or defense that shares with the main action a common question of law or fact.

Pursuant to Rule 24(b)(3), when exercising its discretion as to whether to grant permissive

intervention the court must consider whether the intervention will unduly delay or prejudice the

adjudication of the original parties' rights.

CPT's request for permissive intervention is denied.  Permissive intervention will be

denied if the "intervention would only be a duplication of effort."  Hoots v. Com. of Pa., 672

F.2d 1133, 1135 (3d Cir. 1982).  In addition, when deciding whether to grant permissive

intervention a court should consider, "whether the proposed intervenors will add anything to the

litigation and whether the proposed intervenors' interests are already adequately represented in

the litigation." Worthington v. Bayer Healthcare LLC, 2011 WL 6303999, at *8 (D.N.J. Dec.

15, 2011).  The SM has already discussed the fact that plaintiffs are pursuing comprehensive and

complete relief at the Site, and are vigorously pursuing the litigation.  At best, CPT's

intervention would duplicate efforts already pursued by plaintiffs.

Further, intervention is denied when it will delay the case, interfere with ongoing efforts,

and drive-up litigation costs and expenses.  See In re Safeguard Scis., 220 F.R.D. 43, 49 (E.D.

Pa. 2004). Intervention is also disfavored if the focus of litigation would be unduly dissipated or case management would become exceptionally complicated. <u>Kleissler v. U.S. Forest Service</u>, 157 F.3d 964, 970 (3d Cir. 1998). CPT's intervention will inevitably delay these proceedings due to its expected motion practice and discovery efforts. There is no reason to risk this delay and interference when the case is on track, plaintiffs are vigorously litigating the case, and CPT's interests are protected. "[I]f the interests of the proposed intervenor are already represented in the litigation, courts typically deny such application to intervene." <u>Worthington</u> at *9. This is the case here.

CPT's argument that it has a right to permissive intervention pursuant to N.J.A.C. 7:7A-22.19(a)(2) is wrong as this regulation is not applicable here. The regulation states:

> (a)    To provide for public participation in [DEP's] enforcement process, [DEP] shall …
>
> …
>
> 2.    Not oppose intervention by any citizen when permissive intervention may be authorized by statute, rule, or regulation[.]

As plaintiffs point out, the cited regulation falls under the Freshwater Wetlands Act Rules which "constitute [ ] the rules governing the implementation of the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 <u>et seq.</u>, and the New Jersey Water Pollution Control Act, N.J.S.A. 58:10A-1 <u>et seq</u>[.]" PSLB at 18. CPT is not seeking to intervene or bring any claim under these statutes. Also, CPT has not raised any concerns with the relief the State seeks under the WPCA. <u>See</u> TAC, Count 2. In any event, the cited regulation only refers to the DEP and does not bar defendants from opposing intervention. Plaintiffs write, "[h]ere, the Township's interests are … adequately represented by the State. … Carney's Point offers nothing additional to this litigation and provides no reason for this Court to exercise its discretion to allow permissive intervention. Its motion should be denied." OB. at 39. The SM agrees.

-15-

## 2.    __Preemption/Standing__

In addition to the fact that intervention is denied because CPT cannot satisfy the requirements in Rules 24(a) and (b), there is another reason to deny CPT's motion.  Plaintiffs and defendants argue CPT's motion should be denied because the DEP is adequately exercising its primary enforcement authority at the Site which preempts CPT's claims.  Plaintiffs write, "DEP can exercise 'preemptive jurisdiction,' displacing [CPT's] prior action and leveraging DEP's expertise and perspective to ensure proper enforcement of the State's environmental laws."  OB at 4.  Not unexpectedly, CPT disagrees.  Fortunately, New Jersey case law exists that controls the disposition of the preemption issue where a private party and the DEP simultaneously request similar relief.  The SM finds that the case law supports plaintiffs' argument.  As a result, CPT's motion to intervene will be denied on the alternative basis that its claims are preempted and it otherwise lacks standing to pursue its claims.

It is well settled that the DEP has the primary authority and responsibility to enforce New Jersey's environmental laws.  As noted in Howell Tp. v. Waste Disposal, Inc., 207 N.J. Super. 80, 94 (App. Div. 1986), "the legislature has entrusted to the DEP primary and supervisory enforcement powers under the various environmental protection legislation."  (Emphasis in original).  Further, it is clear, "that it is the DEP which is entrusted initially with the right to determine the primary course of action to be taken against persons who damage or threaten the environment."  Id. at 95; see also Twp. of West Caldwell v. Carant Ltd. P'Ship, 2023 WL 8664494, at *9 (App. Div. Dec. 15, 2023).  The DEP "must normally be free to determine what solution will best resolve a problem on a state or regional basis given its expertise and ability to view those problems and solutions broadly."  NJDEP v. Exxon Mobil Corp., 453 N.J. Super. 272, 294 (App. Div. 2018) (citation and quotation omitted).  The State has the paramount right to control environmental enforcement through its delegated agency, the DEP.  Howell at 93.

Plaintiffs, not private parties such as CPT, are in the best position "to determine what solution will best resolve a problem on a state or regional basis given its expertise and ability to view those problems and solutions broadly[.]" Howell at 95-96; see also id. at 93 (the paramount right of the State to control environmental protection legislation through its delegated agency should not be sacrificed).

Nevertheless, although the State has primary enforcement authority in the environmental arena, its discretion is not unfettered. In an instance where DEP has failed in its mission, neglected to take action essential to fulfill an obvious legislative purpose, or where it has not given adequate and fair consideration to local or individual interests, preemptive jurisdiction does not exist. Howell, 207 N.J. Super. at 96. Further, "where the state agency has failed or neglected to act in the best interest of the citizenry or has arbitrarily, capriciously or unreasonably acted, then a court should permit interested persons to continue with enforcement under the Environmental Rights Act." Id. The legislature has recognized that in some circumstances the DEP may fail to act to correct a problem, it may not take proper and necessary action where conflicts of interest appear, or it may seek less than full relief available under relevant statutes. Id. In such a case there is a "clear right granted to other 'persons' to seek such relief under the Environmental Rights Act." Id.

Since the court is in a position "to protect and harmonize all interests protected by the complex maze of environmental legislation and maintain an orderly progression of litigation arising therefrom," the court decides whether preemptive jurisdiction exists. Id. In an instance where the court determines DEP has adequately, fairly, and fully enforced the applicable statutory requirements with due regard for special local interests, intervention should be denied. Id. at 98. This is true because the unrestricted allowance of multiple enforcement actions is

counterproductive to legitimate DEP action.  Id.  Simultaneous actions involving identical claims raise unnecessary questions concerning authority over the litigation, its conduct and possible settlement.  Howell at 91 (citation and quotation omitted).  Private causes of action are limited because the "DEP must normally be free to determine what solution will best resolve a problem on a state or regional basis given its expertise and ability to view these problems broadly." Exxon Mobil Corp., 458 N.J. Super. at 294 (citation and quotation omitted).

CPT has a heavy burden to demonstrate that plaintiffs are not adequately, fairly, and fully enforcing applicable statutory requirements with due regard for CPT's interests.  There is a presumption that if one party is a government entity charged by law with representing the interests of the applicant for intervention, like exists here, then the representation will be adequate.  Brody By and Through Sugzdinis v. Spang, 957 F.2d 1108, 1123 (3rd Cir. 1992). When a party seeking intervention has the same ultimate objective as a party to a suit, a presumption arises that its interests are adequately protected.  In re Community Bank of Virginia, 418 F.3d 277, 315 (3rd Cir. 2011) (citation omitted).  This presumption applies here because plaintiffs and CPT are seeking similar relief from defendants.  Plaintiffs and CPT are both seeking appropriate ISRA relief, the comprehensive delineation and remediation of all on and off-site contamination at and from Chambers Works, and restoration of all impacted natural resources, together with appropriate resultant damages and penalties.  To overcome the presumption of adequate representation a compelling showing must be made.  Territory of the Virgin Islands, 748 F.3d at 520 (citation and quotation omitted).

A voluminous record has been presented regarding plaintiffs' historical and ongoing actions at the Site.  The record establishes that plaintiffs are diligently taking action to address the contamination at and emanating from the Site, and are pursuing comprehensive relief to

protect the interests of CPT and the public at large.  The SM also finds that CPT cannot show that plaintiffs have not taken an essential action to fulfill an obvious legislative purpose, or that plaintiffs have not given fair consideration to CPT's interests.  Nor can CPT show that plaintiffs have failed to act in the best interests of the citizenry, or that plaintiffs have acted arbitrarily, capriciously, or unreasonably.  As a result, the SM finds that preemptive jurisdiction exists thereby negating CPT's proposed claims.

All of CPT's arguments to the effect that DEP has failed to take an essential action, that it has not acted in the public's best interests, or that it has acted arbitrarily capriciously or unreasonably are without merit.  As to CPT's first claim (ISRA), the argument fails because plaintiffs are not only seeking ISRA relief that mirrors the claims in CPT's state complaint, but they are seeking broader ISRA relief against defendants CPT did not name.  Plaintiffs are also pursuing ISRA triggers not advanced by CPT.  As plaintiffs' note, "the State seeks to broaden enforcement in this action, including not only the requirement to establish an RFS, but also the amount and sufficiency of the RFS.  The State's ISRA claims also involve different ISRA violations[.]"  OB at 33-34.  Plaintiffs' vigorous pursuit of ISRA claims and relief is also evidenced by the fact they successfully resisted defendants' motion to dismiss the claim.  See NJDEP v. E.I. duPont de Nemours and Company, 2022 WL 3703204 (D.N.J. Aug. 26, 2022).

CPT's argument that the State court's ISRA decision in its favor collaterally estops plaintiffs' ISRA claim has no merit.  Collateral estoppel does not apply unless a previous determination is "final, valid, and on the merits."  Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency, 126 F.3d 461, 475 (3d Cir. 1997) (citation omitted).  Judge McDonnell's ruling is not final as defendants' motion for reconsideration remains to be decided.  CPT argues the court does not have jurisdiction over the ISRA deed transfer penalty claims because the issue

was resolved to completion and finality in state court. Brief at 22. The argument is rejected for the reason a final judgment has not been rendered.

CPT's reliance on Judge Hillman's remand ruling to bar plaintiffs' ISRA claim is misplaced. See Carney's Point Township v. E.I. duPont de Nemours and Co., 2017 WL 3189886 (D.N.J. July 26, 2017). First, the decision did not address plaintiffs' preemption argument but instead focused on whether there was fraudulent joinder to destroy diversity. Second, the decision did not decide the Burford and Colorado River abstention doctrines. Id. at *7. ("The Court does not need to make such a determination [on the applicability of Burford and Colorado River] because the matter must be remanded for lack of diversity jurisdiction."). Further, the discussion regarding Burford was non-binding dicta. In addition, Colorado River abstention does not apply because "the pendency of proceedings in state court does not normally bar litigation in federal court of the same issues." National City Mortg. Co. v. Stephen, 647 F.3d 78, 84 (3d Cir. 2011) (citation omitted).[5]

Similar to CPT's first claim, there is no valid basis to contest preemption of CPT's second claim. As to its second claim, CPT argues its interests are not protected by plaintiffs because plaintiffs, "failed to solicit reasonable NRD restoration projects from Carney's Point and failed to consider the NRD restoration project already provided to the NRD mediator." Brief at 12. This argument is rejected because CPT's concerns are premature. Until liability is adjudged the parties and court are not addressing NRD restoration projects. When and if that time comes,

---

[5] As will be further discussed, CPT makes much of the fact plaintiffs did not file their ISRA claim until March 2019. The argument is not persuasive. Plaintiffs' strategic decisions will not be second-guessed. More importantly, as set forth in the controlling case law, the polestar to decide the preemption issue is whether plaintiffs are adequately and appropriately pursuing their ISRA claim, not when the claim was first filed.

plaintiffs are committed to providing CPT all the rights and input afforded to it under the New Jersey Constitution, applicable statutes and regulations, and applicable guidance.

As to its third claim, CPT argues the DEP's enforcement action is deficient and it must intervene because the DEP is not requiring the DuPont defendants to prepare a mandatory feasibility study, a public hearing regarding the study, and the right to pursue a Public Participation Plan. CPT's argument is based on the assumption that since the Site is under DEP's mandatory direct oversight, and it believes the DEP is not currently pursuing the relief required by the applicable statute and regulations, it is entitled to intervene to cure DEP's deficient enforcement action. CPT points to the direct oversight provisions of N.J.S.A. 58:10C-27c which requires the submission of a feasibility study, a remediation funding source other than a self-guarantee in the amount of the estimated cost of the remediation, and the implementation of an approved public participation plan that solicits comments from the surrounding community concerning the remediation.

CPT's argument is premised on its belief that the Site is under direct oversight and is therefore subject to the requirements in SRRA. N.J.S.A. 58:10C-1 et seq.; see also Tr. at 21:6-9; 54:23-24. CPT's argument is misplaced. CPT discounts the fact that Chambers Works is an EPA lead site. "The Chambers Works site is not in compulsory direct oversight." PSLB at 15. As noted by plaintiffs, "at sites where RCRA and GPRA 2020 apply, remediation is conducted under a regime referred to as 'RCRA traditional oversight.'" Id. at 3. Because Chambers Works is EPA-lead, it falls within the RCRA/GPRA exemption to SRRA. See N.J.A.C. 7:26C-2.3(a)(1) and (a)(3); see also NJDEP Guidance Document at 2 (providing for a different track for

-21-

RCRA/GPRA 2020 Sites), ECF 323-6;[6] (the Site's HSWA permit is attached as ECF No. 323-5); N.J.A.C. 7:26E-5.1(f)(1) (creating exception for remedial action work plan requirements for EPA-lead RCRA/GPRA sites).

CPT's third claim is preempted because plaintiffs are pursuing CPT's requested relief. First, the TAC seeks to compel the creation of a public participation plan for Chambers Works. See TAC Count 1, Prayer for Relief.  Second, as discussed by plaintiffs, the "feasibility study" required under direct oversight is essentially the same as the "Corrective Measures Study" already required for Chambers Works under RCRA.  See PSLB at 7.  Third, CPT incorrectly frames the RFS as a direct oversight issue when its establishment is required under ISRA and the Brownfield Act.  Further, even under direct oversight DEP's regulations that previously required a remediation trust fund have been suspended by amendments to SRRA.  N.J.S.A. 58:10C-27(c)(4).  The amended statute supersedes the regulation CPT relies upon.

CPT's fourth claim suffers from the same infirmities as its third claim.  CPT wants to intervene to require DuPont and Chemours to post the RFS as a Cash Remediation Trust Fund and to require the RFS to include the cost to remediate on-site and off-site pollution.  Again, CPT's argument is premised on its erroneous belief that the Site is under DEP's direct oversight. The regulation on which CPT relies is no longer valid by virtue of the 2019 legislative changes to SRRA.  See N.J.S.A. 58:10C-27c(4).  CPT's argument is also denied because it is based on speculation.  CPT argues, "Plaintiffs intend to permit Defendants … to … post the RFS for Chambers Works in a non-cash form, and if a component of the RFS is cash to permit

---

[6] The Guidance Document is titled, "RCRA, CERCLA and Federal Facility Sites Process for SRRA Implementation."

Defendants to post … a discretionary cash escrow[.]" Brief at 10.  No support is provided to support CPT's prediction about what may happen in the future.

In addition, CPT's argument that plaintiffs are not seeking to compel defendants to remediate off-site contamination of PFAS and other contaminants, and that plaintiffs are not including these costs in the RFS estimate, is wrong.  See Brief  at 10; Tr. at 49:1-7.  Paragraph 7 of the TAC reads:

> [t]he State is seeking that Defendants pay all costs necessary to investigate, remediate, assess, and restore the Site itself and all of the off-site areas and natural resources of New Jersey that have been contaminated from Chambers Works.

(Emphasis added).[7]  Further, plaintiffs request an Order requiring defendants to submit a:

> remedial investigation work plan and remedial investigation report pertaining to all off-site locations at which pollutants, contaminants and/or hazardous substances originating from the Site have come to be located, and the establishment of a RFS for Chambers Works in conformance with N.J.A.C. 7:26C-5.1 to 5.13.

See TAC Fourth Count, Prayer for Relief.

It is only when a state agency "has failed or neglected to act in the best interest of the citizenry or has arbitrarily, capriciously or unreasonably acted," that a proposed intervener like CPT can proceed.  Howell, 207 N.J. Super. at 96.  For the reasons discussed above this is not the case here.

CPT recently brought to the SM's attention the November 5, 2024 decision in its state court case denying DuPont's motion for summary judgment.  Carney's Point Township v. E.I. DuPont, et al., SLM-L-251-16 (Law Div. Nov. 5, 2024).  In that case, DuPont argued CPT lacked standing and subject matter jurisdiction to pursue its ISRA claim on account of the fact

---

[7] Other provisions of the TAC document plaintiffs' pursuit of off-site relief.  See TAC at ¶¶512, 513; Count 17, Prayer for Relief.

6668339v1

the State was pursuing ISRA relief in this litigation.  To the extent CPT argues the decision is

dispositive as to the preemption issue involved with its intervention motion, the SM disagrees.

The gist of the State Court's reasoning was that since CPT filed its ISRA claim in 2015 before

the State filed its claim in 2019, CPT's claim was not preempted.  The Court reasoned that

because CPT's ISRA claim was filed before plaintiffs' ISRA claim, plaintiffs failed to enforce

ISRA violations.  The court relied on the following language from the <u>Superior Air Prods.</u>

decision, "DEP's action under the Spill Act is preemptive of private rights under ERA at least

where the DEP acts prior to or upon filing of an ERA proceeding and where the DEP action

subsequently proves insufficient to protect the environment."  216 N.J. Super. at 61.  The SM

assumes CPT reads the opinion as holding that no preemption occurs if a private ISRA claim is

filed before the State's ISRA claim.  The SM disagrees with this interpretation.  In conjunction

with controlling case law, the SM reads the opinion as holding that where the DEP acts first, then

CPT must wait to assess the sufficiency of the DEP's efforts, actions and remedy.  However, in

the event CPT files first then CPT's separate action can only proceed simultaneously with a

similar state enforcement action if CPT shows the effort provided by DEP is insufficient. "In

other words, where the state has failed or neglected to act in the best interest of the citizenry or

has arbitrarily, capriciously or unreasonably acted[.]"  <u>Howell</u>, 270 N.J. Super. at 96.  This is a

determination the court makes.  <u>Id</u>.  ("We believe that the determination of whether DEP, in a

given situation, has exercised properly its preemptive jurisdiction should be resolved by the

court[.]").  It has already been discussed that the State's ISRA enforcement efforts are

comprehensive and are being vigorously pursued.  Therefore, the denial of DuPont's summary judgment motion does not control the outcome here.[8]

      With due respect to the state court's ruling, the SM disagrees with some of its conclusions.  The decision concludes, "Plaintiff has demonstrated that DEP failed to enforce ISRA violations."  Op. at 8.  However, it has already been pointed out that the State is vigorously pursuing broader ISRA relief than CPT.  It is of course true that the State's ISRA claim was filed after CPT's claim.  However, that does not equate to a finding that, "DEP failed to enforce ISRA violations."  In addition, to the extent the decision holds or implies that the State is seeking "less than full relief available under the law," the SM disagrees for the reasons already discussed.  Also, the SM disagrees to the extent the decision holds that if a private ERA claim is filed before a similar state claim, preemption cannot occur.  Op. at 9.  This holding would result in a "race to the courthouse" that is not in the public's best interest.  Also, if timing is dispositive of the preemption issue it would ignore the fact that the State, not CPT, is in the best position to determine what solution will resolve a problem on a statewide or regional basis.  Howell, 207 N.J. Super. at 94.  Permitting multiple enforcement actions based simply on who files a claim first would be counterproductive to legitimate environmental enforcement.  Id. at 98.  Again, with due respect to the State Court's decision, there is no need for CPT's action to proceed where its interests are adequately being enforced and pursued, as they are here by the State.  The fact CPT filed its ISRA claim before the State should not necessarily be dispositive of whether preemptive jurisdiction exits.  Thisconclusion is consistent with Howell which held that there is

---

[8] In addition, even if the ruling is dispositive as to the preemption issue involving CPT's intervention motion, which is not the case, CPT's motion would still be denied because, as discussed herein, CPT does not satisfy the requirements for intervention set forth in Rule 24.

no per se rule about what happens if the State is a second filer.  Instead, "the solution lies within the framework of the individual set of facts in each case."  Id. at 95.

CPT's effort to establish standing is primarily based on the citizen-standing provision of the ERA.  This avenue is barred for the reasons already discussed. To the extent CPT relies on the federal or state declaratory judgment acts to establish standing or jurisdiction, its reliance is misplaced.  See e.g., Heydon v. MediaOne of Southeast. Mich., Inc., 327 F.3d 466, 470 (6th Cir. 2003) (the Declaratory Judgment Act does not "create an independent basis for factual subject matter jurisdiction"); In re Joint E. and S. Dist. Asbestos Litig. v. Fiorelli, 14 F.3d 726, 731 (2d Cir. 1993) ("[A] request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights."); Stop & Shop Supermarket Co. v. Cnty. of Bergen, 450 N.J. Super. 286 (App. Div. 2017) (State Declaratory Judgment Act is procedural and does not create substantive rights or an independent cause of action.).  In addition, there is no support for CPT's position that the court has jurisdiction to hear its mandamus claim.  See In Re Sutcliffe, 573 Fed. Appx. 89 (3rd Cir. July 16, 2014) (citation omitted) (noting that a Writ of Mandamus is an extreme remedy and a party that does not have standing to directly appeal a district court's order does not have standing to pursue mandamus relief).  Also, as discussed, the cited constitutional amendment and DEP AO do not create a private cause of action or otherwise create an independent basis for standing.

## CONCLUSION

For all the foregoing reasons Carneys Point Township's Motion to Intervene will be denied.  CPT does not meet the requirements for mandatory or permissive intervention set forth in Fed. R. Civ. P. 24.  Alternatively, CPT's proposed claims are preempted by plaintiffs' ongoing vigorous prosecution of this action and CPT does not otherwise have standing to pursue its claims.

# <u>O R D E R</u>

The Special Master having received the Motion to Intervene filed by Carneys Point Township and the opposition of plaintiffs and all defendants; and oral argument having been recently conducted; and for all the reasons set forth herein,

IT IS HEREBY ORDERED this 19th day of November, 2024, that the Motion to Intervene filed by Carney's Point Township is DENIED.[9]

By: *s/ Joel Schneider*
        Hon. Joel Schneider (Ret.)
        Special Master

Dated:  November 19, 2024

---

[9] To be clear, the SM is not addressing how the State Court will or should handle the claims in CPT's ISRA complaint.  This decision only addresses and decides the issue before the SM, <u>i.e.</u>, whether CPT may intervene in this litigation.

6668339v1