IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, *et al.*, <br><br> Plaintiff, <br><br> v. <br><br> E.I. DU PONT DE NEMOURS AND COMPANY, *et al.*, <br><br> Defendants. | Civil No. 19-14766 (RMB/JBC) <br><br> (Chambers Works) <br><br> **MEMORANDUM ORDER** |

      **THIS MATTER** comes before the Court on Defendants E.I. Dupont De Nemours and Company's (EIDP), The Chemours Company's, and the Chemours Company FC, LLC's (Chemours) urgent request notifying the Court that, after litigating almost six years before this Court, Plaintiff New Jersey Department of Environmental Protection (NJDEP) has placed the Chambers Works site under Discretionary Direct Oversight (Direct Oversight). [Docket No. 530.]  If the case before this Court was not complicated enough, NJDEP's recent action has injected even more complexity.  NJDEP's eve-of-trial decision has left this Court scratching its judicial head.  Suffice it to say, the Court finds the current trial date in jeopardy, and the Court will hold a conference with all parties on April 1, 2025 at 10:00 AM.

    **I.**    **BACKGROUND**

      Almost six years ago, NJDEP sued, among others, EIDP claiming it severely contaminated the environment surrounding the company's Chambers Works facility located in Carney's Point, New Jersey.  Within the first four years of this action, the parties extensively litigated this matter (motions to dismiss, motion for a preliminary injunction, the

1

filing of amended complaint, discovery motions, and so on).  The Court then sent this case (and a few others that NJDEP had commenced against EIDP) to mediation.  The Court administratively terminated this matter and the other actions pending mediation.

      Ultimately, mediation was unsuccessful.  This Court reopened this matter, and given the age of this case, fast-tracked trial.  The Court gave the parties one year to get this case trial ready and appointed a Special Master to help the parties to do so.  The work that the Special Master has done in this case has been extraordinary.  This Court has had conferences with the parties, ordered briefing, and has set aside the months of May through July 2025 to try this case, with some matters to be tried before the Court and others to be tried before a jury.  The sequencing of that trial was in the process of being sorted out.

      Indeed, a few weeks ago, the Court held a status conference and heard from the parties on several issues, such as trial sequencing, requests to file summary judgment motions, and the need for *Daubert* hearings to resolve disputes over expert testimony (the February 11th Conference).  The Court expressed particular interest in Defendants' proposed motion for summary judgment on federal preemption, because, as Defendants argue, the Environmental Protection Agency (EPA) has primary jurisdiction over the Chambers Works site since the EPA is currently overseeing Chemours' remediation efforts at Chambers Works pursuant to a Corrective Action Permit issued under the Hazardous and Solid Waste Amendments of 1984 (HSWA).  When discussing primary jurisdiction and preemption, Defendants' counsel advised the Court that:

> Chemours . . . has filed an application for a technical infeasibility exception [with the EPA] that would allow [Chemours] to simply contain all the [dense non-aqueous phase liquid contamination (DNAPL)] on site, make sure it doesn't go anywhere, leave it there because technically that's the

2

> appropriate solution. *And EPA will decide that. They will decide what has to be done with the DNAPL.*

[Hr'g Tr. 62:16 to 22 (Docket No. 517) (emphasis added).] Based on the parties' arguments, the Court set a briefing schedule for Defendants' proposed summary judgment motion (addressing preemption and primary jurisdiction), and also notified the parties that it had set aside a few days in April 2025 to hold *Daubert* hearings. A few days after that hearing, the Court directed the parties to provide written submissions to clarify their positions on trial sequencing, specifically, on remediation.

Unbeknownst to the Defendants (and the Court), at the time of the February 11th Conference, the record suggests NJDEP apparently had been contemplating Direct Oversight over Chambers Works. This past December, Chemours' Corporate Remediation Project Director submitted a detailed report to the EPA asserting "technical impracticability" (TI) to remove or treat NAPL at Chambers Works (the TI Report). [NJDEP Resp. Letter dated March 10, 2025 at 4, Ex. 4 (Docket No. 532).] NJDEP protests, saying this was Chemours trying to circumvent NJDEP by going to the EPA and claiming it is too expensive to clean up the contamination at Chambers Works. [*Id.*] In January 2025, the EPA sent the TI Report to NJDEP for review and comment. [*Id.* at 5.] That TI Report, according to an unhappy-with-the-EPA NJDEP, forced NJDEP's hand to place Chambers Works into Direct Oversight. [*Id.* at 5-6.] If NJDEP had been contemplating Direct Oversight, one would expect the Department to have mentioned it at the February 11th Conference or during any other ongoing trial management discussions. Yet NJDEP made no mention to this Court or Defendants of its Direct Oversight plans at the February 11th Conference.

On February 28th, NJDEP issued a formal "Discretionary Direct Oversight" letter to Chemours (on behalf of EIDP and Chemours), asserting regulatory control over the

3

Chambers Works site. [Defs.' Letter dated March 7, 2025 at 1, Ex. A (the Oversight Demand) (Docket No. 530).] Through the Oversight Demand, NJDEP demands that Chemours and EIDP establish a Remediation Funding Source (RFS) in the full amount of the estimated remediation costs determined by one of NJDEP's litigation experts *in this case*. [*Id.*] Chemours and EIDP must also propose a public participation plan, submit a remediation cost review, and submit a task schedule for an Entire Site Response Action. [*Id.*] *Many of these issues are in dispute before this Court.* And many of those requirements impose deadlines that directly overlap with final trial preparations, expert depositions, and possibly the upcoming trial itself.

## II.    DISCUSSION

Defendants ask this Court for immediate relief, arguing NJDEP's administrative directives essentially pre-judge the core issues that are to be resolved at trial here, including whether Defendants are obligated to implement specific remediation measures and in what amounts. Defendants claim NJDEP seeks an end-run around this Court by improperly shifting determination of various contested trial disputes into the administrative sphere.

NJDEP counters that its actions will not affect the trial and requests that this Court continue the trial as scheduled. NJDEP presses that its Direct Oversight does not sidestep ongoing EPA oversight. The Department stresses that Direct Oversight is a legitimate parallel exercise of state authority and does not strip this Court of jurisdiction. While NJDEP says it is willing to stay the Direct Oversight deadlines temporarily, it has not disavowed the substance of its Direct Oversight determination or its implications for the claims at issue in this case. In fact, NJDEP recognizes the RFS it seeks through the Oversight Demand is "perhaps the core component of [its] case" pending before this Court. [NJDEP Resp. at 6.]

4

NJDEP's response raises several concerns.

First, it seems NJDEP's administrative action threatens to undermine this Court's determinations.  Could not the NJDEP, unhappy with this Court's rulings, fall back on its administrative Direct Oversight?  After all, NJDEP's apparent unhappiness with the EPA prompted it to take matters into its own regulatory hands. [NJDEP Resp. at 3, n.1 ("[R]apidly changing developments at EPA have led to uncertainty as to EPA's intended future role at [Chambers Works] . . . .").]  So while NJDEP's Direct Oversight may not have deprived this Court of jurisdiction—an issue that the Court now wants briefing on—confusion and lack of confidence in this Court's determinations loom large if the Court presses on toward trial.  And despite NJDEP's insistence that Direct Oversight does not affect this Court's jurisdiction, the Department's administrative action undermines it, at best, and exploits it, at worse.  Again, NJDEP's Direct Oversight action suggests to the Court that there will be no finality until NJDEP gets what it wants—either from the Court or from administrative proceedings.

To illustrate this point, it seems that in invoking its statutory and regulatory rights for Direct Oversight, the NJDEP has already determined that:  (1) contamination from Chambers Works has injured "more than one environmentally sensitive natural source"; and (2) Chambers Works "has contributed to sediments contaminated by PCBs and arsenic" in surface water above ecological screening criteria. [Oversight Demand.] Yet Defendants challenge these determinations, arguing they are primary issues to be resolved at the upcoming trial.  [Defs.' Letter at 2.]  But if the Court issues any ruling contrary to the NJDEP's determinations laid out in the Oversight Demand, a drawn-out administrative proceeding will apparently ensue where NJDEP could insist on following its own

5

determinations. Will there be finality even after this Court rules? This Court thinks not. And NJDEP has not assuaged this Court's concerns.

Second, how are Chemours and EIDP to prepare their defense in this litigation, knowing that those same defenses may be put to the test again when NJDEP flexes its regulatory muscle? Moreover, if NJDEP is willing to stay the Oversight Demand deadlines "pending resolution of these issues by the Court[,]" see NJDEP Resp. at 6, then the Court sees no reason for the Department to have even issued the Oversight Demand in the first place. If this Court's determinations control, especially on the RFS, then some of the interim deadlines in the Oversight Demand are meaningless. And trying to force Defendants to comply with those deadlines as trial is imminent suggests to the Court that NJDEP wants Defendants to battle on two fronts (at the courthouse and in the administrative arena).

Third, the Court notes the EPA's role. All agree that Chambers Works is an EPA-led, RCRA site subject to a HSWA Corrective Action Permit. And since EPA has asked NJDEP to review and comment on Chemours' TI Report on DNAPLE, it appears to the Court that NJDEP is providing its input to the EPA on corrective measures. Given the Defendants' arguments at the February 11th Conference, the Court has concerns about whether the EPA has "primary jurisdiction" over the Chambers Works contamination cleanup. This Court ordered briefing on that issue. NJDEP's Direct Oversight has heightened this Court's concerns, especially, as NJDEP admits, the Department is exercising Direct Oversight based on Chemours' TI Report submitted to the EPA.

In the end, the Court struggles to see a path forward to try this case as currently scheduled. It may be that the claims have to be decided piecemeal. So the Court hits the "reset button" on this case. The Court will hold a conference on April 1, 2025 at 10:00 AM

to discuss a path forward. The Court will provide new dates for briefing on summary judgment. The Court hereby stays briefing on all summary judgment motions. NJDEP is still required to submit its brief on proposed trial sequencing no later than March 13, 2025.

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

Dated: March 12, 2025

cc: The Honorable Joel Schneider, U.S.M.J. (ret.), Special Master