# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, *et al.*, <br><br> Plaintiff, <br><br> v. <br><br> E.I. DU PONT DE NEMOURS AND COMPANY, *et al.*, <br><br> Defendants. | Civil No. 19-14766 (RMB/JBC) <br><br> (Chambers Works) <br><br> **MEMORANDUM ORDER** |

**RENÉE MARIE BUMB, Chief United States District Judge**

This matter comes before the Court upon its own motion after requesting the parties to provide written submissions on the relevance of evidence concerning the toxicity of PFAS for the impending bench trial on the New Jersey Department of Environmental Protection's (NJDEP) claim under the Water Pollution Control Act (WPCA), N.J. Stat. Ann. §§ 58:10A-1 *et seq.*, against Defendants EIDP, Inc., The Chemours Company, and the Chemours Company FC, LLC (collectively, Defendants). As the parties are aware, this bench trial will focus on liability only. [Docket No. 613.]

Having reviewed the parties' submissions, Docket Nos. 673-674, and the Abbreviated-Supplemental Joint Final Pretrial Order (JFPTO), Docket No. 675, the Court finds that evidence on PFAS' toxicity is not relevant for this bench trial except for NJDEP's claim that Defendants violated N.J. Admin. Code § 7:14A-6.2(a)(5) by not taking "all reasonable steps to minimize or prevent any activity in violation of its permit which has a reasonable likelihood of adversely affecting human health or the environment." The Court

1

agrees with Defendants that evidence on PFAS' toxicity may be relevant to determine whether Defendants violated that regulation. As will be explained, that regulation appears to be a fraction of NJDEP's WPCA claim against Defendants. So the Court will reserve on that issue and will resolve it at the damages phase of this litigation (if WPCA liability is found on other grounds). The Court also finds that evidence on PFAS' toxicity will be relevant to the damages phase of this litigation which is reserved for a jury.

The WPCA makes it "unlawful for any person to discharge any pollutant" except when, among other reasons, "the discharge conforms with a valid New Jersey Pollutant Discharge Elimination System permit [NJPDES] . . . ." N.J. Stat. Ann. § 58:10A-6(a). Under the WPCA, a pollutant includes, among other things, "dredged spoil, solid waste, . . . chemical wastes, . . . and industrial, municipal or agricultural waste or other residue discharged into the waters of the State." *Id.* § 58:10A-3(n). A pollutant under the WPCA includes both "hazardous and nonhazardous" substances. *Id.* Discharge, in turn, means the "intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying, or dumping of a pollutant into the waters of the State, onto land or into wells from which it might flow or drain into said waters or into waters or onto lands outside the jurisdiction of the State, which pollutant enters the waters of the State." *Id.* § 58:10A-3(e). The WPCA imposes strict liability for violations. *See generally State, Dep't of Env't Prot. v. Lewis*, 522 A.2d 485, 489 (N.J. Super. Ct. App. Div. 1987).

Against that backdrop, the Court finds that Defendants' proffered toxicology evidence is not relevant to determine WPCA liability because a pollutant under that law need not be hazardous. N.J. Stat. Ann. § 58:10A-3(n). The WPCA imposes strict liability for discharging pollutants into this State's waters without a permit. N.J. Stat. Ann. § 58:10A-6(a). That

2

liability does not turn on the pollutant's toxicity. So PFAS' toxicity is not a "fact . . . of consequence" to determine Defendants' liability under the WPCA, and therefore, not relevant. Fed. R. Evid. 401(b).

At best, evidence on PFAS' toxicity may be relevant on NJDEP's claim that Defendants violated the WPCA when they violated the conditions of the NJPDES permit by not taking "all reasonable steps to minimize or prevent any activity in violation of its permit which has a reasonable likelihood of adversely affecting human health or the environment." [JFPTO, Ex. 7A-3 (Pls.' Statement of Legal Issues) ¶ 12 (citing N.J. Admin. Code § 7:14A-6.2(a)(5)) (Docket No. 675-9).] That claim appears to require proof on what Defendants knew, or should have known, about the alleged adverse effects of PFAS (if any) on human health or the environment, and what steps Defendants took or failed to take to mitigate a risk to human health or the environment. Evidence on PFAS' toxicity will be relevant for that inquiry. However, the Court will reserve on that issue for this bench trial and submit it to an advisory jury during the damages phase of this litigation.[1]

That said, Defendants contend this Court needs to hear evidence on PFAS' toxicity to "determine the seriousness of the violation" to calculate the penalty's amount. [Defs.' Letter Br. 3 (citing N.J. Admin. Code § 7.14-8.5(g)(1) (Docket No. 73).] That argument confuses this Court's role at the upcoming bench trial.

---

[1] Courts have used the same jury to render binding and advisory verdicts. *See, e.g.*, *Edwards v. First Tr. Portfolios L.P.*, ___ F. Supp.3d ___, ___ 2025 WL 566487, at *3 (N.D. Tex. Feb. 20, 2025) (ruling same jury would be a "binding jury" for plaintiff's Sarbanes-Oxley Act claim, which provided a statutory right to a jury trial, and would also serve as an "advisory jury" for plaintiff's Dodd-Frank Wall Street Reform and Consumer Protection Act claim, which did not provide a statutory right to a jury trial); *see also In re Aircrash Disaster Near Roselawn, Indiana on Oct. 31, 1994*, 909 F. Supp. 1083, 1113 (N.D. Ill. 1995) (empaneling a jury for all issues but treating the jury verdict concerning one of issues as advisory), *aff'd and remanded sub nom. In re Air Crash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 96 F.3d 932 (7th Cir. 1996)

The WPCA authorizes NJDEP to bring a civil action for civil penalties against any person who violates the WPCA "not to exceed $50,000.00 per day of such violation[.]" N.J. Stat. Ann. §§ 58:10A-10(a), (e). The WPCA's regulations provide a framework for NJDEP to follow when assessing civil administrative penalties. *See generally* N.J. Admin. Code § 7.14-8.1(a). Those regulations provide a matrix that identifies the penalty range based on the seriousness of the WPCA violation and the violator's conduct. *Id.* § 7.14-8.5(g). The WPCA regulations divide WPCA violations into three camps: major, moderate, and minor. *Id.* § 7.14-8.5(g)(1)-(3). The seriousness of the WPCA violation can turn on how much the discharge exceeds an effluent limitation established by a permit. *Id.* § 7.14-8.5(g)(1)(i)-(ii), (2). If the permit does not have an effluent limitation or if the discharge does not exceed certain effluent limitations, the WPCA regulations require NJDEP to consider harm to human health or the environment to determine the seriousness of the violation. *Id.* A major violation "[h]as caused or has the potential to cause *serious* harm to human health or the environment" and a moderate violation "[h]as caused or has the potential to cause *substantial* harm to human health or the environment[.]" *Id.* § 7.14-8.5(g)(1)(iii)(1), (2)(i) (emphases added).

All agree that NJDEP never set an enforceable effluent limit for PFAS under any NJPDES permit it issued to Defendants for the operation of the wastewater treatment plant at Chambers Works. Before 2005, NJDEP did not require any provisions for PFOA in the NJPDES permit. In October 2005, NJDEP added monitoring requirements for PFOA to NJPDES Permit No. 005100. [DX_DP1648.83.] Accordingly, since the NJPDES permit did not set effluent limits on PFOA (or PFAS), the WPCA regulations require NJDEP to consider harm to human health or the environment to determine the seriousness of the violation for the penalty's calculation. N.J. Admin. Code § 7.14-8.5(g)(1)(iii)(1), (2)(i). But that inquiry

4

occurs only *after* there has been a violation of the WPCA. N.J. Admin. Code § 7.14-8.5(a). This Court is not determining WPCA penalties or the seriousness of any WPCA violation for penalty purposes. The jury will make those determinations. And Defendants' proffered evidence on PFAS' toxicity will be relevant for a jury to determine the seriousness of any WPCA violation.

Apart from NJDEP's claim that Defendants violated N.J. Admin. Code § 7:14A-6.2(a)(5), the Court struggles to see how evidence on PFAS' toxicity is relevant to Defendants' laches and equitable estoppel defenses as to WPCA liability. Take equitable estoppel as an example. "Equitable estoppel is rarely invoked against a governmental entity," *O'Malley v. Dep't of Energy*, 537 A.2d 647, 650 (N.J. 1987), and courts will estop a governmental entity "only in very compelling circumstances." *Twp. of Fairfield v. Likanchuk's, Inc.*, 644 A.2d 120, 126 (N.J. Super. Ct. App. Div. 1994) (citation and internal quotation marks omitted). To claim equitable estoppel, Defendants must show that NJDEP engaged in conduct or made a representation "intentionally or under such circumstances that it was both natural and probable that it would induce action." *Davin, L.L.C. v. Daham*, 746 A.2d 1034, 1040 (N.J. Super. Ct. App. Div. 2000) (quoting *Miller v. Miller*, 478 A.2d 351, 355 (N.J. 1984)); *accord D'Agostino v. Maldonado*, 78 A.3d 527, 546 (N.J. 2013). Defendants also must show detrimental reliance on NJDEP's conduct. *D'Agostino*, 78 A.3d at 546. Because estoppel is an equitable doctrine, "the equities must weigh in favor of the party seeking its protection." *State v. King*, 774 A.2d 629, 634 (N.J. Super. Ct. App. Div. 2001). Courts should not freely apply the equitable estoppel doctrine "so as to thwart or compromise the legislative will." *Id.* (citing *Cnty. of Morris v. Fauver*, 707 A.2d 958, 969-70 (N.J. 1998)).

Unless Defendants proffer evidence that NJDEP either made an affirmative statement or through its conduct (action or inaction) led Defendants to believe they could discharge PFAS into the State's water with impunity—because PFAS is not toxic to human health or the environment—the Court sees no relevance as to Defendants' proffered evidence regarding PFAS' toxicity at this stage.

**SO ORDERED.**

Date:  June 3, 2025	<u>**s/Renée Marie Bumb**</u>
	RENÉE MARIE BUMB
	Chief United States District Judge