# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, et al., | Case No. 1:19-cv-14766-RMB |
| Plaintiffs, | Fraudulent Transfer Bench Trial |
| v. | |
| E.I. DU PONT DE NEMOURS AND COMPANY, et al., | |
| Defendants. | |

# JOINT FINAL PRETRIAL ORDER

Pursuant to Rule 16 of the Federal Rules of Civil Procedure and the Special Master's email order dated May 25, 2025, the parties submit this Final Pretrial Order ("Order") to govern the conduct of the mini trial of Plaintiffs' fraudulent transfer claims. Separate final pretrial orders will be entered regarding remaining claims and issues. Amendments to this Order will be allowed only in exceptional circumstances to prevent manifest injustice. *See* Fed. R. Civ. P. 16(e). Counsel are urged to move to amend in a timely fashion any portion of the Order that must be changed or modified between the filing of the Order and the trial date.

**APPEARANCES.** Counsel for the parties for this mini trial are listed in **Exhibit 1**.

**INDEX OF EXHIBITS AND APPENDICES.**

| Exhibit | Final Pretrial Order Section | Description |
|---------|------------------------------|-------------|
| 1 | p. 1 | Counsel list |
| 2 | Part II | Stipulated facts |
| 3A | Part V(A) | Plaintiffs' witnesses and summary of their testimony, and Defendants' objections |
| 3B | Part V(B) | Defendants' witnesses and summary of their testimony, and Plaintiffs' objections |
| 4A | Part VI | Plaintiffs' deposition designations |
| 4B | Part VI | DuPont's deposition designations |
| 5A | Part VII | Plaintiffs' experts and Defendants' objections to the qualifications of Plaintiffs' experts and admissibility of Plaintiffs' expert opinions |

| 5B | Part VII | DuPont's experts and Plaintiffs' objections to the qualifications of DuPont's experts and admissibility of DuPont's expert opinions |
| 6A | Part VIII(A) | Plaintiffs' exhibits |
| 6B | Part VIII(B) | Defendants' exhibits |
| 7A | Part IX(A) | Plaintiffs' statement of legal issues |
| 7B | Part IX(B) | Defendants' statement of legal issues |
| Appendix | Final Pretrial Order Section | Description |
| A | Part VII | Curriculum vitae of Plaintiffs' experts |
| B | Part VII | Curriculum vitae of DuPont's experts |

## PART I.   JURISDICTION AND BRIEF SUMMARY OF THE CASE

1.      Familiarity with the subject matter of the case is presumed. This trial is addressed to Plaintiffs' claims set out in Count 13 (Actual Fraudulent Transfer In Relation To Chemours Spinoff) and Count 14 (Constructive Fraudulent Transfer In Relation To Chemours Spinoff) of the Third Amended Complaint. The Parties agree that any remedies as to Plaintiffs' fraudulent transfer claims will be decided at a later date.[1]

2.      Plaintiffs reserve their right to present evidence at an appropriate stage that New DuPont and Corteva are successors to DuPont insofar as these Defendants

---

[1] The Third Amended Complaint includes two additional fraudulent transfer claims: Count 15 (Actual Fraudulent Transfer In Relation To Dow-DuPont Merger and Subsequent Restructurings, Asset Transfers and Separations) and Count 16 (Constructive Fraudulent Transfer In Relation to Dow-DuPont Merger and Subsequent Restructurings, Asset Transfers and Separations). Plaintiffs are no longer pursuing those claims and the Parties are preparing a stipulation of dismissal.

contractually assumed the liabilities of DuPont at issue in this case and therefore are directly liable for those liabilities, as pled in Count 1 (Spill Act), Count 2 (Water Pollution Control Act), Count 3 (Industrial Site Recovery Act), Count 4 (Brownfield and Contaminated Site Remediation Act), Count 5 (Solid Waste Management Act), Count 6 (Air Pollution Control Act), Count 7 (Public Nuisance), Count 8 (Trespass), Count 9 (Negligence/Gross Negligence/Willful Or Wonton Misconduct), Count 10 (Abnormally Dangerous Activity), Count 13 (Actual Fraudulent Transfer In Relation To Chemours Spinoff) and Count 14 (Constructive Fraudulent Transfer In Relation To Chemours Spinoff) of the Third Amended Complaint. Subject to the Court's preference, the parties do not plan to present or argue the issue of New DuPont's and Corteva's contractual assumption of DuPont's liabilities during the fraudulent transfer mini-trial.

3.      The jurisdiction of the Court is not disputed and is based on 28 U.S.C. § 1442(a).

## PART II.  **STIPULATED FACTS**

4.      Stipulated facts agreed upon by the parties are listed in **Exhibit 2**. The parties may move to have the stipulated facts admitted into evidence at the commencement of this mini trial.

5.     Stipulated facts agreed upon by the parties in prior mini trials in this matter are admitted into evidence for purposes of this fraudulent transfer mini trial with equal force as if the stipulated facts had been admitted in this mini trial.

## PART III.PLAINTIFFS' CONTESTED FACTS

1.     One of DuPont's objectives in planning the Chemours spin was to offload DuPont's substantial historic liabilities—including its remediation and litigation liabilities arising from its use or manufacture of PFAS.

2.     DuPont prepared unreasonable estimates of the value of the remediation liabilities allocated to Chemours in connection with the spin.

3.     DuPont and/or its advisors prepared unreasonable estimates of the value of the litigation liabilities allocated to Chemours in connection with the spin.

4.     DuPont and/or its advisors relied on unreasonable financial projections for Chemours in connection with the spin because DuPont and/or its advisors also failed to update the financial projections.

5.     DuPont and/or its advisors prepared or arranged to be prepared a purported solvency opinion for Chemours using unreasonable inputs.

6.     Chemours was insolvent as of the spin date; in particular, the sum of Chemours's debts exceeded its property at a fair valuation.

7.     As of the spin date, Chemours and DuPont believed or reasonably should have believed that Chemours would incur debts that would be beyond its ability to pay as they became due.

8.     As of the spin date, Chemours was engaged in a business for which its remaining assets were unreasonably small in relation to the business.

9.     Chemours did not receive substantially equivalent value for the transfers made and obligations incurred in connection with the spin transaction.

10.    Such transfers and obligations include Chemours's pre-spin payment of a dividend to DuPont; Chemours's post-spin payment of a dividend to shareholders of DuPont—whose own dividend expectation was correspondingly reduced; and Chemours's assumption of DuPont's liabilities and incurrence of corresponding indemnification obligations to DuPont.

11.     Such transfers and obligations were made or incurred, as the case may be, with actual intent to hinder, delay or defraud creditors.

## PART IV. **DEFENDANTS' CONTESTED FACTS**

12.    DuPont had legitimate business purposes for spinning off its performance chemicals business into Chemours, including a belief—informed by multiple third-party advisors—that the spinoff would create value for DuPont, Chemours, and their respective shareholders.

13.     DuPont never intended to—and never thought it could—affect third-party plaintiffs' ability to collect from DuPont if DuPont is found liable for its historic conduct. To the contrary, DuPont understood prior to the spinoff and to this day that the liability allocation and indemnification agreement between DuPont and Chemours does not affect third parties' ability to file suit and recover against DuPont.

14.     DuPont executed the Chemours spinoff according to standard business practices.

15.     The process by which the Chemours spinoff was executed gave Chemours more information than standard business practice in a spinoff.

16.     DuPont carefully executed the Chemours spinoff, including using multiple third party advisors with the goal of ensuring that Chemours would be solvent and adequately capitalized at the time of the spinoff.

17.     DuPont relied on independent third-party advisors to help it decide the divestiture structure; to help it establish Chemours' capital structure; to value the performance chemicals business being spun off; to value the contingent litigation liabilities being assigned to Chemours; and to confirm that Chemours would be solvent and adequately capitalized at the time of the spinoff.

18.     The contingent litigation liability valuation used as an input in the Chemours solvency analysis reflected a reasonable assessment of the fair market

7

value of the contingent litigation liabilities going to Chemours at the time of the spinoff, based on what was known or knowable at the time of the spinoff.

19.    The contingent remediation liability valuation used as an input in the Chemours solvency analysis reflected a reasonable assessment of the fair market value of the contingent remediation liabilities going to Chemours at the time of the spinoff, based on what was known or knowable at the time of the spinoff.

20.    DuPont and Chemours reasonably believed that as of July 1, 2015, Chemours would be solvent, would have sufficient assets in relation to the business in which it was engaging, and would be able to pay its debts as they became due.

21.    As of July 1, 2015, Chemours was solvent, had sufficient assets in relation to the business in which it was engaging, and was able to pay its debts as they became due.

22.    Chemours received reasonably equivalent value for the transfers made and obligations incurred as part of the spinoff.

23.    Chemours has never been insolvent.

24.    Plaintiffs have not been harmed by the Chemours spinoff.

**PART V.  <u>WITNESSES AND SUMMARY OF TESTIMONY</u>**

25.    Witness testimony admitted into evidence in prior mini trials in this matter is admitted into evidence for purposes of this fraudulent transfer mini trial

with equal force as if the testimony had been admitted in this mini trial. Repetitive testimony from the same witness need not be elicited and should be avoided.

26.    Only the witnesses whose names are listed in this section of the Final Pretrial Order will be permitted to testify at this mini trial, absent a showing of good cause. For each witness listed, there must be a description of their testimony and a statement as to whether the witness will testify in person or by deposition. Any objection to a witness must be noted by opposing counsel in this section of the Final Pretrial Order and, for each such witness objected to, the name of the witness and the reason for the objection shall be given.

### C.    Plaintiffs' Witnesses And Summary Of Their Testimony

27.    Plaintiffs intend to call the witnesses listed in **Exhibit 3A** with regard to the claims and defenses to be tried in this mini trial and anticipate that the witnesses will testify as set out in Exhibit 3A. Plaintiffs reserve the right to call any witness listed on any other party's witness list attached as Exhibits hereto. Defendants' objections to Plaintiffs' witnesses are listed in Exhibit 3A.

### D.    Defendants' Witnesses And Summary Of Their Testimony

28.    Defendants intend to call the witnesses listed in **Exhibit 3B** with regard to the claims and defenses to be tried in this mini trial and anticipate that the witnesses will testify as set out in Exhibit 3B. Defendants reserve the right to call

any witness listed on any other party's witness list attached as Exhibits hereto. Plaintiffs' objections to Defendants' witnesses are listed in Exhibit 3B.

### E.    Other Provisions Regarding Witnesses

29.    Fact witnesses other than witnesses who have already testified and have been excused will be sequestered and prevented from hearing the testimony of other witnesses.  Pursuant to Federal Rule of Evidence 615(a)(2), this exclusion rule will not apply to the officer or employee designated by each party as its representative. Expert witnesses disclosed under Federal Rule of Civil Procedure 26(a)(2)(B) shall not be excluded from hearing either fact or expert testimony by any other witness.

30.    A party shall provide a witness list that identifies the witnesses, in order, that it intends to call to testify at this mini trial (either live or by deposition) by 5:00 p.m. three calendar days before the trial day during which the witnesses are expected to testify. The disclosing party shall call the witnesses in its witness list in the order and manner identified—*i.e.* live or by designation—except by agreement of the parties or leave of the Court, on good cause shown. Nonetheless, the listing of a witness does not require the disclosing party to call that witness, either live or by designation, and does not imply or establish that the disclosing party has the power to compel the witness to appear or make the witness available to the opposing party. The provisions of this paragraph apply both to fact and expert witnesses.

## PART VI. <u>TESTIMONY BY DEPOSITION</u>

31.     Witness testimony admitted into evidence through deposition testimony in prior mini trials in this matter is admitted into evidence for purposes of this fraudulent transfer mini trial with equal force as if the testimony had been taken in this mini trial. The same deposition testimony from the same witness need not be designated or offered into evidence again at this mini trial.

32.     In addition to those witnesses that the parties intend to call live at the fraudulent transfer mini trial, as set forth in Part V, the parties intend to call certain witnesses through deposition testimony or offer into evidence the deposition testimony of a witness who, when deposed, was the opposing parties' designee under Federal Rule of Civil Procedure 30(b)(6).

33.     The witnesses and transcripts that Plaintiffs have designated for the fraudulent transfer mini trial are listed in <u>**Exhibit 4A**</u>, except for rebuttal testimony that may be needed based on evidence entered at trial. Defendants' objections and counter designations and Plaintiffs' objections to Defendants' counter designations and counter-counter designations also are listed in Exhibit 4A.

34.     The witnesses and transcripts that DuPont has designated for the fraudulent transfer trial are listed in <u>**Exhibit 4B**</u>, except for any rebuttal testimony that may be needed based on evidence entered at trial. Plaintiffs' objections and

11

counter designations and DuPont's objections to Plaintiffs' counter designations and counter-counter designations also are listed in Exhibit 4B.

35.    The parties may offer some or all of the deposition testimony set forth in Exhibits 4A or 4B. The fact that any such testimony was included in Exhibits 4A or 4B and a party decided not to introduce some or all of a particular witness's testimony designated therein shall not be commented upon at trial. The listing of a deposition designation does not constitute an admission as to the admissibility of the testimony nor is it a waiver of any applicable objection.

36.    Any party may use deposition testimony that is designated by another party to the same effect as if it had initially designated the testimony as its own, subject to all applicable objections.

37.    Designated deposition testimony will be offered to the Court as testimony that the offering party plays by video or, if video is unavailable or preparing a video is not practicable under the circumstances, read into the record, and will count against the designating party's trial presentation time.

38.    If an exhibit is referenced in designated deposition testimony offered at trial and the Court has not sustained an objection to the exhibit's admission into evidence, the designating or counter-designating party may display the exhibit to the Court at the time the deposition designation is read or played at trial, subject to the

requirements of Part VIII, *infra*, as if the exhibit was being shown to a live testifying witness.

39.     All irrelevant and redundant material, such as objections and colloquy between counsel, will be eliminated when the deposition is played or read at trial.

40.     The parties agree that deposition designations and counter-designations will be introduced at the fraudulent transfer mini trial together in the sequence in which the testimony originally occurred, other than with respect to Rule 30(b)(6) testimony of an adverse party. If multiple depositions of the same witness are played, then they shall be played in the order in which they occurred chronologically.

41.     Unless otherwise agreed by the parties, the party calling a witness by designated deposition testimony at this mini trial must identify the designated deposition testimony to be offered from Exhibit 4A or 4B by 5:00 p.m. at least three calendar days before the witness is called at trial. The receiving party must identify its objections and counter-designations by 5:00 p.m. two calendar days before the witness is called at trial. That same evening, the disclosing party must identify its objections to the counter-designations and counter-counter designations by 7:30 p.m. and the parties must meet and confer by 8:00 p.m. that same evening to resolve any objections (*e.g.*, if a witness is called by deposition on Monday, the disclosing party must disclose its designations the preceding Friday evening and the parties must exchange objections and counter-designations and meet-and-confer the

preceding Saturday evening). The offering party shall be charged with the time the witness spends on that party's designations. Each counter-designating party shall be charged with the time the witness spends on that party's counter-designations.

42.    If there are objections that are unresolved, the party intending to use designated deposition testimony shall, at the time of submission of the designated transcript to the Court, submit, on behalf of all parties, a cover letter identifying the pending objections as well as a brief indication (no more than one sentence per objection) of the basis for the objection and the offering party's response to it.

43.    The parties shall use best efforts to present the designated deposition testimony via video. The offering party is responsible for preparing video clips of all of the designated deposition testimony for the witness, including counter-designations. A copy of the video deposition clips, including any counter-designations, shall be provided to the opposing party no later than 12:00 p.m. the day before the designated deposition testimony is expected to be played.  The opposing party shall promptly review the video deposition clips upon receipt and the parties agree to meet and confer in good faith at the earliest possible time to resolve any objections from the opposing party.

44.    When a party intends to use designated deposition testimony at trial, the party using the designated deposition testimony shall provide the Court and opposing counsel with a copy of the transcript of the designations and counter-

designations that will be read or played. Designations and counter-designations shall be color-coded as follows: (a) designations by Plaintiffs in green; (b) designations by Defendants in yellow. The parties will be charged for all time that elapses from the time the witness is called through designated deposition testimony until the next witness is called according to the procedure set forth in Paragraphs 70-72.

45.    Deposition testimony may be used at trial for the purpose of impeachment or rebuttal regardless of whether a party identified that testimony on its list of deposition designations, so long as the deposition testimony is otherwise competent for such purpose. However, a party seeking to use designated deposition testimony for rebuttal must follow the disclosure procedures in this Final Pretrial Order. Nothing in this Final Pretrial Order waives the right of the parties to object on a case-by-case basis to the use of designated deposition testimony for impeachment.

**PART VII.  <u>EXPERT WITNESSES</u>**

46.    Expert witness testimony admitted into evidence at prior mini trials is admitted into evidence for purposes of this fraudulent transfer mini trial with equal force as if the testimony had been taken in this mini trial, such that repetitive testimony from the same expert witness need not be elicited and should be avoided.

47.    All experts shall provide live testimony. Any expert not listed in this section of the Final Pretrial Order shall not be permitted to testify at this mini trial.

Additionally, the curriculum vitae of every expert expected to testify at this mini trial shall be attached to this Order.

48.    Plaintiffs' experts are listed in **Exhibit 5A**. The curriculum vitae of Plaintiffs' experts are included in Appendix A.

49.    Defendants' experts are listed in **Exhibit 5B**. The curriculum vitae of Defendants' experts are included in Appendix B.

50.    Defendants' objections to the qualification of Plaintiffs' experts or the admissibility of the testimony of Plaintiffs' experts are listed in Exhibit 5A.

51.    Plaintiffs' objections to the qualification of Defendants' experts or the admissibility of the testimony of Defendants' experts are listed in Exhibit 5B.

52.    Objections to an expert shall be considered at the time an expert is called to testify a trial. The Court may permit the objecting party to *voir dire* the expert, which shall count against that party's trial presentation time.

**PART VIII. EXHIBITS**

53.    Exhibits admitted into evidence in prior mini trials are admitted into evidence for purposes of this fraudulent transfer mini trial with equal force as if the exhibit had been admitted at this mini trial. The same exhibit need not be admitted again.

54.    The exhibits that Plaintiffs intend to offer at this mini trial are listed in **Exhibit 6A** (except demonstrative exhibits and exhibits to be used solely for

impeachment). Defendants reserve all objections to Plaintiffs' exhibits, except as provided below.

55.    The exhibits that Defendants intend to offer at this mini trial are listed in **Exhibit 6B** (except demonstrative exhibits and exhibits to be used solely for impeachment). Plaintiffs reserve all objections to Defendants' exhibits, except as provided below.

56.    No party objects to any exhibit listed in Exhibit 6A or Exhibit 6B on authenticity grounds. To be clear, any stipulations to the admissibility or authentication of exhibits are for purposes of this case only and made to effectuate this particular trial in the manner the Court has directed. The parties do not waive these objections for any other purpose or in any other proceeding.

57.    All exhibits shall be provided to the Court in electronic fashion. Select exhibits may also be provided to the Court in hard copy.

58.    Copies of the exhibit lists shall be provided to Judge Bumb and the assigned court reporter at the time of trial.

59.    The parties agree that any description of a document on an exhibit list, including the date listed for documents, is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

17

60.    Any party may use an exhibit that is listed on another party's exhibit list to the same effect as though it were listed on its own exhibit list, subject to all evidentiary objections. Any exhibit, once admitted, may be used equally by any party, subject to any limitations as to its admission. The listing of a document on a party's exhibit list is not an admission that such document is relevant or admissible when offered by the opposing side for the purpose that the opposing side wishes to admit the document.

61.    At some point before the completion of a witness' testimony, any party that has used an exhibit with the witness and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence, by exhibit number.

62.    A party will provide exhibits to be used in connection with direct examination at the same time the witness is disclosed pursuant to Paragraph 30, *supra*. Objections to exhibits will be provided by 5:00 p.m. two calendar days before the witness is expected to testify and the parties will meet-and-confer by 7:30 p.m. that night to resolve any objections. A party will provide demonstrative exhibits to be used in connection with a direct examination (including, but not limited to, any PowerPoint slides, poster boards, displays, and non-exhibit physical objects) by 5:00 p.m. the calendar day before their intended use; objections will be provided no later than 7:30 p.m. the night before their intended use; and the parties will meet-and-confer by 8:30 p.m. that night to resolve any objections. If good faith efforts to

resolve the objections fail, the party objecting to the exhibits or demonstratives shall bring its objections to the Court's attention prior to the witness taking the stand. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

63.    A party will provide exhibits to be used in connection with redirect examinations of witnesses called adversely by the other side by 5:00 p.m. two calendar days before the witness is expected to testify. Objections to exhibits will be provided by 5:00 p.m. one calendar day before the witness is expected to testify and the parties will meet-and-confer by 7:30 p.m. that night to resolve any objections.

64.    The parties agree that there is no need to exchange demonstratives that will be created live in Court. The parties also agree there is no need to exchange highlighting, blowups, or callouts of exhibits, demonstratives, or testimony in advance of their use.

65.    A party is not required to provide advance notice of exhibits or demonstratives to be used during an adverse direct examination or cross-examination. The parties will endeavor to provide a hard copy of any exhibit used during an adverse direct examination or cross-examination to both opposing counsel and the witness before proceeding with questioning about an exhibit.

66.     The parties may request the Court to pre-admit into evidence certain exhibits prior to opening statements, so that such evidence may be shown to the Court during opening statements. The parties will exchange any exhibits they wish to have pre-admitted into evidence by 5:00 p.m. two days before opening statements are scheduled to take place. The parties will provide any objections to such exhibits by 10:00 a.m. one day before opening statements are scheduled to take place. All agreed pre-admitted or otherwise pre-admitted exhibits may be published during opening statements. For demonstratives to be used during opening statements, if any, the parties agree to provide the other side with color PDF images of the demonstrative(s) by 5:00 p.m. two days before opening statements are scheduled to take place. The parties will provide any objections to such demonstratives by 10:00 a.m. one day before opening statements are scheduled to take place.

## PART IX. <u>LAW</u>

### A.     <u>Plaintiffs</u>

67.     Plaintiffs' statement of the legal issues for this mini trial is contained in **Exhibit 7A**.

68.     Defendants' statement of the legal issues for this mini trial is contained in **Exhibit 7B**.

## PART X.  <u>MISCELLANEOUS</u>

### A.     <u>Motions In Limine</u>

69.     Plaintiffs do not have any motions in limine for this mini trial.

70.     Defendants do not have any motions in limine for this mini trial.

**B.    <u>Length of Trial</u>**

71.     This matter is scheduled for a bench trial beginning June 30 through July 3, 2025 and continuing on July 14 through July 21, 2025, at the latest. Unless otherwise ordered by the Court, trial will begin each day, Monday through Friday, at 9:00 a.m. and will conclude at 2:00 p.m. There will be one thirty-minute break per day. Trial will not occur on July 4, 2025, a federal holiday. In addition, trial may not occur on July 16, 2025, depending on the Court's availability.

72.     The trial will be timed. Plaintiffs will be allocated 50% of the available trial time. Defendants collectively will be allocated the remaining 50% of the available trial time and will agree among themselves how to allocate it. It is anticipated that there are 40.5-45 available hours for this mini-trial based on 4.5 hours per day and 9-10 available days (20.25-22.5 hours for Plaintiffs and 20.25-22.5 hours to Defendants). To the extent there are days with time that is not attributable to any of the parties, the total available hours will be reduced and reallocated on a proportional basis but with same 50% allocation as described above. For example, if there is an hour of time that is not attributable to any of the parties on the first trial day, Plaintiffs' available hours would be reduced by 30 minutes and

Defendants' available hours would be reduced by 30 minutes. The hours per side will be recalculated on a daily basis.

73.     Unless otherwise ordered, time will be charged to each party for its opening statement, direct and redirect examinations of witnesses who the party calls, presentation of designated deposition testimony, cross-examination of witnesses called by an opposing party, *voir dire* of an opposing party's expert (if permitted) and closing argument.

74.     Given that the Court did not hear any legal argument about the fraudulent transfer claims from any party during the April hearings, Defendants believe it will streamline and shorten trial to present opening statements not to exceed one hour per side.

75.     Plaintiffs propose that opening statements be limited to ten minutes per side, consistent with prior mini trials in this matter. Permitting longer opening statements will not shorten or streamline trial, since opening statements are not evidence and do not obviate the need to present witness testimony.

76.     Each party will designate a person to keep a running total of trial time used by counsel for each party. Counsel for the parties shall confer after each trial day to confirm or reconcile the amount of trial time used by each party that day. If any party uses all of its allotted trial time, the Court will terminate the party's trial presentation.

22

## **CONCLUDING CERTIFICATION**

We hereby certify by the affixing of our signatures to this Final Pretrial Order that it reflects the efforts of all counsel and that we have carefully and completely reviewed all parts of this Order prior to its submission to the Court. Further, it is acknowledged that amendments to this Final Pretrial Order will not be permitted except where the Court determines that manifest injustice would result if amendment is not allowed.

It is hereby ORDERED this 24th day of June 2025, that the foregoing Final Pretrial Order is APPROVED.

*/s/ Joel Schneider*
Hon. Joel Schneider (Ret.), Special Master

**MATTHEW J. PLATKIN**
**ATTORNEY GENERAL OF NEW JERSEY**
*Attorney for Plaintiffs*

By: */s/ Gwen Farley*
Gwen Farley
Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 093
Trenton, New Jersey 08625-0093
Ph. (609) 376-2740

**KELLEY DRYE & WARREN LLP**
Special Counsel to the Attorney General

By: */s/ Geoffrey W. Castello*
Geoffrey W. Castello, Esq.
One Jefferson Road
Parsippany, New Jersey 07054
Tel.: (973) 503-5900
GCastello@KelleyDrye.com

*William J. Jackson, Esq.
515 Post Oak Blvd. Suite 900
Houston, Texas 77027
Ph. (713) 355-5000

*David I. Zalman, Esq.
  Levi M. Downing, Esq.
*Elizabeth N. Krasnow, Esq.
*Lauren E. Schadt, Esq.
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Ph. (212) 808-7800

24

**COUNSEL FOR EIDP, INC., CORTEVA, INC., AND DUPONT DE NEMOURS, INC.:**

**BARTLIT BECK LLP**
Katherine L.I. Hacker (*Admitted pro hac vice*)
Daniel R. Brody (*Admitted pro hac vice*)
Elena Musz (*Admitted pro hac vice*)
1801 Wewatta Street, Suite 1200
Denver, CO 80202
kat.hacker@bartlitbeck.com
dan.brody@bartlitbeck.com
elena.musz@bartlitbeck.com

Katharine A. Roin (*Admitted pro hac vice*)
Amy R. McCalib (*Admitted pro hac vice*)
54 W. Hubbard Street, Suite 300
Chicago, IL 60654
kate.roin@bartlitbeck.com
amy.mccalib@bartlitbeck.com

**CHIESA SHAHINIAN & GIANTOMASI PC**
Jeffrey S. Chiesa
A. Ross Pearlson
Michael K. Plumb
105 Eisenhower Parkway
Roseland, NJ 07068
(973) 325-1500
jchiesa@csglaw.com
rpearlson@csglaw.com
mplumb@csglaw.com

**COUNSEL FOR THE CHEMOURS COMPANY AND THE CHEMOURS COMPANY FC, LLC:**

**NORRIS McLAUGHLIN, P.A.**
Margaret Raymond-Flood
400 Crossing Boulevard, 8th Floor
Bridgewater, New Jersey 08807
(908) 722-0700
mraymondflood@norris-law.com

Kimbrilee Weber
7 Times Square, 21st Floor
New York, New York 10036
(212) 808 0700
kmweber@norris-law.com