# EXHIBIT 7B

## FRAUDULENT TRANSFER MINI TRIAL
## DEFENDANTS' STATEMENT OF THE LEGAL ISSUES

For purposes of this Statement of Legal Issues, the "Liabilities" refers to those DuPont liabilities assigned to Chemours as part of the July 1, 2015 spinoff (the "Chemours Spinoff").[1]

## **General**

1. Do Plaintiffs lack standing to try their fraudulent transfer claims in federal court?

   a. Have Plaintiffs failed to "demonstrate standing for each claim that they press and for each form of relief that they seek," including the fraudulent transfer claims and relief sought? *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

   b. Have Plaintiffs failed to demonstrate that they have standing on their fraudulent transfer claims "with the manner and degree of evidence required at [this] stage[] of the litigation"? *TransUnion*, 594 U.S. at 431 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

   c. Have Plaintiffs failed to demonstrate that the Chemours Spinoff has harmed Plaintiffs in an actual or imminent, concrete and particularized way, when the Chemours Spinoff did not place assets sought by Plaintiffs out of their reach, and all of the assets that would be available to Plaintiffs had the transaction not occurred remain available for recovery? *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

2. Have Plaintiffs failed to show that an actionable transfer occurred where two entities are co-debtors and transfer assets between each other? *See* Del. Code tit. 6, § 1301(12) (definition of "transfer" requires "disposing of or parting with an asset or an interest in an asset"); N.J. Stat. Ann. § 25:2-22 (West 1989) (same); *Crystallex Int'l Corp. v. Petroleos De Venezuela, S.A.*, 879 F.3d 79, 85 (3d Cir. 2018) (holding that a transfer made by a third party *to a debtor* "is not covered, or

---

[1] To the extent the Court would like briefing on any of the issues presented herein, Defendants are happy to provide such papers. This is especially so for the issues related to Plaintiffs' lack of Article III standing on the fraudulent transfer claims, which would be the proper subject of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

1

contemplated, by DUFTA"); *see also Sekendur v. McCandliss*, No. 11 C 8981, 2013 WL 5346453, at *5 & n.5 (N.D. Ill. Sept. 23, 2013) (granting defendants summary judgment when there was "no transfer from the debtor to a third party that could be the basis of a UFTA claim" and noting that the plaintiff's challenge to transfers made *to a debtor* are "somewhat strange" because assets transferred "to a debtor are of course then assets of the debtor available to the debtor's creditors," which leaves a creditor in "a better position, with more assets from which to collect his judgment").

   3.  Do Plaintiffs' fraudulent transfer claims fail on the merits because "[t]he purpose of the [UFTA]" and fraudulent transfer law generally "is to prevent a debtor from placing his or her property beyond a creditor's reach" thereby "deliberately cheat[ing] a creditor by removing his property from the jaws execution," when the Chemours Spinoff did not place any of DuPont or Chemours' assets beyond Plaintiffs' reach? *Gilchinsky v. Nat. Westminster Bank N.J.,* 159 N.J. 463, 475, 732 A.2d 482 (1999) (internal quotation and citations omitted); *Burkhart v. Genworth Fin., Inc.*, 275 A.3d 1259, 1268 (Del. Ch. 2022) ("As expressed in UFTA's official commentary, the purpose of the Act, like its predecessors, is to '[declare] rights and [provide] remedies for unsecured creditors against transfers that impede them in the collection of their claims.'" (quoting Unif. Fraudulent Transfer Act § 1 cmt. 2 (Am. L. Inst. & Unif. L. Comm'n 1984)).

   a.  Do Plaintiffs' fraudulent transfer claims fail because Plaintiffs have not "prove[n]" as they "must" that "the debtor or person making the conveyance has put some asset beyond the reach of creditors which would have been available to them at some point in time but for the conveyance"? *MSKP Oak Grove, LLC v. Venuto*, 875 F. Supp. 2d 426, 435 (D.N.J. 2012) (citing *Gilchinsky*, 159 N.J. at 475–76, 732 A.2d at 482); *compare* Chemours Spinoff *with United States v. Patra*s, 909 F. Supp. 2d 400, 414 (D.N.J. 2012), *aff'd*, 544 F. App'x 137 (3d Cir. 2013) (concluding that a creditor may recover judgment directly from a transferee when the transferee "made it impossible for the [creditor] to be made whole through its liens against the Property").

**Actual Fraudulent Transfer Claims (Third Am. Compl. Count 13 (Chemours Spinoff))**
Del. Code tit. 6, §1304(a)(1); N.J. Stat. Ann. § 25:2-25(a)(1) (West 1989)

   4.  Are Plaintiffs unable to prove "actual intent" where, as a result of the Chemours Spinoff, DuPont knowingly remained liable for the Liabilities and also

assigned them to Chemours, thus creating a co-debtor but not shifting any assets out of Plaintiffs' reach? *Cf. Patras*, 909 F. Supp. 2d at 413 (actual intent to defraud creditors when (1) debtor husband transferred property to an insider, his wife; (2) debtor continued to live in the transferred property; (3) the debtor took steps to conceal his significant financial stake in the property; (4) the transfer was for substantially all of the debtors assets; (5) the sum the transferee paid for the property was less than half of its value; (6) the debtor was insolvent at the time of the transfer; (7) the debtor and transferee testified that the transfer was made to evade tax and bankruptcy liabilities—among other factors).

   5.   Are Plaintiffs unable to prove "actual intent" as to Chemours where Chemours remained a wholly-owned subsidiary of DuPont until the time of the spinoff on July 1, 2015? *Cf. Patras*, 909 F. Supp. 2d at 413.

   6.   Does the totality of circumstances in this case—including DuPont's legitimate business purpose in spinning off Chemours, its reasonableness in working with third-party advisors to ensure that Chemours would be a solvent entity, and DuPont's express understanding that it remained liable to third parties regardless of the indemnification agreement between itself and Chemours, and the fact that Chemours was a wholly-owned subsidiary of DuPont up to the time of the spinoff on July 1, 2015—preclude a finding of fraudulent intent?

**Constructive Fraudulent Transfer Claims (Third Am. Compl. count 14 (Chemours Spinoff))**
(Del. Code tit. 6, §1304 (a)(2); N.J. Stat. Ann. § 25:2-25 (a)(2) (West 1989); Del. Code tit. 6, §1305(a); N.J. Stat. Ann. § 25:2-27(a) (West 1989)

   7.   When determining whether Chemours was insolvent within the meaning of the UFTA, must the Court only consider information that is known or knowable to DuPont as of the date of the Chemours Spinoff, July 1, 2015? *In re Hechinger Inv. Co. of Del.*, 327 B.R. 537, 548 (D. Del. 2005), *aff'd sub nom. In re Hechinger Inv. Co. of Delaware, Inc.*, 278 F. App'x 125 (3d Cir. 2008) (recognizing that "valuation is, to a great extent, a subject exercise," so the court will give deference to values that were not "created with the benefit of hindsight for the purpose of litigation"); *In re Iridium Operating LLC*, 373 B.R. 283, 345 (Bankr. S.D.N.Y. 2007) ("In determining whether a company was adequately capitalized, courts examine not what ultimately happened to the company, but whether the company's then-existing cash flow projections (i.e., projected working capital) were reasonable and prudent when made."); *Russo v. Borough of Carlstadt*, 17 N.J. Tax 519, 523 (Super. Ct. App. Div. 1998) (recognizing that "only facts and

3

circumstances known or knowable as of the assessment date, *unaided by hindsight*," can be considered in a valuation analysis (quotation marks omitted)).

8.  When determining the fair market value of contingent liabilities, is it appropriate to discount the value of the contingent liability by the probability that it will ever occur? *Matter of Xonics Photochemical, Inc.*, 841 F.2d 198, 200 (7th Cir. 1988) ("It makes no difference whether the firm has a contingent asset or a contingent liability; the asset or liability must be reduced to its present, or expected, value before a determination can be made whether the firm's assets exceed its liabilities."); *Covey v. Com. Nat. Bank of Peoria*, 960 F.2d 657, 659 (7th Cir. 1992) (recognizing that "*Xonics* shows that to find the value of a contingent liability a court must determine the likelihood that the contingency will occur" because "[t]o disregard the probability that the firm will not be called on to pay is to regard all firms as insolvent all of the time, for all firms face some (remote) contingencies exceeding the value of their assets").

9.  Did Chemours receive reasonably equivalent value when it received the assets and liabilities related to multiple business lines from DuPont in exchange for transferring to DuPont a $3.9 billion dividend? Del. Code tit. 6, §1304(a)(2); N.J. Stat. Ann. § 25:2-25 (West 1989).

10. Have Plaintiffs failed to show that, as of the date of the Chemours Spinoff, Chemours was "engaged or . . . about to engage in a business or transaction for which the remaining assets of [Chemours] were unreasonably small in relation to the business transaction"? Del. Code tit. 6, §1304 (a)(2); N.J. Stat. Ann. § 25:2-25 (1989).

11. Have Plaintiffs failed to show that, as of the date of the Chemours Spinoff, Chemours "intended to incur, or believed or reasonably should have believed that [it] would incur, debts beyond [its] ability to pay as they became due"? Del. Code tit. 6, §1304 (a)(2); N.J. Stat. Ann. § 25:2-25 (1989).

12. Have Plaintiffs failed to show that, as of the date of the Chemours Spinoff, DuPont intended Chemours to "incur or reasonably should have believed that [Chemours] would incur, debts beyond the debtor's ability to pay as they became due"? Del. Code tit. 6, §1304 (a)(2); N.J. Stat. Ann. § 25:2-25 (1989).

**Remedies under the UFTA**

13. Would any avoidance, attachment or injunction be premature and unnecessary unless and until: (1) Plaintiffs are awarded damages stemming from the historic conduct covered by the Liabilities; (2) Chemours is unable to pay those damages; <u>and</u> (3) DuPont is unable to pay those damages? *See Merrill Lynch Bus. Fin. Servs., Inc. v. Kupperman*, No. CIV.A.064802DMC MCA, 2010 WL 2179181, at *26 (D.N.J. May 28, 2010), *aff'd*, 441 F. App'x 938 (3d Cir. 2011) (deciding that the court "need not pass upon what remedy would be proper under the UFTA" when it had already decided that the creditor was entitled to a priority interest in the debtor's assets on other grounds); *Sheet Metal Workers Loc. 22 Pension, Welfare, Annuity, Educ., Training & Indus. Funds v. Valenti*, No. CIV.A. 07-4576 JLL, 2010 WL 3515580, at *12 (D.N.J. Aug. 30, 2010) (denying plaintiffs' request for avoidance without prejudice when the "specific amounts due" to plaintiffs "ha[d] yet to be determined" such that the court was "not in a position to determine whether avoidance of the . . . transfers [was] 'necessary to satisfy [Plaintiffs'] claim'" (quoting N.J.S.A. 25:2-29(a)(1)).

14. Is avoidance of the transfer or obligation unnecessary to satisfy Plaintiffs' claim because Plaintiffs are able to—and have—sued both DuPont and Chemours to recover on their environmental claims? *See* Del. Code tit. 6, § 1307(a)(1) (avoidance only available "to the extent necessary to satisfy the creditor's claim"); N.J. Stat. Ann. § 25:2-29(a)(1) (West 1989) (same); Del. Code tit. 6, § 1308(b) (creditor's recovery is limited to "the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is **less**.") (emphasis added); N.J. Stat. Ann. § 25:2-30(b) (West 1989) (same); *Roitburg v. Roitburg*, No. A-0047-21, 2023 WL 5621711, at *9 (N.J. Super. Ct. App. Div. Aug. 31, 2023) (recognizing "[e]quitable principles control the court's authority in fashioning such a remedy").

15. Is an attachment or other provisional remedy against the assets transferred to DuPont (*see* Del. Code tit. 6, § 1307(a)(2); N.J. Stat. Ann. § 25:2-29(a)(2) (West 1989) (same)) inappropriate because Plaintiffs are able to—and have—sued both DuPont and Chemours to recover on their environmental claims? ECF 332 (Counts 1, 2, 4, 5, 6, 7, 8, 9, 10, 17).

16. Have Plaintiffs failed to meet the legal requirements for obtaining a constructive trust over the transfers made from Chemours to DuPont in connection with the Chemours Spinoff? *In re Allen*, No. 11–37671, 2012 WL 693461, at *12 (Bankr. D.N.J. Mar. 2, 2012) (recognizing that New Jersey courts treat the

5

imposition of a constructive trust as a "a powerful tool to be used only when the equities in a given case clearly warrant it" (internal quotation marks and citation omitted)); *Wilm. Sav. Fund Soc., FSB v. Kaczmarczyk,* 2007 WL 704937, at *3 (Del. Ch. Mar. 1, 2007) ("Delaware courts utilize the equitable remedy of imposing a constructive trust when one party, by virtue of fraudulent, unfair or unconscionable conduct, is enriched at the expense of another and where other legal remedies are inadequate.").

17. Would an injunction against further disposition of assets by DuPont (*see* Del. Code tit. 6, § 1307(a)(3) (allowing for this remedy "[s]ubject to applicable principles of equity"); N.J. Stat. Ann. § 25:2-29(a)(3) (West 1989) (same)) be inequitable, including because:

   a. Plaintiffs do not claim that EIDP is or has ever been insolvent or otherwise unable to pay for the Liabilities, ECF No. 332, ¶¶ 465–504;

   b. Chemours, EIDP, DuPont de Nemours and Corteva have already established an escrow account which they have collectively agreed to fund and maintain to cover "any and all claims of harm . . . alleged to be related to the manufacture, marketing, design, sale, distribution, supply or use of per and poly fluoroalkyl substances." Memorandum of Understanding, Ex. 14, Dep. of Mark Vergnano (May 25, 2024);

   c. DuPont de Nemours and Corteva have also agreed to indemnify EIDP for the Liabilities. Memorandum of Understanding, Ex. 14, Dep. of Mark Vergnano (May 25, 2024);

   d. Plaintiffs have an adequate remedy at law because they are able to—and have—sued both EIDP and Chemours to recover on their environmental claims. ECF No. 332 (Counts 1, 2, 4, 5, 6, 7, 8, 9, 10, 17)?

18. Have Plaintiffs failed to show that they are entitled to punitive damages?

   a. Are Plaintiffs barred from seeking punitive damages on their fraudulent transfer claims at trial when they did not disclose that they were seeking punitive damages on their fraudulent transfer claims in their Third Amended Complaint or at any time prior to serving their pretrial order on the Defendants? *Compare* ECF 332, pp. 87, 90, 93, 96, 104 (seeking punitive damages with regards to environmental counts, Counts 7 through 12) with pp. 106, 108, 109, 111 (not seeking punitive damages with regards to fraudulent transfer counts, Counts 13 through 16).

      i. Because the trial order is the controlling document at trial and attempting to add a new claim to it is tantamount to asking for leave to amend a complaint, is the Court permitted to deny Plaintiffs' untimely amendment because it was made with "undue delay, bad faith, dilatory motive, prejudice, and futility"? *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019) (internal quotation marks and citation omitted).

      ii. Is Plaintiffs' addition of a punitive damages claim into the fraudulent transfer pretrial order "unjustified" because it "place[s] a burden on the court or counter party," and it shows "a lack of diligence sufficient to justify a discretionary denial of leave"? *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017).

b. Do the facts relevant to the fraudulent transfer claims preclude an award on punitive damages on those claims because they fail to show that the Defendants' conduct was truly egregious? *Longo v. Pleasure Prods., Inc.*, 215 N.J. 48, 58, 71 A.3d 775, 781 (2013) (quoting N.J.S.A. 2A:15-5.12); *Schueler v. Martin*, 674 A.2d 882, 885 (Del. Super. Ct. 1996).

c. Are punitive damages unavailable under the UFTA? *In re Physiotherapy Holdings, Inc.*, No. 13-12965(KG), 2017 WL 5163515, at *3–4 (Bankr. D. Del. Nov. 6, 2017) (concluding that "punitive damages are not available under DUFTA" because "[i]t is clear that under Delaware law punitive damages are not available under principles of equity which Delaware courts apply," and "[p]unitive damages are not remedial and therefore are not applicable under DUFTA," which is "equitable in nature").