## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; et al., *Plaintiffs*, v. E.I. DU PONT DE NEMOURS AND COMPANY; et al. *Defendants,* | Case No.: 1:19-cv-14758-RMB-JBC (Pompton Lakes) 1:19-cv-14765-RMB-JBC (Repauno) 1:19-cv-14766-RMB-JBC (Chambers Works) 1:19-cv-14767-RMB-JBC (Parlin/Sayreville) Hon. Renée Marie Bumb, Chief U.S.D.J. James B. Clark, III, U.S.M.J. |

## CERTIFICATION OF
## JERRY FITZGERLAD ENGLISH
## (In support of Carneys Point Motion for Intervention)

I, JERRY FITZGERALD ENGLISH, of full age certify as follows:

1. I am a New Jersey attorney at law. I have been an attorney from 1965 to the present, and am licensed to appear before the United States District Court, District of New Jersey. I am currently of counsel to Lindabury, McCormick, Estabrook, and Cooper, P.C.

2. My practice is concentrated on the law of the environment.

3. In 1968, I was a New Jersey candidate for the United States House of Representatives.

4. From 1971 to 1972, I was a New Jersey State Senator and legal counsel to the New Jersey Senate Minority.

5. From 1974 to 1979, I was legislative counsel to the Governor.

6. From 1979 to 1982, I was Commissioner of the New Jersey Department of Environmental Protection ("NJDEP") and the State Historic Preservation Officer, (SHPO).

1

Early citizen activism

7. In 1968, when I was a candidate for the United States House of Representatives, I learned that Interstate Route 78 was proposed to be constructed right through the middle of the Watchung Reservation, near where I live in Union County. The Reservation is the only county-wide park of any size in Union County, which includes a historic village (Feltsville).

8. The proposed roadway was going to divide the whole park in half by a straight line. The proposed roadway design would have forever disrupted public access to the park's lake, walkways, habitats, and open spaces afforded to all Union County residents from Elizabeth to Plainfield.

9. I called government representatives to do something about this situation. No one picked up the phone to respond. I realized I had to take action myself.

10. I formed a citizens group called Friends of the Watchung to address our concerns. We contacted the City of Summit, and through our Mayor and City Council, we were able to work with the County Freeholders to propose an appropriate route through the County Park. We also wanted the Freeholders to compel the United States Department of Transportation to hold public hearings, accept public comments, and respond to those comments on the record and with reasons. We wanted an opportunity to tell the government to consider our alternative roadway alignment that would avoid the harmful environmental impacts of cutting right through the heart of the park.

11. We succeeded in getting the Freeholders to Act on our behalf. After ten years, the United State Department of Transportation rerouted Route 78 away from the heart of the Watchung Reservation, preserving the character and availability of the park for County citizens.

12. In 1982, as Commissioner of the NJDEP and as the State Historic Preservation Officer, I signed off on the rerouted Route 78 plan with the consent and approval of the New Jersey Department of Transportation and the Governor.

Creation of the Environmental Rights Act

13. My early experience with Friends of Watchung made me realize how necessary it was for the voice of the citizen to be heard.

14. As a State Senator in the early 1970s, I urged my legislative colleagues to propose legislation that would give voice to citizens who sought to protect the environment when the government was unable or unwilling to do so. This gave rise to a nascent version of the Environmental Rights Act ("ERA").

15. In 1974, as legislative counsel to Governor Brendan Byrne, I told the Governor about my experience with the Friends of Watchung, and about the nascent movement in the legislature to enact an ERA Bill. I wanted to encourage the Governor to enact the ERA. The Governor, at this time, was receiving a lot of letters from citizens complaining that environmental conditions in their communities were not being addressed. The Governor was onboard with the idea of supporting the ERA Bill.

16. On February 15, 1974, Assemblyman Edward H. Hynes, Bergen County, introduced the ERA (Assembly Bill 1245).

17. This Bill recognized the power of an individual citizen or municipality to take independent action to address environmental wrongs. The legislative preamble states, "The Legislature finds and determines that the integrity of the State's environment is continually threatened by pollution, impairment and destruction, that every person has a substantial interest

in minimizing this condition, and that it is therefore in the public interest to enable ready access to the courts for the remedy of such abuses." N.J.S.A. 2A:35A-2.

18. The ERA allowed an ERA plaintiff to take action to compel compliance and assess penalties for environmental violations or seek declaratory or equitable relief to protect the environment or the interests of the public. N.J.S.A. 2A:35A-4.

19. The ERA Bill also permitted an ERA plaintiff to file a complaint without having to prove special damages to himself, as long as he sent the government a 30-day notice letter of his intention to file suit in the event the government chose to act in his stead. N.J.S.A. 2A:35A-11.

20. A municipal ERA plaintiff could file an ERA complaint without having to send a 30-day notice to the government because a pollution-impacted municipality was on the frontline of harm and can take immediate action pursuant to its own police power to protect its residents. N.J.S.A. 2A:35A-11.

21. On December 9, 1974, Governor Brendan Byrne signed the ERA into law. In his press release he said, "This new law is one of the most significant environmental protection measures to be enacted during my term as Governor;" and "private citizens now will have an active role in the fight against pollution." He also said, "every citizen has a substantial interest in the preservation of the environment, and the new law will provide a tool to protect that interest." See Attachment A.

22. As NJDEP Commissioner from 1979 to 1982, I fought hard to strengthen the Department's investigative and enforcement capabilities and was successful in doing so. For example, in 1974, Assemblyman Jim Florio helped author the New Jersey Spill Compensation and Control Act (Spill Act"), which addressed the cleanup of the state's industrially polluted

sites. In 1980, as a congressman, Jim Florio authored the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("Superfund"), which he modeled after the Spill Act, and which addressed the cleanup of industrially polluted sites on a national level.

23. During my tenure as NJDEP Commissioner, I used the Spill Act to address the cleanup of many polluted sites in New Jersey. New Jersey was recognized as a leader in the environmental movement, and I was proud to have advanced the state's reputation in that regard.

24. However, I also recognized the Department was not able to police all environmental violations or take action on all matters brought to the attention of the Department given limited state resources. It is for this reason that I supported the ERA during my tenure as NJDEP Commissioner because it gave the activist citizen or municipality a way to take action when action had to be taken to protect the environment or the public interest, especially when DEP was not taking action, or taking insufficient action.

Supplemental not superseding jurisdiction

25. The purpose of the ERA was to allow citizens and every Political Subdivision of the State to act as private attorneys general to enforce the State's environmental laws when DEP is failing to act, acting insufficiently, or acting in bad faith.

26. As a supporter of the ERA, and as a former Commissioner of the DEP, I never envisioned that DEP, through the Attorney General's Office, could abrogate or eviscerate the ERA by contract or settlement to disenfranchise all citizens and Political Subdivisions from their entitlement to self-protection and environmental protection as provided by the ERA, especially without their consent, on the pretext that DEP has the executive power to act on their behalf, because DEP has no such executive power to disenfranchise citizens and Political Subdivisions of the State as provided by the ERA.

27. The ERA provides a 30-day notice to DEP for private citizens before they can act, but no prior notice is required for municipalities before they can act. That is because a municipality is permitted to take immediate action against a polluter or DEP to protect its residents pursuant to its own municipal police power and without prior permission from DEP.

28. That statutory right cannot be abrogated by DEP as proposed by DEP in the Judicial Consent Order ("JCO") in this matter.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Jerry Fitzgerald English

November 12, 2025

FROM THE OFFICE OF THE GOVERNOR

DECEMBER 9, 1974

FOR IMMEDIATE RELEASE

FOR FURTHER INFORMATION

DICK CAMPBELL

Governor Brendan Byrne signed into law Monday a bill which gives private citizens the right to file suit against environmental polluters.

The bill, A-1245, sponsored by Assemblyman Edward H. Hynes, D-Bergen, permits citizens to file suit to enforce or restrain the violation of any law, regulation or ordinance designed to prevent pollution of the environment.

Byrne said the new law will help maintain New Jersey's position as a national leader in protection of the environment.

"This new law is one of the most significant environmental protection measures to be enacted during my term as Governor," he said. "Private citizens now will have an active role in the fight against pollution."

The Governor said every citizen has a substantial interest in the preservation of the environment, and the new law will provide a tool to protect that interest.

The measure provides that a court, in appropriate cases, may award reasonable counsel and expert witness fees to the prevailing party of up to $2,500.

The new law also provides that a suspected polluter may show as a defense that he is operating under a state-approved abatement schedule.

###

PROPERTY OF
NEW JERSEY STATE LIBRARY

185 W. ...
Trenton, N.J.