## Albert I. Telsey

**From:** Albert I. Telsey
**Sent:** Thursday, January 05, 2017 12:44 PM
**To:** Raymond S. Papperman (Ray.Papperman@dep.state.nj.us)
**Subject:** Carneys Point v DuPont/Telford Dkt No. SLM-L-151-16 - ISRA
**Attachments:** 0215 Dupont ACO Amendment.pdf; RE: OPRA 191220, 191402, 191403, 191405, 191786, 191792, 191796; 2015.01.29 satisfaction ACO obligations for chambers works.pdf; 2014.11.17 ISRA draft administrative consent order amendments.pdf; rcra_cercla_fed_facility_sites DEP Guidance Doc re GPRA sites.pdf

Hello Mr. Papperman –

See memo below in response to our phone calls with regard to this matter. Thank you.

Regards, Al Telsey

### DuPont/Telford's Misdirection to NJDEP regarding ISRA

This follows up our phone calls. You indicated NJDEP was doing an internal investigation with regard to the referenced matter and you asked me for information.

See Drop box invitation for download (sent to you separately) to access Plaintiff's Order to Show Cause (OSC) package filed with the court with regard to the referenced matter and the OSC executed by Judge McDonnell.

ISRA applied to the transfer of the Chambers Works site to Chemours FC. The following summarizes DuPont and Sheryl Telford's misdirection to NJDEP with regard to the applicability/non-applicability of ISRA to the transfer:

1. DuPont/Telford did not tell NJDEP that it had just transferred the real property by deed to Chemours FC when they wrote the January 30, 2015 ISRA letter (the letter) to the Department. DuPont/Telford knew ISRA applied to the transfers to Chemours FC, which is why they wrote the letter to NJDEP to try to explain away ISRA. This deed transfer was the first ISRA trigger not made known to NJDEP. See Telsey Cert. Ex-25 for deed and Ex-26 for letter.

2. With regard to the corporate reorganization exemption raised in the letter, DuPont/Telford did not tell NJDEP what DuPont's net worth was so the Department could determine if Chemours' net worth was not less than 10% of DuPont's net worth (Chemours' net worth was 87% less than DuPont's net worth) and they did not tell NJDEP that DuPont shareholders (independent persons over whom DuPont retained no control) would be receiving 100% of DuPont's Chemours stock. The stock transfer was the second ISRA trigger and it was not subject to the corporate reorganization exemption. See Brief for more details.

3. DuPont/Telford did not tell NJDEP what the cost of cleaning up the Chambers Works Site was going to be so the Department could understand the potential remediation funding source (RFS) requirements for the site. Carneys Point reviewed 30 years of site data and had a RACER® consultant calculate the cost to be $1.7B adjusted to $1.126B net present value. DuPont/Telford did not tell NJDEP any of this. See Certification of Andrelinas (RACER® expert) and Shefftz (economist).

4. DuPont/Telford did not include a copy of the DuPont/Chemours Separation Agreement with the letter, which identified the huge worldwide environmental liabilities Chemours was assuming on behalf of DuPont that would further erode Chemours' net worth. See Telsey Certification Ex-23.

5. NJDEP did not accept DuPont/Telford's argument that the DuPont-Chemours transfer was not subject to ISRA and left DuPont to the consequences of its own interpretation in the Department's Amended ACOs on the other DuPont sites. See attached (ACO amendment).

1

6. NJDEP did not enter into an Amended ACO with DuPont on the Chambers Works Site because the ACO for Chambers Works was retired a few years earlier. See attached satisfaction of ACO obligation letter).

7. NJDEP did not issue a letter of non-applicability to DuPont because NJDEP discontinued the LNA service years ago.

8. The Township asked NJDEP in OPRA requests if the Department had responded in any way to the ISRA non-applicability issue at the Chambers Works site and the answer was "no." See attached (OPRA email).

9. DuPont never provided Carneys Point with an ISRA General Information Notice (GIN) to alert the Township of pending ISRA triggers leaving the Township to discover the ISRA triggers on its own and to take action to protect itself.

10. DuPont went ahead with its transfer to Chemours and ignored ISRA compliance to the detriment of local communities (Carneys Point, Pennsville), which are now saddled with a huge, old manufacturing site that is contaminating surrounding municipalities as far as 2-miles from the site and DuPont has not posted one dime of a $1B cleanup in an ISRA RFS.

11. NJDEP's administrative decision to give lead oversight control of the Site to USEPA did not preempt ISRA.

    a. To the contrary, ISRA is a more stringent remediation statute than RCRA because it requires the posting of an RFS at transfer and is not subject to federal preemption. See In re Adoption of N.J.A.C. 7:26B, 250 N.J. Super. 189, 253 (App. Div. 1991); Manor Care, Inc. v. Yaskin, 950 F.2d 122, 125 (3rd. Cir. 1991); Old Bridge Chemicals, Inc., v. New Jersey Department of Environmental Protection, 965 F.2d 1287, 1292 (3rd Cir. 1992).

    b. DEP and EPA agreed administratively to give EPA lead oversight on RCRA 2020 sites like Chambers Works (see attached Guidance Document), but that did not preempt ISRA; it merely shuffled oversight to accommodate DEP/EPA administrative preferences.

    c. ISRA was enacted with the understanding and expectation that if an ISRA subject industrial establishment was under federal oversight the facility was still subject to ISRA but could comply with ISRA by delivering a RCRA no further action letter (NFA) in lieu of a DEP NFA for an expedited ISRA review. N.J.S.A. 13:1K-11.2.

    d. If the site was not already cleaned up with a RCRA NFA, ISRA regulations permitted ISRA compliance to be achieved for the site if the responsible party obtained a Remediation in Progress Waiver from DEP and posted the required RFS. N.J.A.C. 7:26B-5.4.

    e. In addition, nothing prevented DuPont from complying with ISRA by making Chemours sign onto a Remediation Certification for the Chambers Work site and having Chemours assume ISRA responsibility and post the RFS. N.J.S.A. 13:1k-9e; N.J.A.C. 7:26B-3.3.

DuPont did not deliver to NJDEP a RCRA NFA for the site. DuPont did not post an RFS. DuPont did not deliver to DEP a Remediation in Progress Waiver with proof of posted RFS. DuPont did not deliver to DEP a Remediation Certification with Chemours signed on as responsible party with a posted RFS. DuPont simply did nothing to comply with ISRA at Chambers Works and there are no applicable ISRA exemptions, especially since DuPont transferred the deed, which is an absolute trigger.

DuPont misdirected NJDEP with regard to pertinent facts about ISRA applicability to purposely mislead NJDEP. DuPont is on a path to merge its cleaner business units with Dow and purposely jettisoned its dirtier business units, like Chambers Works, to Chemours – a company with only a tiny fraction of the net worth of DuPont and a huge environmental debt load.

This scenario is exactly what ISRA was designed to prevent. It is the same plan undertaken by Kerr-McGee (succeeded by Anadarko Petroleum Corp.) when it spun off its dirty business units to Tronox that promptly went bankrupt.

If DuPont's ISRA violations are not prosecuted by Carneys Point in its ERA compliance/penalty action then DuPont's "work around" of ISRA will become the strategy for all NJ industrial establishments to avoid ISRA. That is – simply set up an underfunded subsidiary; transfer all polluted real estate and assets to that subsidiary and leave town with all your money. Cite to the DuPont/Chemours transfer as precedent on your way out the door and ISRA is avoided.

2

That is not the law in NJ. It is the exact opposite of what ISRA requires. That scenario is not going to happen in Salem County with the DuPont/Chemours transfers, especially given the size and cost of cleanup required at this facility.

ALBERT I. TELSEY, ESQ.   MEYNER AND LANDIS LLP | ONE GATEWAY CENTER, SUITE 2500 | NEWARK, NEW JERSEY 07102
DIRECT 973.602.3439 | FAX 973.624.0356 | PROFILE : WEBSITE



MEYNER AND LANDIS LLP
COUNSELLORS AT LAW

This message contains privileged and confidential attorney work product that is intended only for the use of the addressee. Reproduction or dissemination of this message by anyone other than the addressee is strictly prohibited. If you believe you have received this communication in error, please notify the sender immediately by telephone (973.602.3439) or e-mail and delete all copies of this message and any attachments. The dissemination of this email in no way creates any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the law firm of Meyner and Landis LLP, its employees, agents, or any other person.