SLM L 000251-16  08/08/2019  Pg 1 of 3  Trans ID: LCV20191400677
SLM-L-000251-16  07/09/2018 12:22:52 PM  Pg 1 of 3  Trans ID: LCV20181187168

MEYNER AND LANDIS LLP
One Gateway Center, Suite 2500
Newark, New Jersey 07102
Telephone: (973) 602-3439
Facsimile: (973) 624-0356
Albert I. Telsey, Esq.
New Jersey Attorney ID #: 016961985
Catherine Pastrikos Kelly, Esq.
New Jersey Attorney ID #: 179042016
Attorneys for Plaintiff
*Carneys Point Township*

**FILED**

AUG - 8 2019

ANNE McDONNELL, P.J.Ch.

| | |
|---|---|
| CARNEYS POINT TOWNSHIP,<br><br>Plaintiff,<br><br>v.<br><br>E.I. DUPONT De NEMOURS AND COMPANY, SHERYL A. TELFORD, THE CHEMOURS COMPANY and THE CHEMOURS COMPANY FC, LLC,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>SALEM VICINAGE: LAW DIVISION<br>DOCKET NO.: L-251-16<br><br>*Civil Action*<br><br>**ORDER GRANTING<br>PARTIAL SUMMARY JUDGMENT**<br>**Count One – Deed Transfer** |

This matter having been opened to the Court by Meyner and Landis LLP (Albert I. Telsey appearing), attorneys for the plaintiff, Carneys Point Township ("**Plaintiff**"), upon notice to the defendant, E.I. DuPont De Nemours and Company ("**DuPont**") with Ballard Spahr, LLP (Glenn Harris, Esq. appearing) for an Order granting Plaintiff Partial Summary Judgment with regard to liability on Count One of the Second Amended Verified Complaint and the Court having considered the papers filed in support of this motion and the arguments of counsel; and for good cause shown;

IT IS on this _8th_ day of _August_, 2018

**ORDERED AND ADJUDGED** that the following facts are deemed established as true:

SLM L 000251-16  08/08/2019  Pg 2 of 3  Trans ID: LCV20191400677
SLM-L-000251-16  07/09/2018 12:22:52 PM  Pg 2 of 3  Trans ID: LCV20181187168

1.  DuPont's transfer of the Chambers Works Site located in Pennsville and Carneys Point Townships, Salem County ("Chambers Works") to The Chemours Company FC, LLC ("Chemours FC") by deed dated January 23, 2015 filed with the Salem County Clerk's Office on January 30, 2015 ("Deed Transfer") triggered the requirement for DuPont to comply with the New Jersey Industrial Site Recovery Act and its applicable regulations ("ISRA") at Chambers Works and surrounding impacted areas.

2.  DuPont failed to comply with ISRA by failing to file an ISRA General Information Notice ("GIN") with the New Jersey Department of Environmental Protection ("DEP") with regard to the Chambers Works Deed Transfer to Chemours FC in violation of N.J.A.C. 7:26B-3.2 (Violation 1).

3.  DuPont failed to comply with ISRA by failing to file an ISRA GIN with Carneys Point Township with regard to the Chambers Works Deed Transfer to Chemours FC in violation of N.J.A.C. 7:26B-3.2 (Violation 2).

4.  DuPont failed to comply with ISRA by failing to remediate the Chambers Works Site and surrounding impacted areas prior to the Deed Transfer to Chemours FC in violation of N.J.A.C. 7:26B-3.3(a) (Violation 3).

5.  DuPont failed to comply with ISRA by failing to execute and file with DEP a Remediation Certification indicating DuPont agreed to remediate the Chambers Works Site and surrounding impacted areas after the Deed Transfer to Chemours FC in violation of N.J.A.C. 7:26B-1.10(b) (Violation 4).

6.  DuPont failed to comply with ISRA by failing to prepare and file with DEP a Remediation Cost Review form setting forth the amount of the remediation funding source ("RFS")

SLM L 000251-16  08/08/2019  Pg 3 of 3  Trans ID: LCV20191400677
SLM-L-000251-16  07/09/2018 12:22:52 PM  Pg 3 of 3  Trans ID: LCV20181187168

to be posted to remediate the Chambers Works Site and surrounding impacted areas as a result of the Deed Transfer to Chemours FC in violation of N.J.A.C. 7:26C-5.10 (Violation 5).

7.  DuPont failed to comply with ISRA by failing to post the RFS necessary to remediate the Chambers Works Site and surrounding impacted areas using a Remediation Trust Fund Agreement or other applicable funding device as a result of the Deed Transfer to Chemours FC in violation of N.J.A.C. 7:26B-3.4 (Violation 6).

**AND IT IS FURTHER ORDERED AND ADJUDGED** that movant's counsel shall serve a true copy of this Order upon all parties by First Class Mail within 3 days of receipt of the "filed" copy of this Order.

8. Motions for reconsideration may be filed. There is a sixty (60) page limit including exhibits.

_____
The Honorable Anne McDonnell, P.J.Ch.

X  Opposed

___ Unopposed

Reasons on record
02/13/19  A.M

3

```
                                   SUPERIOR COURT OF NEW JERSEY
                                   LAW DIVISION, CIVIL PART
                                   GLOUCESTER COUNTY
                                   DOCKET NO.  SLM-L-251-16
```

TOWNSHIP OF CARNEYS POINT, )
                          )
        Plaintiff,        )    TRANSCRIPT
                          )        OF
    vs.                   )    TELEPHONIC
                          )     DECISION
E.I. DUPONT DE NEMOURS    )
and COMPANY, et al.,      )
                          )
        Defendants.       )

            Place:   Gloucester County Justice Complex
                     70 Hunter Street
                     Woodbury, New Jersey  08096

            Date:    February 13, 2019

BEFORE:

    HONORABLE ANNE MCDONNELL, P.J.Ch.

TRANSCRIPT ORDERED BY:

    ALBERT I. TELSEY, ESQ.
    (Meyner and Landis, LLP)

APPEARANCES:

    ALBERT I. TELSEY, ESQ.
    CATHERINE P. KELLY, ESQ.
    (Meyner and Landis, LLP)
    Attorneys for the Plaintiff

    GLENN A. HARRIS, ESQ.
    DAVID A. HAWORTH, ESQ.
    (Ballard Spahr)
    Attorneys for Defendant DuPont

APPEARANCES (Cont.):

    MARGARET RAYMOND-FLOOD, ESQ.
    EDWARD A. HOGAN, ESQ.
    (Norris McLaughlin, P.A.)
    Attorneys for Defendant Chemours

Transcriber Anne Yowell
PAT'S TRANSCRIPTION SERVICE
504 Forest Court
Williamstown, NJ   08094
Phone:   (856) 728-3151
Fax:     (856) 728-4771
E-mail:  typistpat@comcast.net
Sound Recorded:
Recording Operator: Aime Isaak

3

I N D E X

PROCEEDINGS                                              PAGE

BY THE COURT:

    Statements of Facts                                    5

    Decision - Motion For Summary Judgment
    Granted                                               24

4

           THE COURT: Good morning. Can you hear me?
I have a new phone so I might goof this up at some
point. In any event, this is the matter of Carneys
Point versus DuPont, et al. It's a Salem action under
Docket L-251-16. Who appears for the plaintiff,
Carneys Point?
           MR. TELSEY: Albert Telsey, Meyner and
Landis.
           MS. KELLY: And Catherine Kelly from Meyner
and Landis.
           THE COURT: And who appears for DuPont and
Telford?
           MR. HARRIS: Glen Harris, Your Honor, from
Ballard Spahr.
           MR. HAWORTH: And David Haworth from Ballard
Spahr. Good morning.
           THE COURT: Good morning. And for the
Chemours company?
           MS. RAYMOND-FLOOD: Margaret Raymond-Flood
from Norris McLaughlin.
           MR. HOGAN: And Edward Hogan from Norris
McLaughlin.
           THE COURT: All right. I apologize in
advance because it's more polished if I write it, but
given the quantity and quality of the pleadings and the

5

arguments, it's just easier for me to do it this way.
I'll first go through the facts and then I'll go into a
discussion of the law.
           Now before I do that I did get a letter
indicating that the defendants are willing to
participate in mediation, and I got a letter that the
plaintiff is willing to participate in financial
mediation. So I take it you're not willing to mediate
whether or not ISRA applies. Is that what your letter
said, Mr. Telsey?
           MR. TELSEY: That's what I understand the
position is of my client before I talk to the entire
board, but I will be talking to the entire board.
           THE COURT: Okay. In any event, I've decided
to render this as a tentative Decision subject to
finding out what you're doing about mediation, et
cetera.
           All right. So now with respect to the facts.
And the best way I find to do this is I'm just going to
say what the plaintiff says, what the defense is, and
what I understand the facts to be.
           Statement of Facts Number One. DuPont
Chamber Works is a "industrial establishment" subject
to ISRA because it has an NAICS number subject to ISRA
and has admitted Chambers Works is an industrial

6

establishment. And the citation is to Mr. Telsey's Certification, Exhibit 33 at 5. The defendants' response was denied.

Now in reviewing these I am guided by the rules. Rule 4:46-2a requires the motion to be supported by a numbered statement of material facts with citation to the record. And it also provides at Rule 4:46b that sufficiently supported statements of fact will be deemed admitted unless specifically disputed with a citation to the record.

Now the denial does not contain a citation to the record but there is a counter-statement that says, the site has been the subject of an ongoing remediation under a 1998 USRCRA/HSWA corrective action permit which on its face applies to the investigation and remediation of the entire site including groundwater.

So that I do find that Chambers Works is an industrial establishment subject to ISRA and I'll address it further in my Decision.

Statement of Fact Number Two for the plaintiff. In August 2001 DuPont submitted an application to the DEP requesting confirmation that DuPont's sale to Bristol Myers Squibb of pharmaceutical assets at the Chambers Works site was not an ISRA trigger because it did not involve the transfer of real

7

property. The citation is the Telsey Certification, Exhibit 1, DuPont Bristol Myers Squibb Letter of Non-Applicability of August 8, 2001. The response is denied as stated, and the counter-statement, the site is an RCRAGPRA2020 site and EPA is the lead agency for remedial activities.

I don't find this to be a material fact, so I'm not going to determine it.

Number three of plaintiffs. On December 18, 2014 DuPont's holding company filed a registration statement with the SEC stating that pursuant to a Separation Agreement DuPont intended to spin off its performance chemicals business and real estate including Chambers Works property to the Chemours Company and its subsidiary, Chemours F.C. The citation is the Telsey Certification, Exhibit 22.

The response is denied as stated. The counter-statement, plaintiff filed a separate lawsuit against Chemours alleging inter alia that the site is subject to the MHWFSA statute. I am deeming that that's admitted.

Number four on the plaintiff's statements of fact. On January 23, 3015 DuPont executed a deed transferring the Chambers Works real property to Chemours. The deed was recorded in the Salem County

8

Clerk's Office January 30, 2015. The cite is the Telsey Certification, Exhibit 2, the deed to Chemours F.C. The response is admitted that the deed transferring Chambers Works to Chemours was signed by DuPont on January 23, 2015, denied that it was delivered on that date, admitted it was recorded January 30, 2015. There is a counter-statement but it doesn't pertain to this numbered statement of the plaintiff.

Number five. On January 30th DuPont sent a letter to DEP explaining that the Chemours spinoff was exempt from ISRA as "corporate reorganization not substantially affecting the ownership of an industrial establishment" and requesting that DEP provide a confirming letter of ISRA non-applicability. Telsey Certification, Exhibit 33. It goes on, DEP never replied to DuPont's letter and never gave a letter of ISRA non-applicability for the Chemours spinoff, nor for Chambers Works, nor for any other DuPont Site. And that's the Telsey Cert. Exhibit 3, which is a memo from Matt Coeffer, C-O-E-F-F-E-R, at DEP. And the response is admitted in part. Counter-statement DuPont, and now Chemours have been diligently and thoroughly investigating and remediating Chambers Works pursuant to and in full compliance with the EPA RCRA corrective

9

action program as ACO with DEP and a DEP permit. I'm satisfied that everyone on the line knows what these initials are and you can test me to see if I know at any point.

So I'm understanding this to mean that on January 30, 2015 DuPont did send that letter requesting a letter of ISRA non-applicability and that the DEP did not respond. And the counter-statement that the work's ongoing pursuant to the RCRA action in which the lead is EPA but there is a Consent Order with the DEP.

Number six. DuPont did not submit a GIN to DEP within five days of DuPont's December 18, 2014 filing with the SEC, which would have notified DEP of its intention to transfer the Chambers Works real property to Chemours F.C. Carneys Point reviewed DEP records and found no GIN filed by DuPont related to the deed transfer. Telsey Certification, paragraph five. The response is admitted in part. And the counter-statement, though EPA is a lead agency for the RCRA program, DEP is intimately involved with that process including providing guidance.

Number seven is the same allegation as six, except that the GIN should have been sent to Carneys Point as well and the Certification of Carneys Point business administrator Marie Stout is provided wherein

10

she indicates she searched the records and no GIN notice was filed with Carneys Point. And the response is admitted in part. And the counter-statement, Chemours has continued to remediate Chambers Works in accordance with EPA directives including submitting in June 2017 a preliminary assessment site investigation report which was prepared in full compliance with DEP requirements for the entire Chambers Works property.

So that I am taking that as it's admitted that a GIN was not filed with Carneys Point or sent to Carneys Point.

Number eight. DuPont did not remediate Chambers Works or offsite impacted areas before transfer of its property to Chemours. Carneys Point reviewed DEP and EPA records and found that DEP has not issued a No Further Action letter for the site or its equivalent. EPA has not issued its No Further Equivalent for the site and a licensed site remediation professional has not issued a No Further Action equivalent for the site. That's from the Telsey Certification and it's at Exhibit 6. The response is denied as stated. The counter-statement, there is no evidence that hazardous substances are migrating in the groundwater from the Chambers Works property into Carneys Point. I'm taking this to mean that the

11

property is still being remediated under that RCRA with guidance from DEP.

Number nine. DuPont did not submit a remediation certification to DEP before transferring the real property from Chambers Works to Chemours F.C. The remediation certification ought to have promised to remediate the site and impacted off-site areas post-transfer, and Carneys Point reviewed DEP records and found no such remediation certification. And that's the Telsey Certification, July 6th of 2018, paragraph seven. And the response is denied as stated. The counter-statement, plaintiff has not identified any evidence in the record supporting that it will be stuck with having to remediate Chambers Works.

Number ten. DuPont did not submit a remediation review form to DEP before transferring the site to Chemours. This ought to have set forth the amount of the remediation funding source to be posted. Carneys Point reviewed DEP records and did not find these documents. And that's the Telsey Certification, July 6, 2018 at paragraph eight. It's denied as stated. Counter-statement, DuPont repeatedly described to DEP the exact nature and timing of the corporate reorganization. Some of these aren't matching up correctly; I apologize.

12

        All right. Number eleven. DuPont did not post an RFS before transferring the real property to Chemours F.C. On January 30, 2015 Carneys Point reviewed DEP records and found no remediation trust fund agreement or other posting by DuPont for the deed transfer. And that is denied as stated. And the counter-statement, in multitude of written and verbal communications DuPont reached out to DEP to inform DEP of the corporate reorganization including the impending conveyance of the site and to learn from DEP how best to affect the transfer of site permits. So that I am considering it's admitted that DuPont did not meet the ISRA requirements because it believes that they do not apply.

        Paragraph twelve. Carneys Point has requested DEP to take action against DuPont for ISRA violations at the Chambers Works property on numerous occasions. That's the Telsey Certification at paragraph ten. And that is denied. The counter-statement, DuPont submitted formal applications to DEP to transfer specific permits and Administrative Consent Orders to Chemours effective February 1st of 2015. And DEP transferred all of the permits to Chemours shortly after conveyance of the site to Chemours and DEP clearly understood the nature of the transaction.

13

        Can you still hear me? Are you still there? No. I lost them.

        (OFF THE RECORD)

        THE COURT: Hello? Sorry. I knocked the new phone over.

        MR. HARRIS: So much for technology, Your Honor.

        THE COURT: I know. It was my elbow. All right, so let me just get you back on the record. For Carneys Point who appears?

        MR. TELSEY: Albert Telsey.

        MS. KELLY: Catherine Kelly.

        THE COURT: For DuPont and Telford?

        MR. HARRIS: Glenn Harris and David Haworth.

        THE COURT: And for the Chemours Company, et al?

        MS. RAYMOND-FLOOD: Margaret Raymond-Flood from Norris McLaughlin. Ed Hogan has left, Your Honor.

        THE COURT: Thank you. Okay. Sorry he couldn't stay.

        Now what's the last thing you heard? Do you know what number I was on?

        MS. KELLY: I thought we were on Statement of Material Facts eleven.

        THE COURT: Okay. So eleven, DuPont did not

14

```
 1          post an RFS before transferring the site to Chemours
 2          F.C., and although it's denied as stated, it's
 3          basically admitted that they didn't, but the defense
 4          position is ISRA's not applicable so why would they.
 5                  Twelve.  Carneys Point has requested DEP to
 6          take action against DuPont for ISRA violations.  And
 7          the response to that was denied.  DuPont submitted
 8          formal applications -- the counter-statement, DuPont
 9          submitted formal applications to DEP to transfer
10          specific permits and Administrative Consent Orders to
11          Chemours effective February 1, 2015.  And DEP
12          transferred all of the permits to Chemours shortly
13          after the conveyance of the site, so clearly DEP
14          understood the nature of the transaction.
15                  And number thirteen.  DEP has taken no action
16          against DuPont for ISRA violations at Chambers Works.
17          That's the Telsey Certification at paragraph eleven.
18          Admitted in part is the response.  The counter-
19          statement, DuPont advised DEP that ISRA may not apply
20          to the corporate reorganization beginning at a
21          September 8, 2014 meeting attended by a senior DEP site
22          remediation personnel.
23                  Fact number fourteen, plaintiffs.  On August
24          30, 2017 DEP directed DuPont to comply with the Spill
25          Compensation and Control Act, N.J.S.A. 58:10-11 et seq.
```

15

```
 1          The Spill Act at the site but this does not address
 2          ISRA violations at the site.  That's the Telsey
 3          Certification, Exhibit 5.  The response from the
 4          defendants, denied as stated.  The counter-statement,
 5          DuPont repeatedly explained to DEP why the corporate
 6          reorganization was analogous to several other corporate
 7          reorganization with respect to which DEP had
 8          conclusively determined that ISRA did not apply.
 9                  And I'm through with the plaintiffs facts,
10          and now there's some additional counter-statements.
11          DEP affirmed to DuPont prior to the conveyance that so
12          long as the corporate reorganization was analogous to
13          those prior corporate reorganizations DEP concurred
14          that ISRA did not apply.  Counter-statement.  DuPont
15          submitted to DEP a letter dated January 30, 2015 which
16          outlined DuPont's legal analysis of the non-
17          applicability of ISRA to the corporate reorganization
18          based on DEP's decision with respect to the Conoco
19          transaction and other prior transactions, each of which
20          had received letters of ISRA non-applicability from the
21          DEP.
22                  Counter-statement.  The DuPont letter did not
23          request a response and though DEP received and reviewed
24          the letter, it elected not to respond.  After
25          completing the transaction DuPont confirmed to DEP that
```

16

```
 1    Chambers Works had been conveyed to Chemours.
 2              Counter-statement.  Each of the transactions
 3    cited in the DuPont letters factually analogous to
 4    either the corporate reorganization, or at a minimum,
 5    to the first step of the corporate reorganization
 6    involving the deed transfer from DuPont to Chemours on
 7    about January 30, 2015.
 8              The defense states with respect to the claim
 9    -- well two things.  One, discovery is not complete on
10    the transaction and on various other issues.  With
11    respect to plaintiff's claim, it is standing to assert
12    the claims in the lawsuit pursuant to the Environmental
13    Rights Act and related issues as to whether this issue
14    is premature.
15              There are material issues of fact on which
16    discovery is needed including, without limitation, (a)
17    whether plaintiff notified NJDEP of its concerns prior
18    to filing this lawsuit, (b) whether plaintiff requested
19    that NJDEP take action against DuPont to enforce ISRA
20    and other DEP regulations prior to filing the lawsuit,
21    (c) whether plaintiff requested that DEP take action
22    under ISRA and other DEP regulations against DuPont
23    prior to filing the lawsuit and (d) whether DEP took
24    actions, the sufficiency of those actions, and whether
25    those actions are complete and/or whether DEP decisions
```

17

```
 1    constitute an abuse of discretion.
 2              And then defense counter-statement.  There
 3    are material issues of fact precluding summary judgment
 4    if plaintiff disputes that the entire site is "subject
 5    to operational closure and post-closure maintenance
 6    requirements pursuant to the Major Hazardous Waste
 7    Facilities Citing Act or the Solid Waste Disposal Act"
 8    because each of these sites shall not be considered
 9    industrial establishes and are thus not covered by
10    ISRA.  And they cite to N.J.S.A. 13:1k-8 and N.J.A.C.
11    7:26b-2.1b.  And that concludes the statement of facts
12    and I guess of issues.
13              All right.  First, I rely on Ironbound Health
14    Rights Advisory Commission vs. Diamond Shamrock Chem.
15    Co. at 216 N.J. Super. 166 at page 174, an Appellate
16    Division case from 1987 that plaintiff does indeed have
17    standing under the Environmental Rights Act to bring
18    this ISRA, this claim that the defendants have failed
19    to comply with an applicable environmental statute.
20    And particularly, even if the state takes action, a
21    citizen may under certain circumstances supplement that
22    action by directly pursuing the polluter.
23              And I also rely on Howe vs. Waste Disposal at
24    207 N.J. Super. 80, page 99-100.  The Environmental
25    Rights Act grants a person's standing to maintain an
```

18

action for declaratory and equitable relief for the protection of the environment. And the standards would be established by the particular acts which are being sought to enforce. In that case, the Solid Waste Act, the Water Pollution Act and the Spill Act. In our case ISRA.

That's standing. So I do find the plaintiff has standing.

Next I'll talk about whether a change of ownership includes the sale or transfer of real property. N.J.S.A. 13:1k-8 and N.J.A.C. 7:26b-1.4 define any change in ownership to mean the sale or transfer of the business of an industrial establishment or any of its real property. The statute goes on to except certain events from those constituting a change in ownership. The defendant contends that its transfer of Chambers Works' deed did not constitute a change of ownership because it fell into one of the exceptions.

Specifically, defendant relies on the statute's corporate reorganization exception, its common ownership exception, and its indirect owner exception. The corporate reorganization exception provides that a corporate reorganization not substantially affecting the ownership of the industrial establishment will not constitute a change of

19

ownership. That's N.J.S.A. 13:1k-8.

The common ownership exception provides that a transaction or series of transactions involving the transfer of stock, assets or both among corporations under ownership if the transaction or transactions will not result in the diminution of the network of the corporation that directly owns or operates the establishment by more than ten percent or if an equal or greater amount in assets is available for the remediation of the industrial establishment before and after the transaction or transactions will not constitute a change of ownership. And that's the same cite.

The indirect ownership exception provides that a transaction or series of transactions involving the transfer of stock, assets or both resulting in the merger or de facto merger or consolidation of the indirect owner with another entity or in a change in the person holding the controlling interest of the indirect owner of an industrial establishment when the indirect owner's assets would have been unavailable for cleanup if the transaction or transactions had not occurred will not constitute a change of ownership.

Chemours was a wholly owned subsidiary of DuPont when the transfer occurred. And defendant

20

relies on that in part in saying there was no substantial change in the ownership or control of Chambers Works. However, the statute makes clear that any change in ownership is substantial if it results in fewer available assets for the site's remediation. And again, that's the same site.

Here, the transfer resulted in a diminution of value of the direct owner of the corporation, DuPont because DuPont had a net worth of approximately 49 plus billion and Chemours on the other hand had a net worth of 6.29 billion after the transfer.

Plaintiffs asks the court to turn its attention away from the statute's exceptions which apply to complex corporate transactions involving the sale or transfer of stock, debt or assets and focus instead on the rule defining change of ownership, and that appears to encompass any sale of an industrial establishment's real property.

The legislature's findings, which underlie ISRA in its entirety and describe its purpose, state "the acts and position of a cleanup plan approval before the transfer or upon the closing of an industrial establishment and the requirement to establish a funding source for the cleanup are in the general public interest by ensuring the discovery of

21

contamination by assuring that funding for cleanup is set aside at the time it is available from a transfer or closing and by assuring that the contaminated property is not abandoned to the state for cleanup." N.J.S.A. 13:1k-7. The legislature further declared that it's the policy of the state to protect the public health and safety and the environment to promote efficient and timely cleanups and to eliminate any unnecessary financial burden of remediating contaminated sites.

The legislature's intention in replacing ECRA, the Environmental Cleanup and Responsibility Act, with ISRA was to streamline the process of collecting remediation funds before a sale or transfer occurred so it would not have to take the time to go after the owners of industrial establishments after a transfer.

DEP has publications on how to determine if ISRA applies to you. And that the act of selling the property of an industrial establishment constitutes a triggering event and calls for compliance. The guidelines discuss the sale of the property of an industrial establishment as a "common transaction" that triggers ISRA.

At the time of adoption of N.J.A.C. 7:26b there were comments that described. One comment was

22

received proposing that the events enumerated not subject the owners or operators to the provisions of the Act where the sale or transfer of an undivided interest of fifty percent or less -- at any rate, the comments establish that -- the response to the comments, the closing, terminating or transferring of operation includes both the cessation of operations and changes of ownership to the industrial establishment. The industrial establishment is defined as any activity or place of business.

The legislature did not exempt an owner of real property upon which an industrial establishment is located because the owner should bear liability for contamination located or occurring on his property rather than a buyer because the owner of a property benefits from a lease. And they go on.

A plain reading of the statutes evidences the legislature's intention to make the transfer of real property of an industrial establishment an ISRA triggering event. Statutes that seek to protect the public health and welfare through the control of pollution are entitled to liberal construction so that their beneficial objective can be accomplished. In Re: Balcan Materials, Co. 225 N.J. Super. 212 at page 220, an Appellate Division case from 1988.

23

N.J.S.A. 13:1k-8 not only includes the sale or transfer of any of an industrial establishment's real property within its definition of change of ownership but it also specifies within its exceptions that real property sold or transferred pursuant to eminent domain proceedings does not constitute a change of ownership that triggers the statute. In other words, the legislature went out of its way to specify certain real property transfers that are not subject to ISRA. And those specified except transfers are not similar to that which occurred here.

It appears a faithful reading of the statute and its purpose requires a finding that the defendants' real estate transfer on January 23, 2015 was a triggering event for ISRA not excepted from the statute as an indirect owner transaction, corporate reorganization transaction or controlling interest transaction.

Let's talk a little about whether the Chambers Works transaction falls into the statute's exceptions. In pressing the applicability of ISRA's exceptions to an industrial establishment change of ownership defendant asserts that Chambers Works real property was an asset subject to N.J.S.A. 13:1k-8's change in ownership exceptions, that the deed transfer

24

constituted "a transaction involving assets among corporations under common ownership" such that it did not result in a significant diminution in value of the corporation that directly owns or operates the establishment. See N.J.S.A. 13:1k-8 sub (2) and sub (3).

Defendant focuses on the dictionary definition of the word asset in pointing out that a business assets include its real property. While it's certainly clear that real property is an asset in the general definition, it's also clear that the legislature did not include real property there and it does include it in other places.

Further, it just doesn't make sense to me that complex corporate -- it would seem that the goals of ISRA would seldom be accomplished if big corporations could have involved complex transactions including real property and not trigger ISRA. I think the statute makes clear that the transfer of real property does, indeed, trigger ISRA.

And I think that's sufficient for today. And as I said, I'm making this tentative because I want to encourage you to participate in mediation. And following mediation, if it's not successful, I'll conduct a conference and I'll permit each side to give

25

me ten pages or less of why you think what I said is wrong and then I'll do it over again hopefully in a more polished way. But I wanted to give you some sense of the direction in which I am leading.

Anything further for the plaintiff, Mr. Telsey?

MR. TELSEY: No, Judge, thank you.

THE COURT: Anything further for the defense, Mr. Harris?

MR. HARRIS: No, Your Honor.

THE COURT: All right. Thank you all. Good day.

(OFF THE RECORD)

## CERTIFICATION

I, ANNE M. YOWELL, the assigned transcriber, do hereby certify the foregoing transcript of proceedings dated 2/13/19, index numbers from 10:38:00 to 11:21:40 is prepared to the best of my ability and in full compliance with the current Transcript Format for Judicial Proceedings and is a true and accurate compressed transcript of the proceedings as recorded.

/s/ Anne M. Yowell
Anne M. Yowell

/s/ Patricia A. Hallman          AD/T 312
Patricia A. Hallman              AOC Number

Pat's Transcription Service      4/8/19
Agency Name                      Date