David A. Haworth, Esq. (027031995)
**BALLARD SPAHR LLP**
700 East Gate Drive, Suite 330
Mount Laurel, NJ 08054-0015
T: 856-761-3400
Email: haworthd@ballardspahr.com
*Attorney for Defendants, E. I. du Pont de Nemours and Company and Sheryl A. Telford*

Martha N. Donovan, Esq. (021761985)
**NORRIS McLAUGHLIN, P.A.**
400 Crossing Boulevard, 8th Floor
Bridgewater, New Jersey 08807-5933
Direct: (908)252-4240
Email: mndonovan@norris-law.com
*Attorney for Defendants, The Chemours Company and The Chemours Company FC, LLC*

| | |
|---|---|
| CARNEYS POINT TOWNSHIP,<br><br>    Plaintiff,<br><br>    v.<br><br>E. I. DUPONT De NEMOURS AND COMPANY, et al.,<br><br>    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: SALEM COUNTY<br><br>DOCKET NO. SLM-L-251-16<br><br>Civil Action<br><br>**ORDER ~~GRANTING~~ DENYING SUMMARY JUDGMENT** |

 **THIS MATTER**, having come before the Court on a motion for summary judgment brought by Ballard Spahr LLP, attorneys for defendants EIDP, Inc. ("EIDP"), f/k/a E. I. du Pont de Nemours and Company and Sheryl Telford, and Norris McLaughlin, P.A., attorneys for defendants The Chemours Company and The Chemours Company FC, LLC (collectively, with EIDP and Sheryl Telford "Defendants"), with notice having been given to attorney for plaintiff, Albert Telsey, Esq., and the Court having considered the papers submitted, and the arguments of counsel, if any, and finding no genuine issues as to any material facts has been shown to exist and that Defendants are entitled to summary judgment;

IT IS on this  5TH  day of  November , 2024, **ORDERED** that Defendants' motion for summary judgment is hereby ~~GRANTED~~. **DENIED FOR THE REASONS AS EXPRESSED IN ATTACHED MEMORANDUM OF DECISION**

**IT IS FURTHER ORDERED** ~~that all prior substantive interlocutory orders previously entered in this matter are vacated for lack of jurisdiction~~.

~~**IT IS FURTHER ORDERED** that all claims against Defendants are hereby dismissed for lack of jurisdiction~~.

IT IS SO ORDERED:

*Robert Malestein, P.J.Ch.*
_____
Hon. Robert G. Malestein, P.J.Ch.

[x] Opposed
[ ] Unopposed

2

# CARNEYS POINT TOWNSHIP V. EI DUPONT ET. ALS.
# SLM-L-251-16

## MEMORANDUM OF DECISION SUMMARY JUDGMENT

**I.     OVERVIEW**

This matter comes before the Court on Defendant DuPont's Motion for Summary Judgment, dismissing Plaintiff Carneys Point claims against them regarding pollution at the Chambers Works site.

Chambers Works (the Site) has been the subject of ongoing legal disputes. Plaintiff, both in this Motion and other related Motions, alleges that over a 30-year period, over 100 million pounds of hazardous waste was discharged from the Site; that only eight percent of this contamination has been remediated; that full remediation will take hundreds of years at DuPont's and Chemour's current rate; and that the Remediation Funding Source (RFS) required to complete remediation is $1.126 billion.

In this matter, Plaintiff alleges that DuPont violated the Industrial Site Recovery Act (ISRA), that DuPont cannot claim any ISRA exemptions, and that the Site is entitled to an ISRA Remediation Funding Source (RFS) of over $1 billion.

**II.     FACTS**

*A.     Factual History*

Carneys Point initiated this lawsuit with an Order to Show Cause in December 2016, alleging violations of various environmental statutes and requesting an RFS pursuant to New Jersey's Environmental Rights Act (ERA).

The facts specific to the present matter date back to 2014, when DuPont informed the New Jersey Department of Environmental Protection (DEP) about a proposed spinoff that would provide Chemours with title to the Site. Particularly relevant to this case, Plaintiff's 2017 Second Amended Verified Complaint alleges that the transfer of Chambers Works Real Estate (the "deed transfer," contained in Count One) and the transfer of Chemours Stock to DuPont shareholders (the "stock transfer," contained in Count Two) violated the ISRA.

On August 8th, 2018, Judge Anne McDonnell entered an Order granting partial summary judgment in favor of Plaintiff, finding DuPont's transfer of the Site to Chemours triggered the requirement to comply with ISRA, and DuPont failed to comply.

In 2019, DEP sued DuPont and Chemours, alleging violations of the ISRA and the Brownfield Act, and seeking, among other relief, an RFS to pay for remediation of the Site. Prior to this lawsuit, there were ongoing communications between the Township, DEP, and the federal Environmental Protection Agency (EPA) regarding enforcement activities at the Site. EPA was considered the lead agency for corrective action at the site, while DEP provided technical support. DEP and Chemours personnel regularly met and communicated about activities at the Site. However, efforts to avoid a lawsuit were ultimately unsuccessful, leading to DEP's 2019 suit after Judge McDonnell had previously adjudicated DuPont's failure to comply with the ISRA.

Similarly, DEP also filed an action seeking remediation and an RFS in Federal court on August 31, 2020. Defendants deem the relief sought in the Federal action and the relief sought in the present matter "duplicative."

B.  *Parties' Arguments*

Defendants argue in their present Motion for Summary Judgment that Plaintiff's action

2

fails as a matter of law because the Township lacks standing under the ERA. Specifically, Defendants argue the Township is preempted because if DEP is seeking enforcement of any kind, other individuals are thereby disallowed from maintaining a separate action. Therefore, Defendants argue this Court lacks subject matter jurisdiction because Plaintiff lacks standing. Stated differently, according to Defendants, private pursuit of an ERA claim must await DEP action to assesses the sufficiency of that action. Only where the State has failed to act or acted arbitrarily or capriciously should the court permit other individuals to continue with enforcement under the ERA. Otherwise, DEP can exercise preemptive jurisdiction, limiting the possibility of duplicative litigation. Defendants further add that Albert Telsey, attorney for Plaintiffs, wrote a letter to Judge McDonnell acknowledging that Count 3 of DEP's complaint has identical ISRA violations as Carneys Point alleges in Counts 1 and 2 of their complaint.

Plaintiff, on the other hand, contends the Township's 2016 Complaint and DEP's 2019 Complaint have nothing to do with each other. Regardless, they assert that the ISRA provides a municipality with an independent right to monitor ISRA compliance because a municipality is a key stakeholder in compliance, not simply a bystander. Plaintiff, as such a municipality, has independent standing to prosecute ISRA violations. Further, the Township only litigated the deed transfer ISRA violation because DEP failed to do so, and DEP cannot displace such a litigant when DEP fails to act *prior to* the litigant's own ERA Complaint.

Plaintiff also directs this Court's attention to Judge McDonnell's previous order that deemed Defendant's out of compliance with the ISRA, providing Plaintiff's standing to prosecute as such. According to the Township, Defendants have failed to offer any reasoning or legal basis as to why this ruling should be abdicated in favor of summary judgment for the same Defendants. Further, Plaintiff's assert there is no basis to find that DEP's decision to institute legal action after

3

Plaintiff had already done so automatically requires dismissal of Judge McDonnell's ruling. Plaintiff contends the doctrines of Res Judicata and Collateral Estoppel prevent re-litigation of the same claims, and Collateral Estoppel applies here to prevent re-litigation of the same issue upon which Judge McDonnell previously ruled.

Plaintiff further asserts that because DEP failed to initiate its lawsuit *before* the Township, the Township's claims cannot be dismissed. Plaintiff only initiated its suit because DEP failed to act in what the Township considered a reasonable time. When DEP seeks less than full relief under the ERA, the ERA grants others a clear right to take action and seek their own relief. If DEP *later* takes action, the ERA does not require the Township to step aside.

### III. LAW

#### A. *Summary Judgment Standard*

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The trial court's "function is not . . . to weigh the evidence and determine the truth . . . but to determine whether there is a genuine issue for trial." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). The trial judge must consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party." Id. When the facts present "a single, unavoidable resolution" and the evidence "is so one-sided

that one party must prevail as a matter of law," then a trial court should grant summary judgment. Id.

    B. *The Industrial Site Recovery Act and the Site Remediation Reform Act*

The ISRA governs proper procedures for the transfer of ownership and operations of industrial establishments. See generally N.J.S.A. § 13:1K-9. "Subsequent to the submittal of the notice required pursuant to subsection a. of this section, the owner or operator of an industrial establishment shall . . . remediate the industrial establishment. The remediation shall be conducted in accordance with criteria, procedures, and time schedules established by the department." N.J.S.A. § 13:1K-9(b)(1).

The ISRA further provides, "The owner or operator of the industrial establishment shall also provide all information required to be submitted to the department pursuant to this subsection, to the clerk of the municipality in which the industrial establishment is located, at the same time the information is submitted to the department." N.J.S.A. § 13:1K-9(a).

While less applicable to the present matter than the ISRA, the Direct Oversight provisions of the SRRA, codified at N.J.S.A. § 58:10C-27, explain that DEP "shall undertake direct oversight of a remediation of a contaminated sight" if "(1) the person responsible for conducting the remediation has a history of noncompliance with the laws concerning remediation . . ." or "(2) the person responsible for conducting the remediation at a contaminated site has failed to meet a mandatory remediation timeframe or an expedited site specific timeframe adopted by the department . . ." N.J.S.A. § 58:10C-27(a)(1)-(a)(2). Section (c) of the direct oversight provisions further provide "For any site subject to direct oversight by the department pursuant to this section . . . the department shall review each document submitted by a licensed site remediation professional and shall approve or deny the submission" and "the person responsible for conducting

5

the remediation shall implement a public participation plan approved by the department to solicit public comment from the members of the surrounding community concerning the remediation of the site." N.J.S.A. § 58:10C-27(c)(1), (c)(7).

C. <u>*Enforcement of Environmental Laws under the Environmental Rights Act*</u>

The ERA provides two primary ways that a person can file an action against DEP[1]. First, a civil action may be commenced "against any other person alleged to be in violation of any statute, regulation or ordinance which is designed to prevent or minimize pollution, impairment or destruction of the environment." N.J.S.A. § 2A:35A-4(a). Second, "Except in those instances where the conduct complained of constitutes a violation of a statute . . . any person may commence a civil action in any court of competent jurisdiction for declaratory and equitable relief against any other person for the protection of the environment, or the interest of the public therein, from pollution, impairment or destruction." N.J.S.A. § 2A:35A-4(b).

The Environmental Rights Act can "be used to challenge inadequate enforcement of environmental laws by an agency." <u>In re New Jersey Pinelands Comm'n Resolution</u>, 356 N.J. Super. 363, 375 (App. Div. 2003) <u>cert. denied</u>, 115 N.J. 59 (1989). For example, in a case involving proper procedures for closing a landfill, DEP "had been 'muttering' about requiring Middletown to properly close the landfill site" for years, but it seemed "reasonable to conclude that DEP ha[d] failed to act effectively to compel closure in accordance with regulations." <u>Port of Monmouth Development Corp. v. Middletown Twp.</u>, 229 N.J. Super. 445, 450-51 (App. Div. 1988). Consequently, the Appellate Division found "no reason for plaintiff and the public to wait any

---

[1] "'Person' includes corporations, companies, associations, societies, firms, partnerships and joint stock companies, individuals, the State, any political subdivision of the State and any agency or instrumentality of the State or of any political subdivision of the State." N.J.S.A. § 2A:35A-3(a).

6

longer" for compliance with closure obligations under the Solid Waste Management Act. Id. at 451.

In a key case under the Environmental Rights Act, the Appellate Division has similarly found that "where the state agency has failed or neglected to act in the best interest of the citizenry or has arbitrarily, capriciously or unreasonably acted, then a court should permit interested persons to continue with enforcement under the Environmental Rights Act." Howell v. Waste Disposal, 207 N.J. Super. 80, 96 (App. Div. 1986). In such a situation, DEP does not exercise their preemptive jurisdiction. Id. Howell further explained an essential purpose of the Environmental Rights Act:

> In enacting the Environmental Rights Act the Legislature has recognized that the DEP may fail to act to correct a particular problem or not take proper and necessary action where conflicting interests appear. Further, in a given situation DEP may seek less than full relief available under relevant legislation. In such a case, there is a clear right granted to other 'persons' to seek such relief under the Environmental Rights Act. No court should enforce grudgingly that right simply because of supervisory difficulties which may be encountered.

Id. When describing this holding from Howell, the Pinelands Court stated simply, a "private cause of action may still lie if the effort provided by DEP enforcement proves insufficient." In re New Jersey Pinelands Comm'n Resolution, 356 N.J. at 375.

Finally, in terms of timing of any suits under the ERA, private entities are only displaced and lose standing upon DEP action if "DEP acts prior to or upon filing of an ERA proceeding." Superior Air Prods. Co. v. NL Indus., Inc., 216 N.J. Super. 46, 61 (App. Div. 1987). Although Superior Air Products concerned actions under the Spill Act, the Appellate Division's guidance is still applicable here. Namely, "DEP's action under the Spill Act is preemptive of private rights

7

under ERA at least where the DEP acts prior to or upon filing of an ERA proceeding and where the DEP action subsequently proves sufficient to protect the environment." Id.

### D. *Collateral Estoppel*

The Doctrine of Collateral Estoppel applies

> if the issue decided in the prior action is identical to the one presented in the subsequent action, if the issue was actually litigated--that is, there was a full and fair opportunity to litigate the issue--in the prior action, if there was a final judgment on the merits, if the prior determination was essential to the judgment, and if the party against whom preclusion is asserted was a party, or in privity with a party, to the proceeding.

Perez v. Rent-A-Center, Inc., 186 N.J. 188, 199 (2006) (quoting Fama v. Yi, 359 N.J. Super 353, 359 (App. Div. 2003) (cert. denied, 178 N.J. 29 (2003)). However, even if these five elements are met, issue preclusion may be denied on equitable grounds. Id.

## IV. ANALYSIS

Here, Plaintiff Township has presented sufficient evidence to withstand the present Motion for Summary Judgment because Plaintiff has demonstrated that DEP failed to enforce ISRA violations. Specifically, Judge McDonnell's August 8th, 2018 Order listed six individual ISRA violations, and DEP failed to institute their own lawsuit until 2019. The Township sued Defendants in 2016. Further, the Court sees no reason why Judge McDonnell's Order and findings of ISRA violations should be overturned.

Given the presence of ISRA violations, the analysis proceeds to the ERA's applicability. Under the ERA, a civil action may be commenced "against any other person alleged to be in violation of any statute, regulation or ordinance which is designed to prevent or minimize pollution, impairment or destruction of the environment." N.J.S.A. § 2A:35A-4(a). Despite both

8

Case 1:19-cv-14766-RMB-JBC    Document 742-17    Filed 11/17/25    Page 11 of 12
PageID: 33811
SLM-L-000251-16   11/05/2024   Pg 9 of 10   Trans ID: LCV20242943782

MOTION FOR SUMMARY JUDGMENT

Plaintiff's and Defendant's arguments concerning standing under the ISRA, Plaintiff has alleged facts showing Defendants violated the ISRA, thereby providing standing under the ERA.

While Defendant argued that only where the State has failed to act or acted arbitrarily or capriciously should the court permit other individuals to continue with enforcement under the ERA, Plaintiff has presented sufficient evidence that such a failure has occurred. Specifically, Plaintiff's opposition brief contends that DEP abdicated their ISRA enforcement responsibility, essentially forcing the Township to prosecute their claims independently. Indeed, for years after Plaintiff initially filed this action in 2016, DEP made no effort to intervene. DEP failed to institute their own legal action until 2019.

Under these circumstances, the Howell Court's guidance is determinative — if a state agency has failed to act, DEP is not entitled to preemptive jurisdiction, and if DEP seeks less than full relief available under the law, other parties are permitted to seek ERA relief. Howell, 207 N.J. Super. at 96.

Finally, while Plaintiff is correct that DEP maintains preemption if they act prior to a private litigant's filing of an ERA proceeding (Superior Air Prods., 216 N.J. Super at 61), here it is undisputed that Plaintiff instituted their Complaint well before DEP.

It is therefore not necessary to decide how DEP's 2019 Complaint affects the Collateral Estoppel analysis. While the issue of standing was fully litigated before Judge McDonnell, since Judge McDonnell's ruling, DEP instituted their Complaint. Therefore, there may be a strong argument that the issues related to standing have changed. Regardless, because Plaintiff's have independent standing under the ERA, the collateral estoppel analysis is not determinative.

## V. CONCLUSION

As a final note, Plaintiff seeks to modify Count 2 of their Complaint regarding the 2015 Chemours spinoff trigger. Namely, they submit that the Complaint should be limited to the time period from July 1, 2015 to March 26, 2019, when DEP filed their Complaint. This is because the Township did not complete its prosecution of the spinoff before DEP filed the same claim in its Complaint, and the Township can only prosecute the daily violations of this claim before the DEP filed its Complaint.

For those reasons and all reasons placed on the record, the Defendant's Motion for Summary Judgment shall hereby be **DENIED**.