**BENCH MEMORANDUM DECISION**

**September 26, 2024**
**The Honorable Robert Malestein, P.J.Ch.**

**I.    OVERVIEW**

This matter comes before the Court on Defendant New Jersey Department of Environmental Protection's (DEP's) Motion to Dismiss for Failure to State a Claim. Plaintiff Carneys Point Township argued in their complaint that DEP failed to properly and sufficiently include the Township in their negotiations with Dupont regarding pollution discharged from a chemical manufacturing facility. DEP argues they followed all statutorily required procedures, and Plaintiff cannot compel them to act according to the Township's wishes.

**II.   FACTS**

   **A.** *Factual background and Plaintiff's claims*

The facts of this case stem from accusations that DuPont's and Chemour's operation of a chemical manufacturing facility know as Chambers Works (the Site) caused widespread pollution, severely harming the residents of Carneys Point Township (the Township). Specifically, Plaintiff claims that between the 1890s and early 1970s, DuPont operated the Site with no meaningful environmental controls.

As it pertains to the current matter, Plaintiff Carneys Point initially filed this Verified Complaint and Order to Show Cause on May 9, 2018 against DEP. On May 15, 2018, DEP voluntarily agreed not to approve an Administrative Consent Order (ACO) and Remediation Funding Source (RFS) without first providing the Township with the written terms and bases for the proposed ACO and RFS. On May 21st, 2024, this Court entered an Order instructing DEP to file a motion to dismiss within 45 days. The present Motion to Dismiss for Failure to State a Claim

was filed by Defendant DEP on July 2, 2024. Plaintiff submitted their opposition on September 4, 2024. Defendant replied on September 12.

In their initial Complaint against DEP, Plaintiff sought an order 1) approving a Public Participation Plan that would allow the Township and their residents to participate in the remediation of the Site and 2) establishing a properly calculated RFS reviewed and approved by the Township.

Plaintiff claims that the Site Remediation Reform Act (SRRA) grants the Township the right to participate in the site remediation because DuPont and Chemours have committed numerous remediation violations. Specifically, Plaintiff alleges that DuPont was the subject of two enforcement actions in 2011 regarding the Site, and the SRRA thereby requires a form of strict oversight from DEP known as "direct oversight." Direct oversight entitles the Township to hands-on remediation of the site and the posting of an adequate Remediation Funding Source (RFS) through a Public Participation Plan.

In support of their demand to participate in remediation, the Township hired consultants to value the pollution damage. Accordingly, Plaintiff claims that over a 30-year period, over 100 million pounds of hazardous waste was discharged from the site; that only eight percent of this contamination has been remediated; that full remediation will take hundreds of years at DuPont's and Chemour's current rate; and the RFS required to complete remediation is $1.126 billion. Plaintiff alleges they presented this information to DEP and demanded their right to participate pursuant to the SRRA, but DEP repeatedly refused. Further, Plaintiff points to what they term "secret negotiations" between DEP and DuPont and Chemours that would post only $51 million in RFS, as opposed to the over $1 billion Plaintiff claims is necessary.

Accordingly, Plaintiff requested an Order to Show Cause to compel DEP to explain why the Township's own proposed Public Participation Plan should not be ordered, and to restrain DEP from approving a remediation plan and RFS for the site without the Township's participation and consent.

Count One of Plaintiff's Complaint asserts violations of the Environmental Rights Act (ERA). Specifically, the Township claims the ERA permits a municipality to enforce environmental laws, such as the SRRA, when DEP is unwilling to do so, and the violation is continuous. Plaintiff thereby alleges DEP's refusal to allow the Township to participate in the remediation/RFS process through a Public Participation Plan is a violation of the SRRA.

Count Two of Plaintiff's Complaint claims an Action in Lieu of a Prerogative Writ, ordering a Public Participation Plan because DEP was required to provide the Township with such a plan under the SRRA

Count Three of Plaintiff's Complaint seeks a Preliminary Injunction, granting Plaintiff the right to participate in the remediation plan and RFS process.

In sum, Plaintiff's requested relief entails ordering their proposed Public Participation Plan and temporarily restraining DEP from approving a remediation plan and RFS without the Township's approval.

### B. *DEP's Response and Motion to Dismiss for Failure to State a Claim*

In their Motion to Dismiss for Failure to State a Claim, DEP argues that no authority exists that mandates providing the relief Plaintiff seeks. DEP also directs the Court's attention to a related suit (Carneys Point Township v. E.I. DuPont De Nemours and Company, et al., SLM-L-251-16), and argues the relief sought in that case is virtually identical to the relief sought in the present case.

Defendant's first argument claims the Complaint should be dismissed because it seeks to compel discretionary acts, and to do so would violate the New Jersey Constitution. According to DEP, when a private party seeks to compel government action, the proper mechanism is the Writ of Mandamus. However, DEP argues such a remedy is only appropriate where the party seeks to compel nondiscretionary, mandatory functions. This limit exists to protect the separation of powers. Granting Plaintiff's requested relief in this case, therefore, would run afoul of the separation of powers because DEP's decisions in this case are discretionary. Specifically, DEP argues that deciding how should the site is a "judgment call" that requires significant experience, bringing both the Public Participation Plan and RCM under the umbrella of DEP's discretion.

Defendant's second argument claims Plaintiffs are wrongly trying to step into DEP's shoes, and the Complaint must be dismissed because DEP is actively enforcing the SRRA. DEP interprets the ERA to only provide parties with a cause of action when DEP has failed to act or carry out its mission. Defendant argues they are actively enforcing the SRRA against DuPont, thereby eliminating Plaintiff's cause of action. Further, DEP asserts that under the SRRA, they do not need the Township's approval of a public participation plan before DEP approves it, because the ERA does not bestow a private party with greater authority than a regulating agency.

Finally, Defendant argues the ERA is not enforceable against DEP when DEP is not the polluter.

### C. *Plaintiff's opposition*

Plaintiff argues in their opposition to dismissal that a court should permit interested persons "to continue with enforcement under the [ERA]" when a state agency has failed to act in the citizen's best interests or has acted arbitrarily or capriciously.

Plaintiff asserts that DEP's failures to require DuPont and Chemours to provide the Township with a public hearing and Public Participation Plan impaired the public's right to express their concerns. Plaintiff equates these failures to a lack of required procedural due process under the SRRA, and argues this is a prime example of arbitrary and capricious conduct, thereby negating Defendant's argument that the ERA does not permit the Township to sue DEP. In other words, Plaintiff argues this Court has the right to overrule agency action that is not compliant with the law if it is arbitrary and capricious.

In addressing Defendant's argument that the Township cannot "step into the shoes" of DEP, Plaintiff counters that the ERA allows such action when DEP is not performing any requisite functions.

Finally, Plaintiff flatly rejects DEP's argument that the ERA cannot be used against DEP because the ERA only allows the Township to sue a polluter. Plaintiff instead argues the ERA permits any person to sue any other person, including state agencies.

### III.  LAW

#### A. *Motion to Dismiss for Failure to State a Claim*

A motion to dismiss for failure to state a claim upon which relief can be granted is governed by R. 4:6-2(e) of the New Jersey Court Rules. The rule "permits litigants, prior to the filing of a responsive pleading, to file a motion to dismiss an opponent's complaint, counterclaim, cross-claim, or third-party complaint" Malik v. Ruttenberg, 398 N.J. Super. 489, 493 (App. Div. 2008).

The proper analytical approach to such motions requires the motion judge to (1) accept as true all factual assertions in the complaint, (2) accord to the nonmoving party every reasonable inference from those facts, and (3) examine the complaint "in depth and with liberality to ascertain

5

whether the fundament of a cause of action may be gleaned even from an obscure statement of claim." Id. at 494 (quoting Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 746 (1989).

The motion to dismiss should be approached with great caution and should only be granted in the rarest of instances. Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005). The allegations are to be viewed "with great liberality and without concern for the plaintiff's ability to prove the facts alleged in the complaint." Id. The plaintiff's obligation on a motion to dismiss is "not to prove the case but only to make allegations, which, if proven, would constitute a valid cause of action." Id. (quoting Leon v. Rite Aid Corp., 340 N.J. Super. 462, 472, (App. Div. 2001)).

### B. *The Site Remediation Reform Act*

The Direct Oversight provisions of the Site Remediation Reform Act (SRRA), codified at N.J.S.A. § 58:10C-27, explain that DEP "shall undertake direct oversight of a remediation of a contaminated sight" if "(1) the person responsible for conducting the remediation has a history of noncompliance with the laws concerning remediation . . ." or "(2) the person responsible for conducting the remediation at a contaminated site has failed to meet a mandatory remediation timeframe or an expedited site specific timeframe adopted by the department . . ." N.J.S.A. § 58:10C-27(a)(1)-(a)(2). Section (c) of the direct oversight provisions further state, "For any site subject to direct oversight by the department pursuant to this section . . . the department shall review each document submitted by a licensed site remediation professional and shall approve or deny the submission" and "the person responsible for conducting the remediation shall implement a public participation plan approved by the department to solicit public comment from the

6

members of the surrounding community concerning the remediation of the site." N.J.S.A. § 58:10C-27(c)(1), (c)(7).

### C. *Enforcement of Environmental Laws under the Environmental Rights Act*

The ERA provides two primary ways that a person can file an action against DEP.[1] First, a civil action may be commenced "against any other person alleged to be in violation of any statute, regulation or ordinance which is designed to prevent or minimize pollution, impairment or destruction of the environment." N.J.S.A. § 2A:35A-4(a). Second, "Except in those instances where the conduct complained of constitutes a violation of a statute . . . any person may commence a civil action in any court of competent jurisdiction for declaratory and equitable relief against any other person for the protection of the environment, or the interest of the public therein, from pollution, impairment or destruction." N.J.S.A. § 2A:35A-4(b).

The Environmental Rights Act can "be used to challenge inadequate enforcement of environmental laws by an agency." In re New Jersey Pinelands Comm'n Resolution, 356 N.J. Super. 363, 375 (App. Div. 2003) cert. denied, 115 N.J. 59 (1989). For example, in a case involving proper procedures for closing a landfill, DEP "had been 'muttering' about requiring Middletown to properly close the landfill site" for years, but it seemed "reasonable to conclude that DEP ha[d] failed to act effectively to compel closure in accordance with regulations." Port of Monmouth Development Corp. v. Middletown Twp., 229 N.J. Super. 445, 450-51 (App. Div. 1988). Consequently, the Appellate Division found "no reason for plaintiff and the public to wait any

---

[1] "'Person' includes corporations, companies, associations, societies, firms, partnerships and joint stock companies, individuals, the State, any political subdivision of the State and any agency or instrumentality of the State or of any political subdivision of the State." N.J.S.A. § 2A:35A-3(a).

7

longer" for compliance with closure obligations under the Solid Waste Management Act. Id. At 451.

In a key case under the Environmental Rights Act, the Appellate Division has similarly found that "where the state agency has failed or neglected to act in the best interest of the citizenry or has arbitrarily, capriciously or unreasonably acted, then a court should permit interested persons to continue with enforcement under the Environmental Rights Act." Howell v. Waste Disposal, 207 N.J. Super. 80, 96 (App. Div. 1986). Howell further explained an essential purpose of the Environmental Rights Act:

> In enacting the Environmental Rights Act the Legislature has recognized that the DEP may fail to act to correct a particular problem or not take proper and necessary action where conflicting interests appear. Further, in a given situation DEP may seek less than full relief available under relevant legislation. In such a case, there is a clear right granted to other 'persons' to seek such relief under the Environmental Rights Act. No court should enforce grudgingly that right simply because of supervisory difficulties which may be encountered.

Id. When describing this holding from Howell, the Pinelands Court stated simply, a "private cause of action may still lie if the effort provided by DEP enforcement proves insufficient." In re New Jersey Pinelands Comm'n Resolution, 356 N.J. at 375.

IV.   **ANALYSIS**

   A.   *The SRRA*

First, the Court will address Defendant's arguments pertaining to the SRRA. Defendant's argument that they are actively enforcing the SRRA against DuPont, thereby eliminating Plaintiff's cause of action, will be addressed in the below analysis of the ERA. However, DEP is correct that under the direct oversight provisions of the SRRA, the Township's approval of a public participation plan *before* DEP approves it is not necessary. The direct oversight provisions of the

SRRA instruct, "the person responsible for conducting the remediation shall implement a public participation plan approved by the department to solicit public comment from the members of the surrounding community concerning the remediation of the site." N.J.S.A. § 58:10C-27(c)(7). The proper reading of this statutory language clearly implies that under the SRRA, the public's approval of a public participation plan before the DEP's approval of the plan is not necessary. Public participation will *follow* DEP's approval.

Here, therefore, the proper sequence of events would involve DuPont, as the party responsible for conducting the remediation, implementing a public participation plan; DEP approving the plan; and DEP soliciting public comment concerning remediation of the site. Therefore, Plaintiff's request that this Court temporarily restrain DEP from approving a remediation plan and RFS for the Site without the Township's consent is, in fact, not consistent with the SRRA.

Regardless, as further explained below, Defendant's argument on this matter is insufficient alone to grant the motion to dismiss.

### B. *The Environmental Rights Act*

The Court is unconvinced that Plaintiff has failed to state a claim upon which relief can be granted. The Court reaches this conclusion primarily upon consideration of Plaintiff's claims under the ERA. As previously explained, the ERA provides for enforcement in two circumstances: first, when any person is alleged to be in violation of a statute or regulation designed to prevent environmental harm, and, second, when declaratory or equitable relief is necessary to protect the environment or public therein, even if no specific statutory or regulatory violation is alleged. N.J.S.A. § 2A:35A-4(a), (b).

Here, Plaintiff alleges DEP's refusal to allow the Township to participate in the remediation and RFS process through a Public Participation Plan is a violation of the SRRA. Even without addressing the merits of this argument, Plaintiff has alleged sufficient facts under N.J.S.A. § 2A:35A-4(b) to survive a Motion to Dismiss for Failure to State a Claim. As the Appellate Division has made clear, the ERA can "be used to challenge inadequate enforcement of environmental laws by an agency." In re New Jersey Pinelands Comm'n Resolution, 356 N.J. at 375. Further, and particularly relevant here, "where the state agency has failed or neglected to act in the best interest of the citizenry or has arbitrarily, capriciously or unreasonably acted, then a court should permit interested persons to continue with enforcement under the Environmental Rights Act." Howell, 207 N.J. Super. at 96. Plaintiffs in the present matter are, indeed, claiming such arbitrary and capricious conduct. Namely, they argue that DEP's refusal to provide Carneys Point with a feasibility study, public hearing, and Public Participation Plan impairs the public's right to express their concerns, represents the denial of due process rights, and exemplifies arbitrary and capricious conduct.

Again, without addressing the merit of Plaintiff's claims regarding DEP's arbitrary and capricious conduct, this Court must reconcile Plaintiff's claims with the Howell Court's guidance that, "DEP may seek less than full relief available under relevant legislation. In such a case, there is a clear right granted to other 'persons' to seek such relief under the Environmental Rights Act." Howell, 207 N.J. Super. at 96. Stated differently, the Township's action "may still lie if the effort provided by DEP enforcement proves insufficient." Here, Plaintiff claims they have hired a Licensed Site Remediation Professional and a RACER® expert, who accordingly concluded the RFS required to address the pollution is $1.126 billion. In contrast, Plaintiff asserts the RFS DEP is currently negotiation with DuPont is only $51 million. At the dismissal for failure to state a

10

claim stage, where the Court is determining whether the "fundament of a cause of action may be gleaned even from an obscure statement of claim" (Ruttenberg, 398 at 494), Plaintiff has pleaded sufficient facts that DEP's efforts are insufficient and may prove arbitrary and capricious.

## V.     CONCLUSION

For those reasons and all reasons placed on the record, the Defendant's Motion to Dismiss for Failure to State a Claim is **DENIED**.

The Honorable Robert Malestein, P.J.Ch.