THE NEW JERSEY STATE BAR ASSOCIATION
COMMITTEE ON STATE LEGISLATION

This report is based on the committee
analysis prepared by Thomas P. Cook                April 11, 1974

REPORT ON ASSEMBLY BILL 1245

Introduced by:  Assemblymen Hynes and 27 others

Title:  As Act concerning the commencement of actions for the protection
of the environment and the public interest therein.

THE COMMITTEE RECOMMENDS THAT THE BILL BE APPROVED <u>AS TO FORM</u>.

This bill, to take effect immediately upon passage, is a modified
version of Assembly Bill 569 of 1972, which would have authorized
citizens to maintain court actions for the protection of the environment.

The legislation now proposed would be known as the "Environmental
Rights Act," and would provide among other things that:

> (a)  Any citizen, organization or governmental
> agency may maintain a court action against any other citizen,
> organization or governmental agency to protect the environ-
> ment from pollution, impairment or destruction.

> (b)  The action may be of two kinds:  (1) to
> enforce or restrain the violation of any statute,
> regulation or ordinance on the subject; and (2) for
> declaratory and equitable relief where no statute,
> regulation or ordinance establishes a specific standard
> for environmental controls.

> (c)  The trial of such an action is to be
> governed by the general rules concerning burden of
> proof and weight of the evidence, and also by the
> following specific provisions:

---

This Committee confines its analysis to the form and legal adequacy of
legislation.  It refrains from expressing opinions on matters of policy.
This report has not been reviewed by the Association's Board of Trustees
and it does not necessarily represent the position of the New Jersey
State Bar Association.

. . ."when the plaintiff in the action has made a prima facie showing that the conduct of the defendant has, or is likely to pollute, impair or destroy the environment or the interest of the public therein, the defendant may rebut such showing by the submission of competent evidence to the contrary, which may include evidence of compliance by the defendant in good faith with any pollution abatement schedule entered into by the defendant with the Department of Environmental Protection, the purpose of which is alleviation of the damage to the environment complained of. The defendant may also show, by way of an affirmative defense, that there is no feasible and prudent alternative to the defendant's conduct and that such conduct is consistent with the promotion of the public health, safety and welfare in light of the State's paramount concern for the protection of the environment from pollution, impairment or destruction."

(d) Section 7 provides generally that in actions not involving violation of a statute, regulation or ordinance, the court shall determine the existence of any alleged pollution or impairment of the environment, and that "no conduct shall be authorized or approved which does, or is likely to, have such effect so long as there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare."

(e) If administrative or other proceedings are required or available to determine the legality of the defendant's conduct, the court may remit the parties to such proceedings, while retaining general jurisdiction and also granting such temporary equitable relief as may be necessary in the interim.

(f) The term "pollution, impairment or destruction of the environment" is broadly defined to include, but not be limited to air pollution, water pollution, improper sewage disposal, pesticide pollution, excessive noise, improper disposal of refuse, impairment and eutrophication of rivers, streams, flood plains, lakes, ponds or other water resources, destruction of seashores, dunes, wetlands, open spaces, natural areas, parks or historic areas".

-2-

The bill further provides that no action may be commenced pursuant to this Act unless at least 30 days prior written notice is given to the Attorney General, the Department of Environmental Protection, the governing body of the municipality and the intended defendant, except that the court may waive this notice requirement where immediate and irreparable damage will probably result, and further that the notice requirement shall not apply to actions brought by a governmental agency.

The purpose of the bill is to overturn the doctrine long established in our law that in order to have sufficient standing to sue for abatement or prevention of a public nuisance, a private person must show special damage peculiar to himself and distinct from that done to the public at large. <u>Allen</u> v. <u>Board of Chosen Free-holders</u>, 13 N.J. Eq. 68 (Ch. 1860); <u>Morris and Essex R.R.</u> v. <u>Prudden</u>, 20 N.J. Eq. 530 (E. & A. 1869); <u>Humphreys</u> v. <u>Eastlack</u>, 63 N.J. Eq. 136 (Ch. 1902). This bill would effectively grant to interested citizens the right to sue polluters without having to prove special injury to the plaintiffs. It would thus remedy what its supporters believe to be an unnecessary and obsolete impediment to enforcement of anti-pollution laws.

The proposed legislation does not provide, as did the 1973 bill, for intervention by citizens in administrative proceedings concerning abatement of pollution. Similarly, standing of private individuals or groups to initiate administrative proceedings is still to be

-3-

governed by existing statutes.  The bill would not change the existing law which requires a litigant to exhaust his administrative remedies except where the interest of justice requires otherwise. See Rule 4:69-5 of the Court Rules.

Litigation will doubtless be necessary to determine precisely the meaning and application of certain language.  For instance, several sections refer to pollution, impairment or destruction of the environment "or the interest of the public therein".  The words "or the interest of the public therein" may be redundant, or their meaning may have to be clarified by the court.  Adversary proceedings will also have to spell out what is meant in practice by the absence of a "feasible and prudent alternative to the defendant's conduct", which may constitute an affirmative defense to these suits.  Judicial construction, however, is usually required for almost any new legislation of this type.  Standards are inherently general, and it is the function of judicial or administrative bodies to apply them to particular cases.

There may also be a question as to whether the court may order abatement of pollution to a further degree or on a more accelerated timetable than what may have already been ordered by the Department of Environmental Protection in fixing a pollution abatement schedule. Section 5 of the bill allows the defendant to "rebut" a prima facie case by submitting evidence of compliance in good faith with such a pollution abatement schedule; however, such compliance is not

-4-

specifically designated as an affirmative defense, and section 7a broadly mandates that "no conduct shall be authorized or approved" which is likely to pollute the environment, so long as there is a feasible and prudent alternative available. Perhaps the extent of the court's power under these circumstances had best be left to the judicial process, which under the proposed legislation can well find whatever authority it needs to accomplish a just result in each particular case.

The bill affords protection against frivolous or meritless actions, providing among other things that the term "pollution" shall not include any insignificant destruction or impairment of natural resources; that as a condition of granting an injunction the court may require reasonable security not exceeding $10,000 or cash not exceeding $500; and that the Court may dismiss on its own motion any action which "on its face appears to be patently frivolous, harassing, or wholly lacking in merit." It should be noted that, read literally, this latter provision would authorize the Court to dismiss a meritorious action which it found to be "harassing," and it is doubtful that such a result is intended by the Legislature. Also, the necessity for affording this unusual privilege of dismissal on the Court's initiative is questionable in view of the comprehensive provisions contained in the Rules of Court for dismissal of meritless actions by motion.

The bill also provides that the Court may in appropriate cases award to the prevailing party reasonable counsel and expert witness fees not exceeding a total of $500. Aside from the substantive question of the reasonableness of the $500 limit on counsel and witness fees, there is a

-5-

question whether or not such a provision conflicts with the Constitutional authority of the Supreme Court to control the practice of law, which authority the Court has already expressly exercised by promulgating rules as to when counsel fees may be awarded. See, for example, Rule 4:42-9.

The Committee makes no recommendation on the basic question of policy posed by this bill, i.e. whether interested citizens and groups should have the right to supplement governmental enforcement programs by bringing Court actions in aid of such enforcement. However, if the Legislature desires to implement this basic policy, the Committee sees no reason why this bill should not be enacted into law in its present form.

-6-