57 NJR 7(2)
July 21, 2025
**Filed June 26, 2025**

## PUBLIC NOTICE

ENVIRONMENTAL PROTECTION

CONTAMINATED SITE REMEDIATION AND REDEVELOPMENT

OFFICE OF NATURAL RESOURCE RESTORATION

**Notice to Receive Interested Party Comment on Proposed Judicial Consent Order Approving Settlement with the 3M Company in the Matter of NJDEP, et al., v. E.I. Du Pond De Nemours and Company, et al., Case No.: 1:19-CV-14766-RMB-JBC (D.N.J.)**

      **Take notice** that the New Jersey Department of Environmental Protection, its Commissioner, and the Administrator of the New Jersey Spill Compensation Fund (collectively, "NJDEP" or "Department") seek comments on a proposed Judicial Consent Order that would resolve certain asserted and unasserted claims against the 3M Company (3M) in pending litigation for past and future cleanup and removal costs, unmet remediation obligations, and injuries to natural resources resulting from discharges at, from, and/or related to the sites described below, referred to as the "Chambers Works Property" and the "Parlin Property," all properties listed in the Statewide Directive described below, and broadly related to 3M's sale, marketing, distribution, use of, and/or any other conduct related to per- or poly-fluoroalkyl substances containing at least one fully fluorinated methyl or methylene carbon atom (without any hydrogen, chlorine, bromine, or iodine atom attached to it) (PFAS) in or into the State of New Jersey prior to entry of the proposed Judicial Consent Order, or January 1, 2026, whichever is later.

      The proposed Judicial Consent Order resolves asserted and unasserted claims brought by: (1) the Department and the Commissioner of Environmental Protection, the Administrator of the

New Jersey Spill Compensation Fund; (2) the New Jersey Division of Consumer Affairs and its Director; (3) to the maximum extent allowable by law, acting through the Attorney General, the State of New Jersey; and (a) all of the State's political subdivisions, departments, agencies, authorities, divisions, boards, commissions, districts, instrumentalities of any kind; and (b) any person or entity acting or purporting to act in a *parens patriae*, sovereign, quasi-sovereign, private attorney general, *qui tam*, taxpayer, or other capacity seeking relief on behalf of, or generally applicable to the general public, as opposed to solely private or individual relief for separate and distinct injuries. The State signatories to the proposed Judicial Consent Order adequately represent the interests and rights of the State's political subdivisions, citizens, and residents such that entry of the proposed Judicial Consent Order will result in a binding final judgment that will operate as *res judicata* to preclude future claims related to 3M's conduct regarding PFAS, as described in the proposed Judicial Consent Order, by all such persons and/or entities.

The Chambers Works Property, currently owned by The Chemours Company, is located at 67 Canal Road and Route 130 in Pennsville and Carneys Point Townships, Salem County, New Jersey. The overall Chambers Works Site includes, collectively, the Chambers Works Property and all areas to which any PFAS discharged at or from the Chambers Works Property have migrated. The Chambers Works Property has been designated as Site Remediation Program Interest No. 008221.

The Parlin Property, currently owned by the Chemours Company, is located at 250 Cheesequake Road, Parlin, Old Bridge Township and Sayreville Borough, Middlesex County, New Jersey. The overall Parlin Site includes, collectively, the Parlin Property and all areas to

which any PFAS discharged at or from the Parlin Property have migrated. The Parlin Property has been designated as Site Remediation Program Interest No. 008222.

In 2019, consistent with its authorities as the trustee of New Jersey's natural resources and under the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 through 23.24 (Spill Act); the Brownfield and Contaminated Site Remediation Act, N.J.S.A. 58:10B-1 through 31 (Brownfield Act); and the common law of New Jersey, the NJDEP filed legal actions in New Jersey Superior Court against 3M and other companies. The lawsuits alleged that 3M, as the main producer and supplier of the PFAS that were utilized at both locations, and the other defendants were liable to the public for injuries to the natural resources of the State due to discharges of hazardous substances and pollutants at and emanating from the Chambers Works Property and the Parlin Property and for costs incurred by the NJDEP, and that the defendants had not performed required remediation. The defendants removed the lawsuits to the United States District Court for the District of New Jersey, where they were subsequently consolidated. 3M denied liability and asserted various defenses in the lawsuits.

Also in 2019, NJDEP issued a *Statewide PFAS Directive, Information Request, and Notice to Insurers* (Statewide PFAS Directive) regarding PFAS contamination in the State to 3M and other respondents. The Statewide PFAS Directive was issued pursuant to the authority vested in the Commissioner under the Spill Act, the Water Pollution Control Act, N.J.S.A. 58:10A-1 through 20, the Air Pollution Control Act, N.J.S.A. 26:2C-1 through 68, and the Solid Waste Management Act, N.J.S.A. 13-1E-1 through 230. The Directive provided notice that the Department believes 3M to be responsible for "significant contamination of New Jersey's natural resources, including the air and waters of the State, with [PFAS]" and sought, among other things, to compel 3M to provide information about its uses and discharges or potential discharges

of certain PFAS into the State's environment, to meet with the Department to develop a good-faith estimate of costs to investigate, test, treat, clean up, and remove certain PFAS from the State's environment, including damages for economic impacts of PFAS contamination, and 3M's financial condition and ability to pay for or perform the cleanup and removal of certain PFAS. 3M submitted a series of letters denying liability and asserting various defenses to the Statewide PFAS Directive.

Finally, also in 2019, the NJDEP filed a separate lawsuit against 3M and other manufacturers of aqueous film-forming foam (AFFF), a PFAS-containing firefighting product, and suppliers of PFAS ingredients for AFFF (the AFFF Litigation) in New Jersey Superior Court. 3M is named as a defendant in the AFFF Litigation as a manufacturer of certain AFFF and its component PFAS ingredients. Through the AFFF Litigation, the NJDEP asserts claims against 3M pursuant to common-law products-liability theories, common law negligence, common-law public nuisance, and the Spill Act, the Consumer Fraud Act, N.J.S.A. 56:8-1 through 20, and the Safe Drinking Water Act, N.J.S.A. 58:12A-1 through 25. The AFFF Litigation was removed to the United States District Court for the District of New Jersey and, thereafter, transferred to the multidistrict litigation in the United States District Court for the District of South Carolina, *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873 (D.S.C.) (AFFF MDL), where it remains pending. Through the AFFF Litigation, the NJDEP seeks to recover all costs related to the investigation, cleanup, restoration, treatment, and monitoring of statewide AFFF contamination of the State's Natural Resources, as well as compensatory damages for lost value (including lost use) of those resources, punitive damages, and penalties. The NJDEP has now reached an agreement with 3M to resolve its alleged liability to the public for remediation costs, unmet remediation obligations, and injuries to the natural resources of the

State, and other costs, fees, penalties, and punitive damages resulting from discharges of PFAS at, from, and/or related to the Chambers Works Property and the Parlin Property, and from waste streams and consumer products Statewide. In addition to NJDEP, the parties to the settlement also include the Office of the Attorney General and the Division of Consumer Affairs, which are both named plaintiffs in the AFFF Litigation. Pursuant to the terms of the agreement, 3M will pay the State up to $450 million over a period of 25 years. The key features of the payment schedule include: (1) payments of $275 million to $325 million in the years 2026-2034, including payments in the first year of $43.45 million for natural resource damages (NRD) at the Chambers Works Site and $16.55 million for PFAS abatement projects related to contamination at and from that site; (2) additional payments in 2026-2034 for Statewide NRD and abatement of Statewide PFAS contamination; (3) payments of an additional $125 million in 2035-2050, primarily for Statewide NRD and PFAS abatement; (4) payment in the first year of $40 million to cover legal and other costs and fees and punitive damages; and (5) payment of between $50 million and $100 million in 2027-2029 to acknowledge and recognize New Jersey's unique role as a national leader in PFAS abatement and remediation efforts. Specifically, this payment would recognize New Jersey's status as the first state in the country to conduct statewide occurrence studies of PFAS in drinking water supplies, the first state to establish a maximum contaminant level for any PFAS substance, and the first state to enter into this type of comprehensive PFAS settlement.

       The NJDEP hereby proposes to enter a Judicial Consent Order with 3M to effectuate this settlement. The NJDEP, exercising its responsibilities pursuant to statutes governing the remediation of contaminated sites, including the Spill Act, the Brownfield Act, the Site Remediation Reform Act, N.J.S.A. 58:10C-1 through 29, and the regulations promulgated

thereunder, including N.J.A.C. 7:26C and 7:26E, and as trustee of the State's natural resources, believes that the proposed settlement terms are fair, reasonable, faithful to the intent of the applicable statutes, and in the public interest. All natural resource damages recovered will be held in the NJDEP's dedicated natural resource damages account for specific natural resource restoration activities in accordance with the New Jersey State Constitution, Article VIII, Section 2, Paragraph 9. The NJDEP intends to conduct public outreach and engagement in the consideration and selection of restoration activities to be pursued with funds recovered by this settlement.

It is the intent of the NJDEP and 3M that this Judicial Consent Order will constitute a judicially approved settlement within the meaning of the relevant portions of the Spill Act (N.J.S.A. 58:10-23.11f.a(2)(b)) and of the Federal Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. § 9613(f)(2)) for purposes of providing protection from contribution actions or contribution claims related to the matters addressed in the Judicial Consent Order, all to the full extent provided for at N.J.S.A. 58:10-23.11f.a(2)(b) and 42 U.S.C. § 9613(f)(2).

A copy of the proposed Judicial Consent Order is available for inspection virtually on the Department's dedicated website (https://dep.nj.gov/3m), the Office of Natural Resource Restoration's webpage (https://dep.nj.gov/nrr/proposed-settlements/) and the Contaminated Site Remediation and Redevelopment's webpage (https://dep.nj.gov/srp/settlements/) and physically through the NJDEP Office of Record Access at 401 East State Street, Trenton, New Jersey. Requests to inspect a physical copy of the proposed Judicial Consent Order should be directed to records.custodian@dep.nj.gov. Interested persons may submit comments on the

proposed Judicial Consent Order on the Department's website (https://dep.nj.gov/3m/comment), by email to 3Msettlement@dep.nj.gov, or in hard-copy form to the following address:

> New Jersey Department of Environmental Protection
>
> Legal, Regulatory, and Enforcement Policy
>
> 401 East State Street, 7th Floor
>
> PO Box 402
>
> Trenton, NJ  08625-0402
>
> Attn: 3M Settlement

All comments must be submitted within 60 calendar days of the date of this public notice. The NJDEP will consider all comments received and may decide to propose modifications to, or to withdraw or withhold consent to the entry of, the Judicial Consent Order if comments received disclose facts or considerations that demonstrate that the Judicial Consent Order is inappropriate, improper, or inadequate.