Case 1:19-cv-14766-RMB-JBC    Document 745-10    Filed 11/21/25    Page 1 of 11
                                                  PageID: 34205
City of Seattle v. Monsanto Company, Not Reported in Fed. Supp. (2023)

2023 WL 4373432
Only the Westlaw citation is currently available.
United States District Court, W.D. Washington, at Seattle.

CITY OF SEATTLE, Plaintiff,
v.
MONSANTO COMPANY, et al., Defendants.

Case No. C16-107-RAJ-MLP
|
Signed April 12, 2023

**Attorneys and Law Firms**

Ann Davison Sattler, Aiken St. Louis & Siljeg, Seattle, WA, Adele Daniel, Alison Gaffney, Daniel P. Mensher, Kathryn M. McCallum, Lynn Lincoln Sarko, Michael Woerner, Keller Rohrback LLP, Seattle, WA, Laura B. Wishik, Seattle City Attorney's Office, Seattle, WA, Elizabeth K. Bailey, Pro Hac Vice, Jennifer S. Wagner, Pro Hac Vice, Madeleine C. Holmes, Pro Hac Vice, Steve D. Larson, Pro Hac Vice, Emily A. Johnson, Keith A. Ketterling, Pro Hac Vice, Stoll Stoll Berne Lokting & Shlachter PC, Portland, OR, Keil M. Mueller, Pro Hac Vice, Yoona Park, Pro Hac Vice, Keller Rohrback LLP, Portland, OR, Gary A. Gotto, Pro Hac Vice, Keller Rohrback LLP, Phoenix, AZ, for Plaintiff.

Adam Edward Miller, Pro Hac Vice, Lisa N. DeBord, Pro Hac Vice, Susan L. Werstak, Pro Hac Vice, Michael W. Cromwell, Pro Hac Vice, Trudy W. Merrill, Pro Hac Vice, Rachel R. Berland, Pro Hac Vice, Shook Hardy & Bacon LLP, St. Louis, MO, Ann E. Sternhell Blackwell, Pro Hac Vice, Jennifer Campbell, Bryan Cave, St. Louis, MO, Brandon Arber, Pro Hac Vice, Richard L. Campbell, Pro Hac Vice, Stephen I. Hansen, Pro Hac Vice, Shook Hardy & Bacon LLP, Boston, MA, Christopher Michael Sorenson, Pro Hac Vice, Shook Hardy & Bacon, Kansas City, MO, Connie Sue Manos Martin, David F. Stearns, Schwabe Williamson & Wyatt, Seattle, WA, Daniel P. Brunton, Pro Hac Vice, Jason M. Ohta, Pro Hac Vice, Kelly E. Richardson, Pro Hac Vice, Natalie C. Rogers, Pro Hac Vice, Robert M. Howard, Pro Hac Vice, Latham & Watkins, San Diego, CA, David S. Haase, Pro Hac Vice, Kim Kocher, Pro Hac Vice, Thomas Marsh Goutman, Pro Hac Vice, Shook Hardy & Bacon LLP, Philadelphia, PA, Donald F. Zimmer, Jr., Pro Hac Vice, Troy D. McMahan, Pro Hac Vice, Megan R. Nishikawa, Pro Hac Vice, Nicholas D. Kayhan, Pro Hac Vice, King & Spalding LLP, San Francisco, CA, Shannon D. Lankenau, Pro Hac Vice, Latham & Watkins, San Francisco, CA, Peter Hsiao, Pro Hac Vice, King & Spalding LLP, Los Angeles, CA, for Defendants Monsanto Company, Pharmacia Corporation.

Adam Edward Miller, Pro Hac Vice, Lisa N. DeBord, Pro Hac Vice, Michael W. Cromwell, Pro Hac Vice, Trudy W. Merrill, Pro Hac Vice, Rachel R. Berland, Pro Hac Vice, Shook Hardy & Bacon LLP, St. Louis, MO, Ann E. Sternhell Blackwell, Pro Hac Vice, Jennifer Campbell, Bryan Cave, St. Louis, MO, Brandon Arber, Pro Hac Vice, Richard L. Campbell, Pro Hac Vice, Stephen I. Hansen, Pro Hac Vice, Shook Hardy & Bacon LLP, Boston, MA, Christopher Michael Sorenson, Pro Hac Vice, Shook Hardy & Bacon, Kansas City, MO, Connie Sue Manos Martin, David F. Stearns, Schwabe Williamson & Wyatt, Seattle, WA, Daniel P. Brunton, Pro Hac Vice, Jason M. Ohta, Pro Hac Vice, Kelly E. Richardson, Pro Hac Vice, Natalie C. Rogers, Pro Hac Vice, Robert M. Howard, Pro Hac Vice, Latham & Watkins, San Diego, CA, David S. Haase, Pro Hac Vice, Kim Kocher, Pro Hac Vice, Thomas Marsh Goutman, Pro Hac Vice, Shook Hardy & Bacon LLP, Philadelphia, PA, Donald F. Zimmer, Jr., Pro Hac Vice, Troy D. McMahan, Pro Hac Vice, Megan R. Nishikawa, Pro Hac Vice, Nicholas D. Kayhan, Pro Hac Vice, King & Spalding LLP, San Francisco, CA, Shannon D. Lankenau, Pro Hac Vice, Latham & Watkins, San Francisco, CA, Peter Hsiao, Pro Hac Vice, King & Spalding LLP, Los Angeles, CA, for Defendant Solutia Inc.

REPORT AND RECOMMENDATION

MICHELLE L. PETERSON, United States Magistrate Judge

## I. INTRODUCTION

**\*1** This matter is before the Court on Defendants Monsanto Company, Solutia Inc., and Pharmacia Corporation's ("Defendants") Motion for Summary Judgment ("Defendants' Motion") (Defs.' Mot. (dkt. # 326)). Particular to the Honorable Richard A. Jones' reference to the Undersigned, the specific issues before the Court are: (1) whether the State of Washington ("State") released Plaintiff City of Seattle's ("City") intentional public nuisance claim when the State settled its polychlorinated biphenyls ("PCBs") lawsuit against Defendants in June 2020; and (2)

Case 1:19-cv-14766-RMB-JBC    Document 745-10    Filed 11/21/25    Page 2 of 11
                                                      PageID: 34206
City of Seattle v. Monsanto Company, Not Reported in Fed. Supp. (2023)

whether *res judicata* otherwise bars the City's public nuisance claim. (Dkt. # 503; *see also* Defs.' Mot. at 1, 43-48.)

The City filed an opposition to Defendants' Motion (Pl.'s Resp. (dkt. # 442)), and Defendants filed a reply (Defs.' Reply (dkt. # 476)). This Court authorized a limited discovery period and requested supplemental briefing from the parties. (Dkt. ## 510, 513, 519, 578-79.) The Court heard oral argument from the parties on Defendants' Motion on November 16, 2022, and again after the conclusion of the limited discovery period, on March 30, 2023. (Dkt. ## 516, 583.) Having considered the parties' submissions, oral argument, the balance of the record, and the governing law, the Court recommends that Defendants' Motion (dkt. # 326) as to the referred issues be DENIED, as further explained below.

## II. BACKGROUND

### A. Procedural Background

The City's original complaint was filed in this action on January 25, 2016, but was amended by the City on May 4, 2016. (Dkt. ## 1, 31.) On May 18, 2016, Defendants filed a motion to dismiss the City's first amended complaint. (Dkt. # 34.) Relevant to the instant matter, the Defendants asserted, *inter alia*, that the City's suit was untimely. (*See id.*)

In deciding the timeliness of the City's claims, the Honorable Robert S. Lasnik found that the City's public nuisance claim was subject to a limitations period of two years, pursuant to RCW 4.16.130, and that the limitations period on the City's claim began when it discovered its injury. (Dkt. # 60 at 7-8.) Judge Lasnik found the City had reason to discover its injuries as early as December 2000, when the City voluntarily entered into an Administrative Order on Consent, which required it to investigate the nature and extent of PCB contamination of its waterways. (*Id.* at 8.)

Nevertheless, Judge Lasnik noted Washington state law exempts local governments from applicable statute of limitations where the claim is brought "for the benefit of the state."[1] (Dkt. # 60 at 8 (citing RCW 4.16.160).) Because the City was acting pursuant to sovereign authority delegated by the State under RCW 35.22.280(29)-(30),[2] derived from the State's duty "to hold all navigable waters within the state in trust for the public," Judge Lasnik determined the City's public nuisance claim was timely asserted because the City's efforts were asserted "for the common good."[3] (*Id.* at 9 ("[M]aintenance of public waterways fulfills the [City's] delegated responsibility to act as steward of the land and waters within its boundaries for the benefit of the public at large, without regard to whether the beneficiaries are city residents.").) Judge Lasnik denied Defendants' motion to dismiss with respect to the City's public nuisance and negligence claims, but granted the motion with respect to the City's claims for defective design, failure to warn, and equitable indemnity, on February 22, 2017. (*Id.* at 16.)

**\*2** On March 24, 2017, Defendants filed their first answer, which was later amended on September 6, 2017. (Dkt. ## 63, 91.) The parties' pleadings remained the status quo in this matter until July 22, 2022, when the parties stipulated to the filing of the City's second amended complaint. (Dkt. ## 261, 265.)

Pursuant to the stipulated filing, the City voluntarily dismissed its claim for negligence, removed the previously dismissed products liability and equitable indemnity claims, leaving only its public nuisance claim asserted. (Dkt. # 265; Second. Am. Compl. ("SAC") (dkt. # 267).) On August 8, 2022, Defendants filed their answer to the City's SAC. (Dkt. # 270.) On August 11, 2022, Defendants filed their Motion, seeking summary judgment on their release and *res judicata* affirmative defenses amongst other bases. (*See* Defs.' Mot.)

On August 18, 2022, the City filed a motion to strike Defendants' release and *res judicata* affirmative defenses. (Dkt. # 343.) The issues in Defendants' Motion were referred to this Court by Judge Jones on October 13, 2022. (*See* dkt. # 503.) The City's motion to strike Defendants' release and *res judicata* affirmative defenses was subsequently referred on October 19, 2022. (*See* dkt. # 506.) This Court heard oral argument on both motions on November 16, 2022. (Dkt. # 516.)

On November 22, 2022, this Court issued a Report and Recommendation granting and denying in part the City's motion to strike, allowing for Defendants' release and *res judicata* affirmative defenses to proceed, but deferring ruling on Defendants' Motion to allow a limited period of discovery. (Dkt. # 519 at 7-8.) On January 4, 2023, Judge Jones adopted this Court's Report and Recommendation. (Dkt. # 538.) The parties' limited discovery period was

Case 1:19-cv-14766-RMB-JBC    Document 745-10    Filed 11/21/25    Page 3 of 11
                                        PageID: 34207
City of Seattle v. Monsanto Company, Not Reported in Fed. Supp. (2023)

ultimately extended by the Court until March 10, 2023. (Dkt. # 572.) This matter is now ripe for review.

### B. Factual Background

This case generally arises out of Defendants' manufacture and sale of PCBs. Through this lawsuit, the City seeks to hold Defendants liable for PCBs that have escaped from use in industrial and commercial applications into the Lower Duwamish Waterway ("LDW") and the City's stormwater system. (*See* SAC at ¶¶ 5-15.)

As discussed above, on January 25, 2016, the City filed the instant suit against Defendants. (*See* Compl. (dkt. # 1).) This action was one of a number filed by the law firm Baron & Budd, P.C. on behalf of government entities across the United States against Defendants due to alleged PCB contamination. (Park Decl., Ex. EI (dkt. # 452-8) at 1-2.) On December 8, 2016, the State filed suit against Defendants alleging its own claims relating to PCB contamination. (*See* Park Decl., Ex. EJ (dkt. # 452-9).) Baron & Budd represented both the City and the State in their PCB actions. (Wishik Decl. (dkt. # 445) at ¶ 16.) The State's complaint in its lawsuit explicitly exempted the City's PCB contamination claims and damages against Defendants from its action. (Park Decl., Ex. EJ at ¶¶ 81-82.)

In early 2019, Defendants and Baron & Budd, on behalf of the City and several other municipalities with PCB contamination claims, began engaging in settlement discussions in *City of Long Beach et al. v. Monsanto Company et al.*, C16-3493-FMO-AS (C.D. Cal.) ("Long Beach Class Action"). (*See* Park Decl., Ex. EI at 3.) The parties' discussions in the Long Beach Class Action ultimately resulted in a proposed class settlement in March 2020 ("Class Settlement") involving 2,528 cities and other entities. (*See id.*; Park Decl., Ex. EN (dkt. # 452-13) at 4.) The City was an initial class member at the time the Class Settlement was reached.[4] (*See* Park Decl., Ex. EI at 7-8 n.9.)

**\*3** On March 14, 2022, preliminary approval of the Class Settlement was granted. (Park Decl., Ex. EI at 31-32.) However, on July 21, 2022, the City opted out of the Class Settlement. (Park Decl., Ex. EQ (dkt. # 452-16).) The City's decision to opt out from the Class Settlement occurred approximately two weeks before Defendants raised their release and *res judicata* defenses through their amended answer on August 8, 2022, and filed their Motion seeking summary judgment on the affirmative defenses on August 11, 2022. (*See* dkt. # 270; Defs.' Mot.)

As to the State's action, on June 24, 2020, Defendants and the State entered into a settlement agreement in the State's action ("State Settlement Agreement"). (Park Decl., Ex. EO (dkt. # 452-14).) Pursuant to the State Settlement Agreement, the State agreed to release all claims against Defendants relating to PCB contamination. (Park Decl., Ex. EO at ¶¶ 23-27.) Specifically, the State Settlement Agreement included the following language as to the released claims:

> "Released Claims" means all claims, demands, rights, damages, obligations, suits, debts, liens, contracts, agreements, and causes of action of every nature and description whatsoever, ascertain or unascertained, suspected or unsuspected, existing now or arising in the future, whether known or unknown, both at law and in equity, which were or could have been alleged related to the manufacture, sale, testing, disposal, release, marketing or management of PCBs by Defendant, including but not limited to any and all claims based upon or related to the alleged presence of or damage caused by PCBs in the environment, groundwater, stormwater, stormwater and wastewater drainage systems, waterbodies, sediment, soil, air, vapor, natural resources, fish and/or wildlife within the State, and regardless of the legal theory or type or nature of damages claimed....

(*Id.* at ¶ 15.) In addition, and relevant to the referred matters before the Court, the State Settlement Agreement defines "Releasing Persons" as: "[T]he State of Washington, and each of its officers acting in their official capacities, agencies, departments, boards, and commissions and any predecessor, successor or assignee of any of the above." (Park Decl., Ex. EO at ¶ 16.)

Under the terms of the State Settlement Agreement, Defendants agreed to pay the State $95 million.[5] (Park Decl., Ex. EO at ¶ 22.) On August 27, 2020, the State's action was dismissed with prejudice by stipulation and order of dismissal in King County Superior Court. (DeBord Decl. (dkt. # 327) at ¶ 104, Ex. 103 (dkt. # 332-2).)

### III. DISCUSSION

Case 1:19-cv-14766-RMB-JBC    Document 745-10    Filed 11/21/25    Page 4 of 11
City of Seattle v. Monsanto Company, Not Reported in Fed. Supp. (2023)
PageID: 34208

Defendants argue the City's public nuisance claim was released by the State when the State settled its lawsuit against Defendants in June 2020 for the same injuries the City claims in this action and that *res judicata* additionally bars the City's claim independent of the State Settlement Agreement. (Defs.' Second Suppl. Br. (dkt. # 578) at 1; *see also* Defs.' Mot. at 1, 43-48; Defs.' First. Suppl. Br. (dkt. # 513) at 1-3, 6-10, 13-17.)

The City counters that such a release could not have occurred by operation of law and that it has produced substantial and unrebutted extrinsic evidence establishing that the State did not intend to release the City's claims through the State Settlement Agreement.[6] (Pl.'s Second Suppl. Br. at 1; *see also* Pl.'s Resp. at 50-55; Pl.'s First Suppl. Br. at 3-13.) The City further argues that *res judicata* is inapplicable in this case because the State's action was dismissed by stipulation and settlement. (Pl.'s Second Suppl. Br. at 12 & n.22; *see also* Pl.'s Resp. at 55-63; Pl.'s First Suppl. Br. at 13-17.)

**\*4** As further explained below, the Court finds that Defendants' Motion should be denied because the parties to the State Settlement Agreement did not clearly intend to release the City's public nuisance claim and such claim does not remain otherwise barred by *res judicata*.

### A. Summary Judgment Standard

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the Court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. It is the nonmoving party's responsibility to "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoted source omitted). The Court need not "scour the record in search of a genuine issue of triable fact." *Id.* (quoted source omitted); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

### B. Release (by Operation of Law)

On this issue, the question presented to the Court is whether under Washington law, the State is capable of releasing a third-party municipality's claim through its Attorney General ("AG")—without notice or consent of that municipality—where such claim is brought under powers previously granted by the Washington Constitution or delegated by the Washington State Legislature.

To that end, Defendants argue the State's release of its PCB contamination claims released the City's derivative claim for public nuisance by operation of law. (Defs.' Second Suppl. Br. at 1-5.) Defendants centrally claim that because the City brings its public nuisance claim under sovereignty "borrowed" from the State, the State's release of its PCB claims leaves no sovereign claim for the City to pursue.[7] (*Id.* at 2-3 (citing *Kelso v. City of Tacoma*, 63 Wn.2d 913, 916-18 (1964)).) Defendants further state that the City improperly construes powers enumerated by RCW 35.22.280 as prohibiting the State from settling its own sovereign claims as well as the State's ability to bind the City through the State's own litigation. (*Id.* at 4-5 (citing *City of Seattle v. McKenna*, 172 Wn.2d 551, 562 (2011); *City of Spokane v. J-R Distribs., Inc.*, 90 Wn.2d 722, 730 (1978)).)

Case 1:19-cv-14766-RMB-JBC    Document 745-10    Filed 11/21/25    Page 5 of 11
City of Seattle v. Monsanto Company, Not Reported in Fed. Supp. (2023)
PageID: 34209

*5 The City counters that Defendant's release by operation of law argument fails because: (1) the Washington AG does not have the power to extinguish the City's claims premised on sovereign powers granted by the Washington Constitution and statute; (2) the AG did not purport to release the City's sovereign claims in the State's suit; and (3) such propositions of law were clearly not settled in June 2020 when the State Settlement Agreement was executed. (Pl.'s Second Suppl. Br. at 6-8.) The City additionally argues that its powers are exercised concurrently and independent of the State, and not in a principal/agent relationship, because the City has separate constitutional (Wash. Const. art. XI, § 11) and statutory (RCW 35.22.280(29)-(30)) powers to bring claims to abate nuisances and protect its waterways. (Id. at 8-10 (citing Davison v. State of Washington, 196 Wn.2d 285, 302 (2020); Emerald Enters., LLC v. Clark County, 2 Wn. App. 2d 794, 803 (Wash. Ct. App. 2018)).)

Given the parties' divergent arguments considering this issue, this Court finds it appropriate to provide a brief recitation of each party's cited authority. First, as to Defendants' authorities, Defendants contend the Washington Supreme Court's decision in *Kelso* demonstrates the City does not retain a right to pursue a claim premised on sovereign interests already released by the State in the Settlement Agreement. (Defs.' Second Suppl. Br. at 2-3.) In *Kelso*, the Washington Supreme Court found that because the State legislature had waived the State's sovereign immunity, without specifically preserving the immunity for municipalities, the City of Tacoma was liable for tortious conduct at the time of an automobile collision at issue. 63 Wn.2d at 918-19. In so finding, and relevant to the instant matter, the Washington Supreme Court noted "the common-law right of sovereign immunity is not in the municipality but in the sovereign from which the immunity is derived." Id. at 916. "[Municipalities'] immunity, like their sovereignty, is in a sense borrowed and the one is commensurate with the other." Id. at 917.

In addition, Defendants cite to *McKenna* as demonstrating that the Washington State Legislature vested statutory authority in the AG to sue on behalf of the State under RCW 43.10.030(1) as a whole, and as such, the State through the AG is allowed to bind municipalities even over their objection. See McKenna, 172 Wn.2d at 562 (discussing AG authority under RCW 43.10.030(1) and finding Washington AG properly acted within such authority when he made the State a party to a multistate action seeking to enjoin enforcement of the Patient Protection and Affordable Care Act). Along this line, Defendants also cite to *J-R Distribs., Inc.* as evincing that the City's exercise of authority under RCW 35.22.280 can be inhibited where it conflicts with the province of state government.[8] See J-R Distribs., Inc., 90 Wn.2d at 730.

On the other hand, the City represents through its cited authorities that this action was brought against Defendants under the City's own constitutionally and legislatively delegated powers, which the City contends is an independent and concurrent exercise from the State's exercise of its authority through the AG. (Pl.'s Second Suppl. Br. at 8-9.) As support, the City cites to Article XI, section 11 of the Washington Constitution, which grants extensive police powers to municipalities in Washington: "Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." This provision, known as "home rule," presumes that local governments are "autonomous"[9] Emerald Enters., LLC, 2 Wn. App. 2d at 803 (citing Watson v. City of Seattle, 189 Wn.2d 149, 166 (2017)). "The scope of [a county's] police power is broad, encompassing all those measures which bear a reasonable and substantial relation to promotion of the general welfare of the people." Id. (alteration in original) (quoting State of Washington v. City of Seattle, 94 Wn.2d 162, 165 (1980)).

*6 The City further relies on the Washington Supreme Court's decision in *Davison* as an example showing that the City and the State's relation with respect to the exercise of sovereign police powers is not that of a principal and agent as suggested by Defendants. (Pl.'s Second Suppl. Br. at 9-10.) In *Davison*, the Washington Supreme Court found that the Washington legislature delegated to local governments the duty to provide indigent public defense to juveniles such that the State could not be held liable for alleged systemic deficiencies in the indigent public defense services system. 196 Wn.2d at 296, 302-03. In so ruling, the Washington Supreme Court noted that "while state and local governments share responsibility for carrying out the right to counsel, each unit of government has distinct duties." Id. at 302.

> The relationship between state and local government is not akin to agency law. The State is not a 'principal' legally responsible for the acts of its local government 'agents' when such acts occur within the scope of the local government's delegated duty ... We must respect the legislature's plenary power to enact laws and the

City of Seattle v. Monsanto Company, Not Reported in Fed. Supp. (2023)

Case 1:19-cv-14766-RMB-JBC    Document 745-10    Filed 11/21/25    Page 6 of 11 PageID: 34210

constitutional division of power between state and local government.

*Id.* Finally, the City notes that the Washington AG has also recognized that "the legislature must specifically act if it wants to *restrain* the authority of cities or counties." Wash. AGO 2018 No. 10, 2018 WL 6929235 (Wash. A.G. Dec. 26, 2018) (emphasis in original).

After an exploration of the parties' cited authorities, the Court finds that neither side has provided this Court with on-point Washington law as to whether the State could release the City's claim here by operation of law through the State Settlement Agreement. Nevertheless, the Court finds that it need not resolve this seemingly novel issue, because as suggested by the City and the parties' authorities, it is clear this issue was not plainly settled Washington law at the time the State Settlement Agreement was entered into by the State and Defendants in June 2020.

One of the foundational principles of contract law is that "the general law in force at the time of the formation of the contract is a part thereof." Cornish Coll. of the Arts v. 1000 Virginia Ltd. P'ship, 158 Wn. App. 203, 223-24 (Wash. Ct. App. 2010) (quoting Arnim v. Shoreline Sch. Dist. No. 412, 23 Wn. App. 150, 153 (Wash Ct. App. 1979)); *see also* City of Olympia v. Travelers Cas. & Sur. Co. of Am., 2020 WL 42252, at *2 (W.D. Wash. Jan. 3, 2020). "Indeed, it has long been held to be 'the universal law that the statutes and laws governing citizens in a state are presumed to be incorporated in contracts made by such citizens, because the presumption is that the contracting parties know the law.' " Cornish Coll. of the Arts, 158 Wn. App. at 223-24 (citing Leiendecker v. Aetna Indem. Co., 52 Wn. 609, 611 (1909); Fischler v. Nicklin, 51 Wn.2d 518, 522 (1958)) ("[E]xisting law is a part of every contract, and must be read into it."). These principles apply to both "statutes and the settled law of the land at the time the contract is made." *Id.* (citing In re Kane, 181 Wn. 407, 410 (1935)).

Defendants' argument and cited authorities fail to convince this Court that in June 2020 it was clearly settled under Washington law that the State's release of its public nuisance claim would act by operation of law to release the City's claim. "If the parties to a contract wish to provide for other legal principles to govern their contractual relationship, they must be expressly set forth in the contract. Absent a clear intent to the contrary disclosed by the contract, the general law will govern." Wagner v. Wagner, 95 Wn.2d 94, 98-99 (1980) (citations omitted). Here, despite significant briefing on this issue, Defendants fail to clearly demonstrate that settled Washington law at the time of the State Settlement Agreement plainly allowed the State to release the City's claim without the City's consent or participation. The import of *Kelso*, *McKenna*, and *J-R Distribs., Inc.* certainly do not establish that such a release must follow by operation of law. Furthermore, and as examined in more detail below, the State Settlement Agreement did not clearly and unambiguously demonstrate the parties intended to release the City's claim by its terms or through the use of any explicit language evidencing such release.

**\*7** Because Defendants' release by operation of law argument is without the support of settled Washington law at the time of the State Settlement Agreement, Defendants are not entitled to judgment as a matter of law on this issue. Therefore, summary judgment should be denied with respect to this claim.

### C. Release (State Settlement Agreement Terms)

Next, Defendants' Motion argues that the City constitutes an "agency" of the State, and therefore, a "Releasing Person" under the State Settlement Agreement. (Defs.' Mot. at 1, 44-45; Defs.' Second Suppl. Br. at 5-6.) On this issue, as previously acknowledged by the Court in authorizing limited discovery, the parties disagree as to the reasonable meaning of "Releasing Person" as used in the State Settlement Agreement. (*See* dkt. # 519 at 7-8.) Specifically at issue, "Releasing Person" per the State Settlement Agreement is defined as:

> "Releasing Persons" shall mean the State of Washington, and each of its officers acting in their official capacities, *agencies*, departments, boards, and commissions and any predecessor, successor or assignee of any of the above.

(Park Decl., Ex. EO at ¶ 16 (emphasis added).)

Defendants contend that nothing revealed by the Court's authorized limited discovery indicates an intent of the parties to depart from the definition of "agencies" in the State Settlement Agreement as it has been used historically by Washington courts to denote municipalities acting in their sovereign capacity. (Defs.' Second Suppl. Br. at 5-6.) The City argues that the term "agencies" remains subject to multiple reasonable interpretations and that Defendants

failed to meet their burden of proof on summary judgment by relying solely on the four corners of the State Settlement Agreement as their evidentiary support.[10] (Pl.'s Second Suppl. Br. at 2-6.) The City further notes that its extrinsic evidence and the other surrounding circumstances also clearly support that the parties to the State Settlement Agreement did not intend for the definition of "Releasing Persons" to include the City. (Id. at 3-6 (citing Pl.'s First Suppl. Br. at 1-6).)

The Court is to interpret settlement agreements the same way as other contracts. McGuire v. Bates, 169 Wn.2d 185, 188 (2010) (citing Mut. of Enumclaw Ins. Co. v. USF Ins. Co., 164 Wn.2d 411, 424 n.9 (2008)). In interpreting contracts, Washington courts follow the "objective manifestation theory of contracts." Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503 (2005). Under that approach, courts "impute an intention corresponding to the reasonable meaning of the words used" and generally give words "their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." Id. at 503-04. The parties' subjective intent is generally irrelevant if "an intention corresponding to the reasonable meaning of the words used" can be imputed. Id.

**\*8** Per Defendants' cited authority as to the meaning, Washington courts have frequently referenced municipalities as "agencies" of the State. See, e.g., J-R Distribs., Inc., 90 Wn.2d at 726 (quoting Lauterbach v. City of Centralia, 49 Wn. 550, 554 (1956)) ("A municipal corporation is a body politic established by law as an agency of the state."); Neils v. City of Seattle, 185 Wn. 269, 275 (1936) ("In the exercise of its sovereign power, the state may withdraw from a municipality ... powers delegated to, or exercised by, them and redelegate such powers to another agency"); Malette v. City of Spokane, 77 Wn. 205, 227 (1913) ("[T]he power and duty to open and improve the highways rests primarily in the state as an attribute of sovereignty, and is delegated by it to the city as a governmental agency of the state").

The City counters on this issue that Black's Law Dictionary defines "local agency" to include a city, but "state agency" to be "an executive or regulatory body of a state" such as "state offices, departments, divisions, bureaus, boards, and commissions." Black's Law Dictionary (11th ed. 2019). The City suggests the ordinary meaning of state agencies also fails to countenance Defendants' interpretation.[11] See Mochizuki v. King County, 15 Wn. App. 296, 297-98 (Wash. Ct. App. 1976) ("Although several Washington decisions refer to the county as an arm or agency of the state ... a county is not generally considered an agency of the state in spite of the general language found in these cases.").

Here, given an examination of the State Settlement Agreement and the parties' submitted authorities, the Court finds the reasonable meaning of "agencies" as utilized by the parties to the State Settlement Agreement with respect to "Releasing Persons" does not unambiguously lend itself to a conclusion that the City was intended to be included in the State's release of its PCB contamination claims. Because the Court finds the reasonable meaning of the term is not clear on its face, or by reference to the parties' authorities, the Court will turn to the parties' submitted extrinsic evidence.

Where relevant for determining mutual intent, the Washington Supreme Court has delineated that extrinsic evidence may be considered, including: "(1) the subject matter and objective of the contract, (2) all the circumstances surrounding the making of the contract, (3) the subsequent acts and conduct of the parties, and (4) the reasonableness of respective interpretations urged by the parties." Berg v. Hudesman, 115 Wn.2d 657, 667 (1990) (quoting Stender v. Twin City Foods, Inc., 82 Wn.2d 250, 254 (1973)). However, the Washington Supreme Court has clarified that "surrounding circumstances and other extrinsic evidence are to be used 'to determine the meaning of *specific words and terms used*' and not to 'show an intention independent of the instrument' or to 'vary, contradict or modify the written word." Hearst Commc'ns Inc., 154 Wn.2d at 503 (quoting Hollis v. Garwall, Inc., 137 Wn.2d 683, 695-96 (1999) (emphasis in original)).

**\*9** On this aspect, Defendants have remained steadfast on their reliance on the "four corners" of the State Settlement Agreement as having released the City based on its terms. (Defs.' Second. Suppl. Br. at 5-6; *see also* dkt. # 572 at 5-6.) Defendants have thus not provided this Court with any extrinsic evidence demonstrating that "agencies" was intended in "Releasing Persons" to release the State's municipalities, including the City, by its terms.

Conversely, the City has offered considerable evidence demonstrating the parties to the State Settlement Agreement did not intend for "agencies" in the State Settlement Agreement to release the City's claims. The City has submitted the declarations of: (1) William Sherman, Chief of the Environmental Protection Division of the State AG's Office; (2) Peter Holmes, the former Seattle City Attorney;

City of Seattle v. Monsanto Company, Not Reported in Fed. Supp. (2023)

Case 1:19-cv-14766-RMB-JBC   Document 745-10   Filed 11/21/25   Page 8 of 11
PageID: 34212

and (3) attorney John Fiske, who represented the State in connection with the State Settlement Agreement, all of whom represent that the State (and its counsel) did not intend to release the City's claims by operation of the terms of the State Settlement Agreement. (*See* Sherman Decl. (dkt. # 522-3) at ¶¶ 3-5; Holmes Decl. (dkt. # 522-4) at ¶¶ 3-4; Fiske Decl. (dkt. #522-5) at ¶¶ 9-11.) Furthermore, the City has previously submitted, *inter alia*, that the State Settlement Agreement's use of the term "agencies" in "Releasing Persons" could not have been intended to release the City's claim given Defendants' continued litigation of this action since the State Settlement Agreement was reached (*see* Pl.'s First Suppl. Br. at 1-3) as well as the existence of other State settlement agreements containing language explicitly releasing claims brought by its political subdivisions to the extent of the State AG's authority to do so (*see* Wagner First Suppl. Decl., Ex. O (dkt. # 511-15) at 5-6).

Based on the ambiguity in the State Settlement Agreement itself with respect to use of the term "agencies" in "Releasing Persons," Defendants' lack of extrinsic evidence to support their preferred interpretation of that term as releasing the City's claim, and the City's proffered extrinsic evidence, the Court concludes that summary judgment in favor of Defendants on this claim should not be granted.

### D. Res Judicata

Last, Defendants argue that *res judicata* bars the City's attempt to "split" the sovereign public nuisance claim for the LDW because it properly belonged to the subject matter of the State lawsuit. (Defs.' Second Suppl. Br. at 6-9.) Defendants argue *res judicata* bars the City's claim, independent of any terms contained in the State Settlement Agreement, because settlement agreements are given *res judicata* effect as to the issues that were or should have been resolved by the parties in the prior proceeding. (*Id.* at 6-7.) The City argues that *res judicata* is inapplicable in this case because the preclusive effect of a dismissal based on a settlement is no greater than the release agreed to by the parties, and because the City was not included within the scope of the State Settlement Agreement. (Pl.'s Second Suppl. Br. at 12; *see also* Pl.'s First Suppl. Br. at 13-14.)

*Res judicata* prohibits a party from bringing a claim already litigated or a claim that could have been litigated in a prior action. *Pederson v. Potter*, 103 Wn. App. 62, 67 (Wash. Ct. App. 2000). Washington law governs the preclusive effect of a settlement agreement. *Manufactured Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1031 (9th Cir. 2005). As such, a settlement agreement has the same force and effect as a final judgment on the claim for purposes of *res judicata*. *Hadley v. Cowan*, 60 Wn. App. 433, 439 (Wash. Ct. App. 1991) ("*Res judicata* applies to claims that were, or should have been, litigated in a prior proceeding between the parties, including settlement agreements.").

**\*10** However, in the settlement agreement context, the preclusive effect of a dismissal based on a settlement is no greater than the release agreed to by the parties. *See Wojciechowski v. Kohlberg Ventures LLC*, 923 F.3d 685, 689-90 (9th Cir. 2019) ("[G]iven the contractual nature of ... settlement agreements, the preclusive effect of a judgment based on such an agreement can be no greater than the preclusive effective of the agreement itself." (quotations omitted)); *see also F.T.C. v. Garvey*, 383 F.3d 891, 898 n.7 (9th Cir. 2004) ("The basically contractual nature of consent judgments has led to general agreement that preclusive effects should be measured by the intent of the parties."). In determining the *res judicata* effect of an order of dismissal based upon a settlement agreement, the court should therefore "attempt to effectuate the parties' intent." *See Wojciechowski*, 923 F.3d at 690 (quoting *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288 (11th Cir. 2004)). The best evidence of parties' intent is the settlement agreement as interpreted according to principles of contract law. *Id.* (citing *Norfolk S. Corp.*, 371 F.3d at 1289).

On this issue, both parties cite to *Holden-McDaniel Partners, LLC v. City of Arlington*, a case where the trial court determined that a set of the plaintiff's claims were barred by *res judicata* based on a prior settlement and release entered by the parties. 2017 WL 959502 at \*3 (Wash. App. Jan. 9, 2017). In that case, the Washington Court of Appeals ruled that *res judicata* did not apply because the settlement had not been reduced to a judgment, but found that regardless of whether did *res judicata* apply, the dispute between the parties was over the scope of the settlement release, and not its finality. *Id.* at \*6-7. "That dispute is to be resolved by resorting to principles of contract interpretation, not according to the law regarding the enforceability of judgments." *Id.* at \*7.

Here, the parties' disputes concern the scope of any release of the City's claims by the State Settlement Agreement. As considered above with regard to Defendants' release arguments, the scope of the State Settlement Agreement did

Case 1:19-cv-14766-RMB-JBC    Document 745-10    Filed 11/21/25    Page 9 of 11
City of Seattle v. Monsanto Company, Not Reported in Fed. Supp. (2023)
PageID: 34213

not clearly release the City by operation of law or by its own terms. Consequently, the preclusive effect of a judgment based on the State Settlement Agreement can be no greater than the preclusive effective of the State Settlement Agreement itself. See *Wojciechowski*, 923 F.3d at 690-91; *Holden-McDaniel Partners, LLC*, 2017 WL 959502 at \*6-7. Because this Court has determined that the City and its claim were not contemplated in the scope of the State Settlement Agreement to be released, Defendants' *res judicata* argument should be rejected.

However, even if the Court were to find *res judicata* applicable in this action, Defendants fail to demonstrate that all of the *res judicata* factors are clearly satisfied. Under Washington law, for *res judicata* to apply, a prior judgment must have a concurrence of identity with a subsequent action in: (1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made. *Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 763 (1995). Though "it is not necessary that all four factors favor preclusion to bar the claim," *see Zweber v. State Farm Mut. Auto. Ins. Co.*, 39 F. Supp. 3d 1161, 1166 (W.D. Wash. 2014) (citations omitted), *res judicata* is also not applied in all situations where the elements of the doctrine are met. *Reeves v. Mason Co.*, 22 Wn. App. 2d 99, 116-17 (Wash Ct. App. 2022) (discussing circumstances in which *res judicata* is not applied, including exceptions made on the basis of public policy).

Here, there is no concurrence of identity of the parties. As noted above, the ambiguity of the term "agencies" in the State Settlement Agreement and the extrinsic evidence provided by the City demonstrate the City was not intended to be included in the State Settlement Agreement. Defendants similarly fail to demonstrate that there was clear privity between the City and State with respect to the State Settlement Agreement, such that the City and State could be regarded as the same person or party with respect to the public nuisance claim. The City was not in control, nor substantially participated, in the State's action. *See Loveridge*, 125 Wn.2d at 764 ("Privity is established in cases where a person is in actual control of the litigation, or substantially participates in it even though not in actual control."). Moreover, despite Defendants' position that the delegated and sovereign nature of the City's claim results in the City sharing the same identity as the State for the application of *res judicata* to the City's claim, Defendants fail to cite any authority holding that such is required or permitted.

## IV. CONCLUSION

**\*11** For the foregoing reasons, this Court recommends that Defendants' Motion (dkt. # 326) be DENIED as to the referred issues to the Undersigned. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **fourteen (14)** days after the filing of this Report and Recommendation. Objections, and any response, shall not exceed twelve pages. Failure to file objections within the specified time may affect a party's right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **April 28, 2023.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4373432

Case 1:19-cv-14766-RMB-JBC    Document 745-10    Filed 11/21/25    Page 10 of 11
                                        PageID: 34214
City of Seattle v. Monsanto Company, Not Reported in Fed. Supp. (2023)

**Footnotes**

1    As outlined in Judge Lasnik's Order, municipal actions are brought "for the benefit of the state" when the actions "arise out of the exercise of powers traceable to the sovereign powers of the state which have been delegated to the municipality." (Dkt. # 60 at 8 (quoting *Wash. Pub. Power Supply Sys. v. Gen. Elec. Co.*, 113 Wn.2d 288, 293 (1989)).) But when a municipality "regulates and administers the local and internal affairs of the territory which is incorporated, for the special benefit and advantage of the urban community embraced within the boundaries of the municipal corporation" the municipal action is brought in a proprietary capacity. (*Id.* (quoting *City of Moses Lake v. United States*, 430 F. Supp. 2d 1164, 1171-72 (E.D. Wash. 2006)).)

2    Pursuant to RCW 35.22.280(29)-(30), any city of the first class, like the City, shall have power to prevent "the defilement or pollution of all streams running through or into its corporate limits," and "to declare what shall be a nuisance, and to abate the same." (*See also* dkt. # 60 at 9.)

3    Because Judge Lasnik resolved Defendants' statute of limitations issue on the City's pursuit of this action on sovereign capacity grounds, Judge Lasnik did not reach or consider the City's alternative argument—that its public nuisance claim resulted from a "continuing tort" which also tolled the limitations period. (*See* dkt. # 60 at 10 n.10.)

4    For reasons unknown, on March 9, 2020, Baron & Budd withdrew as counsel of record for the City in this action. (*See* dkt. # 149.)

5    The City asserts that it was not a part of the settlement negotiations between Defendants and the State and that it did not participate in the State's case. (*See* Wishik Decl. at ¶ 17.) As a result, the City avers it did not, nor was it entitled to, recover any funds under the terms of the State Settlement Agreement. (*Id.*)

6    The City additionally argues that Defendants' Motion applies only to the City's claim to the extent it is brought in a sovereign capacity. The City contends it retains a right to pursue its claim in all capacities, including a proprietary capacity as to its stormwater systems, which the City argues remains unaffected by the State Settlement Agreement. (Pl.'s Second Suppl. Br. (dkt. # 579) at 2 n.1 (citing Pl.'s First Suppl. Br. (dkt. # 510) at 20).)
Defendants have countered that the City disclaimed any proprietary basis to recover for its claim because its Rule 30(b)(6) deponent previously admitted the City was not seeking to recover costs "relating to physical injury to the lines or the structures" of its stormwater systems. (Defs.' Reply at 9 (citing Wishik Decl. (dkt. # 330-37) at 227:9-228:4).) Defendants further note that if the City's claim were found to be brought only in a proprietary capacity, it would require this Court to revisit the statute of limitations issue ruling previously addressed in Judge Lasnik's Order, which the City conceded at oral argument in November 2022. (*Id.*; *see also* dkt. # 518 at 37:6-39:8.)
As Defendants' Motion can be resolved on other grounds, this Court takes no position on the issue at this time.

7    Defendants note the City previously and successfully argued that this case was brought in its sovereign capacity in front of Judge Lasnik "in the name or for the benefit of the state" to avoid the applicable statute of limitations under RCW 4.16.130. (Defs.' Second Suppl. Br. at 2-3 (citing dkt. # 60 at 8-9).)

8    However, the Court notes the issue in that case was whether the City of Spokane's power to define and abate nuisances under RCW 35.22.280(30) authorized its adoption of a city ordinance that provided rules of evidence and procedures for its superior court, which the Washington Supreme Court rejected as an improper exercise of power because it infringed on the power the state judiciary and conflicted with existing state court rules and statutes. *See J-R Distribs., Inc.*, 90 Wn.2d at 726-32.

9    *See* Hugh D. Spitzer, *"Home Rule" vs. "Dillon's Rule" for Washington Cities*, 38 Seattle U. L. Rev. 809, 856 (Spring 2015) (discussing the broad authority of Washington cities and counties and finding that, under home rule,

City of Seattle v. Monsanto Company, Not Reported in Fed. Supp. (2023)

Case 1:19-cv-14766-RMB-JBC     Document 745-10     Filed 11/21/25     Page 11 of 11
PageID: 34215

"[Washington] cities have constitutionally granted police powers equivalent to those of the state ... so long as the exercise of those powers does not conflict with general laws.").

[10] The City maintains that Defendants' 30(b)(6) designee and Mr. William Dodero (who signed the State Settlement Agreement on behalf of Defendants) were questioned at deposition during the limited discovery period as to the existence of any extrinsic evidence inconsistent with the City's position, and also failed to identify such evidence. (*See* Pl.'s Second Suppl. Br. at 4 (citing Wagner Second Suppl. Decl., Ex. A (Abrams Dep. at 35:11-37:20, 41:7-43:16, 43:25-45:15, 47:12-55:24, 157:13-159:14), Ex. B (Dodero Dep. at 63:11-66:24, 70:3-74:8, 76:11-77:4)).)

[11] The City further notes that several Washington statutes distinguish "state agencies" from cities and other local governmental entities. *Compare* RCW 42.56.010(1) (defining a "State agency" as a "state office, department, division, bureau, board, commission, or other state agency" with regard to Public Records Act requests) *with id.* (defining a "local agency" as a "county, city, town, municipal corporation, quasi-municipal corporation, or special purpose district, or any office, department, division, bureau, board, commission, or agency thereof, or other local public agency."); *see also* RCW 42.56.070 (imposing different Public Records Act obligations on "state agencies" and "local agencies"); RCW 43.10.040 (allowing the State AG "to represent "all ... agencies of the state" in legal matters and proceedings).

---

**End of Document**                                       © 2025 Thomson Reuters. No claim to original U.S. Government Works.