Donald J. Camerson, II, Esq.
James W. Crowder, IV, Esq.
BRESSLER, AMERY & ROSS, P.C.
325 Columbia Turnpike
Florham Park, NJ 07932
Tel: (973) 514-1200
Fax: (973) 514-1660
djcamerson@bressler.com
jcrowder@bressler.com
*Attorneys for Defendant 3M Company*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>E.I. DU PONT DE NEMOURS AND COMPANY, *et al.*,<br><br>Defendants. | Civil Action No.<br>1:19-cv-14766-RMB-JBC-JS<br><br>Hon. Renée M. Bumb, U.S.D.J.<br>Hon. James B. Clark, U.S.M.J.<br>Hon. Joel Schneider (Ret.), Special Master |

# 3M COMPANY'S MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO APPROVE THE PROPOSED 3M JUDICIAL CONSENT ORDER

i

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

    I.    The Legal Standard Is Highly Deferential ............................................................ 2

    II.    3M's Exit from PFAS Manufacturing .................................................................. 4

    III.    The Breadth of the Proposed 3M JCO ................................................................. 5

        A.    The Settlement Payments and Their Deployment by the State ..................... 6

        B.    The Release and Covenant Not To Sue .......................................................... 8

        C.    The Public Notice and Comment Process ..................................................... 9

    IV.    Good-Faith Settlement Negotiations and the Special Master ............................. 11

CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*New Jersey Department of Environmental Protection v. Exxon Mobil Corp.*,
 183 A.3d 289 (N.J. Super. Ct. Law Div. 2015), *aff'd*, 181 A.3d 257 (N.J.
 Super. Ct. App. Div.), *certif. denied*, 185 A.3d 875 (N.J. 2018) ............................................ 2–3

*Nolan v. Lee Ho*,
 577 A.2d 143 (N.J. 1990) .................................................................................................... 2

*In re Tutu Water Wells CERCLA Litigation*,
 326 F.3d 201 (3d Cir. 2003) ............................................................................................. 2–4

*United States v. Acton Corp.*,
 733 F. Supp. 869 (D.N.J. 1990) .......................................................................................... 4

*United States v. Cannons Engineering Corp.*,
 720 F. Supp. 1027 (D. Mass. 1989), *aff'd*, 899 F.2d 79 (1st Cir. 1990) ............................ 4

*United States v. Cannons Engineering Corp.*,
 899 F.2d 79 (1st Cir. 1990) ............................................................................................ 2, 4

*United States v. Kramer*,
 19 F. Supp. 2d 273 (D.N.J. 1998) .................................................................................. 2, 4

*United States v. Rohm & Haas Co.*,
 721 F. Supp. 666 (D.N.J. 1989) ....................................................................................... 2–4

*\*United States v. Unimatic Manufacturing Corp.*,
 No. 2:20-cv-17284, 2021 WL 1811651 (D.N.J. May 6, 2021) ........................................... 2

**Statutes**

Comprehensive Environmental Response, Compensation, and Liability Act of
 1980, as amended, 42 U.S.C. §§ 9601-9675 .................................................................. 1, 3

Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 to -23.24 ................................ 1–3, 9

**Regulatory Materials**

57 N.J. Reg. 1624(a) (July 21, 2025) ......................................................................................... 9

**Other Authorities**

3M Company, Quarterly Report Pursuant to Section 13 or 15(d) of the Securities
 and Exchange Act of 1934 (Form 10-Q) (Oct. 21, 2025)......................................................5, 7

Judicial Consent Order as to Defendant 3M Company (Docket No. 746-7)......................... *passim*

\*  Any unpublished decision cited in this Memorandum is included in the accompanying Certification of Donald J. Camerson, II, Esq.

Defendant 3M Company files this Memorandum in support of Plaintiffs' Motion to Approve Judicial Consent Orders with Settling Defendants ("Mot.," Docket No. 746-1) to the extent the Motion addresses the proposed Judicial Consent Order as to Defendant 3M Company ("Proposed 3M JCO," Docket No. 746-7). 3M respectfully asks the Court to approve the Proposed 3M JCO, sign it, and enter it as a final judgment.[1]

If approved and entered by this Court, the Proposed 3M JCO will benefit the citizens and residents of New Jersey by providing the State with prompt funding for environmental projects and abatement and remediation efforts. And it will benefit 3M and Settling Plaintiffs (collectively, the "Parties"[2]) by putting an end to more than six years of intensive, burdensome litigation.

The standard of review for evaluating a proposed Judicial Consent Order of this type is the same in federal courts and in New Jersey state courts, and is the same in cases invoking the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601–9675 ("CERCLA"), and New Jersey's Spill Compensation and

---

[1] To the extent the Motion addresses the Proposed DuPont JCO, 3M takes no position. While consenting to Settling Plaintiffs' Motion as to the Proposed 3M JCO and to this Court's entry of that JCO as a binding, enforceable final judgment, 3M does not accept, endorse, or join all factual assertions or all legal arguments made in support of Plaintiffs' Motion (*see* Docket Nos. 746 to 746-11) nor, by supporting Plaintiffs' Motion, does 3M waive any of its rights, claims, defenses, or arguments in any other federal, state, or local action or proceeding (whether judicial, arbitral, regulatory, or administrative). Furthermore, 3M filed responsive pleadings in the Chambers Works and Parlin Litigations denying liability, denying Plaintiffs' claims and allegations against 3M, and asserting various defenses to Plaintiffs' allegations; and the Parties have now agreed that no part of the Proposed 3M JCO, nor the JCO as a whole, nor any activity taken by 3M or any other Released Entity pursuant to the JCO, including the filing of this Memorandum, shall constitute, nor shall be construed, deemed, interpreted, or used as, an admission or concession by 3M of wrongdoing, fault, liability, law, or fact. *See* JCO ¶¶ F, R, 79, 81.

[2] Definitions of capitalized terms from Paragraph 6 of the Proposed 3M JCO apply to this Memorandum.

1

Control Act, N.J.S.A. 58:10-23.11 to -23.24 (the "Spill Act").  *See United States v. Unimatic Mfg. Corp.*, No. 2:20-cv-17284, 2021 WL 1811651, at *2 (D.N.J. May 6, 2021); *United States v. Kramer*, 19 F. Supp. 2d 273, 289 (D.N.J. 1998).

Courts approve and enter a settlement of this type if it is (i) fair, both procedurally and substantively; (ii) reasonable; (iii) consistent with the objectives of the environmental statutes; and (iv) in the public interest.  *See N.J. Dep't of Envtl. Prot. v. Exxon Mobil Corp.*, 183 A.3d 289, 304 (N.J. Super. Ct. Law Div. 2015), *aff'd*, 181 A.3d 257 (N.J. Super. Ct. App. Div.), *certif. denied*, 185 A.3d 875 (N.J. 2018); *see also In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 206–07 (3d Cir. 2003); *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84–93 (1st Cir. 1990); *Kramer*, 19 F. Supp. 2d at 280–81; *United States v. Rohm & Haas Co.*, 721 F. Supp. 666, 680–81 (D.N.J. 1989).  Each of the four prongs for determining whether to approve and enter an environmental settlement of this type is thoroughly addressed in Plaintiffs' Motion, *see* Mot. 29–56, so there is no need to retread that ground here.

## ARGUMENT

Forgoing a detailed prong-by-prong analysis, this Memorandum instead emphasizes four key points—the first focusing on the applicable legal standard and the next three on certain facts that 3M believes the Court may find helpful as it considers Plaintiffs' Motion.

### I. The Legal Standard Is Highly Deferential

"Settlement of litigation ranks high in [New Jersey's] public policy."  *Nolan v. Lee Ho*, 577 A.2d 143, 146 (N.J. 1990) (citation omitted).  As this Court's then-Chief Judge Gerry

explained when entering a proposed environmental consent order, "[i]t is precisely the desire to avoid a protracted examination of the parties' legal rights which underlies consent decrees. Not only the parties, but the general public as well, benefit from the saving of time and money that results from the voluntary settlement of litigation. Thus, [v]oluntary settlement of civil controversies is in high judicial favor." *Rohm & Haas*, 721 F. Supp. at 685 n.23 (citation omitted).

Environmental statutes enacted by the New Jersey Legislature and by the U.S. Congress favor compromise and settlement, in the interest of prompt relief for the environment and for the public whose health depends on a safe and clean environment. *See, e.g.*, N.J.S.A. 58:10-23.11f.a(2)(b) (Spill Act) (contribution protection for parties that have "entered into … [a] judicially approved settlement with the State"); *id.* 58:10-23.11e2 (Spill Act) (public notice-and-comment process for a "judicially approved settlement"); Section 122(a) of CERCLA, 42 U.S.C. § 9622(a) (providing that, whenever practicable and in the public interest, the government shall facilitate settlement agreements to "expedite effective remedial actions and minimize litigation").

It is thus not surprising that the standard of review for settlements under these statutes is, in practice, highly deferential. *See In re Tutu*, 326 F.3d at 207 (deferring to environmental agency's expertise and determination of fault and damages); *Exxon Mobil*, 183 A.3d at 304–05, 307–08 & n.26, 333 (deferring to settlement negotiated on behalf of New Jersey's citizens and residents by the Department, as a government agency charged with conserving natural resources, protecting the environment, and acting in the public interest). "[R]ecognizing the wide range of potential problems and possible solutions" in complex environmental cases, courts typically

3

"take a broad view of proposed settlements, leaving highly technical issues … to the discourse between parties." *Cannons Eng'g*, 899 F.2d at 85–86; *accord Kramer*, 19 F. Supp. 2d at 280–81 (citation omitted).

Given the policy goals underlying consent decrees in environmental cases, courts typically avoid substituting their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel, and likewise avoid inquiring "whether the settlement is one which the court itself might have fashioned, or considers as ideal." *Cannons Eng'g*, 899 F.2d at 84; *accord In re Tutu*, 326 F.3d at 209 (citation omitted); *Kramer*, 19 F. Supp. 2d at 280 (citation omitted). Instead, courts "determine whether the settlement represents a reasonable compromise, all the while bearing in mind the law's generally favorable disposition towards the voluntary settlement of litigation." *Rohm & Haas*, 721 F. Supp. at 680–81; *accord Kramer*, 19 F. Supp. 2d at 281 (citation omitted); *United States v. Acton Corp.*, 733 F. Supp. 869, 872 (D.N.J. 1990) (citation omitted). Thus, in conducting these reviews, district courts either approve or reject the settlement as a whole and may not delete, modify, or substitute certain provisions of the consent decree to which the parties have agreed. *See United States v. Cannons Eng'g Corp.*, 720 F. Supp. 1027, 1036 (D. Mass. 1989) (citing sources), *aff'd*, 899 F.2d 79 (1st Cir. 1990).

## II.    3M's Exit from PFAS Manufacturing

3M is one of many companies, both in the United States and abroad, that has manufactured certain per- or poly-fluoroalkyl substances ("PFAS") or PFAS-Containing Products. But, as the Proposed 3M JCO acknowledges, 3M has taken actions—which other companies have not taken—to cease manufacturing PFAS and to seek to phase out the use of

4

PFAS in its products.  *See* JCO ¶ T (Background section); *see also id.* ¶ 24.  These actions have followed years of 3M's voluntary cooperation with ongoing reviews by local, state, federal, and international agencies regarding possible environmental and health effects of various PFAS compounds.  *See* 3M Co., Quarterly Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, at 26 (Form 10-Q) (Oct. 21, 2025) [hereinafter 10-Q].

On May 16, 2000, 3M announced that it would voluntarily phase out manufacturing of certain long-chain PFAS compounds, including PFOA, PFOS, and PFHxS.  *See* 10-Q at 26; *see also* JCO ¶ T.  Within approximately two years after the announcement, 3M ceased manufacturing the vast majority of those long-chain PFAS compounds, as well as aqueous film-forming foam (AFFF), a PFAS-containing foam used to fight fires, including fuel fires at airports and military bases.  *See* JCO ¶ T.  3M discontinued supplying PFAS to the Chambers Works Site in 2001.  And 3M ceased all manufacturing of those long-chain PFAS compounds by the end of 2008.  *See id.*  On December 20, 2022, 3M announced that it will exit all PFAS manufacturing and will work to discontinue the use of PFAS across its product portfolio by the end of 2025.  *See* JCO ¶¶ T, 24.

### III. The Breadth of the Proposed 3M JCO

Both 3M and Settling Plaintiffs agreed that a broad, statewide settlement was in the interests of both parties, notwithstanding the specific issues presented by the DuPont Defendants' Chambers Works Site.  Critical to 3M in the negotiations was reaching agreement on a proposed JCO that would be as broad, expansive, and inclusive as possible.  *See* JCO ¶ 6 (defining Claim, Covered Conduct, Covered Harm, Discharge, Government Entity, Non-Party Covered Harm

Claim, PFAS, Public Water System, Released Claims, Released Entities, Site, and Wastewater to be "as broad, expansive, and inclusive as possible"); *id.* ¶ 54 (same, defining Release); *id.* ¶ 56 (same, defining Covenant Not To Sue).

After more than two years of negotiating, the Parties reached a settlement with payments that could be allocated by the entity best able to address environmental and other issues in New Jersey—the State—in exchange for, among other things, dismissal of Settling Plaintiffs' pending litigation against 3M and a broad release of both the State's and its Political Subdivisions' PFAS-related Claims. As part of that settlement, the public notice and comment process that preceded Settling Plaintiffs' Motion was commensurately robust.

A. **The Settlement Payments and Their Deployment by the State**

A broad, expansive, and inclusive JCO was essential given two characteristics that distinguish New Jersey from other states. First, as set forth in the JCO, New Jersey, which ranks as the eleventh most populous state, with about 3 percent of the total United States population, represents a disproportionately large fraction of the Nation's PFAS contamination and Discharges of PFAS. *See* JCO ¶ 28 (summarizing evidence of this disproportionality); *see also id.* ¶ 44.e.iii. Second, New Jersey has been a national leader in PFAS abatement and remediation efforts and specifically was the first state in the country to conduct statewide occurrence studies of PFAS in Drinking Water Supplies, the first state in the country to establish a maximum contaminant level for any PFAS substance, and the first state in the country to enter into the type of comprehensive PFAS settlement memorialized in the Proposed 3M JCO. *See id.* ¶¶ 25–26, 44.e, 45.a.ii.

Consistent with those two points, Settling Plaintiffs reached agreement with 3M on a settlement with payments totaling not less than $400 million over a 25-year period, subject to potential credits. *See* JCO ¶¶ 6, 44, 45, Ex. A.[3] That amount made it the largest PFAS settlement in New Jersey history, though it was eclipsed three months later by the Proposed DuPont JCO. Subject to potential credits, the Settlement Payments will fund $140 million for Restoration of New Jersey's Natural Resources, between $190 million and $270 million for PFAS Contamination Abatement Projects, and $40 million to $70 million for other purposes, including certain costs, fees, Claims for Punitive Damages, and penalties. *See* JCO ¶ 44, Ex. A.[4]

Funds from the Proposed 3M JCO can be used to address the full range of Natural Resources that the State holds in trust for the citizens and residents of New Jersey, including, among others, Waters Of The State (including Surface Water and Groundwater), Drinking Water Supplies, land, fish and wildlife habitat, and the air. *See* JCO ¶¶ 6, 46. And the funds also can be used to support abatement or remediation projects for a broad range of recipients, including, among others, public drinking-water systems, Government Entities of the State and its Political Subdivisions, homeowners with private drinking-water wells, Spill Fund claimants, airports, fire departments, Firefighting Training Academies, Hazardous Waste Facilities, Solid Waste Facilities

---

[3] The Settlement Payments could total between $400 million and $450 million (subject to potential credits) because they include a New Jersey Leadership Payment that could total between $50 million and $100 million. *See* JCO ¶ 44.e. As Settling Plaintiffs note, *see* Mot. 23 n.19, the JCO also contemplates a scenario where 3M would pay the State a total of up to $500 million (again, subject to potential credits) if 3M later enters into a Multistate Settlement with certain characteristics. *See* JCO ¶ 114.a; *see also* 10-Q at 34 (noting that 3M had recorded a pre-tax charge of $281 million, reflecting the present value of $400 million paid out over a 25-year period).

[4] In addition to the $170 million that the Proposed 3M JCO specifically sets aside for PFAS Contamination Abatement Projects, Settling Plaintiffs may apply between $20 million and $100 million of the New Jersey Leadership Payment to such projects. *See* JCO ¶ 44.e.vi–vii; Mot. 23.

(including landfills and biosolids-application sites), Treatment Works (including stormwater systems), and Wastewater Treatment Plants.  *See id.* ¶ 50.

### B. The Release and Covenant Not To Sue

Not surprisingly, given the scope of 3M's payments and Settling Plaintiffs' discretion to allocate settlement funds to address a range of statewide needs and recipients, "3M will receive broad releases and covenants not to sue regarding PFAS-related claims."  Mot. 24.  Settling Plaintiffs fully released and covenanted not to sue for all Released Claims, including legacy claims related to the Chambers Works Site, as well as statewide PFAS-related Claims that the State and its Government Entities have, or may in the future have, against 3M.  *See* JCO ¶¶ O–R, 54–60.  The JCO intentionally provides finality and certainty for these Claims without further litigation.  *See id.* ¶¶ Q–R.  The release and covenant provide both 3M and Settling Plaintiffs with greater certainty that future PFAS issues may be resolved through compromise and settlement rather than continued filing of piecemeal PFAS-related Claims in New Jersey's federal and state courts.

A key to 3M's willingness to enter into this JCO was Settling Plaintiffs' agreement to resolve Claims in all their capacities, to the maximum extent allowable by law, on behalf of and for the benefit of all the State's Political Subdivisions, citizens, and residents.  *See* JCO ¶¶ 9, 54; *see also id.* ¶ 55.  These include, among others, their capacities as *parens patriae*, as Trustee of the State's Natural Resources, as property owners (including as owners of certain Water Systems), and as entities or Persons authorized to exercise the State's sovereign, quasi-sovereign, regulatory, and police powers.  *See* JCO ¶ 9; *see also id.* ¶ 6 (defining Releasors and Settling

Plaintiffs); *id.* ¶ 54 (defining Release); *id.* § V ("Parties' Mutual Understandings and Objectives").

### C. The Public Notice and Comment Process

Consistent with the breadth of the Proposed 3M JCO, the Parties agreed to a robust public notice-and-comment process that far exceeded what state or federal law requires. *See* JCO ¶¶ 85–95. Ordinarily, before a court can approve a settlement under the Spill Act, the Department must publish on its website and in the *New Jersey Register* (as well as to certain parties) a written notice containing basic information about the case and the proposed settlement and inviting public comment. *See* N.J.S.A. 58:10-23.11e2. The Proposed 3M JCO fully complied with that requirement. *See* JCO ¶¶ 85–87, 92–93; *see also* 57 N.J. Reg. 1624(a) (July 21, 2025) (soliciting public comment for 60 days). But the Parties also took three extra steps.

First, the Department arranged for written notice of the proposed JCO to all Political Subdivisions in New Jersey, including emails to the Department's contacts among New Jersey's 21 counties and 564 municipalities (boroughs, townships, cities, towns, and villages). *See* JCO ¶ 89.

Second, the Department and 3M arranged for written notice of the proposed JCO to attorneys representing five categories of individuals and entities: (1) parties in the Chambers Works Litigation; (2) parties in the Parlin Litigation; (3) defendants and certain New Jersey-based plaintiffs in the AFFF Litigation, (4) respondents to the Statewide PFAS Directive; and (5) known plaintiffs in PFAS-related cases pending against 3M in any state or federal court in New

9

Jersey.  *See* JCO ¶ 90.  These written notices included at least 160 delivered emails and regular-mail notices to counsel for at least 680 litigants.

Third, with assistance from the Department, 3M arranged and paid for written notices of the proposed JCO—written in a "plain English" style designed to be accessible to non-attorneys—to known interested Persons who, based on research and review of databases, were believed to own, operate, manage, or control, anywhere in New Jersey, an airport, fire department, Firefighting Training Academy, Hazardous Waste Facility, Solid Waste Facility, Treatment Works, Wastewater Treatment Plant, Water System, or potentially relevant industrial facility (based on EPA's list of industries that may be handling PFAS).  *See* JCO ¶ 91.  These written notices included at least 1,070 delivered emails and regular-mail notices to at least 11,670 interested Persons.

In response to all these notices, Settling Plaintiffs received 56 public comments.  The Parties took the comments to heart.  They cooperated in good faith to make discrete but helpful amendments to the JCO's plain text.  And Settling Plaintiffs issued thorough written responses to the issues raised in the public comments.  For example, one of the Department's responses clarified that the Proposed 3M JCO does not release an individual's Claim for compensatory relief for a Personal Injury that allegedly arises from Covered Conduct or seeks recovery for a Covered Harm—regardless of whether the individual's Claim alleges that one source of potential PFAS exposure is drinking water with elevated PFAS levels, and regardless of whether the Claim has been filed in state court, in federal court, or not yet in any court.  *See* https://dep.nj.gov/wp-content/uploads/3m/njdep-response-to-comments-3m-jco.pdf (Docket No. 746-5, at 13).

## IV. Good-Faith Settlement Negotiations and the Special Master

Finally, 3M would be remiss not to mention the role played here by the Court-appointed mediator and Special Master, the Honorable Joel Schneider, United States Magistrate Judge (Ret.). Through more than two years of mediation, the Parties and their counsel negotiated at arm's length and in good faith. But the Parties' ultimate, and ultimately amicable, agreement to a proposed Judicial Consent Order that is fair, reasonable, consistent with applicable law, and in the public interest is a tribute to Judge Schneider's patience, leadership, and wise counsel.

## CONCLUSION

3M respectfully requests that the Court approve the proposed Judicial Consent Order as to Defendant 3M Company by signing it (on page 89 of Docket No. 746-7) and entering it as a final judgment.

Dated:  December 1, 2025                                      Respectfully submitted,


                                                              */s/Donald J. Camerson, II*

                                                              BRESSLER, AMERY & ROSS, P.C.
                                                              Donald J. Camerson, II, Esq.
                                                              James W. Crowder, IV, Esq.
                                                              325 Columbia Turnpike
                                                              Florham Park, NJ 07932
                                                              Tel: (973) 514-1200
                                                              Fax: (973) 514-1660
                                                              djcamerson@bressler.com
                                                              jcrowder@bressler.com

                                                              KING & SPALDING LLP
                                                              Andrew J. Calica (admitted *pro hac vice*)
                                                              1290 Avenue of the Americas
                                                              New York, NY 10104
                                                              Tel: (212) 790-5390
                                                              acalica@kslaw.com

                                                              *Attorneys for Defendant 3M Company*