**MATTHEW J. PLATKIN**
**ATTORNEY GENERAL OF NEW JERSEY**
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 093
Trenton, New Jersey 08625-0093
*Attorney for Plaintiffs (Additional Counsel Listed Below)*

By:  Gwen Farley
     Deputy Attorney General
     Attorney ID No. 000081999
     Ph. (609) 376-2740
     Gwen.Farley@law.njoag.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; THE COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; and THE ADMINISTRATOR OF THE NEW JERSEY SPILL COMPENSATION FUND, | Case No.: 2:19-cv-14758-RMB-JBC 1:19-cv-14765-RMB-JBC 1:19-cv-14766-RMB-JBC 3:19-cv-14767-RMB-JBC |
| Plaintiffs, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| E. I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; THE 3M COMPANY; DUPONT SPECIALTY PRODUCTS USA, LLC; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; and "ABC CORPORATIONS" 1-10 (NAMES FICTITIOUS), | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITIONS TO TOWNSHIP OF CARNEYS POINT'S MOTIONS TO INTERVENE

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND AND PROCEDURAL HISTORY ............................................4

STANDARD OF REVIEW ..............................................................................8

ARGUMENT ...................................................................................................9

I.    CARNEYS POINT'S MOTIONS SHOULD BE DENIED BECAUSE THIS COURT LACKS JURISDICTION TO ISSUE WRITS OF MANDAMUS TO STATE OFFICIALS ......................................................10

II.   CARNEYS POINT CANNOT MEET THE STANDARD FOR INTERVENTION UNDER FED R. CIV. P. 24. ........................................13

    A.    CARNEYS POINT IS NOT ENTITLED TO INTERVENTION UNDER FED. R. CIV. P. 24(A)(2). ................................................14

    B.    CARNEYS POINT SHOULD NOT BE PERMITTED TO INTERVENE PURSUANT TO FED. R. CIV. P. 24(B) ..................17

III.  CARNEYS POINT'S SUBSTANTIVE OBJECTIONS TO THE SETTLEMENTS ARE MERITLESS. .........................................................19

    A.    THE STATE PROVIDED SUFFICIENT NOTICE OF THE TERMS OF THE JCOS' ESCROW AGREEMENTS. ....................19

    B.    THE SETTLEMENTS ARE CONSISTENT WITH LEGISLATIVE APPROPRIATIONS. ...............................................23

    C.    THE JCOS ARE CONSISTENT WITH THE NRD CONSTITUTIONAL AMENDMENT. ..............................................27

    D.    PARAGRAPH 83 OF THE PROPOSED DUPONT JCO DOES NOT "DISMISS" CARNEYS POINT'S CASE AGAINST THE DUPONT DEFENDANTS IN STATE COURT. ....................32

    E.    THE STATE HAS THE AUTHORITY TO RELEASE CLAIMS OF ITS POLITICAL SUBDIVISIONS. ............................34

F.   PRIVATE ATTORNEYS GENERAL ACTIONS ARE NOT REQUIRED TO BE EXEMPTED FROM THE JCOS BASED ON THE ENVIRONMENTAL RIGHTS ACT. .................................36

G.   CARNEYS POINT'S "TAX DEDUCTION RULE" IS A RED HERRING. .........................................................................39

CONCLUSION ...................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amato v. Twp. of Ocean Sch. Dist.*,
    327 A.3d 1212 (N.J. Super. Ct. App. Div. 2024) ...............................................39

*Brody By & Through Sugzdinis v. Spang*,
    957 F.2d 1108 (3d Cir. 1992) ...............................................................................9

*In re Brown*,
    692 F. App'x 89 (3d Cir. 2017) ...........................................................................10

*Cook v. Hinrichs*,
    500 F. Supp. 2d 1225 (D.S.D. 2007) ..............................................................10, 11

*De La Cruz v. Irizarry*,
    946 F. Supp. 2d 244 (D.P.R. 2013) .................................................................10, 11

*Del. Valley Citizens' Council for Clean Air v. Pennsylvania*,
    674 F.2d 970 (3d Cir. 1982) ..........................................................................15, 16

*Harris v. City of Philadelphia*,
    137 F.3d 209 (3d Cir. 1998) ..........................................................................12, 13

*Howell Twp. v. Waste Disposal, Inc.*,
    504 A.2d 19 (N.J. Super. Ct. App. Div. 1986) ..............................................35, 38

*In re Jones*,
    28 F. App'x (3d Cir. 2002) ..................................................................................11

*N.J. Dep't of Env't Prot. v. Exxon Mobil Corp.*,
    183 A.3d 289 (N.J. Super. Ct. Law Div. 2015)...................................................40

*N.L.R.B. v. SW Gen., Inc.*,
    580 U.S. 288 (2017)..............................................................................................39

*Palmieri v. Intervet Inc.*,
    No. CV 19-22024, 2025 WL 1811271 (D.N.J. June 30, 2025).........................14

*Petition of Pub. Serv. Coordinated Transp.*,
    5 N.J. 196 (1950) .................................................................................................35

*In re Safeguard Scis.*,
220 F.R.D. 43 (E.D. Pa. 2004)....................................................................19

*Saint-Jean v. Palisades Interstate Park Comm'n*,
49 F.4th 830 (3d Cir. 2022) .....................................................................14

*Sokaogon Chippewa Cmty. v. Babbitt*,
214 F.3d 941 (7th Cir. 2000) .....................................................................14

*State v. City of Dover*,
153 N.H. 181 (2006) ...................................................................................35

*Stehney v. Perry*,
907 F. Supp. 806 (D.N.J. 1995), *aff'd*, 101 F.3d 925 (3d Cir. 1996) ..........10, 12

*Superior Air Prods. Co. v. NL Indus., Inc.*,
522 A.2d 1025 (N.J. Super. Ct. App. Div. 1987) .................................38

*In re Sutcliffe*,
573 F. App'x 89 (3d Cir. 2014) ..............................................................12

*Symbiont Sci. Eng'g & Constr., Inc. v. Ground Improvement Servs., Inc.*,
No. CV 22-4905, 2024 WL 378691 ..........................................................8

*United States v. Territory of Virgin Islands*,
748 F.3d 514 (3d Cir. 2014) ..................................................................9, 15

*Wagner v. Mayor & Mun. Council of City of Newark*,
24 N.J. 467 (1957) .................................................................................34, 35

**Statutes**

28 U.S.C. § 1361 .....................................................................................11

N.J.S.A. 2A:35A-4(c) .............................................................................38

N.J.S.A. 2A:35A-10(b) ...........................................................................38

N.J.S.A. 2A:35A-10c ..............................................................................33

N.J.S.A. 52:27B-19 .................................................................................24

N.J.S.A. 52:27B-20 .................................................................................25

N.J.S.A. 58:10-23.11e2.............................................................................................22

## PRELIMINARY STATEMENT

The State[1] submits this memorandum of law in opposition to Carneys Point Township's ("Carneys Point") motions to intervene in this litigation for the purpose of filing writs of mandamus that would unilaterally re-write the terms of the State's Judicial Consent Orders ("JCOs" or "Settlements") with the DuPont Defendants[2] and 3M Company ("3M")—the products of years of complex and difficult negotiations supervised by a Court-appointed mediator.[3]

As an initial matter, Carneys Point filed its motions to intervene prior to the State responding to its public comments regarding the proposed JCOs and moving before this Court for approval of the Settlements. As a result, many of Carneys Point's arguments have already been addressed, and some are mooted entirely.

Moreover, Carneys Point cannot satisfy the requirements for intervention set forth in Federal Rule of Civil Procedure 24. Carneys Point treats the intervention standard as mere afterthought, leaving it to the end of its briefs to summarily assert

---

[1] Plaintiffs in this litigation are the New Jersey Department of Environmental Protection, its Commissioner, and the Administrator of the New Jersey Spill Compensation Fund (collectively, the "State").

[2] DuPont Defendants are: EIDP, Inc. (f/k/a E. I. du Pont de Nemours and Company) ("EIDP"), Corteva, Inc. ("Corteva"), DuPont de Nemours Inc. ("New DuPont"), DuPont Specialty Products USA, LLC ("DuPont Specialty Products"), The Chemours Company ("Chemours") and The Chemours Company FC, LLC ("Chemours FC").

[3] The State's arguments in opposition to these motions to intervene (ECF 742 and 745) also apply to the Borough of Sayreville's motion to intervene, ECF 749.

1

it has the right to intervene. Carneys Point also glosses over the fact that it has *already sought and been denied intervention in this case*, and that the present circumstances do not meaningfully alter the Court's prior analysis. There is still no pathway for intervention as of right for Carneys Point because the State continues to adequately represent the Township's interests, along with those of the State's other political subdivisions. The State's adequate representation is in no way voided simply because a municipality (here, Carneys Point) has objections to the terms of two settlements negotiated by the State on behalf of all of its citizens.

The only remaining intervention pathway Carneys Point identifies is what it refers to as "Wetlands restoration intervention," which is merely a rehash of its baseless argument that an irrelevant New Jersey regulation gives the Township an automatic right to intervene. But the Special Master already explicitly rejected that argument earlier in this litigation.

Carneys Point's entire basis for pursuing intervention is to seek writs of mandamus in this Court to compel New Jersey state officials, including the New Jersey Attorney General and the Commissioner of the Department, to change the terms of the JCOs to cater to the Township's interests. But it is well-established that federal courts do not have the requisite jurisdiction to issue writs of mandamus to compel state officials to act. The whole purported reason, then, for Carneys Point's intervention falls apart. And in any event, the underlying objective of the writ to

force modifications to the Settlements is dead on arrival: it is black letter law that a court, *let alone a third party*, cannot modify the terms of a proposed settlement without the consent of the parties.

Putting aside all of this, each of Carneys Point's objections to the substance of the JCOs is meritless, and the Court should approve the JCOs as presented to it through the State's Motion to Approve.

*First*, the State provided sufficient notice regarding the parties' use of standard escrow accounts to hold settlement payments pending appeals of the Settlements. The escrow agreements for both Settlements were attached to the State's Motion to Approve, such that the agreements have been available for weeks—and the 3M escrow agreement has been available since early October when it was posted on the Department's 3M settlement website.

*Second*, the Settlements do not run afoul of any legislative appropriations laws or New Jersey's Natural Resource Damages ("NRD") Constitutional Amendment, and there is no requirement that "enabling legislation" be passed for these Settlements to be consummated.

*Third,* Paragraph 83 of the DuPont Proposed JCO does not "dismiss" Carneys Point's state court action against the DuPont Defendants. While that is clear from the face of the provision itself, the State also acknowledged as much in its Response to Comments and acknowledges that again here.

*Fourth,* the State, for reasons exhaustively argued in its Motion to Approve, possesses the authority to release the claims of its political subdivisions, and Carneys Point's weak argument to the contrary does not hold up under scrutiny.

*Fifth,* the Environmental Rights Act does not require that "private attorneys general" be exempted from the JCOs' releases or other provisions.

*Sixth*, Carneys Point mis-interprets the so-called "Tax Deduction Rule" it cites, which, in any event, is not a basis for re-writing the terms of the settlements for the sole benefit of Carneys Point to the detriment of hundreds of other municipalities, thousands of homeowners, and others across New Jersey.

For these and other reasons argued below, Carneys Point's Motions should be denied in their entirety, and its objections otherwise overruled.

## BACKGROUND AND PROCEDURAL HISTORY

***Carneys Point Has Already Sought, And Been Denied, Intervention in This Litigation.*** More than a year ago, Carneys Point attempted to intervene in this litigation[4] by relying on many of the same alleged facts and dubious authority that it raises again here, including its criticisms regarding the Department's enforcement efforts at Chambers Works; its own state court case; the Environmental Rights Act; the 2017 NRD Constitutional Amendment; and a Freshwater Wetlands Protection

---

[4] This was Carneys Point's second attempt to intervene in this case. Carneys Point previously moved to intervene in October 2022 before withdrawing its motion less than a month later. *See* ECF 231, 245.

Act regulation. *See* ECF 313, 342. After multiple rounds of briefing and oral argument, the Special Master rejected each of those as grounds for intervention. *See* ECF 396.

More specifically, the Special Master found that "since [the State] adequately represent[s] [Carneys Point's] interests in the case, Rule 24 mandatory intervention is denied." ECF 396 at 10. The Special Master also found no basis for permissive intervention. *Id.* at 14. Carneys Point never objected to the Special Master's ruling or otherwise filed an appeal.

***Carneys Point Seeks Intervention Again, Filing Motions to Intervene Before the State Responded to Public Comments or Moved for Approval of the Settlements.*** Following the State's announcements of its proposed Settlements with 3M and the DuPont Defendants, the Department published notices of the same in the *New Jersey Register*, indicating that it would accept public comments on both proposed JCOs for a period of 60 days.[5] Notice of the 3M JCO was published on July 21, 2025, and notice of the DuPont JCO was published on September 2, 2025. *See* 57 N.J.R. 1624(a) ("Notice of Proposed 3M JCO"); 57 N.J.R. 2017(a) ("Notice

---

[5] A more comprehensive review of the Department's actions to solicit and respond to comments can be found in the State's Memorandum of Law in Support of its Motion to Approve the JCOs. *See* ECF 746-1 at 14–16.

of Proposed DuPont JCO"). The Department also published copies of the proposed JCOs and the *Register* notices on its dedicated settlement websites.[6]

The purpose of a public comment period on a proposed JCO is to provide an opportunity for members of the public to provide input on the proposed settlements, and have the Department evaluate those comments—a process that culminates in the Department responding to public comments received. *See* Notice of Proposed 3M JCO ("NJDEP will consider all comments received"); Notice of Proposed DuPont JCO (same); ECF 636 (confirming Department "will review and respond to the public's comments" on the 3M JCO); ECF 724 (confirming Department will "respond to the public's comments" on the DuPont JCO); ECF 729 (Plaintiffs "will respond to [public] comments"). Additionally, the comment period serves to inform the Department whether it should seek to modify—or even decide not to proceed with—a proposed JCO. This process requires the Department to devote significant resources to reviewing comments, considering the issues and questions raised, and formulating comprehensive responses thereto. During this process for these Settlements, the State kept the Court and the public apprised of its review through multiple letters and status reports. *See* ECF 636, 724, 732 (first status report), 735

---

[6] *See* DuPont/Chemours PFAS Settlement, Official Site of the State of New Jersey Department of Environmental Protection, https://dep.nj.gov/dupont/ and 3M PFAS Settlement, Official Site of the State of New Jersey Department of Environmental Protection, https://dep.nj.gov/3m/.

(second status report). The State also made clear that, provided the comments did not convince it otherwise, the State would move for approval of the JCOs on November 21, 2025.[7] *See* Original Scheduling Order, ECF 729 ¶ 1.

The comment period for the 3M JCO closed on September 19, 2025. Carneys Point did not submit its comment on the 3M JCO until September 20, 2025, after the deadline.[8] (Declaration of David M. Reap, dated December 8, 2025 ("Reap Decl."), ¶ 3.) The comment period for the DuPont JCO closed on November 1, 2025. Carneys Point waited until the last day to submit its comment on that JCO. (*Id.* ¶ 5.)

Carneys Point filed its first motion to intervene to seek a writ of mandamus to re-write the terms of the DuPont JCO on November 17, 2025. *See* ECF 742. Carneys Point then filed its second motion to intervene to seek another writ of mandamus to re-write the terms of the 3M JCO on November 21, 2025. *See* ECF 745. Consistent with the Scheduling Order in this case, the State filed its Motion to Approve, along with its Responses to Comments, on November 21, 2025. *See* ECF 746. The Responses to Comments filed with the State's Motion include the Department's

---

[7] Carneys Point baselessly asserts in its motions that "the State has no obligation to respond to" its comments. *See* ECF 742-2 at 36; ECF 745-2 at 28. However, the State made clear from the outset that it would be responding to public comments on the JCOs.

[8] For purposes of considering and responding to comments on the JCOs, the Department adopted a position of accepting all comments received, regardless of whether they were timely submitted during the 60-day public comment periods.

numerous responses to Carneys Point's comments,[9] which are largely duplicated in its motions to intervene.

For the reasons contained in the State's Motion to Approve, Responses to Comments, and argument below, Carneys Point's latest attempt to intervene in this litigation should be denied.

## STANDARD OF REVIEW

Carneys Point may only intervene if it satisfies the requirements of Federal Rule of Civil Procedure 24. To intervene as of right pursuant to Rule 24(a)(2), Carneys Point must show that (1) its motion to intervene is timely; (2) it has a sufficient interest in the litigation; (3) its interest will be impaired or impeded as a practical matter by the disposition of the action; and (4) its interest is not adequately represented by the existing parties to the litigation. Fed. R. Civ. P. 24(a)(2). Carneys Point "bears the burden of establishing the existence of all four factors, and 'failure to satisfy any one of the four factors justifies denial of [its] request.'" *Symbiont Sci. Eng'g & Constr., Inc. v. Ground Improvement Servs., Inc.*, No. CV 22-4905, 2024 WL 378691, at *4 (citation omitted).

---

[9] The Department published responses to Carneys Point's comments on both the proposed 3M JCO (*see*, *e.g.*, Response to Comments Nos. #10, 12, 13, 14, 16, 35, 36, 47, 54, https://dep.nj.gov/wp-content/uploads/3m/njdep-response-to-comments-3m-jco.pdf) and the proposed DuPont JCO (*see, e.g.*, Response to Comments Nos. #13, 14, 15, 16, 17, 18, 19, 40, 41, 45, 47, 57, https://dep.nj.gov/wp-content/uploads/dupont/njdep-response-to-comments-on-dupont-jco.pdf).

Permissive intervention of Carneys Point in this litigation is subject to the Court's discretion. *Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1124 (3d Cir. 1992). The Court may allow intervention pursuant to Fed. R. Civ. P. 24(b) if the proposed intervenor shows that (1) the motion to intervene is timely, and (2) the movant has a claim or defense that shares with the main action a common question of law or fact. Fed. R. Civ. P. 24(b). In exercising its discretion, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. 24(b)(3).

## <u>ARGUMENT</u>

The Court should deny Carneys Point's procedurally flawed and substantively hollow motions to intervene. As an initial matter, the relief that Carneys Point seeks—orders from this Court permitting it to intervene so that it may seek writs of mandamus to unilaterally re-write the terms of the JCOs—plainly is not available to it. Moreover, this Court previously found that Carneys Point does not meet Rule 24's standards to intervene as of right or by permission, and nothing in Carneys Point's renewed motions compels a different outcome now.

Setting aside the infirmities of Carneys Point's motions, the Township's substantive objections to the JCOs are meritless. None of Carneys Point's purported objections to the JCOs should prevent the Court from approving them for the reasons expressed in the State's Motion to Approve.

## I.   CARNEYS POINT'S MOTIONS SHOULD BE DENIED BECAUSE THIS COURT LACKS JURISDICTION TO ISSUE WRITS OF MANDAMUS TO STATE OFFICIALS

Carneys Point has moved to intervene for the express purpose of obtaining writs of mandamus from this Court directed at State officials. *See* ECF 742-7, ECF 745-11 (each requesting that this Court order Carneys Point to "file its Writ of Mandamus within 5 days"). Carneys Point's "plainly incorrect" understanding of the Court's "mandamus power borders on the frivolous" and is fatal to its motions. *See De La Cruz v. Irizarry*, 946 F. Supp. 2d 244, 251 (D.P.R. 2013).

It is well-established that federal district courts have no general power to compel action by state officials. *In re Brown*, 692 F. App'x 89, 91 (3d Cir. 2017) (citing *In re Wolenski*, 324 F.2d 309, 309 (3d Cir. 1963) (per curiam)). In fact, Rule 81(b) of the Federal Rules of Civil Procedure abolished the writ of mandamus in civil actions in federal district courts. *Stehney v. Perry*, 907 F. Supp. 806, n.2 (D.N.J. 1995), *aff'd*, 101 F.3d 925 (3d Cir. 1996); *Cook v. Hinrichs*, 500 F. Supp. 2d 1225, 1227 (D.S.D. 2007) (citing Fed. R. Civ. P. 81(b)).[10] Federal courts' mandamus power is limited to the circumstances in the Mandamus Act, which provides that "district courts shall have original jurisdiction in any action in the nature of

---

[10] Both of Carneys Point's writs of mandamus state they are filed pursuant to Fed. R. Civ. P. 21, *see* ECF 742-3 ("Carneys Point Township … files this Writ of Mandamus pursuant to Fed. R. Civ. P. 21") and ECF 745-3 (same), which does not provide authority for filing writs of mandamus.

mandamus to compel an officer or employee *of the United States or any agency thereof* to perform a duty owed to the plaintiff." 28 U.S.C. § 1361 (emphasis added).

Numerous federal courts have concluded that they therefore have no authority to compel action by state officers and have summarily dismissed such petitions for lack of jurisdiction. *In re Jones*, 28 F. App'x at 133, 135 (3d Cir. 2002) ("The federal courts . . . have no general power in a mandamus action to compel action . . . by state officials."); *Cook*, 500 F. Supp. 2d at 1227 (citing *Veneri v. Circuit Ct. of Gasconade Cnty.*, 528 F. Supp. 496, 498 (E.D. Mo. 1981)); *De La Cruz*, 946 F. Supp. 2d at 251. Indeed, the Special Master previously found "no support for [Carneys Point]'s position" in its first intervention motion "that the court has jurisdiction to hear its mandamus claim."[11] ECF 396 at 26 (citing *In re Sutcliffe*, 573 F. App'x 89 (3d Cir. 2014)).

Even if this Court had the authority to issue a writ to compel State officers to act, it would still be inappropriate to do so under the circumstances presented here. The Mandamus Act only provides for jurisdiction "where a government official is required to perform a clear, ministerial and nondiscretionary duty that is preemptory and unmistakable, certain, inflexible, clear beyond debate, and positively

---

[11]  Carneys Point's second attempted intervention included a proposed "counterclaim" consisting of 25 "counts," four of which sought writs of mandamus. *See* ECF 313-1. It now entirely leans into seeking proposed writs of mandamus as the basis for intervention. *See* ECF 742-3, 745-3.

commanded and so plainly prescribed as to be free from doubt." *Stehney*, 907 F. Supp. at 820 (cleaned up). Carneys Point identifies no clear ministerial duty here that the State has failed to perform—certainly the negotiation and implementation of settlement terms involve the careful exercise of discretion and cannot be considered ministerial.[12]

Carneys Point thus would not be able to meet its heavy burden to show that such an "extraordinary" remedy would be appropriate here, even if it could be provided. *In re Sutcliffe*, 573 F. App'x at 90. Carneys Point offers no authority to support its assertion that this Court could modify the terms of the JCOs either at the Township's direction or *sua sponte* without the consent of the parties to the JCOs. This is unsurprising since Carneys Point's position contradicts applicable law: "A consent decree is the product of negotiation between the parties and embodies a compromise struck among various factors, including the parties' competing goals and the time, expense, and risk of litigation." *Harris v. City of Philadelphia*, 137 F.3d 209, 212 (3d Cir. 1998) (citing *United States v. Armour & Co.*, 402 U.S. 673, 681–82 (1971)). "A court should not later modify the decree by interposing terms

---

[12] While jurisdiction may otherwise exist "where the plaintiff seeks to compel an official to undertake a neglected action that requires the exercise of discretion to carry out[,] . . . mandamus relief is available only to 'compel [the] action' itself, 'but not to direct the exercise of discretion in a particular way nor to direct the retraction or reversal of action already taken.'" *Stehney*, 907 F. Supp. at 820 (*quoting ICC v. Humbolt S.S. Co.*, 224 U.S. 474, 484 (1912)). Those circumstances are likewise absent here.

not agreed to by the parties or not included in the language of the decree." *Id.* (rejecting a district court's amendment of a consent decree because the amendment was "not contemplated by the parties in the agreement") (citations omitted)). Thus, to argue that a non-party to a litigation has a *right* to compel a settlement, let alone a right to unilaterally revise and dictate specific terms of a consent order to which the parties to the litigation have voluntarily agreed, is simply wrong.

Because this Court lacks both the authority and the jurisdiction to grant the relief Carneys Point seeks, the Township's motions for intervention are futile and should be denied.

## II.    CARNEYS POINT CANNOT MEET THE STANDARD FOR INTERVENTION UNDER FED R. CIV. P. 24.

Setting aside that this Court cannot grant the relief Carneys Point seeks, Carneys Point has not demonstrated that it meets the standard for intervention under Rule 24. As before, because the State continues to adequately represent Carneys Point's interests, the Township is not entitled to intervene as of right pursuant to Rule 24(a)(2). *See* ECF 396 at 10. And there are no circumstances present here warranting permissive intervention under Rule 24(b). Indeed, Carneys Point offers no argument why this Court should re-visit its prior decision denying intervention,[13] and its objections to the JCOs do not compel a different outcome here.

---

[13] Indeed, the Special Master's legal findings should be considered the law of the case. *Saint-Jean v. Palisades Interstate Park Comm'n*, 49 F.4th 830, 836 (3d Cir.

### A.    Carneys Point Is Not Entitled to Intervention Under Fed. R. Civ. P. 24(a)(2).

Carneys Point is still not entitled to intervene in this litigation because it continues to be unable to demonstrate that the State is not adequately representing its interests. This time, Carneys Point offers only the conclusory statement that it has "interests in this matter that are not being protected." ECF 742-2 at 37; ECF 745-2 at 29. But the only "interests" it identifies are objections to certain terms of the JCOs, *see*, *e.g.*, ECF 742-2 at 37 (listing objections)[14]—which, as discussed in Section III, are all meritless. That Carneys Point is dissatisfied with certain terms of the JCOs simply is not enough to render the State's representation inadequate and provide Carneys Point with a right to intervention.

Preliminarily, the State continues to be presumed to represent Carneys Point's interests. The Township bears the burden of refuting this presumption because "[w]hen a state is a party to a suit involving a matter of sovereign interest, it is presumed to represent the interests of its citizens . . . and thus, to intervene in a suit

---

2022). When a litigant "advances many of the same arguments" that were "already squarely addressed," as Carneys Point seeks to do here, "the law of the case doctrine dictates against relitigating these issues." *Palmieri v. Intervet Inc.*, No. CV 19-22024, 2025 WL 1811271, at *4 (D.N.J. June 30, 2025).

[14] Carneys Point's purpose for seeking to intervene at this juncture is clear: not to participate in litigation but to block the settlements unless they are on its own terms. *Cf. Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 948 (7th Cir. 2000) (affirming denial of intervention when it "serve[d] no conceivable purpose other than to block a settlement agreement that [the proposed intervenor] does not like").

in which the state is already a party, a subdivision of the state must overcome this presumption." *Del. Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982) (internal citations omitted). A "potential intervenor can only overcome the presumption and thereby intervene by making a 'compelling showing . . . to demonstrate why [the government's] representation is not adequate.'" *Virgin Islands*, 748 F.3d at 520 (quoting *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995)); *see also* ECF 396 at 18 (Carneys Point has a "heavy burden" to demonstrate inadequate representation by the State).

As before, there can be no doubt that the State is party to a lawsuit involving a matter of sovereign interest. In entering into these Settlements, the State is acting in its capacity as *parens patriae* and trustee of New Jersey's natural resources to protect the health and well-being of all of its residents and to safeguard and restore public trust resources for current and future generations. *See* Motion to Approve, ECF 746-1 at 57–65. As the Court has already recognized, the State—acting through the Department—has the primary authority and responsibility to pursue the sovereign interests of protecting the State's environment, public health, and natural resources by enforcing New Jersey's environmental laws. ECF 396 at 16.

That Carneys Point has objections to various terms in the JCOs is insufficient to overcome the presumption that the State adequately represents the Township's interests. As this Court reasoned in *United States v. W.R. Grace*:

> The Township argues that the [government] cannot be said to adequately represent it because 'the [government] has moved to enter a consent decree that the Township strongly opposes.' . . . However, this argument is irrelevant: the issue is not whether the Township agrees with the determination of the [government], but whether the [government] served as an adequate representative of the Township's interest.

185 F.R.D. 184, 192 (D.N.J. 1999) (denying intervention). Thus, where a purported intervenor may "debat[e] the merits" of a settlement, but there is "no divergence between [a purported intervenor's] position and the position of the [government] on the primary issue involved in the litigation," there can be no right to intervene. *Del. Valley Citizens' Council for Clean Air*, 674 F.2d at 974; *see also N.J. Dep't of Env't Prot. v. Solvay Specialty Polymers USA, LLC*, GLO-L-1239-20, Transcript of Denial of Intervention (March 1, 2024), Reap Decl., Ex. A at 41:13-49:17 (denying Carneys Point's motion to intervene to stay settlement between the Department and Solvay in part because "the Department . . . is charged with protecting all of the citizens. It's charged with protecting the water underneath the ground. . . . [T]he state is charged with protecting that for the benefit of all its citizens").

Such is the case here. While Carneys Point may disagree with certain aspects of the JCOs, when it comes to the State's pursuit of the ultimate objective of this

litigation and the settlements—meaningful restoration of injured natural resources and remediation of the contamination for which Settling Defendants are responsible for the protection of public health and the environment—Carneys Point's interests are fully subsumed within the State's. In short, Carneys Point has failed to make "a compelling showing" that the State does not adequately represent its interests, and it therefore is not entitled to intervene under such circumstances.[15]

### B.    Carneys Point Should Not Be Permitted To Intervene Pursuant to Fed. R. Civ. P. 24(b)

As it did in connection with its last motion to intervene, *see* ECF 342 at 5–6, Carneys Point again makes the erroneous argument that N.J.A.C. 7:7A-22.19(a)(2) provides it with the "right" to seek permissive intervention in this litigation. ECF 742-2 at 36–37; ECF 745-2 at 28–29. This Court has already rejected this exact argument, concluding that "this regulation is not applicable here." ECF 396 at 15.

To briefly summarize what has already been litigated in this case and decided by this Court, the regulation cited by Carneys Point states: "To provide for public participation in the Department's enforcement process" under the Freshwater Wetlands Act and implementing regulations, "the Department shall . . . [n]ot oppose

---

[15] Because the State's adequate representation of Carneys Point is fatal to the Township's efforts to intervene pursuant to Rule 24(a)(2), the other requirements of the rule are not addressed here. *See also* ECF 396 at 9 ("Since [Carneys Point] cannot show" the State is not adequately representing its interests "there is no need to address the other requirements in Rule 24(a)(2).").

intervention by any citizen when permissive intervention may be authorized by statute, rule, or regulation . . . ."  N.J.A.C. 7:7A-22.19(a)(2). Neither the State's litigations against 3M and the DuPont Defendants nor the JCOs constitute an "enforcement process" under the Freshwater Wetlands Act.[16] And no reasonable reading of this regulation "open[s] up NRD litigation to allow all persons to participate in the wetlands restoration process," as Carneys Point argues. ECF 742-2 at 36; ECF 745-2 at 28.

Moreover, even if this regulation applied here, which it does not, the regulation states only that the Department will not oppose permissive intervention—not that the Court "must permit" intervention, as Carneys Point argues. ECF 742-2 at 37; ECF 745-2 at 29. Carneys Point would still have to meet the standard for permissive intervention under Rule 24(b), and it offers *no argument* as to why it does. In fact, permissive intervention would be inappropriate under Rule 24(b)(3), given that it would "unduly delay or prejudice the adjudication of the original parties' rights." Allowing Carneys Point to intervene and file its frivolous writs of mandamus—for which it seeks "case management" in its proposed orders to this Court—would only serve to delay this matter and needlessly drive up litigation costs

---

[16] The mere existence of wetlands in the area near the Chambers Works Site does not transform this case into a Freshwater Wetlands Act enforcement action.

and expenses, after years of litigation and negotiation were required to reach the settlements. *See In re Safeguard Scis.*, 220 F.R.D. 43, 49 (E.D. Pa. 2004).

The State has already indicated it would liberally consent to parties filing *amicus* oppositions to the Motion to Approve the JCOs, *see* ECF 737, to ensure there is a full record and robust consideration of issues related to the Settlements, and the State likewise consents to the Court's consideration of the substantive arguments Carneys Point's raises with respect to the JCOs in a similar capacity. The Court thus may consider Carneys Point's objections (which are without merit, as explained below) without permitting its intervention.

## III. CARNEYS POINT'S SUBSTANTIVE OBJECTIONS TO THE SETTLEMENTS ARE MERITLESS.

### A. The State Provided Sufficient Notice Of The Terms Of The JCOs' Escrow Agreements.

At best, Carneys Point's arguments about the JCOs' escrow agreements are based on a fundamental misunderstanding of the escrow accounts required by the JCOs, which will be used for the sole purpose of holding settlement payments in escrow pending potential appeals—a standard practice for settlements of this magnitude.[17] As described further below, the State provided sufficient notice of the

---

[17] *See, e.g.*, Judicial Consent Orders entered in *N.J. Dep't of Env't Prot. v. Solvay Specialty Polymers USA, LLC, et al.,* Docket No., GLO-L-1239-20 (Law Div.), with Solvay (JCO entered 1/31/24, LCV2024275268, at ¶ 5) and Arkema, Inc. (JCO entered 8/15/25, LCV20252280307, at ¶ 7).

material terms governing the use of these escrow accounts, and the escrow agreements are attached to the State's Motion to Approve the JCOs. *See* ECF 746-6 at 117-51; ECF 746-7 at 102-15.

As a threshold matter, Carneys Point's assertions that the escrow agreements will "govern" the use of the Settling Defendants' payments to the State for the next 25 years, *see, e.g.*, ECF 742-2 at 1; ECF 745-2 at 5, are demonstrably false. That much is clear from the plain language of the 3M and DuPont JCOs, which have been available to the public since May 13, 2025, and August 4, 2025, respectively. Paragraph 44(a) of the 3M JCO and Paragraph 7(a) of DuPont JCO require 3M and the DuPont Defendants, respectively, to make the initial settlement payments required by each JCO to an escrow account and to make subsequent annual payments to the same account, "or, if this JCO has become final and non-appealable . . . , by wire transfer pursuant to instructions provided by Settling Plaintiffs." 3M JCO ¶ 44(a); *see also* DuPont JCO ¶ 7(a). Paragraph 44(b) of the 3M JCO and Paragraph 7(b) of the DuPont JCO, in turn, state the material terms governing the purpose and use of the escrow account: "Until this JCO becomes final and non-appealable, the settlement funds in the Escrow Account shall earn interest *and may not be used by the State for any purpose.*" 3M JCO ¶ 44(b) (emphasis added); *see also* DuPont JCO ¶ 7(b). The settlement payments will be held in escrow until the JCOs become final and non-appealable, the proceeds of which will then be transferred to the State or, if

20

the JCOs are overturned on appeal, returned to 3M and/or the DuPont Defendants, as applicable. 3M JCO ¶ 44(b); DuPont JCO ¶ 7(b).

Following the State's announcement and publication of the proposed JCOs, the State worked with the Settling Defendants and escrow agents to present to the Court standard escrow agreements that reflect the JCOs' requirements for the establishment and disposition of the escrow accounts. The State and 3M agreed to use Deutsche Bank Trust Company Americas as the escrow agent for 3M's settlement payments, and the Department posted an escrow agreement among these parties on the Department's website on October 3, 2025.[18] (Reap Decl. ¶ 6.) Similarly, the State and the DuPont Defendants agreed to use JPMorgan Chase Bank, N.A. as the escrow agent for the DuPont Defendants' settlement payments, and the Department also has posted an escrow agreement among these parties on the Department's website.[19] Both of the escrow agreements were submitted to the Court as part of the State's Motion to Approve the JCOs. *See* ECF 746-6; ECF 746-7.

---

[18] Carneys Point is wrong when it asserts that the 3M escrow agreement has not been made available to the public or the Court and therefore "no one knows what [it's] going to say." ECF 745-2 at 6. The 3M escrow agreement has been available on the Department's 3M settlement website since October 3 and has been provided to the Court. *See* Exhibit B to Proposed 3M JCO, https://dep.nj.gov/wp-content/uploads/3m/nj-3m-jco-exhibit-b.pdf.

[19] *See* Exhibit B to Proposed DuPont JCO, https://dep.nj.gov/wp-content/uploads/dupont/dupont-jco-ex-b.pdf.

Carneys Point's arguments that the State's notices of the proposed settlements with 3M and DuPont were defective because the escrow agreements were not made available to the public for review during the public comment period are without merit. The State complied with N.J.S.A. 58:10-23.11e2, which simply requires that the Department provide "a summary of terms of the settlement, including the amount of any monetary payments made or to be made." N.J.S.A. 58:10-23.11e2. The JCOs as noticed to the public clearly stated the purpose and use of the escrow accounts, and the standard escrow agreements ultimately agreed to by the parties and the escrow agents and presented to the Court reflect the material terms of the JCOs.[20]

Finally, Carneys Point's attempt to draw parallels with a proposed JCO considered by the New Jersey Superior Court in *N.J. Department of Environmental Protection v. Hercules, Inc.*, MID-L-8749-07, is unavailing. *See* ECF 742-2 at 12; ECF 745-2 at 7. There, the attachment to the JCO at issue was a conservation easement, for which certain associated attachments had not been submitted to the court when a motion to approve the JCO was being considered and with which the court raised certain "substantive issues." ECF 742-2 at 12 n.7; ECF 745-2 at 7 n.5.

---

[20] The Township's arguments that Paragraph 91 of the DuPont JCO and Paragraph 94 of the 3M JCO allow the Department "to reject any public comment," ECF 742-2 at 12 and ECF 745-2 at 7, also fundamentally misread each of these Paragraphs, which simply require the Department to notify the Settling Defendants that it either did or did not "receive [] [public] comments that disclosed facts or considerations that indicated to the Department, in its sole discretion, that th[e] JCO was inappropriate, improper, or inadequate." DuPont JCO ¶ 91(a); 3M JCO ¶ 94(a).

Here, the standard escrow agreements have been provided to the Court and reflect the substantive terms of the JCO.[21]

**B.    The Settlements Are Consistent With Legislative Appropriations.**

Carneys Point's demonstrably false assertions about the escrow accounts required by the JCOs also form the foundation for the Township's arguments that the JCOs somehow "violate[] separation of powers" because the Department lacks the authority "to appropriate Settlement Payments for the 25-year payout period." *See, e.g.*, ECF 742-2 at 1, 13–15; ECF 745-2 at 3–4, 12–14. To be clear, Carneys Point's argument rests on the mistaken premise that the Department will "deposit the Abatement Payments and Leadership Payments into a secret escrow with unknown allocation parameters," thereby giving it "unchecked discretion" over the

---

[21] Moreover, Carneys Point made the very same argument it makes here regarding lack of notice of escrow agreements when it unsuccessfully moved to intervene in the *Solvay* matter to challenge a JCO that resolved the Department's claims concerning PFAS released from Solvay's manufacturing plant in West Deptford. There, the Solvay JCO similarly included a requirement to use an escrow account to hold settlement payments pending appeal. After the Solvay JCO went out for public comment, the Department and Solvay agreed to use JPMorgan Chase Bank, N.A. as an escrow agent. Carneys Point submitted a public comment accusing the State of using a "secret cash escrow" account to control Solvay's settlement payment. Even after the State included in its motion to approve the Solvay JCO a copy of the escrow agreement among the Department, Solvay, and JPMorgan, Carneys Point continued to press this and other meritless objections to the JCO before the Court. The State confirmed the purpose of the escrow account at the hearing on its motion to approve the JCO. Reap Decl., Ex. A. at 30:11-25 ("[T]he JCO does not establish a discretionary cash escrow. The only escrow in the JCO is to hold the money until the settlement is final. It's just a standard escrow with J.P. Morgan, Chase Bank."). That JCO was approved over Carneys Point's objections on this and other bases.

use of such funds over the next 25 years. *See, e.g.*, ECF 745-2 at 10, 24. For the reasons discussed above, these arguments about the escrow accounts simply are untethered to the facts, undercutting Carneys Point's arguments about legislative appropriations. The escrow accounts will hold settlement payments made by 3M and the DuPont Defendants only until such time as the JCOs are final and non-appealable, at which point the proceeds of the accounts will be transferred to the New Jersey Department of the Treasury and disbursed in accordance with the purposes of the Settlements and annual legislative appropriations.

On that point, Carneys Point also incorrectly argues that the JCOs somehow violate legislative appropriations because "the legislature has not enacted enabling legislation" and there is not yet an Appropriations Act beyond 2026. *See*, *e.g.*, ECF 742-2 at 1-2, 17-23; ECF 745-2 at 3-4, 12-14. Both arguments miss the mark.

Briefly, the State budget process is an annual process that culminates yearly in an Appropriations Act. New Jersey law requires that each year, on or before December 31, the Director of the Division of Budget and Accounting must "certify and transmit to the Governor and Governor-elect the requests of the spending agencies." N.J.S.A. 52:27B-19. The Governor must then "examine and consider all requests for appropriations . . . and shall formulate the Governor's budget recommendations, which shall be presented as a budget message. . . [to] the Legislature . . . on or before the fourth Tuesday in February of each year." N.J.S.A.

52:27B-20. The Governor's "budget message shall include the proposed complete financial program of the State Government for the next ensuing fiscal year," and must set forth in detail "each source of anticipated revenue and the purposes to which the recommended appropriations and permissions to spend shall apply for each spending agency." *Id.* Sources of anticipated revenue that must be detailed include "[r]evenues for the General Fund, other budgeted State revenues, all other dedicated funds, Federal aid funds, and trust funds." *Id.* Each source of revenue must be accompanied by "[a]n itemized statement of all appropriation requests and requests for permission to spend" such revenues. *Id.* The Legislature then reviews and analyzes the Governor's budget request and makes changes, culminating in an annual Appropriations Act each June that authorizes governmental expenditures for the next fiscal year. *See, e.g.*, New Jersey Treasury, "State Budget Process," www.nj.gov/treasury/omb/budgetprocess.shtml.

The JCOs are fully compatible with the State's annual budget process. Given that the State's budget process is—by law—an annual process, it is axiomatic that there are no appropriations acts beyond 2026. Each year, the Legislature accounts for the possibility of unanticipated revenues—such as revenues received from settlements—in the General Provisions of the annual Appropriations Handbook. General Note 2 makes clear that "*[t]here are appropriated*, subject to allotment by the Director of the Division of Budget and Accounting and with the approval of the

Legislative Budget and Finance Officer, private contributions, revolving funds and *dedicated funds received, receivable or estimated to be received for the use of the State or its agencies in excess of those anticipated*, unless otherwise provided herein."[22] An appropriation therefore exists for the State to receive—and spend—moneys received from 3M or the DuPont Defendants in fiscal year 2026 as a result of the Settlements, as long as such payments are approved by appropriate State officials.[23] And, as required by New Jersey statute, revenues that the State receives and spends from the settlement payments in 2027 and beyond will be accounted for and incorporated into the State's annual budget process.

The examples of "enabling legislation" cited by Carneys Point offer no authority to the contrary. There simply is no legal requirement that a government agency must secure "enabling legislation" for settlement payments that are anticipated beyond the current fiscal year's Appropriations Act. The fact that the

---

[22] Department of the Treasury Office of Management and Budget, Appropriations Handbook Fiscal Year 2025-2026 at E-1 n.2, https://www.nj.gov/treasury/omb/publications/26approp/FY2026AppropriationsHandbook-Full.pdf (emphasis added).

[23] It is unclear how the DuPont JCO would violate the 2026 Appropriations Act with respect to the Act's provisions regarding the Hazardous Discharge Site Cleanup Fund ("HDSCF"), as Carneys Point claims, *see* ECF 742-2 at 19-20. *See* 2026 Appropriations Act, A.L. 2025, c.74, p.101 (appropriating to the HDSCF Responsible Party account "such additional amounts, *as necessary*, received from cost recoveries…*and deposited into the Hazardous Discharge Site Cleanup Fund*," along with "an amount not to exceed $15,423,000 for administrative costs associated with the cleanup of hazardous waste sites") (emphasis added)).

Legislature chose to enact legislation to establish a specific fund to manage the State's multi-year recovery in a nationwide opioid settlement does nothing to support Carneys Point's argument that such "enabling legislation" is always required. And, in fact, Carneys Point's second example—the nationwide settlement with Volkswagen—belies its arguments, as the Legislature *considered but never passed* legislation regarding the use of New Jersey's allocation of the settlement payments.[24] Funds received from that settlement are accounted for and spent in accordance with the State's annual budget process[25]—just as the settlement payments here will be.[26]

### C.    The JCOs Are Consistent With The NRD Constitutional Amendment.

Carneys Point asserts that the JCOs violate the 2017 NRD Constitutional Amendment. Once again, each of these arguments is without merit.

---

[24] *See* S. 3029, 217th Leg. (N.J. 2017), https://legiscan.com/NJ/bill/S3029/2016..

[25] *See* Department of the Treasury Office of Management and Budget, Other Governmental Funds and Proprietary Funds, https://www.nj.gov/treasury/omb/publications/26budget/Other-Governmental-Funds-and-Proprietary-Funds.pdf at pp. 122, 149.

[26] Carneys Point's arguments that the JCOs violate the 2026 Appropriations Act because such Act does not appropriate attorneys' fees or funds from the Hazardous Discharge Site Cleanup Fund ("HDSCF") beyond fiscal year 2026 are flawed for the same reasons provided herein. As explained, the State has an annual budget process that culminates in an annual Appropriations Act. The State will pay attorneys' fees and spend funds from the HDSCF each year consistent with that year's Appropriations Act.

Carneys Point claims that the DuPont JCO violates the NRD Constitutional Amendment because "it fails to allocate NRD recoveries to the four NRD Sites in each year of the 25-year payout," thereby "den[ying] pollution-impacted municipalities the ability to design and budget appropriate NRD restoration projects for their communities." *Id*. However, as this Court has previously held, "[t]o the extent [Carneys Point] insists it has a right to dictate the natural resource projects to be implemented, [Carneys Point] is wrong." ECF 396 at 12. Indeed, consistent with constitutional and other legal requirements, "[a]t all times and in all cases, the selection of restoration projects, including but not limited to the investment of any monetary recoveries from litigation or settlement [of] NRD liabilities, shall remain in the sole discretion of the Commissioner [of the DEP]." *Id*. (quoting Commissioner Administrative Order 2023-08 (March 2023), https://dep.nj.gov/wp-content/uploads/dep-ao-2023-08-natural-resource-restoration-policy.pdf ("2023-08 AO").

The Department is well aware of the requirements of Article VIII, § 2, ¶ 9 of the New Jersey Constitution, which provides that "an amount equivalent to the revenue annually derived from all settlements and judicial and administrative awards relating to natural resource damages collected by the State in connection with claims based on environmental contamination" will be credited annually to a special fund. N.J. Const. art. VIII, § 2, ¶ 9. The funds shall be dedicated to "paying for costs

28

incurred by the State to repair, restore, or replace damaged or lost natural resources of the State, or permanently protect the natural resources of the State, or for paying the legal or other costs incurred by the State to pursue settlements and judicial and administrative awards relating to natural resource damages." *Id.* The "first priority" for the use of the money "shall be in the immediate area in which the damage to the natural resources occurred in connection with the claim for which the moneys were recovered," followed by the "same water region," and, finally, "to repair, restore, or replace damages or lost natural resources of the State, or to permanently protect the natural resources of the State . . . without geographic constraint." *Id.* The Department will follow these requirements with respect to the DuPont JCO NRD recovery and will identify, plan, and implement appropriate restoration projects in consultation with impacted communities and the Department's ten-member Natural Resource Restoration Advisory Council, consistent with Department policy. *See* 2023-08 AO. Nothing more is required.

Carneys Point further argues that the 3M JCO violates the NRD Constitutional Amendment because, other than for the Chambers Works Site, it does not include site-specific allocations for NRD recoveries. *See, e.g.*, ECF 745-2 at 16–18. However, the Constitutional Amendment only requires that the "first priority" for the use of NRD recoveries "shall be in the immediate area in which the damage to the natural resources occurred *in connection with the claim for which the moneys*

*were recovered.*" N.J. Const. art. VIII, § 2, ¶ 9 (emphasis added). The State asserted statewide claims against 3M and recovered NRD in connection with those claims. *See e.g.*, New Jersey Statewide AFFF Case, Operative Pleading, 2:19-cv-2199, ECF 62 ¶ 1 ("Defendants' AFFF Products were used at various location throughout New Jersey, causing widespread contamination of the State's natural resources"). An argument that the NRD Constitutional Amendment somehow precludes the State from asserting claims for NRD beyond a single site—or limits the State's recovery for such claims to site-specific recoveries—lacks legal support and undermines the primary purposes of the Amendment, which are to ensure that NRD recoveries are used for "paying for costs incurred by the State to repair, restore, or replace damaged or lost natural resources of the State, or permanently protect the natural resources of the State . . . ." *Id*. As with the DuPont NRD recovery, the Department will follow the requirements of the NRD Constitutional Amendment with respect the 3M JCO NRD recovery and will identify, plan, and implement appropriate restoration projects consistent with the 2023-08 AO.

Finally, the payment of attorneys' fees as contemplated in the DuPont JCO complies with all applicable law, including the NRD Constitutional Amendment. Carneys Point's bold suggestion that the DuPont JCO devotes "an entire NRD settlement" to payment of attorneys' fees and leaves "nothing left for pollution-impacted municipalities" is patently false. ECF 742-2 at 19 (citing *N.J. Dep't of*

*Env't Prot. v. Exxon Mobil Corp.*, 183 A.3d 289, 330 (N.J. Super. Ct. Law Div. 2015). The DuPont JCO provides that if attorneys' fees and costs incurred in connection with the DuPont JCO exceed $125 million, the State may allocate up to an additional $50 million of the NRD and Abatement Damages payments to be paid in the second year of the payment schedule for attorneys' fees and costs.[27] DuPont JCO ¶ 11. The State's counsel filed a motion with this Court requesting approval of their fees for the Settlements on December 1, 2025. *See* ECF 753. The fee attributable to the DuPont JCO is $153,994,049—a figure substantially less than $175,000,000. Thus, *even if* the Additional Fees and Costs Amount is deducted from NRD payments, the DuPont JCO still recovers nearly $200 million for NRD, along with $525 million in abatement funding—not to mention the full cost of remediating not just Chambers Works but the other three Industrial Sites. In any event, there is a separate motion pending before the Court regarding attorneys' fees, and the Court will only approve that motion if it finds that the attorneys' fees claimed are reasonable and consistent with the law.

---

[27] The NRD Constitutional Amendment also expressly permits the use of NRD recoveries to pay legal fees: "The amount annually credited pursuant to this paragraph shall be dedicated, and shall be appropriated from time to time by the Legislature, for paying for costs incurred by the State to repair, restore, or replace damaged or lost natural resources of the State, or permanently protect the natural resources of the State, or *for paying the legal or other costs incurred by the State to pursue settlements and judicial and administrative awards relating to natural resource damages*." N.J. Const. art. VIII, § 2, ¶ 9 (emphasis added).

**D.    Paragraph 83 Of The Proposed DuPont JCO Does Not "Dismiss" Carneys Point's Case Against The DuPont Defendants In State Court.**

Contrary to Carneys Point's assertions, Paragraph 83 of the DuPont JCO does *not* ask this Court to "dismiss" Carneys Point's case against the DuPont Defendants in state court. Instead, Paragraph 83 expresses the Parties' intent, which they seek to have this Court acknowledge, that the DuPont JCO should bar Carneys Point's claims against the DuPont Defendants to the extent they seek the same relief that was resolved through the DuPont JCO. The provision does nothing more. Further, as discussed below, Paragraph 83 explicitly acknowledges that it will be up to the New Jersey Superior Court to determine whether Carneys Point's case should be dismissed based on the terms of the DuPont JCO.

Had Carneys Point taken the opportunity to review the State's responses to the Township's own comments on the DuPont JCO before filing its motion, Carneys Point would have had confirmation of the State's position (which is the very purpose of the public comment process). The following appears in the State's response to comments:

> **COMMENT:** Paragraph 83 of the Proposed DuPont JCO should be stricken. The DNJ cannot make a ruling as to the preclusive effect of the JCO on Carneys Point's litigation that is ongoing in State Court.
>
> > **RESPONSE:** Paragraph 83 states that the Parties intend, and the Court finds, that the Proposed DuPont JCO should bar Carneys Point's claims against the DuPont Defendants to the extent they seek the same relief that was resolved

through the Proposed DuPont JCO. As discussed at length elsewhere herein, the District Court has the authority to recognize Plaintiffs' intent and authority to preempt and release Political Subdivision claims. Notwithstanding, the Department recognizes that the Superior Court would need to consider the effect of the Proposed DuPont JCO, if approved, and enter its own order with respect to a motion to dismiss Carneys Point's pending litigation and whether it should continue. As Paragraph 83 of the Proposed DuPont JCO acknowledges:

> [U]pon entry of this JCO, Settling Plaintiffs and the Settling Defendants will seek an order promptly dismissing the following litigation currently pending in the New Jersey court: *Carneys Point Twp. v. E.I. du Pont de Nemours et al.*, Salem County Superior Court Docket No. SLM-L-251-16, Appeal Docket No. A-002427-24.

ECF 746-4 at Response to Comment No. 47.

The Superior Court will determine the effect of the DuPont JCO in the context of the case pending before it and take whatever action it determines to be appropriate;[28] by its very terms, Paragraph 83 is not self-executing. The State has agreed to "reasonably cooperate to seek dismissal of, or otherwise address" Carneys Point's claims intended to be "resolved, released and barred by this JCO." DuPont JCO ¶ 83. The State's commitment in this regard is a reasonable component of the

---

[28] All of this is consistent with the Environmental Rights Act, the statute under which Carneys Point brought its claims in the state court litigation. The ERA provides that "[a]n action commenced pursuant to the provisions of this act may not be dismissed without the express consent of the court in which the action was filed." N.J.S.A. 2A:35A-10c.

State's overall compromise with the DuPont Defendants to seek as comprehensive a resolution as possible related to Chambers Works through this litigation.[29]

Finally, the State notes that the New Jersey Appellate Division's recent opinion in Carneys Point's case against the DuPont Defendants, *see* ECF 754, has no impact on the DuPont JCO. Moreover, neither the Superior Court nor the Appellate Division considered the potential impact of the DuPont JCO on Carneys Point's case, including the Department's position on the effect of the JCO.

### E.    The State Has The Authority To Release Claims Of Its Political Subdivisions.

Carneys Point argues generally that New Jersey's status as a "home rule" state is incompatible with the State's ability to release claims on behalf of its political subdivisions. ECF 742-2 at 27; ECF 745-2 at 16. This argument misunderstands home rule, which does not bestow "omnipotence to local governments." *Wagner v.*

---

[29] Carneys Point also alleges Paragraph 83 "seeks to dismiss" a case brought by Carneys Point against the Department, pending as *Township of Carneys Point v. N.J. Department of Environmental Protection*, SLM-C-7-18. *See* ECF 742-2 at 24–25; *see also id.* at 4 ("DEP seeks to have this court rule that [Carneys Point's] Action against DEP also be dismissed."). There is no support for that argument, as the clear focus of the DuPont JCO, including this provision, is to resolve claims against *the DuPont Defendants*, not against the Department. To the extent this requires any clarification (which the Department believes it does not), the Department confirms this was not the intent of this provision. The Department notes, however, even the court in that case recognized the JCO may still impact ongoing disputes about the Department's enforcement efforts at Chambers Works and has thus stayed all proceedings pending the outcome of the hearing on the Motion to Approve. *See* SLM-C-7-18, Trans ID CHC2025327838.

*Mayor & Mun. Council of City of Newark*, 24 N.J. 467, 478 (1957). A municipality's home rule authority is limited to matters of "local concern," and does not extend to "those matters involving state policy or in the realm of affairs of general public interest and applicability." *Id.* Here, the State is addressing an issue of general and statewide significance, as PFAS contamination is prevalent across the State and threatens the health of all New Jersey residents. An issue such as this is most appropriately resolved by the State, which acts on behalf of and for the protection of all the State's residents—not just those of one Township—and can thus craft the most appropriate solutions. *Cf. Howell Twp. v. Waste Disposal, Inc.*, 504 A.2d 19, 27 (N.J. Super. Ct. App. Div. 1986) (State, through Department, "must normally be free to determine what solution will best resolve a problem on a state or regional basis given its expertise and ability to view those problems and solutions broadly").

The State has entered into these JCOs in its capacity as *parens patriae* and trustee of New Jersey's natural resources to protect the health of all of its residents against the threat of PFAS contamination and to safeguard and restore natural resources for current and future generations. *See* ECF 746-1 at 61–69; *see also Petition of Pub. Serv. Coordinated Transp.*, 5 N.J. 196, 208 (1950) (the Attorney General is the State's "defender of the public interest"); *see also State v. City of Dover*, 153 N.H. 181 (2006) (State lawsuits preempt municipal lawsuits against the same defendants on the same subject). The State's authority to enter into these

35

Settlements is discussed at length in the State's Motion to Approve the JCOs. *See* ECF 746-1 at 61–69.

Carneys Point's reliance on *City of Seattle v. Monsanto Co.* is misplaced, as it does not support Carneys Point's contentions. 2023 WL 4373432, at *3 (W.D. Wash. Apr. 12, 2023), *aff'd*, 2023 WL 4363561 (W.D. Wash. July 6, 2023). In *City of Seattle*, the State had specifically carved out the claims of the City in its complaint. *Id.* at *2. At the summary judgment stage, the magistrate judge found that "the State Settlement Agreement did not clearly and unambiguously demonstrate the parties intended to release the City's claim," and "the preclusive effect of a dismissal based on a settlement is no greater than the release agreed to by the parties." *Id.* at *6–10. The court declined to reach the issue of State authority to release a municipal claim. *Id.* at *6. That stands in stark contrast to the circumstances here, where the State has unambiguously expressed its intent to release the claims of its political subdivisions and has the authority to do so.[30]

## F. Private Attorneys General Actions Are Not Required To Be Exempted From The JCOs Based On The Environmental Rights Act.

Carneys Point asserts that non-State actors bringing actions under the Environmental Rights Act, which Carneys Point refers to as "private attorneys

---

[30] Carneys Point also argues that certain relief related to the State's political subdivisions is "contingent on a fairness hearing." Regardless, such a hearing is already scheduled for January 7, 2026. *See*, ECF 741 ¶ 6.

general," must be exempted from the JCOs' releases and other provisions in order to comply with "the intent" of the ERA. ECF 742-2 at 27–31; ECF 745-2 at 19–22.

Carneys Point has not identified *any* pending ERA litigation (aside from its one case discussed above) against the Settling Defendants that concern any issues related to the Settlements. Furthermore, the JCOs generally do not address claims based on future conduct occurring after the Settlements' effective date, including, to the extent appropriate, claims under the ERA. *See* Response to Comment No. 45 on DuPont JCO; *compare* ECF 742-2 at 31 (incorrectly asserting the State is denying actors "the right to take action under the ERA now and forever into the future").

Carneys Point's arguments, then, are based on speculation regarding a narrow subset of ERA lawsuits that would hypothetically be filed in the future to address the very same past conduct—decades after that conduct has occurred—that is resolved through these comprehensive Settlements reached by the State. Such a scenario does not serve the interests of the ERA, or the finality of settlements.

Indeed, a non-State actor's ability to maintain lawsuits under the ERA is conditional and targeted. The ERA "grants a private person standing to enforce an environmental protection statute as an alternative to inaction by the government, which retains primary prosecutorial responsibility." *Superior Air Prods. Co. v. NL Indus., Inc.*, 522 A.2d 1025, 1032 (N.J. Super. Ct. App. Div. 1987). Here, there is no such inaction; the State has acted, including vigorously prosecuting this case trial, to

reach these comprehensive Settlements. The ERA itself has mechanisms to preclude private actions that duplicate the Department's enforcement, as would be the case here, including "[t]he doctrines of collateral estoppel and res judicata" to "prevent multiplicity of suits." N.J.S.A. 2A:35A-10(b). A court may also "on its own motion, dismiss any action brought pursuant to th[e] [ERA] which on its face appears to be patently frivolous, harassing or wholly lacking in merit." N.J.S.A. 2A:35A-4(c).

The intent of the ERA was to promote environmental vigilance while "minimizing the potential proliferation of private lawsuits to those bona fide instances when the government has not acted." *Superior Air Prods.*, 522 A.2d at 1032. New Jersey courts have confirmed that the ERA recognizes "that multiple and vexatious litigation should not be tolerated." *Howell Twp.*, 207 N.J. Super. at 93–94. ERA claims that cover the same ground as these Settlements, and that are filed only after these Settlements are reached, certainly fall within these categories.[31]

There is thus nothing in the ERA requiring removal of references to "private attorneys general" in the JCOs' releases or other provisions. Moreover, as the State

_____

[31] While Carneys Point's counsel submits a certification from Ms. Jerry English, the State respectfully disagrees with her individual assessment of the JCOs and their relationship to the ERA. Her personal opinion is not of the type courts give weight in examining the application of statutes, in any event. *See*, e.g., *Amato v. Twp. of Ocean Sch. Dist.*, 327 A.3d 1212, 1217 (N.J. Super. Ct. App. Div. 2024) ("[W]e are not interested in the statement of one legislator as to what he or she believed was the correct interpretation of a statute."); *see also N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 306 (2017) ("What Congress ultimately agrees on is the text that it enacts, not the preferences expressed by certain legislators.").

has made clear, the releases in the JCOs are provided to the "maximum extent provided by law." If disputes arise in the future related to ERA litigation yet to be (or never) filed, they will be dealt with by courts handling those matters through their examination of the JCOs and the applicable law, including the ERA.

### G.    Carneys Point's "Tax Deduction Rule" Is A Red Herring.

Carneys Point's arguments regarding the "Tax Deduction Rule" are merely an attempt to claim the entire $525 million in Abatement Damages recovered under the DuPont JCO for itself, to the detriment of other municipalities and homeowners impacted by PFAS and other contaminants. Its effort to likewise restrain the Department's discretion to allocate funding under the 3M JCO to address PFAS impacts throughout New Jersey based on the same "Rule" is similarly self-serving.

The DuPont JCO requires that at least $700 million of the $875 million of settlement payments be used for "the restitution or remediation of a harm to the environment, wildlife, or natural resources" within the meaning of section 162(f)(2)(A) of the Internal Revenue Service ("IRS") Code and section 1.162-21(e)(4) of the Treasury Regulations. DuPont JCO ¶ 12. Similarly, the 3M JCO requires that no more than $70 million of 3M's settlement payments be used other than for "restitution or remediation." *See* 3M JCO ¶ 44(c), (e). That the JCOs incorporate language from the IRS Code that may allow the Settling Defendants to deduct a portion of the settlement payments from their taxes is common in

environmental settlements, and something with which courts are loath to interfere. *See*, *e.g.*, *Exxon Mobil Corp.*, 183 A.3d 289, 335 ("Courts do not wade into the tax strategies of multi-national corporations and determine how much, if any, of settlement payments they are going to deduct from their . . . taxes."). Simply put, it is not the Court's role, let alone that of Carneys Point, to pre-determine the Settling Defendants' eligibility for tax deductions they may claim in the future, or to re-write the terms of the JCOs with an eye towards Settling Defendants' tax strategies.[32]

In sum, whether the DuPont Defendants or 3M ultimately qualify for tax deductions for their settlement payments is of no moment to the Court's evaluation of the JCOs, and neither the IRS Code nor the Treasury Regulations referenced in the JCOs provide authority to re-write the JCOs to require that the settlement payments be exclusively used to benefit Carneys Point.

## **CONCLUSION**

For the reasons described above, Plaintiffs respectfully request that this Court deny Carneys Point's motions to intervene and otherwise overrule its objections to the JCOs.

---

[32] Though Carneys Point's arguments need not be considered, it misstates the regulation upon which it relies, which provides that "a strong nexus between the purpose of the payment and the harm to the environment, natural resources, or wildlife that the taxpayer has caused or alleged to have caused." Treas. Reg. 1.162-21(e)(4). Carneys Point's arguments refer to a "direct nexus" between a "site" and "harm," *see*, *e.g.*, ECF 742-2 at 31, which is nowhere in that regulation.

Dated: December 8, 2025                    Respectfully submitted,

                                          **MATTHEW J. PLATKIN**
                                          **ATTORNEY GENERAL**
                                          **OF NEW JERSEY**
                                          *Attorney for Plaintiffs*

                                          By: */s/ Gwen Farley*
                                          Gwen Farley, Esq.
                                          Deputy Attorney General
                                          R.J. Hughes Justice Complex
                                          25 Market Street, P.O. Box 093
                                          Trenton, New Jersey 08625-0093
                                          Tel.: (609) 376-2761
                                          Gwen.Farley@law.njoag.gov

                                          **KELLEY DRYE & WARREN LLP**
                                          *Special Counsel to the Attorney General*

                                          By: */s/ David M. Reap*
                                          David M. Reap, Esq.
                                          3 World Trade Center
                                          175 Greenwich Street
                                          New York, NY 10007
                                          Tel.: (212) 808-7800
                                          DReap@KelleyDrye.com

                                          Geoffrey W. Castello, Esq.
                                          One Jefferson Road
                                          Parsippany, New Jersey 07054
                                          Tel.: (973) 503-5900
                                          GCastello@KelleyDrye.com

                                          *William J. Jackson, Esq.
                                          515 Post Oak Blvd. Suite 900
                                          Houston, Texas 77027
                                          Tel. (713) 355-5000
                                          bjackson@kelleydrye.com

                                          Erin Hodge, Esq.

Washington Harbour, Suite 400
3050 K Street, NW
Washington, D.C. 20007
Tel. (202) 342-8445
ehodge@kelleydrye.com

**LAW OFFICES OF JOHN K. DEMA, P.C.**
*Special Counsel to the Attorney General*

*John K. Dema, Esq.
*John T. Dema, Esq.
*Briana Dema, Esq.
1236 Strand Street, Suite 103
Christiansted, St. Croix
U.S. Virgin Islands, 00820-5034
Tel: (340) 773-6142
jdema@demalaw.com
jtdema@demalaw.com
bdema@demalaw.com

Scott E. Kauff, Esq.
11300 Rockville Pike, Suite 112
Rockville, Maryland 20852
Tel: (202) 309-0200
skauff@demalaw.com

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
*Special Counsel to the Attorney General*

Leonard Z. Kaufmann, Esq.
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
Tel.: (201) 845-9600
lzk@njlawfirm.com

**TAFT STETTINIUS & HOLLISTER LLP**

42

*Special Counsel to the Attorney General*

*Robert A. Bilott, Esq.
50 E. RiverCenter Blvd., Suite 850
Covington, Kentucky 41011-1683
Tel.: (859) 331-2838
bilott@taftlaw.com

*Admitted Pro Hac Vice*