# EXHIBIT A

```
                                   SUPERIOR COURT OF NEW JERSEY
                                   LAW DIVISION, CIVIL PART
                                   GLOUCESTER COUNTY
                                   DOCKET NO. GLO-L-001239-20

N.J. DEPARTMENT OF ENVIRON-  )
MENTAL PROTECTION,           )
                             )
          Plaintiff,         )        TRANSCRIPT
                             )            OF
     v.                      )   MOTION TO INTERVENE
                             )
SOLVAY SPECIALTY POLYMERS    )
USA, LLC, et al,             )
          Defendant.         )
_____)
```

```
                    Place:  Gloucester County
                            (Heard via Zoom)

                    Date:   March 1, 2024
```

BEFORE:

    HONORABLE ROBERT G. MALESTEIN, J.S.C.

TRANSCRIPT ORDERED BY:

    DAVID REAP, ESQ.
    (Kelley Drye & Warren, LLP)

APPEARANCES:

    RICHARD F. ENGEL, ESQ. (Deputy Attorney General)
    Attorney for the Plaintiff

    BRIANA DEMA, ESQ. (Special Counsel)
    (Law Office of John K. Dema)
    Attorney for the Plaintiff

    JAREN JANGHORBANI, ESQ.
    (Paul, Weiss, Rifkind, Wharton, & Garrison, LLP)
    Attorney for the Defendant Solvay Specialty
    Polymers

    ROBERT L. SHUFTAN, ESQ.
    JOO CHA WEBB, ESQ.
    (Steptoe's Chemical, Environmental & Life
    Sciences; Greenbaum Rowe)
    Attorneys for the Defendant Arkema

APPEARANCES:    (Con't)

     ALBERT I. TELSEY, ESQ.
     (Meyner & Landis, LLP)
     Attorney for the Intervenor, Carneys Point

                   Transcriber Teresa Iannaco
                   PAT'S TRANSCRIPTION SERVICE
                   504 Forest Court
                   Williamstown, NJ   08094
                   Phone:  (856) 728-3151
                   E-Mail:
                   Patstranscriptionservice@gmail.com

                   Digitally Recorded
                   Recorded by Andrea Horton

3

1                         I N D E X

2      PROCEEDING:                                  PAGE

3      MOTION TO INTERVENE                           4

4      ARGUMENT BY:

5           Mr. Telsey                               6

6           Ms. Dema                                17

7           Ms. Janghorbani                         21

8

9      REBUTTAL BY:

10          Mr. Telsey                              26

11          Ms. Dema                                29

12

13     FINDINGS OF THE COURT:                       36

14          Motion to Intervene - denied            47

15          Settlement Order - approved             49

16

17

18

19

20

21

22

23

24

25

Colloquy                                          4

1         THE COURT:  Good afternoon.  Everybody is

2    slowly but surely joining.

3         So I'm Judge Malestein.  Welcome.  It is 1:32

4    p.m., March 1, 2024.  This is in the matter of the New

5    Jersey Department of Environmental Protection vs.

6    Solvay Specialty, et al.  It is Gloucester County, Law

7    Division, Docket 1239-20.

8         I am only interested in the attorneys who are

9    going to be arguing today that have signed paperwork to

10   note their appearances, because I have a lot of people

11   on the screen, so who's here on behalf of the

12   plaintiff?

13        MR. ENGEL:  Your Honor, this is Deputy

14   Attorney General Richard Engel.  I'm here on behalf of

15   the plaintiff and I will let you know that Briana Dema,

16   who you can see hopefully on your screen, who's with

17   the law offices of John K. Dema, will be doing the

18   argument for our side.

19        MS. DEMA:  Good afternoon, Your Honor.

20        THE COURT:  Good afternoon.  Thanks.  You can

21   make your own appearance now that he introduced you.

22   Go ahead, Miss Dema.

23        MS. DEMA:  Briana Dema from the law offices

24   of John K. Dema, special counsel to the plaintiffs.

25        THE COURT:  Thank you.

1          Again, on behalf of Solvay -- who's going to

2     be arguing on behalf of Solvay Specialty?

3              MS. JANGHORBANI:  Good afternoon, Your Honor,

4     Jaren Janghorbani from Paul Weiss on behalf of Solvay

5     Specialty Polymers.

6              THE COURT:  And you're going to be arguing

7     today?

8              MS. JANGHORBANI:  Yes, Your Honor.

9              THE COURT:  Perfect.

10         And we also have paperwork that was submitted

11    in opposition to this motion on behalf of Arkema.  Who

12    is going to be arguing on behalf of Arkema today?

13             MR. SHUFTAN:  Your Honor, it's Robert Shuftan

14    of Steptoe on behalf of Arkema, Inc., together with my

15    partner, Joo Cha Webb, and comprehensively Greenbaum

16    Rowe.  We did not submit papers in opposition.

17             THE COURT:  Okay.  I'm sorry.  I stand

18    corrected.

19         All right.  So everybody's going to be quiet.

20    And, finally, the motion filed by Carneys Point, Mr.

21    Telsey.  I keep -- people keep jumping around on the

22    screen.  I know he's here somewhere.

23             MR. TELSEY:  I see myself.

24             THE COURT:  There you are, okay.  Thank you.

25             Counsel, go ahead and give up your appearance

Telsey - Argument                                              6

1    for the intervener.

2            MR. TELSEY:  Albert Telsey with Meyner and

3    Landis, for Carneys Point Township, Intervener.

4            THE COURT:  Perfect.

5            Okay.  So Mr. Telsey, this is your

6    application.  I will hear from you when you are ready.

7            MR. TELSEY:  Thank you, Judge, I am ready.

8            Judge, Carneys Point Township has been

9    polluted by the DuPont Chambers Works and the Solvay

10   facility.

11           Let me talk about standing for a minute.

12   Carneys Point has standing to intervene in this matter

13   to challenge the Solvay settlement for several reasons.

14   The first is that the state presented stale scientific

15   information to this court.  The state claims that this

16   court should not hear our concerns about the Solvay

17   settlement because the Solvay pollution did not impact

18   Carneys Point, and to try and prove that claim, the

19   state presented to this court a stale 2017 DEP memo.

20           The state did not present to this court the

21   2020 scientific peer review study from the Journal of

22   the American Association for the Advancement of

23   Science, prepared by 13 EPA and DEP scientists, who

24   concluded that Solvay pollution has impacted Carneys

25   Point Township, nor did the state present recent

Telsey - Argument                    7

1    residential well sampling data from Carneys Point taken

2    by (inaudible), that shows Solvay PFNA has impacted

3    Carneys Point wells.  This addition was a misdirection

4    to the court.

5            Carneys Point has standing because it is a

6    Solvay pollution-impacted municipality.  The arbitrary

7    litigation mine created by the state at the southern

8    border of Oldmans Township is merely a settlement

9    (inaudible) created by the state and has nothing to do

10   with the limits of Solvay's pollution.

11           Second, the remediation funding source,

12   natural resource damages, are dedicated funds, not

13   general funds.  Carneys Point has standing because, as

14   a Solvay pollution-impacted municipality, it is a

15   third-party beneficiary to the remediation funding

16   source and natural resource damage recoveries in the

17   Solvay settlement.

18           RFS and NRD are dedicated funds, with the

19   protection and benefit of the pollution-impacted

20   municipalities.  These funds are not general funds

21   deposited in the state general treasury.  RFS funds are

22   held in your community's trust fund, NRD are funds held

23   in the NRD legislative account.

24           Third, Carneys Point is a third-party

25   beneficiary to outside counsel retainer agreement.

Telsey - Argument                                    8

1    Outside counsel was hired to provide Solvay pollution-

2    impacted municipalities with dedicated RFS and NRD

3    funds for the protection and benefit of these

4    communities, and not for the benefit and the protection

5    of any other community in the State of New Jersey.

6           In addition, Carneys Point, in particular, is

7    a third-party beneficiary to the retainer agreement,

8    because outside counsel has specifically agreed to

9    recover Carneys Point's lost property taxes due to the

10   impact of pollution.

11          Fourth, Carneys Point has stated under the

12   <u>Environmental Rights Act</u>, the ERA entitles Carneys

13   Point to sue Solvay and to sue the state, to make them

14   comply with ISRA and to make them manage RFS and NRD

15   funds as required by law, especially when RFS and NRD

16   cash funds in the Solvay settlement are being wrongly

17   diverted to paying contingency fees and other projects

18   in DEP's sole discretion.  This wrongful diversion of

19   settlement funds both "impairs", close quote, the

20   remediation of Solvay pollution and it impairs the

21   restoration of damaged natural resources, which are

22   protections and benefits that the pollution-impacted

23   municipalities like Carneys Point are entitled to

24   receive by law.

25          This unlawful diversion of RFS and NRD funds

Telsey - Argument                                    9

1    is an impairment to these protections and benefits, and

2    that impairment triggers ERA standing.

3          Fifth, Carneys Point has standing under the

4    Declaratory Judgment Act.  The Declaratory Judgment Act

5    permits a person to seek a judicial determination

6    regarding an impact that a statute, contract, or other

7    writing has on the rights, status, or other legal

8    relationship that a person has with another person.

9          Carneys Point has standing under the

10   Declaratory Judgment Act to have this court interpret

11   the NRD constitutional amendment, the DEP direct

12   oversight laws and regulations, the outside counsel

13   retainer agreement, and the Solvay settlement to

14   determine how they impact Carneys Point's rights and

15   entitlements to the Solvay settlement.

16         And sixth, Carneys Point has standing under

17   the writ of mandamus.  Whenever a state agency fails to

18   comply with its ministerial functions, as opposed to

19   its discretionary functions, the Court can intervene to

20   compel the agency to do what it is supposed to do by

21   law.

22         Carneys Point has standing to compel DEP to

23   comply with the NRD constitutional amendment, which it

24   has failed to do in the Solvay settlement.

25         Now, several years ago Carneys Point had to

Telsey - Argument                    10

1    sue DuPont and the DEP to protect its community from

2    DuPont pollution.  DuPont filed an ISRA in 2015 and did

3    not do anything about it.  After we sued DuPont, DEP

4    then tried to settle DuPont's one billion RFS for $51

5    million.

6         We then had to sue DEP in 2018 to keep DEP

7    from settling with DuPont for such a paltry award at

8    best.  We won our ISRA claim against DuPont.  DEP then

9    used our ISRA win to try and compel DuPont to post a $1

10   billion RFS.  That effort has been ongoing in mediation

11   without our involvement for a number of years and is

12   still continuing to this day.

13        So Carneys Point has been following Solvay's

14   settlement because Carneys Point has been polluted by

15   both Solvay and DuPont in a two-front co-mingled

16   aerosol of pollution.  The benefits of the Solvay

17   settlement flow to Carneys Point, as well as all other

18   Solvay pollution-impacted municipalities.

19        We also followed the Solvay settlement

20   because it may become a blueprint for how DEP tries to

21   settle the DuPont Chambers Works matter.  When we saw

22   the draft of Solvay's settlement last year, we were

23   horrified by its terms and conditions for the reasons I

24   will summarize in a moment, but we follow the rules.

25   Carneys Point pursued its administrative remedies by

Telsey - Argument                    11

1  submitting a 30-page comment letter to the DEP

2  detailing the many unlawful aspects of the Solvay

3  settlement, expecting, or hoping that DEP would do the

4  right thing and correct the unlawful provisions in the

5  proposed settlement.

6          On February 1, 2024, DEP filed its motion to

7  approve the Solvay settlement, with a return date

8  February 16, 2024.  DEP did not send Carneys Point a

9  copy of their responses to our comment.

10         We went online, we found them and we saw that

11 DEP did not address any of these significant legal

12 concerns that we had raised.  We then had 13 days to

13 muster a response before February 16, the return date

14 of the motion to approve the Solvay settlement.

15         Four days before that return date, on

16 February 12, 2024, we filed a lawsuit against Solvay

17 for violating ISRA, and we filed a lawsuit against the

18 state and its outside counsel for failing to comply

19 with the New Jersey Constitution, failing to comply

20 with environmental laws and regulations, violating

21 conflict of interest rules, and converting the Solvay

22 settlement proceeds for unlawful purposes, including

23 contingency fees, among other reasons.

24         Let me summarize the Solvay lawsuit.  Solvay

25 is an international multi-billion dollar chemical

Telsey - Argument                    12

1    company that was undergoing a corporate spinoff to

2    jettison its pollution laden business elements,

3    including the West Deptford facility to a new

4    independent company Solvay created called Senesco.

5    This was an ISRA triggered event because assets of

6    Solvay's parent company were being transferred and

7    could therefore not be accessed to clean up the tri-

8    county pollution problem Solvay created for us here in

9    South Jersey.

10           This ISRA spinoff was completed on December

11   8, 2023.  It happened right in front of the DEP, with

12   their knowledge and consent.  DEP let Solvay violate

13   ISRA in exchange for posting a 315 million RFS in cash

14   and non-cash equivalents.  The settlement let Solvay

15   post 215 or $214 million as a non-cash RFS and required

16   that Solvay pay 101 million into a DEP-controlled

17   escrow account that DEP could use for its purposes, as

18   it chose, in its sole discretion.

19           However, the entire 350 billion dollar RFS

20   which was required by law to be deposited into a cash

21   remediation trust fund, dedicated to remediating the

22   Solvay era emissions for the benefit of impacted

23   communities in Salem, Gloucester and Camden counties.

24   The RFS is not permitted by all to be used by DEP in

25   its sole discretion.  And that is exactly what the

Telsey - Argument                    13

1    Solvay settlement provides.

2              Carneys Point sued Solvay pursuant to the

3    Environmental Rights Act for violating ISRA as a result

4    of a December 2023 corporate parent spinoff, to compel

5    Solvay, among other things, to comply with ISRA by

6    submitting appropriate certifications to the state and

7    posting a $315 million remediation funding source in

8    the form of remediation trust fund, as required by law.

9              Carneys Point also sued Solvay for unlawfully

10   transferring the deed to the West Deptford facility in

11   2019, which was also an ISRA trigger.  In 2019 DEP

12   issued a PFAS directive against Solvay and others

13   requiring Solvay to deal with its tri-county PFAS

14   pollution problem.  Solvay's predecessor's entire sole

15   directive is the precursor to an enforcement lawsuit,

16   and quietly transferred the deeds to the West Deptford

17   facility to Solvay, so that Solvay, instead of these

18   predecessor corporate entities, would have to deal with

19   PFAS enforcement lawsuit that followed a year later in

20   2020, which is this matter that we are discussing now.

21             That 2019 deed transfer was also mis-

22   triggered that DEP would let happen without strict

23   compliances.

24             THE COURT:  Well, let me stop you there, Mr.

25   Telsey.  Tell me when -- and there seems to be some

Telsey - Argument                    14

1   confusion as to what was done.  There was a public

2   comment period, it was left open.  When did Carneys

3   Point, in and of itself, contact who they needed to in

4   accordance with that limited period of time to express

5   their concerns?

6            MR. TELSEY:  The comment period ended, I

7   believe October 6, 2023, and Carneys Point submitted

8   its comment letter to the Department on that day.

9            THE COURT:  On October 26th?

10           MR. TELSEY:  October 6th.

11           THE COURT:  October 6th.  All right.  Go

12   ahead.

13           MR. TELSEY:  Thank you.

14           So Carneys Point is entitled, pursuant to

15   the ERA, to sue Solvay for its ISRA violations, and to

16   do so without prior notice to DEP because Carneys Point

17   can take action pursuant to its own lease powers to

18   protect its residence from the pollution when DEP is

19   unwilling or unable to do so for that reason to sue

20   Solvay.

21           Let me summarize the lawsuit against the

22   state and outside counsel.  Our lawsuit is broken down

23   into three counts.  The first count addresses --

24           THE COURT:  I don't need you to summarize the

25   lawsuits.  I need you to tell me why I should blow up a

Telsey - Argument                    15

1    settlement as significant as this is that was entered

2    into by the agency charged with protecting the citizens

3    of  -- all citizens of New Jersey for environmental

4    pollution and Solvay, why should I blow up this

5    settlement, and why can't Carneys Point proceed

6    separately?

7             MR. TELSEY:  I'm not asking the Court to blow

8    it up, I'm asking the Court to fix it, and it can be

9    fixed through the following six or seven ways:

10            1)  The Court can compel Solvay to post a

11   $315 million  RFS into a cash remediation trust fund,

12   as required by law.  That dedicates the money to the

13   remediation of Solvay pollution and the upgraded

14   municipal water systems, and protects it from being

15   used to pay outside counsel fees.  It also permits that

16   pollution-impacted municipality access to those funds

17   with the consent of DEP if Solvay fails to complete the

18   remediation.

19            THE COURT:  But who should pay, who should

20   pay outside counsel fees?  It's the citizens of the

21   State of New Jersey in any event, right?

22            MR. TELSEY:  Well, the way outside counsel

23   fees should be paid is as follows.  They are not

24   allowed to be paid from RFS funds or NRD funds, subject

25   to a ten-percent cap on NRD.  So the state could have

Telsey - Argument                    16

1    simply asked or compelled Solvay to pay its outside

2    counsel fees by a fee shifting, which is provided for

3    in each of the statutes that DEP sue Solvay under.

4    That would have brought the outside counsel full

5    payment if they were still entitled to the contingency

6    to be (inaudible) pursuant to the retainer agreement.

7            That retainer agreement provided that if

8    not all payments are made by Solvay, the Attorney

9    General's Office would make an appropriation request to

10   the legislature to pay the balance, so that way all the

11   money that's dedicated, that's RFS and NRD, for

12   pollution-impacted municipalities remains for their

13   benefit, while the DEP and their outside counsel are

14   still paid the contingency fees with other funds by

15   both Solvay and legislative appropriation.  That's how

16   it's supposed to be done, and that's what we're asking

17   the Court to do, to simply compel the state to comply

18   with its legal obligations and the deal can go through.

19           The second thing we want them to do is to --

20   we want the Court to compel the state to credit 100

21   percent of the NRD, $75 million component to the NRD

22   legislative account, that's how it's supposed to go.

23   Then the DEP can request a 10 percent appropriation

24   from the Department of Treasury.  That's the way that's

25   supposed to go.

Telsey / Dema - Argument                    17

1            So we're asking this Court to simply adjust

2      the settlement with these reasons and to correct the

3      release of third-party contribution protection because

4      they are inappropriate at this stage of the

5      remediation, too broad, as required by law, so that it

6      does not impact, for example, the Township of Carneys

7      Point's ability to sue Solvay for its ISRA violations.

8      There's nothing here that we're looking to blow up.

9            THE COURT:  I think your adversaries see it

10     differently than you, Mr. Telsey, but let's hear from

11     -- Who wants to go first?  The State -- the plaintiff.

12     I'm sorry.

13            MS. DEMA:  Your Honor, yes, I'm pleased to --

14            THE COURT:  Go ahead.

15            MS. DEMA:  (Inaudible)

16            THE COURT:  So go ahead, counsel, tell me why

17     Mr. Telsey is completely wrong.

18            MS. DEMA:  Well, Your Honor, Mr. Telsey/

19     Carneys Point is seeking to intervene in this action

20     for the specific purpose of staying your consideration

21     of the JCO until the two separate lawsuits play out,

22     and in those lawsuits the only -- I mean, that's

23     completely unnecessary.  The only relief sought in

24     those cases that actually relate to the JCO before you

25     are the request for an order to nullify or modify your

Dema - Argument                              18

1    JCO, but you are already considering the JCO, and for

2    an order compelling Solvay to post an adequate RFS,

3    which the JCO will already require.  So these claims

4    are essentially untimely and procedurally improper

5    objections to the JCO that is before Your Honor for

6    evaluation.

7            And the focus of those other complaints is on

8    the Chambers Works litigation, which is an entirely

9    different litigation, of which I think Your Honor is

10   aware, and the state's use of recoveries in all of its

11   natural resource damage cases as a general matter,

12   which is a question that is not at issue in this case

13   and does not need to be decided in this case or as part

14   of the Court's consideration of the JCO.

15           On the substantive issues, an objection which

16   Carneys Point has raised, we have laid out in detail in

17   our briefing why those allegations are simply wrong as

18   a matter of law and fact.  For example, there is no

19   requirement that the RFS be informed of a remediation

20   trust fund.  That is the old law.  The law was amended

21   in 2019, and the law no longer requires that.  So to

22   assure Your Honor, and this is laid out in detail in

23   our brief, we believe Carneys Point is demonstrably

24   wrong as to the law and the facts with the objections

25   that they've raised.

Dema - Argument                                19

1          And then in terms of its request to modify

2     the JCO, it would be -- there's no requirement that the

3     JCO go into detail about how the money the state will

4     recover if the JCO is approved will be used and

5     disbursed by the state.  There are laws and

6     appropriations and budgeting offices and all sorts of

7     procedures that govern how the state should use its

8     money, and the office of the Attorney General and the

9     Department will comply with the law.

10          And Carneys Point's separate complaint,

11    they're free to go forward with that complaint and the

12    parties will respond in due course, but it does not

13    need to be resolved before you consider the JCO, and

14    the JCO does not need to be amended to add that level

15    of detail.

16          I'd be happy to answer any more specific

17    questions you might have about the points Carneys Point

18    --

19          THE COURT:  Okay.  I think Mr. Telsey is

20    really focusing more on, more on the, what he sees to

21    be problems with the JCO, itself, as opposed to the

22    underlying right to actually intervene in this.  Like

23    he's got a standing argument that he does have

24    standing, so what's your position?  I mean, you can't

25    -- not everybody can just jump into somebody else's

Dema - Argument                              20

1    lawsuit and put the kibosh on what's going on.  We

2    can't do that.  We have intervention as a right, we

3    have permissive intervention here, so what's the,

4    what's the state's position with regard to the

5    procedural hurdle that he's got to jump through?

6            MS. DEMA:  Your Honor, there are many

7    procedural hurdles he would have to jump through that

8    he has not.

9            So first, Rule 4:33-3 requires a motion to

10   intervene be accompanied by a pleading, setting forth

11   the claim or defense for which intervention is sought,

12   and Carneys Point has not complied with that

13   requirement.  And it seems to argue in its reply that

14   it doesn't have to, that a brief and -- a motion and a

15   brief are sufficient, but the law -- the rule clearly

16   requires the pleading.

17           Second, case law from the Appellate Division

18   is clear that the proposed intervener must show that

19   its status is comparable to that of a party that must

20   be mandatorily joined in this action.  An alleged

21   impact from the site alone is not sufficient to show

22   the need for mandatory joinder.  If that were the case,

23   West Deptford would have to be here, the nine other

24   towns named in the JCO would have to be here, and any

25   other town that has alleged impact from site would have

Dema / Janghorbani - Argument                    21

1     to be here.  But of course that's not the case because

2     alleged impact is not the standard, and Carneys Point

3     has not shown why it is recoverable to a party that

4     must be mandatorily joined.

5              And then there are additional procedural

6     hurdles.  I mean, it's essentially an untimely

7     objection to the JCO.  It was not timely.  And you're

8     absolutely right, Your Honor, if, for example, the ERA

9     or the Declaratory Judgment Act could be read to

10    provide a private right of action for any person or

11    citizen or municipality to come into court when they

12    were unhappy with the terms of a JCO, that would

13    entirely upend and ignore the department's role here

14    in litigate -- pursuing litigation on settling claims

15    on behalf of all the citizens of the state and the

16    Court's role in evaluating the substance of the JCO

17    under the is it fair, reasonable, consistent with the

18    Spill Act and in the public interest.

19              MR. TELSEY:  I have some responses, Judge.

20              THE COURT:  I want to hear from other people

21    first.  So let's go to Solvay.  Go ahead.

22              MS. JANGHORBANI:  Thank you, Your Honor, I

23    really appreciate it.  I'll try to be very brief.

24              Let's begin with, first, principles.  Mr.

25    Telsey's argument is premised on a false premise, which

Janghorbani - Argument                    22

1    is that there is any -- any evidence at all that there

2    is contamination from Solvay that has impacted Carneys

3    Point.  There is zero evidence of that, Your Honor; he

4    cites none of it.  What he actually cites for the first

5    time in his reply brief is the study that has samples

6    none of which are in Carneys Point related to

7    replacement surfactants.  He also references the

8    finding of PFNA in DuPont Moore's own samples.

9         Again, PFNA is well known to have come from

10   the DuPont Moore's facility.  So there is simply

11   nothing tying Solvay to Carneys Point.  So that's sort

12   of first principle.  And I think, you know,

13   procedurally, this was raised for the first time as an

14   argument in his reply.  It's not in his opening papers,

15   it's not in two complaints that he filed.  He has never

16   raised it in any other forum despite extensively

17   litigating in this case, again related to the Chambers

18   Works Facility.

19        I will largely rest on our papers as to why

20   there is no third-party standing, no declaratory

21   judgment standing, no ERA standing.  But, again, at the

22   high level, Your Honor, what he is complaining about

23   are essentially two aspects of what he purports are

24   covered by the JCO that simply aren't.

25        First is how attorney's fees will be

Janghorbani - Argument                    23

1      allocated in the future.  That's not addressed by the

2      JCO, it's simply -- it doesn't require the Court's

3      attention today.  There is a presumption in New Jersey

4      that state agencies will, of course, faithfully execute

5      the law and there is no reason to think that any

6      attorney's fee application,  which will of course come

7      before this Court, will in any way violate the law.

8                But, in any event, it's not right today, Your

9      Honor, and it has absolutely nothing to do with the

10     dispute between Solvay and the state and the JCO that

11     has been put before Your Honor for approval today.

12               I will also refer the Court to the papers,

13     but, again, on his ISRA issues, he alleges a series of

14     transactions that trigger ISRA.  If you look at the

15     complaint, Your Honor, there are not actually any ISRA

16     violations that are alleged, but putting that aside, it

17     has absolutely nothing to do with the JCO that's before

18     Your Honor today.

19               The past violations of ISRA, to the extent

20     there is any complaint there or any issue to be

21     addressed, leaving aside the fact that they are now

22     many, many years in the past and one wonders why they

23     are being brought up for the first time in a late-filed

24     motion to intervene and as to the JCO, those can be

25     dealt with in connection with that complaint that has

Janghorbani - Argument                    24

1    been filed.

2              In terms of the allegation that there is

3    somehow some sort of ISRA non-compliance in the

4    December 2023 period -- let me first -- I'll correct

5    the pronunciation.  The company, the new spinout of

6    Solvay is Syensqo, and it is not as Mr. Telsey has

7    stated entirely without basis and contrary to fact any

8    sort of spinoff of polluted assets from Solvay.

9              There are several other points that I would

10   welcome the opportunity to correct.  Most of them are

11   addressed in our papers, but one point that Mr. Telsey

12   just keeps coming back to is the idea that there's a

13   $315 million RFS.  There is no $315 million RFS in the

14   JCO.

15             In the JCO there is a $214 million RFS, and

16   pursuant to its authority and consistent with the law,

17   the New Jersey DEP has proposed that that be

18   accomplished half in the form of a self-guarantee and

19   half in other secure forms of allocations that RFS, and

20   I'll add, Your Honor, that that is not half as to the

21   money that Solvay has committed to spend in terms of a

22   remediation.  If it is the case that testing shows that

23   there is additional contamination, Solvay is permitted

24   to remediate still more beyond that RFS.

25             So there's really no basis for Mr. Telsey to

Janghorbani - Argument                    25

1    complain about the RFS, especially because there is no

2    line, litigation line as to Carneys Point as he has

3    suggested.

4            Leaving aside the first principle that I

5    started with, Your Honor, which is that Carneys Point

6    is not impacted by contamination from Solvay, if in

7    some contrary universe it were to turn out that Carneys

8    Point is, there is a step-out testing under the JCO and

9    requirements by Solvay to remediate any contamination

10   that might be found.

11           So what you're faced with, Your Honor, is an

12   out-of-time intervener who lacks the qualifications to

13   intervene, who offers absolutely no basis for a stay,

14   given that his complaints are all either very old, not

15   right, and all entirely related to funding.  Monetary

16   judgments, Your Honor, obviously can be cured in

17   subsequent litigation action.

18           You're faced with that against a very

19   valuable settlement on behalf of the people of New

20   Jersey, hard fought by my client and the State of New

21   Jersey to provide relief to the communities that the

22   state believes are actually impacted by discharges from

23   the Solvay facility.

24           Now, I will note five of the communities that

25   are impacted by the JCO have voiced their support for

Janghorbani - Argument / Telsey - Rebuttal          26

1    this settlement, Your Honor.  So unless Your Honor has

2    further questions for me, I will submit that the

3    application by the state, which we have joined in, to

4    approve the JCO should be granted, the application to

5    intervene and the motion for its stay should be denied.

6              THE COURT:  Thank you.

7              Anyone else who noted an appearance that

8    needs to be heard?  No?   Okay.

9              Mr. Telsey, back to you then, briefly, if you

10   could.

11             MR. TELSEY:  Judge, there's three fatal flaws

12   to this settlement.  One is that the law does require

13   that the RFS be posted as remediation trust fund.  The

14   DEP regulations by it study said that notwithstanding

15   the statute's requirement that any remediation funding

16   source can be posted except for a self-guarantee, the

17   DEP regulations have limited it to simply a remediation

18   trust fund to make it more stringent as to what a

19   target under direct oversight must post, because

20   remediation trust fund in cash is the most accessible

21   form of financial insurance.

22             So they have not addressed that issue that

23   the regulations have made it more stringent than the

24   statute.

25             Number two, to the extent that the DEP is

Telsey - Rebuttal                          27

1    going to do something different than what the direct

2    oversight protocols require, the direct oversight of

3    protocols say that if the DEP wants to let the

4    regulated entity, Solvay in this case, post money

5    directly to the DEP as opposed to a designated,

6    recognized form of RFS, which is the case here for 101

7    million, or posted as anything other than remediation

8    trust fund, which is the case here, as counsel for

9    Solvay said, they're to post half this way and half the

10   other way.

11       If DEP's going to do any of that, the direct

12   oversight protocols require that DEP give public notice

13   as to what they're doing, why they're going to give

14   Solvay this kind of advantage, and to allow the public

15   to comment on the reasons given by DEP for why they are

16   giving Solvay enhancements like this.

17       And DEP did not put forth in their notice to

18   the public any reason why they weren't giving Solvay

19   the advantage of posting money other than the

20   remediation trust fund.

21       And the third critical and fatal flaw to this

22   settlement is that there is no statute that permits DEP

23   to compel a responsible party to post money, in this

24   case $101 million, directly to the DEP in an account

25   controlled by them for their sole discretion.

Telsey - Rebuttal                                28

1          If you look at the settlement agreement,

2     paragraph 27, an entire title cash, $101 million is to

3     be dedicated and allocated according to DEP's sole

4     discretion.  The only monies that DEP are allowed to

5     recover under environmental statutes are monies they

6     have already expended as past costs, not future costs,

7     and the reason it's done like that is to avoid

8     corruption.

9          And there is a statute on the books that

10    talks about this.  I mention in my, in the complaint

11    against the state that, under donations, it's 2D --

12    1D:63, and it talks about donations, and it says if the

13    DEP is going to accept money directly, as it is doing

14    here with that $101 million, it has to get approval

15    from the governor, it has to get approval from the

16    commissioner for the DEP, it has to explain how that

17    money is going to be used solely for the mission of the

18    DEP, and it must give public notice and an opportunity

19    for a public hearing to question and quiz the DEP as to

20    why they're taking this money directly for themselves,

21    so that the public is fully informed and engaged in

22    this kind of stuff.

23          The DEP never did any of that.  They didn't

24    give notice, written, as they're required to do on the

25    direct oversight statutes.  They didn't have a public

Telsey / Dema - Rebuttal                    29

1   hearing, as required for direct donations to the DEP.

2   These are simple faults that can't simply be brushed

3   away.

4           MS. DEMA:  Your Honor, I'd be happy to

5   respond to each of those points if it would help you.

6           THE COURT:  Go right ahead.

7           MS. DEMA:  Thank you.

8           As to the first point about the remediation

9   trust fund, the Department acknowledges that its

10  regulations are out of date.  The law prior to 2019 did

11  require a remediation trust fund, and the regulations

12  which were enacted prior to 2019 followed that law.

13          In 2019, as I've said, the Site Remediation

14  Reform Act was amended by legislature to remove that

15  requirement and the Department has not yet updated its

16  regulations, but it is not the case that the Department

17  passed regulations following that amendment to make

18  stronger requirements.  The DEP simply has not yet

19  updated its regulations.  When there's a conflict

20  between the statute and the law, statute and the

21  regulations, the statutes --

22          THE COURT:  The statute governs.

23          MS. DEMA:  Yes.

24          With respect to public notice, Mr. Telsey is

25  correct that the law requires public notice and a

Dema - Rebuttal                                    30

1    common period.  And the Department had an extensive

2    public notice of a common period here.  It published

3    the JCO on its website; it held a press conference; it

4    published a notice of the settlement, and specifically

5    published a notice to adjust direct oversights

6    requirements, which was placed both on its website and

7    in the New Jersey register.  It allowed public comment

8    for a period of 60 days, and, in fact, it received

9    comments, including from Carneys Point, on the

10   adjustments to direct oversight.

11          So the Department has complied with the law

12   to give notice and an opportunity to the public to be

13   heard.  On the so-called cash escrow, this is well

14   covered in our papers, except for the new argument Mr.

15   Telsey has raised just now for the first time about DEP

16   funding and direct donations, but anyway, setting that

17   aside, the JCO does not establish a discretionary cash

18   escrow.  The only escrow in the JCO is to hold the

19   money until the settlement is final.  It's just a

20   standard escrow with J.P. Morgan Bank, Chase Bank.

21          If the settlement is appealed and it's

22   overturned on appeal, the money belongs to Solvay and

23   it will go back to Solvay.  If the settlement is

24   approved, if there's no appeal, if it's upheld on

25   appeal, the money belongs to DEP and it will go to the

Dema - Rebuttal                                31

1      state.

2              And Mr. Telsey keeps quoting paragraph 27

3      about sole discretion, but that, the full text of that

4      provision reads, "Nothing in this section shall alter

5      the Department's sole discretion to use the funds as it

6      determines to be appropriate and related to addressing

7      environmental impacts from discharges of PFAS."

8              So this is not a sole discretion to do

9      anything with they want with the money.  Again, the

10     Department and the Attorney General will comply with

11     all laws that require, you know, the disbursement and

12     the use of monies, and it will prioritize the funding

13     for the specific purposes in paragraphs 26 and 27 of

14     the JCO.

15             And then as to the point that the Department

16     can only recover past costs, that's simply not true.

17     The Spill Act and the citation is 58:10-23.11u, it

18     allows the Department to commence a civil action for

19     the costs of any investigation, cleanup or removal, the

20     cost of NRD, any other costs incurred by the

21     Department.

22             So it specifically allows not only past

23     costs, but the costs of any investigation cleanup or

24     removal.  And the state as well brought common law

25     claims, and of course the state can recover cash for

Dema - Rebuttal                                        32

1   environmental damage under its common law --

2              THE COURT:  Okay.  Anybody want to speak on

3   behalf of the state or defendant with regard to

4   approval of the JCO?

5              MS. DEMA:  Your Honor --

6              THE COURT:  Was that something that we agreed

7   to carry?  Sorry, I'm a little bit confused as to

8   whether or not we are going to re-list that until after

9   the Court determined the issues that were brought to

10  the Court by Mr. Telsey in Carneys Point.

11             MS. DEMA:  Your Honor, that is also set for

12  today.

13             THE COURT:  It was set for today, okay.  Who

14  needs to speak to that?

15             MS. DEMA:  I'd be happy to provide a --

16             THE COURT:  Go ahead.

17             MS. DEMA:  Thank you.

18             So the motion to approve the JCO before you,

19  which resolves the state's claims in this matter

20  against Solvay regarding its West Deptford facility,

21  and it is the result of more than a year of hard fought

22  negotiations over its terms, and extensive public

23  comment period, and a careful evaluation of all public

24  comments received, it would provide $394 million of

25  value to the state, and critically, the settlement

Dema - Rebuttal                                    33

1    would provide substantial resources to remove PFAFs

2    from drinking water, consumed by over 80,000 people,

3    living in ten town within Gloucester and Camden

4    counties.

5           And as counsel for Solvay pointed out, none

6    of these towns have objected to the settlement, and, in

7    fact, underscoring the urgent need for it,

8    representatives of five of those towns have contacted

9    the state in the past two weeks to oppose Mr. Telsey's

10   motion and to urge the prompt approval of the JCO.

11          The Court's role in reviewing the settlement,

12   as I've said, is to insure that it's fair, reasonable,

13   faithful to the objectives of the law and in the public

14   interest, and the Department believes the settlement

15   overwhelmingly satisfies the standard.  It is

16   procedurally fair, it is the result of arms-length

17   negotiations between sophisticated parties and their

18   counsel.  The negotiations involved detailed open and

19   candid discussions.  The Department announced the

20   proposed JCO to the public, and received public

21   comments over a 60-day period, and the Department has

22   carefully considered and responded to the comments

23   received.

24          Second, the settlement is substantively fair,

25   reasonable and in the public interest.  It requires

Dema - Rebuttal                                    34

1    approximately $180 million in cash payments, and it

2    also requires Solvay to conduct remediation currently

3    valued at $214 million.  Both the cash payments and

4    remediation would provide for a treatment of drinking

5    water in the vicinity of the site.  Solvay will pay

6    approximately $3.8 million to reimburse the Department

7    for past costs, $75 million for natural resource

8    damages, and just over $101 million for remediation

9    projects including treatment costs for nine public

10   water systems.

11          In addition to the cash payments, the JCO

12   also requires Solvay to perform specific remediation,

13   including of groundwater, soils and other environmental

14   resources on or near the site.  They have put

15   implementation of a comprehensive drinking water,

16   sampling a treatment plan in and beyond West Deptford,

17   and Solvay must report its activities sufficient to

18   meet specific remediation and drinking water standards

19   according to time frames set for in the JCO under the

20   expert oversight of the Department.

21          So this overall plan ensures that Solvay will

22   timely complete the required remediation to standards

23   that are protective of human health and the

24   environment.

25          And as we've discussed, these activities are

Dema - Rebuttal                                    35

1      currently estimated to cost $214 million, but there is

2      no cap on the costs, so if the activities cost more,

3      Solvay will still be required to complete them, and to

4      provide the Department and the public with the

5      assurance that Solvay will have the funds to do this,

6      the JCO requires Solvay to maintain their remediation

7      funding sources, which are essentially financial

8      guarantees to insure the funding.

9             Now, the Department evaluated all of these

10     terms based on numerous factors, including reasonable

11     estimates of overall damages in the case, developed

12     with experts, that Solvay has committed to performing

13     and paying for urgently-needed drinking water

14     treatment, regardless whether it is the source of the

15     contamination, and it continues to argue that it is not

16     the source.  Litigation risks, including data gaps, the

17     potential for adverse rulings, and the strengths and

18     the weaknesses of the parties' positions, and

19     importantly, the time valued money and the likely

20     length and expense of continuing with this litigation

21     weighed against the benefit to the public of a recovery

22     today.

23            So based on all of these factors, the

24     Department believes the JCO's overwhelmingly fair,

25     reasonable, consistent with statutory goals, and in the

Findings of the Court                           36

1    public interest, which is the standard that Your Honor

2    is to apply.

3              There are ten towns anxiously awaiting for

4    the approval of the JCO.  None of these towns have

5    objected, and the Department urges its prompt approval.

6              I would be happy to answer any questions you

7    may have about the JCO, itself.

8              THE COURT:  I don't have any questions.

9              MR. TELSEY:  I have a few comments, Judge.

10             THE COURT:  Pardon me?

11             MR. TELSEY:  I have a few comments to reply

12   to --

13             THE COURT:  Well, you don't get to comment on

14   that, you have to get through the first hurdle.  It's a

15   motion to approve.  You're not a party.  You made a

16   comment during the comment period, they addressed it.

17             MR. TELSEY:  They did not.

18             THE COURT:  They say they did, right?  And so

19   you have a disagreement.

20             All right.  So there are two matters that are

21   actually before the Court today.  There's been a great

22   deal of paperwork that has been provided to the Court,

23   and when I say a great deal, I'm not talking about 20

24   pages or 30 or 40, I'm talking about thousands of pages

25   that are before the Court, and it's reasonably simple,

Findings of the Court                               37

1    and I think that we need to just break it down.

2          I mean Carneys Point has -- well, as an

3    additional matter, litigation started between the State

4    of New Jersey Department of Environmental Protection

5    and Solvay and Arkema, and it's environmental

6    litigation, and as Ms. Dema has indicated, that

7    litigation started over three years ago and has been

8    diligently and zealously prosecuted on behalf of the

9    State of New Jersey.

10          We have experts on both sides of the fence,

11    between the plaintiff and the defendants.  We have

12    probably some of the best environmental attorneys that

13    were involved in the negotiation process.  It was a

14    very hard fought battle.  They strictly complied with

15    the requirements, public comment period, 60 days.

16    Carneys Point did submit some comments on the very last

17    day.

18          The State addressed -- there were a couple

19    minor modifications to the agreement, because there

20    were some comments that were received and they were

21    looked at to make certain that, you know, that the

22    state was doing everything that it needed to do to make

23    certain that this was legally correct, and they did

24    make some modifications to that.

25          Then they filed a motion to approve, to have

Findings of the Court                    38

1   this Judicial Consent Order executed by the Court to

2   have it approved, for all the reasons that Ms. Dema has

3   set forth on the record and is as contained in their

4   30-page-or-so brief.

5           So Mr. -- Carneys Point -- and if I refer,

6   Mr. Telsey, it's not -- on behalf of his client,

7   Carneys Point, Mr. Telsey did file a motion to

8   intervene, and he has to get through that hoop because

9   we have litigation.  It's just not anybody that can

10  just move to intervene in litigation, there has to be

11  an appropriate showing under our case law and under our

12  court rules.

13          So intervention, under Rule 4:33-3, the state

14  contends that it is procedurally deficient because Rule

15  4:33-3 provides that a person desiring to intervene

16  shall file and serve on all parties a motion to

17  intervene stating the grounds therefore, and

18  accompanied by a pleading setting forth a claim or

19  defense for which intervention is sought, along with a

20  case information statement, pursuant to Rule 4:5-

21  1(b)(1), the appropriate filing fee for the proposed

22  pleading shall be paid at the time of filing the motion

23  to intervene, but shall be returned if that motion is

24  denied.

25          And the essential argument by the state is

Findings of the Court                           39

1    that it's deficient because Carneys Point did not file

2    their application with an appropriate pleading setting

3    forth the claim or defense for which intervention is

4    sought.  Counsel disagrees with that, Carneys Point

5    disagrees with that.

6          The rules are the rules, they require certain

7    things.  This is a requirement of a pleading.  I

8    suppose you could read it one way for the pleading, and

9    it is his application and what it is is, his other

10   requirement is I've also filed another couple lawsuits

11   that involve this, so I don't know whether or not

12   that's the state's best argument that a pleading was

13   not filed.

14         So Rule 4:33-1 specifically addresses

15   intervention as a right.  The rule provides that upon

16   application anyone shall be entitled to intervene.  I

17   skipped ahead.  Give me one second here.  I should have

18   it memorized at this point but I don't.

19         Upon timely application anyone shall be

20   permitted to intervene in an action if the applicant

21   claims an interest relating to the property or

22   transaction which is the subject of the action and is

23   so situated that the disposition of the action as a

24   practical matter will impair or impede the ability to

25   protect that interest unless the applicant's interest

Findings of the Court                    40

1    is adequately represented by existing parties.

2            And then under Rule 4:33-2 we have the rule

3    regarding permissive intervention, which indicates that

4    "Upon that upon timely application anyone may be

5    permitted to intervene in an action through claim or

6    defense and the main action of a question of law or

7    fact in common, when a party to an action relies on the

8    ground of a claim or a defense upon any statute or

9    executive order administered by a state or federal

10   governmental agency or officer or upon any regulation,

11   order, requirement, or agreement issued or made

12   pursuant to the statute or executive order, the agency

13   or officer upon timely application may be permitted to

14   intervene in the action.  In exercising its discretion,

15   the Court shall consider whether the intervention will

16   unduly delay and prejudice the adjudication of the

17   rights of the original parties."

18           Well, I think it's pretty clear that any

19   delay --

20           These environmental claims do not happen

21   overnight.  Anyone that is involved in the process will

22   tell you that they are extremely lengthy, they are fact

23   sensitive, they are discovery laden.  There are

24   probably offices filled with -- offices -- probably a

25   warehouse that can be filled with the documents from

Findings of the Court                    41

1    Solvay, and I'm getting smiles from some of the

2    attorneys because they know that to be true.  You're

3    talking about several, probably ten associates pouring

4    through documents and doing summaries of the documents

5    every time a file is opened, so these are not easy

6    cases.

7          And in the grand scheme of litigation, the

8    time frame during which this matter's been pending is

9    probably pretty tight for purposes of resolution.  I

10   mean, they can drag it on for many, many years, because

11   of -- because of -- it's adversarial and it does

12   happen.  But the parties were able to.

13          So they're -- the parties that -- who are

14   going to benefit from this settlement, any delay in the

15   cleanup, any delay is going to adversely impact the

16   citizens of the State of New Jersey.  Because the

17   Department of Environmental Protection is charged with

18   protecting all of the citizens.  It's charged with

19   protecting the water underneath the ground.

20   Unfortunately, I happen to know too much about the fact

21   that that natural resources in groundwater, the state

22   is charged with protecting that for the benefit of all

23   its citizens.  You don't own it as an individual what's

24   underneath the ground, the water, it's protected by the

25   state.  This is the administrative agency that is

Findings of the Court                    42

1    specifically charged with protecting the citizens of

2    the State of New Jersey.

3            I can't say by looking at any of this that

4    the state is purposely excluding Carneys Point for some

5    reason from the protection of whatever environmental

6    damage has occurred.  And I understand Carneys Point's

7    position, which is, they're there, they're on the

8    riverfront, and there are two companies that they claim

9    are primarily responsible for some -- for environmental

10   hazards that exist both surfactant, as described or

11   even under the ground.

12           So organic air slides type of pollutants in

13   the State of New Jersey.

14           We had a -- we have -- we had a reputation in

15   New Jersey, anybody who's not from here drives down the

16   Turnpike and the smells and, you know, we're the brunt

17   of everybody's joke, and it's not for trying -- the

18   Department of Environmental Protection, they're trying

19   to do the best that they can under circumstances to get

20   everything cleaned up and bring things in to speed.

21           So they file this application, a motion to

22   intervene, because they're seeking to stay in position

23   of the Judicial Consent Order.  There is other

24   litigation that Carneys Point has filed.  There's a 30-

25   page five-count complaint against Solvay and its

Findings of the Court                    43

1    successor, so the prior owner, because of violations of

2    ISRA, the Industrial Site Recovery Act.  There is other

3    litigation as well that Carneys Point is involved in.

4         The proposed Judicial Consent Order is very

5    detailed, it's very clear.  I think she succinctly

6    stated on the record the reasons behind why it should

7    be approved.

8         The -- for purposes of the motion, the state

9    argues that the controlling date for purposes of

10   determining whether a motion to intervene is timely

11   dated, on the bid would be timely -- it's dated on the

12   interests, on which interests of the party and

13   interveners truly diverged.  That is under Meehan vs.

14   K.D. Partners, LP.  So there are a variety of factors

15   that the Court has to include, to consider, including

16   how long the applicant had notice of the interest

17   before bringing its motion to intervene, the prejudice

18   to the existing parties, prejudice to the applicant if

19   the motion is denied, and the stage of the proceedings,

20   and that's Hanover Township vs. the Town of Morristown.

21        The question of timeliness cannot be

22   considered in a vacuum.  Whether an application to

23   intervene is timely does not depend solely upon the

24   amount of time that may have elapsed, as the

25   institution of the action by a moving party, although

Findings of the Court                    44

1    that is a relevant consideration.

2            Other factors which must be considered in

3    connection with timeliness are whether the granting of

4    the motion would entail appreciable prejudice to the

5    other parties with the Court, and in what stage of the

6    total proceedings a motion to intervene is made.

7            Carneys Point argues that the motion was

8    filed timely because it was filed within ten days of

9    discovering that the state filed its motion to approve

10   the Solvay settlement.  The JCO in the Solvay matter

11   had not yet been entered and Carneys Point has

12   exhausted its available administrative remedies.  The

13   state filed a motion -- and I have one second motion

14   before the objectors could react and intervene.

15           Under controlling case law, the controlling

16   date, the Court finds is June 28, 2023.  That's when

17   the plaintiffs announced their settlement with Solvay.

18   It was subject to a public comment.  There's a press

19   conference that was scheduled.  It was materially the

20   same as the same JCO before the Court, what had been

21   proposed initially, and the controlling date, even as

22   the state argues could very well be considered even

23   earlier than that.

24           There was other litigation that had been

25   filed as well.  It is procedurally flawed, but I'm not

Findings of the Court                    45

1    putting that much emphasis on the requirement for a

2    pleading setting forth your claim or defense for which

3    intervention is sought, but an argument, and it's a

4    good argument that the pleading, itself, is flawed.

5    The purpose of the pleading requirement is to

6    demonstrate that it has standing in its own right to

7    assert a claim or defense that presents a common

8    question of law or fact.  That's ExxonMobil, that case.

9         And Rule 4:28-1a, of course intervener must

10   demonstrate that its status is comparable to that of a

11   party that must be demanded to join in the action by

12   the Court.

13        Carneys Point argues that it has status as a

14   -- has standing because of its status as a taxpayer and

15   third-party beneficiary, it has an ability to assert,

16   as Mr. Telsey has argued, ERA Declaratory Judgment Act

17   claims.  Carneys Point, however, is not a taxpayer,

18   it's a municipal corporation.  Municipal corporations

19   are an exception to the rule describing taxpayers.  So

20   under that portion of it, they do not have standing.

21   And they also do not meet the requirements which have

22   been provided by our court in Sutter vs. Horizon Blue

23   Cross Blue Shield.

24        Four elements:  An interest in the property

25   or transaction that is the subject matter for

Findings of the Court                    46

1    litigation; an inability to protect that interest

2    without intervention; lack of adequate representation

3    of that interest; and timeliness of the application.

4           A motion for relief to intervene, the Court

5    notes, should be viewed with morality.  Intervention as

6    a right, however, is not discretionary, it would have

7    to approved.  So the interests of Carneys Point as all

8    taxpayers are adequately being protected in this

9    settlement because the settlement affects the entire

10   State of New Jersey with the claims that involve

11   Solvay.  They also have their other claims that they

12   have filed directly, and they certainly can proceed and

13   that will wind its way through the system.

14          This is litigation that has been ongoing for

15   well in excess of three years.  This is a settlement

16   that was hard fought and was adequately negotiated

17   between the parties, and the timeliness is just not

18   there.  We are on the eve of resolving some rather

19   messy litigation, and not that the Court is afraid of

20   messy litigation.  I contend with this every day, as

21   the attorneys do, but this is, this is litigation that

22   brings to some level of resolution very significant

23   claims and very significant monies which is going to do

24   nothing but help the citizens of the State of New

25   Jersey clean up that which has occurred as a result of

Findings of the Court                          47

1    Solvay's activities here.

2              And, you know, when you roll the dice with

3    litigation, you never know what's going to happen.

4    That's why we have settlements, and that's why we have

5    resolutions that are hard fought.  And this goes beyond

6    just a settlement between two parties, this is

7    something that was put out before the public.  The

8    public has an opportunity to comment on that.

9              The state, through the Attorney General's

10   Office and the Department of Environmental Protection

11   paid attention to all the comments that were submitted.

12   There were some minor changes that were made as a

13   result of those comments, but overall, not only has

14   nobody filed an objection to it, aside from Carneys

15   Point, but there are townships right now that want this

16   to happen.  They want a closure to this and they want

17   things to start to get cleaned up so that the money can

18   be utilized and to move through that process.

19             So I'm going to deny the motion to intervene.

20   I see no reason to stay the Judicial Consent Order and

21   the process moving forward with that.  I think the

22   State of New Jersey is entitled to move forward.  This

23   is done at the very last minute, and by that I mean

24   right at the time that the Court is about to approve

25   this settlement.

Findings of the Court                    48

1          So I'm going to deny the motion to intervene.

2    I see no reason to stay the proceeding any further.

3    But the state -- I'm not going to belabor the record at

4    this juncture, but the state and Solvay have made very

5    compelling arguments why the motion to intervene should

6    not be granted, why a stay on the Judicial Consent

7    Order should not occur, and why the Court should

8    approve the settlement and the consent order which was

9    entered into between the -- between the State of New

10   Jersey and the New Jersey Department of Environmental

11   Protection and the named defendant.

12          So the settlement, the State has successfully

13   argued and set before the Court that the settlement is

14   fair, it is reasonable, it is in the interest of

15   justice; it is certainly in the interest of the

16   taxpayers and the citizens in the State of New Jersey;

17   it is in the interest of their health, their safety and

18   their welfare; it adequately addresses all of the

19   necessary requirements.

20          And I understand and appreciate Mr. Telsey's

21   arguments with what he feels to be the illegality of

22   some of the provisions.  I don't find them to be

23   illegal.  I think that Stephen did a fine job of

24   arguing why, between -- and Mr. Telsey does rely on

25   some administrative regulations, but when there's a

Findings of the Court                                    49

1     conflict between that, they do have rule-making

2     authority at the DEP as any administrative agency does,

3     but their rule-making authority can't violate a

4     statute, which is the will of the people through our

5     elected officials.  So it's compliant with the statute.

6     I don't find that it's not compliant with the statute.

7               So I am going to approve the settlement

8     order.  I'm not going to read it on the record, it is

9     very, very detailed.  Let me just pull it up here.

10              The consent order, itself, the actual written

11    consent order is 49 pages.  I don't think anybody on

12    the screen wants me to read that out loud, and it

13    contains all the necessary verbiage that properly and

14    adequately protects all of the parties.  So I am going

15    to enter that order, and I'm going to order the -- and

16    sign off on the consent order as presented.  Hopefully,

17    that will be done today before the close of business.

18              Okay.  Anything further from anybody?  No?

19              MS. DEMA:  Thank you, Your Honor.

20              THE COURT:  Thank you.  Okay.  Good luck

21    everybody.  Have a great weekend.

22              MR. TELSEY:  Thank you for your time, Your

23    Honor.

24              THE COURT:  Thank you.

25                    (Matter concluded)

50

1                          CERTIFICATION

2      I, TERESA IANNACO, the assigned transcriber, do hereby

3      certify the foregoing transcript of proceedings dated

4      3/1/24, index number from 1:31:58 to 2:36:26 is

5      prepared to the best of my ability and in full

6      compliance with the current Transcript Format for

7      Judicial Proceedings and is a true and accurate

8      compressed transcript of the proceedings as recorded.

9

10         /s/ Teresa Iannaco

11              Teresa Iannaco

12      /s/ Patricia A. Hallman                    AD/T 312

13          Patricia A. Hallman                    AOC Number

14

15      Pat's Transcription Service                 3/11/24

16              Agency Name                           Date