**MURPHY ORLANDO LLC**
Jason F. Orlando, Esq. (#016482000)
Arthur R. Sypek, Jr., Esq. (#08341974)
Mallory B. Olwig, Esq. (#467232024)
494 Broad Street, 5th Floor
Newark, New Jersey 07102
(201) 451-5000
jorlando@murphyorlando.com
asypek@murphyorlando.com
*Attorneys for Intervenor, County of Mercer*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, et al.,<br><br>*Plaintiffs*<br><br>v.<br><br>E.I. DU PONT DE NEMOURS AND COMPANY, et al.,<br><br>*Defendants*. | Civil Action Nos.:<br><br>1:19-cv-14758-RMB-JBC (Pompton Lakes)<br>1:19-cv-14765-RMB-JBC (Repauno)<br>1:19-cv-14766-RMB-JBC (Chambers Works)<br>1:19-cv-14767-RMB-JBC (Parlin/Sayreville<br><br>**CERTIFICATION OF MALLORY B. OLWIG, ESQ.** |

Mallory B. Olwig, Esq., of full age, on his oath, hereby certifies and says:

1. I am an associate at the law firm Murphy Orlando LLC, attorneys for the proposed intervening third-party plaintiff the County of Mercer ("Mercer County") in the above-captioned matters. As such, I have personal knowledge of the matters herein. I make this Certification to provide the Court with the exhibits cited in Mercer County's moving Brief.

2. This certification is submitted in support of Mercer County's Motion to Intervene pursuant to Federal Rule of Civil Procedure 24(a) and (b).

3. Attached as **Exhibit A** is a true and accurate copy of Mercer County's Comments on the Proposed Judicial Consent Order Approving Settlement with the 3M Company, dated

September 19, 2025.

4. Attached as **Exhibit B** is a true and accurate copy of Mercer County's Comments on the Proposed Judicial Consent Order Approving Settlement with DuPont, dated October 31, 2025.

5. Attached as **Exhibit C** is a true and accurate copy of the New Jersey Association of Counties' Comments on the Proposed Judicial Consent Order Approving Settlement with the 3M Company, dated September 19, 2025.

I hereby certify that the foregoing statements made by me are true. I am aware that if the foregoing statements are willfully false, I am subject to punishment.

                             **MURPHY ORLANDO LLC**
494 Broad Street, 5th Floor
Newark, New Jersey 07102
(201) 451-5000
*Attorneys for Intervenor*

*/s/ Mallory B. Olwig*
Mallory B. Olwig, Esq.

Dated: December 12, 2025

# EXHIBIT A



September 19, 2025

**VIA U.S. MAIL and EMAIL**
**Attn: 3M Settlement**
New Jersey Department of Environmental Protection
Legal, Regulatory, and Enforcement Policy
401 East State Street, 7th Floor
PO Box 402
Trenton, NJ 08625-0402
3Msettlement@dep.nj.gov

      **Re:**    **Comment on Proposed Judicial Consent Order Approving Settlement with the 3M Company in the Matter of NJDEP, et al., v. E.I. Du Pond De Nemours and Company, et al., Case No.: 1:19-CV-14766-RMB-JBC (D.N.J.)**

    We represent the following municipal entities in the State of New Jersey for damages resulting from widespread PFAS usage and contamination:

- Bergen County, NJ
- Bound Brook, NJ
- Elizabeth, New Jersey
- East Windsor Municipal Utilities Authority
- Evesham Township, Burlington County, New Jersey
- Ewing Township, New Jersey
- Fanwood, NJ
- Jersey City MUA
- Jersey City, NJ
- Lake Stockholm System Inc., NJ
- Linden, New Jersey
- Linden-Roselle Sewerage Authority
- Mercer County, NJ
- Monroe Municipal Utilities Authority
- Montclair, NJ
- Newark, New Jersey
- Roselle Park, NJ
- Somerville, NJ
- Trenton, NJ
- Wildwood City Water Department

Each of these municipal entities hired our firm to seek justice for their communities. They retained counsel and many have already filed suit for their damages. The current agreement purports to release the claims of all of our clients current and future PFAS claims against 3M without direct compensation. It is our understanding these would be known and unknown claims, without reservation.

The Proposed Settlement notes:

> *"While New Jersey ranks as the eleventh largest state in terms of population, with about 3 percent of the total United States population, it represents a disproportionately large fraction of the Nation's PFAS contamination and Discharges of PFAS."* [1]

It further goes on to cite the evidence that New Jersey's PFAS problem is outsized:

- *New Jersey's disproportionately large share of National Pollutant Discharge Elimination System (NPDES) permits, which limit Discharges of PFAS and other substances in order to safeguard water quality and public health and safety, in compliance with the federal Clean Water Act;*

- *New Jersey's disproportionately large share of landfills and other Solid Waste Facilities that may have PFAS Contamination;*

- *New Jersey's disproportionately large share of Superfund sites under CERCLA;*

- *New Jersey's disproportionately large share of Superfund sites under CERCLA that have been monitored and found to have PFAS Contamination; and*

- *New Jersey's disproportionately large number of industrial facilities in industry sectors that the U.S. Environmental Protection Agency has identified as especially likely to handle PFAS, including glass-products manufacturing, fire training facilities, cleaning-products manufacturing, paints and coatings manufacturing, chemical manufacturing, electronics manufacturing, plastics and resin manufacturing, textiles and leather mills, printing, national-defense manufacturing, paper mills and products, and metal-machinery manufacturing.*

Each of these items supports a conclusion that the State of New Jersey and its municipal entities have PFAS problems that exceed those of many others. However, many of those claims have not been identified to date, making the severity of the environmental damage largely unknown by the State and the municipal subdivisions.

After receiving the Notice of Proposed Settlement, we engaged with our clients, and this comment is on behalf of each of the previously mentioned entities. We have been in touch with Deputy Attorney General Gwen Farley and various outside counsel representing the State of New Jersey. This process has been appreciated, but many areas of concern remain.

---

[1] Paragraph 28.

ONE CANAL PLACE I 365 CANAL STREET I SUITE 2850 I NEW ORLEANS I LOUISIANA 70130
PHONE 504 593 9600 I FAX 504 593 9601 I WWW.STAGLIUZZA.COM I MAIL@STAGLIUZZA.COM

Major areas of concern that remain unanswered at this time:

### Authority of the New Jersey Attorney General to Release Municipal Entity Claims

1. Under what authority does the AG have to settle and release all claims for PFAS related damages of municipal entities?

   - A request for legal support for this was requested by our firm but has not been received to date.

2. Does the home rule system impact the AG's ability to release all claims of municipal entities by this settlement?

3. How does the settlement comply with Due Process in binding municipalities to a settlement they did not negotiate, without opt-in or representation?

4. How does the settlement fully release all municipal damage claims when the Spill Act authorizes the State to pursue *its own* costs and NRD as trustee, but it does not grant authority to extinguish the *independent* statutory or common-law claims of municipalities without assignment or consent?

5. Under what authority does the AG have to settle economic damage claims of municipal entities related to PFAS without consent or direct compensation?

6. Does the Settlement resolve claims that were not subject to the State's lawsuit, and if so, under what authority does the State assert the ability to settle the claims that were not litigated?

### Indemnification

7. Does the settlement provide for indemnification in the event that a municipal entity is sued by a private party for damages from PFAS?

8. Does the State intend to indemnify municipal entities for claims by private parties for PFAS damages?

9. Does the State intend to indemnify municipal entities for PFAS remediation obligations after any funds made available to municipal entities for that purpose are exhausted?

### Settlement Amount and Calculation

10. How did the Attorney General's office derive the amounts agreed to be paid by 3M in this settlement? Was there a Statewide damage assessment?

11. Is the amount sufficient to address the disproportionately large impact PFAS has had on the State of New Jersey, its municipal entities, and all other released entities including future and unknown economic and environmental damages?

12. Has an assessment of the full response cost of PFAS abatement across all municipal entity properties throughout the State been performed?

13. Has PFAS testing of all municipal entity properties occurred to determine the full extent of the PFAS problem in New Jersey?

14. Is the settlement amount for PFAS Contamination Abatement Funding relating to AFFF sufficient to address the needs of every municipal entity in the state?

15. Where known PFAS issues exist in a municipality (other than the Chambers Works area), did the AG include a calculation for those properties in agreeing to a settlement number?

## **Payment of Abatement Funding to Municipal Entities**

16. How will settlement funds be made available to municipal entities with PFAS problems from AFFF or other sources?

    - Several suggestions were given but specifics not committed to: (1) the funds will be put in a fund which can be accessed after a municipal entity has already incurred expenses relating to PFAS; (2) funds could be made available in the form of interest free or low interest loans from the State; or (3) funds could be made available in the form of grants.

    - Requiring municipal entities to first expend funds for PFAS abatement prior to giving access to said funds is impractical. We are unaware of any of the 564 NJ Municipalities or 21 Counties that have sufficient monies in any of their annual Budgets to pay for the possibly huge amounts needed to pay for PFAS remediation.

    - The cost for remediation will cause many Municipalities and Counties to raise taxes to pay for any PFAS remediation and then make an application to the State fund and hopefully be reimbursed any remediation costs. It is clearly unknown if sufficient funds will be available from the proposed fund to reimburse the individual governmental entities for any PFAS remediation costs. As such, any increase in their tax rates could become permanent and be an increased burden on the individual taxpayers. From past anecdotal experience, the likelihood of a Municipality or County to lower taxes once they are raised it is extremely remote and unlikely.

    - An alternate funding source for any governmental units, be it Municipal or County, would be to issue Bonds to raise sufficient fund to pay for any PFAS remediation. This would also cost the individual taxpayers more money in their tax

bills since the interest on any publicly issued Revenue Bonds would have to be raised by local taxes.

- New Jersey already has the highest real estate taxes in the country. Having to force local governments to pay for any PFAS remediation and wait unknown years for possibly only partial reimbursement will only exacerbate the current Municipal and County tax rates on an already overburdened taxpayer.

17. What portion of the PFAS Contamination Abatement Funding portion of the settlement will be reserved for municipal entities within New Jersey, rather than the state itself?

18. How will any funds reserved for municipal entities be made accessible to those entities?

### **Allocation of Settlement Funds**

19. How will settlement funds be allocated to municipal entities?

Our clients are concerned about the health and safety of their communities, potential liability for PFAS abatement without a direct source of funding, potential liability for third-party suits related to PFAS from municipal properties, and the overall fiscal consequences of not being able to pursue their damages directly from responsible parties such as 3M. Without answers to the questions posed above and solutions that work for municipal entities, the Proposed Settlement is troubling. We hope that with continued communication, the New Jersey AG's office will be able to answer these questions and provide a solution that works for all parties.

Sincerely,

STAG LIUZZA, LLC

Michael G. Stag, Esq.
Ashley M. Liuzza, Esq.
Stag Liuzza, LLC
365 Canal Street, Suite 2850
New Orleans, Louisiana 70130
Telephone: (504) 593-9600
Email: mstag@stagliuzza.com
aliuzza@stagliuzza.com

# EXHIBIT B



October 31, 2025

**VIA U.S. MAIL and EMAIL**
**Attn: DuPont Settlement**
New Jersey Department of Environmental Protection  dupontsettlement@dep.nj.gov
Legal, Regulatory, and Enforcement Policy
401 East State Street, 7th Floor
PO Box 402
Trenton, NJ 08625-0402

    **Re:**    **Comment on Proposed Judicial Consent Order Approving Settlement with EIDP, Inc. (f/k/a E.I. du Pont de Nemours and Company), Corteva, Inc., DuPont de Nemours Inc., DuPont Specialty Products USA, LLC, the Chemours Company, and The Chemours Company FC, LLC in the Matter of NJDEP, et al., v. E.I. Du Pond De Nemours and Company, et al., Case No.: 1:19-CV-14766-RMB-JBC (D.N.J.)**

    We represent the following municipal entities, airports, and/or public water suppliers in the State of New Jersey for damages resulting from widespread PFAS usage and contamination:

- Bergen County, NJ
- Bound Brook, NJ
- East Windsor Municipal Utilities Authority
- Elizabeth, New Jersey
- Evesham Township, Burlington County, New Jersey
- Ewing Township, New Jersey
- Fanwood, NJ
- Jersey City MUA
- Jersey City, NJ
- Lake Stockholm System Inc., NJ
- Linden, New Jersey
- Linden-Roselle Sewerage Authority
- Mercer County, NJ
- Monroe Municipal Utilities Authority
- Montclair, NJ
- Newark, New Jersey
- Roselle Park, NJ
- Somerville, NJ

- Trenton, NJ
- Wildwood City Water Department

Each of these municipal entities hired our firm to seek justice for their communities. They retained counsel and many have already filed suit for their damages. The current agreement purports to release the claims of all of our clients current and future PFAS claims against 3M without direct compensation. It is our understanding these would be known and unknown claims, without reservation. This letter will serve as a brief comment and objection to the proposed Judicial Consent Order between DuPont and the State of New Jersey Department of Environmental Protection.

The Proposed 3M Settlement noted:

> *"While New Jersey ranks as the eleventh largest state in terms of population, with about 3 percent of the total United States population, it represents a disproportionately large fraction of the Nation's PFAS contamination and Discharges of PFAS."* [1]

It further goes on to cite the evidence that New Jersey's PFAS problem is outsized:

- *New Jersey's disproportionately large share of National Pollutant Discharge Elimination System (NPDES) permits, which limit Discharges of PFAS and other substances in order to safeguard water quality and public health and safety, in compliance with the federal Clean Water Act;*

- *New Jersey's disproportionately large share of landfills and other Solid Waste Facilities that may have PFAS Contamination;*

- *New Jersey's disproportionately large share of Superfund sites under CERCLA;*

- *New Jersey's disproportionately large share of Superfund sites under CERCLA that have been monitored and found to have PFAS Contamination; and*

- *New Jersey's disproportionately large number of industrial facilities in industry sectors that the U.S. Environmental Protection Agency has identified as especially likely to handle PFAS, including glass-products manufacturing, fire training facilities, cleaning-products manufacturing, paints and coatings manufacturing, chemical manufacturing, electronics manufacturing, plastics and resin manufacturing, textiles and leather mills, printing, national-defense manufacturing, paper mills and products, and metal-machinery manufacturing.*

Each of these items supports a conclusion that the State of New Jersey and its municipal entities have PFAS problems that exceed those of many others. However, many of those claims have not been identified to date, making the severity of the environmental damage largely unknown by the State and the municipal subdivisions.

---

[1] Paragraph 28 of the 3M proposed JCO.

ONE CANAL PLACE | 365 CANAL STREET | SUITE 2850 | NEW ORLEANS | LOUISIANA 70130
PHONE 504 593 9600 | FAX 504 593 9601 | WWW.STAGLIUZZA.COM | MAIL@STAGLIUZZA.COM

After receiving the Notice of Proposed Settlement, we engaged with our clients, and this comment is on behalf of each of the previously mentioned entities. We have been in touch with Deputy Attorney General Gwen Farley and various outside counsel representing the State of New Jersey. This process has been appreciated, but many areas of concern remain. Because of this, we must respectfully, but strenuously object to this settlement.

In sum, we believe that both the 3M and DuPont settlements have significant problems which violate fundamental principles of due process and fairness, which are the bedrock of any binding settlement, especially one that purports to be so broad.

Major areas of concern that have not yet been answered by the Attorney General's Office and highlight the critical flaws in the settlement are below:

### Authority of the New Jersey Attorney General to Release Municipal Entity Claims

1. Under what authority does the AG have to settle and release all claims for PFAS related damages of municipal entities?

    - A request for legal support for this was requested by our firm but has not been received to date.

2. How does the home rule system impact the AG's ability to release all claims of municipal entities by this settlement?

3. Does *parens patriae* give the AG ability to release all claims of municipal entities by this settlement, including unknown and unripe claims?

4. How does the settlement comply with Due Process in binding municipalities to a settlement they did not negotiate, without opt-in or representation?

5. How does the settlement fully release all municipal damage claims when the Spill Act authorizes the State to pursue *its own* costs and NRD as trustee, but it does not grant authority to extinguish the *independent* statutory or common-law claims of municipalities without assignment or consent?

6. Under what authority does the AG have to settle economic damage claims of municipal entities related to PFAS without consent or direct compensation?

7. Does the Settlement resolve claims that were not subject to the State's lawsuit, and if so, under what authority does the State assert the ability to settle the claims that were not litigated?

### Indemnification

8. Does the settlement provide for indemnification in the event that a municipal entity is sued by a private party for damages from PFAS?

9. Does the State intend to indemnify municipal entities for claims by private parties for PFAS damages?

10. Does the State intend to indemnify municipal entities for PFAS remediation obligations after any funds made available to municipal entities for that purpose are exhausted?

## Settlement Amount and Calculation

11. How did the Attorney General's office derive the amounts agreed to be paid by 3M in this settlement? Was there a Statewide damage assessment?

12. Is the amount sufficient to address the disproportionately large impact PFAS has had on the State of New Jersey, its municipal entities, and all other released entities including future and unknown economic and environmental damages?

13. Has an assessment of the full response cost of PFAS abatement across all municipal entity properties throughout the State been performed?

14. Has PFAS testing of all municipal entity properties occurred to determine the full extent of the PFAS problem in New Jersey?

15. Is the settlement amount for PFAS Contamination Abatement Funding relating to AFFF sufficient to address the needs of every municipal entity in the state?

16. Where known PFAS issues exist in a municipality (other than the Chambers Works area), did the AG include a calculation for those properties in agreeing to a settlement number?

17. How were future and unripe PFAS claims of municipal entities calculated?

## Payment of Abatement Funding to Municipal Entities

18. How will settlement funds be made available to municipal entities with PFAS problems from AFFF or other sources?

   - Several suggestions were given but specifics not committed to: (1) the funds will be put in a fund which can be accessed after a municipal entity has already incurred expenses relating to PFAS; (2) funds could be made available in the form of interest free or low interest loans from the State; or (3) funds could be made available in the form of grants.

   - Requiring municipal entities to first expend funds for PFAS abatement prior to giving access to said funds is impractical. We are unaware of any of the 564 NJ Municipalities or 21 Counties that have sufficient monies in any of their annual Budgets to pay for the possibly huge amounts needed to pay for PFAS remediation.

   - The cost for remediation will cause many Municipalities and Counties to raise taxes to pay for any PFAS remediation and then make an application to the State fund and hopefully be reimbursed any remediation costs.  It is clearly unknown if sufficient

funds will be available from the proposed fund to reimburse the individual governmental entities for any PFAS remediation costs. As such, any increase in their tax rates could become permanent and be an increased burden on the individual taxpayers. From past anecdotal experience, the likelihood of a Municipality or County to lower taxes once they are raised it is extremely remote and unlikely.

- An alternate funding source for any governmental units, be it Municipal or County, would be to issue Bonds to raise sufficient fund to pay for any PFAS remediation. This would also cost the individual taxpayers more money in their tax bills since the interest on any publicly issued Revenue Bonds would have to be raised by local taxes.

- New Jersey already has the highest real estate taxes in the country. Having to force local governments to pay for any PFAS remediation and wait unknown years for possibly only partial reimbursement will only exacerbate the current Municipal and County tax rates on an already overburdened taxpayer.

19. What portion of the PFAS Contamination Abatement Funding portion of the settlement will be reserved for municipal entities within New Jersey, rather than the state itself?

20. How will any funds reserved for municipal entities be made accessible to those entities?

21. How are the future and unripe PFAS claims of municipal entities protected in the Proposed Settlement?

## Allocation of Settlement Funds

22. How will settlement funds be allocated to municipal entities?

## Concerns and Proposed Changes

Our clients are concerned about the health and safety of their communities, potential liability for PFAS abatement without a direct source of funding, potential liability for third-party suits related to PFAS from municipal properties, and the overall fiscal consequences of not being able to pursue their damages directly from responsible parties such as DuPont. Ultimately, a significant concern is that there are unknown damages, unripe claims, and future damages of our clients that will be released without any payment or reservation of rights. The future is unknown for these municipalities. This Proposed Settlement does not and cannot take this fully into consideration. As such, we recommend that the following amendments be implemented:

- Allow municipal entities to opt out of the definition of "Releasors" and carve out their municipal claims from the definition of "Released Claims."

- Remove the future unknown, unripe, and future damages of municipal entities from the definition of "Released Claims" and allow municipal entities to pursue those claims on their own as they arise.

- o Carve out a portion of funds from the Proposed Settlement for municipal entities with Released Claims for specific allocations for those municipal entities to be paid at the time of settlement payments to the State.

- o Require indemnification from Released Parties in favor of municipal entities for claims by regulatory agencies or third-parties.

Without answers to the questions posed above and solutions that work for municipal entities, the Proposed Settlement is troubling. The proposed changes above mitigate some of the issues. We hope that with continued communication, the New Jersey AG's office will be able to answer these questions and provide a solution that works for all parties.

Sincerely,

**STAG LIUZZA, LLC**

Michael G. Stag, Esq.
Ashley M. Liuzza, Esq.
Stag Liuzza, LLC
365 Canal Street, Suite 2850
New Orleans, Louisiana 70130
Telephone: (504) 593-9600
Email: mstag@stagliuzza.com
aliuzza@stagliuzza.com

# EXHIBIT C

# NEW JERSEY ASSOCIATION OF COUNTIES
*County Government with a Unified Voice!*

SHANEL Y. ROBINSON
NJAC President
Somerset County Commissioner

JOHN G. DONNADIO, ESQ.
Executive Director

By email: 3Msettlement@dep.nj.gov

September 19, 2025

New Jersey Department of Environmental Protection (NJDEP)
Legal, Regulatory, and Enforcement Policy
401 East State Street, 7th Floor
PO Box 402
Trenton, NJ 08625-0402

RE: 3M SETTLEMENT

Dear NJDEP Legal, Regulatory, and Enforcement Policy:

Please be advised that the New Jersey Association of Counties (NJAC) opposes the proposed settlement agreement between NJDEP and the 3M Company (3M) concerning the contamination of the State's natural resources by per- or poly-fluoroalkyl substances (PFAS).

NJAC objects to the proposed settlement agreement because it would release 3M from liability stemming from the company's sale, marketing, distribution, use, or manufacture of PFAS in the Garden State. Additionally, NJAC is concerned that NJDEP would receive the vast majority of the proposed $450 million settlement with only of a fraction of the monies allocated for the remediation of contaminated PFAS sites at county and municipal facilities across the State. Particularly alarming is the fact that the proposed agreement would prohibit county operated airports, fire academies, landfills, sewage authorities, utility authorities, and other publicly operated assets from seeking relief in future litigation that could hold 3M accountable for its contamination of the State's drinking water and other natural resources.

With this in mind, NJAC urges NJDEP to reject the proposed settlement agreement and provide local government stakeholders with the opportunity to partake in settlement negotiations with 3M moving forward. Moreover, NJDEP should conduct a comprehensive and independent fiscal analysis to determine whether the proposed $450 million settlement is an inadequate representation of the true harm caused by PFAS and the ultimate cost of remediation. For these reasons, NJAC again opposes the proposed settlement agreement and urges NJDEP to consider the long-term ramifications of prematurely settling its lawsuit against 3M. Thank you for your time and consideration, and please do not hesitate to contact us at (609) 394-3467 with any questions or concerns.

Very truly yours,

John G. Donnadio, Esq.
Executive Director

150 West State Street  ·  Trenton, New Jersey 08608  ·  Phone 609-394-3467  ·  Fax 609-989-8567  ·  www.njac.org