**MEYNER AND LANDIS LLP**
Albert Telsey, Esq.
One Gateway Center, Suite 2500
Newark, New Jersey 07102
Telephone: (973) 602-3439
Facsimile: (973) 624-0356
atelsey@meyner.com
*Attorneys for Intervenor, Carneys Point Township
and Borough of Sayreville*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; et al., *Plaintiffs*, <br><br> v. <br><br> E.I. DU PONT DE NEMOURS AND COMPANY; et al. *Defendants*, | Case No.: <br> 1:19-cv-14758-RMB-JBC (Pompton Lakes) <br> 1:19-cv-14765-RMB-JBC (Repauno) <br> 1:19-cv-14766-RMB-JBC (Chambers Works) <br> 1:19-cv-14767-RMB-JBC (Parlin/Sayreville) <br><br><br> Hon. Renée Marie Bumb, Chief U.S.D.J. <br> James B. Clark, III, U.S.M.J. |

## REPLY BRIEF
## CARNEYS POINT TOWNSHIP AND BOROUGH OF SAYREVILLE
## APPLICATION FOR INTERVENTION

Dated: December 15, 2025

# TABLE OF CONTENTS

TABLE OF CONTENTS...............................................................................................i

TABLE OF AUTHORITIES .................................. i**Error! Bookmark not defined.**

SUMMARY ...........................................................................................................1

LEGAL ARGUMENTS............................................................................................4

  POINT 1

  MANDAMUS IS APPROPRIATE .......................................................................4

  POINT 2

  THE SETTLING PLAINTIFFS ARE MISLEADING THE PUBLIC .................7

  POINT 3

  THE COURT CANNOT RULE ON CARNEYS POINTS' STATE COURT
  ACTIONS BECAUSE THIS COURT DOES NOT HAVE JURISDICTION.....14

CONCLUSION ....................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

Cases

*Barlow v. Colgate Palmolive Co.*,
  750 F.3d 437 (2014) ............................................................................... 15

*Browning v. Navarro*,
  743 F.3d (1984) ...................................................................................... 15

*Burgos v. State*,
  222 N.J. 175 (2015) .................................................................................. 8

*City of Camden v. Byrne*,
  82 N.J. 133 (1980) .................................................................................... 8

*Harrison v. Jefferson Parish School Board*,
  502 F. Supp. 3d 1088 (E.D. La 2020) ...................................................... 7

*Hertz v. Record Pub. Co of Erie*,
  219 F.2d 397 (1955) ................................................................................. 6

*In re Mullarkey*,
  536 F.3d 215 (3d Cir. 2008) ................................................................... 16

*New Jersey Department of Environmental Protection v. Exxon Mobil Corporation*,
  453 N.J. Super. 272 (2018) ...................................................................... 8

*State ex rel. Skaggs v Brunner*,
  588 F. Supp. 2d 828 (D. Ohio 2008) ....................................................... 6

Statutes

26 U.S.C. §162(f) ...................................................................................... 5

28 U.S.C. §1651 ........................................................................................ 6

28 U.S.C.A. §1447 ................................................................................ 5, 15

28 U.S.C.A. §2283 ................................................................................. 5, 16

28 U.S.C §1331 ....................................................................................... 5

28 U.S.C §1337 ....................................................................................... 5

N.J.S.A. 2A:35A-1 .................................................................................. 5

N.J.S.A. 52:18A-8 ............................................................................... 4, 8

N.J.S.A. 52:18-29 ............................................................................... 4, 8

N.J.S.A. 58:10-23.11e2 ........................................................................... 4

NJ Const., Art. III, Para. 1 ................................................................. 4, 5, 8

NJ Const., Art. VIII, Sec. II, Para. 9 ........................................................ 4

**Rules**

Fed. R. Civ. Pr. 81(b) ............................................................................. 6

**Regulations**

26 CFR §1.162-21 ................................................................................... 5

**Other Authorities**

P.L. 2025 ................................................................................................ 4

# SUMMARY

The DuPont and 3M Judicial Consent Orders ("JCOs") are unfair and unreasonable because in order to provide finality in exchange for Settlement Payments, the Settling Plaintiffs are compelling all Political Subdivisions and citizens of the State, against their will, to release all claims against the Settling Defendants and to provide them with contribution protection. As an inducement, the Settling Plaintiffs have promised the public that the Settlement Payments will be dedicated for water infrastructure projects and other purposes for their benefit. However, that is a false promise.

The fundamental flaw to the settlement is that the Settling Plaintiffs do not have control over the Settlement Payments. All funds collected in 2026 will go to pay the Settling Plaintiffs outside counsel pursuant to the 2026 Appropriations Act, and all funds collected for the next 24 years will go to the General Fund, except for natural resource damages ("NRD"), which will go to the Dedicated Legislative NRD Account. The Settling Plaintiffs need enabling legislation to dedicate the non-NRD funds (Abatement Project funds and Leadership payments) to the purposes set for in the JCOs and they do not have enabling legislation.

The fundamental unfairness of the settlement is that the Settling Plaintiffs misled the public by telling them the Settlement Payments will go to a trust account held by the New Jersey Department of Environmental Protection ("DEP") when,

in fact, they will go to the General Fund, which is not within DEP's control. Instead of getting enabling legislation, the Settling Plaintiffs decided to take their chances with the yearly appropriation process and hope that the political priorities of future Administrations will be kind to them and will appropriate the Settlement Payments to DEP year after year for the next 24 years.

The Settling Plaintiffs are entitled to settle these matters on the gamble that yearly appropriations may fall their way year after year for 24 years. However, it is fundamentally unfair and unreasonable to tell the public that DEP can direct all non-NRD Settlement Payments to a dedicated trust account when the necessary precondition to getting those funds is an appropriation from the legislature, which is uncertain for each and every one of the 24 years payments will be made.

The problem is that they have hidden the true nature of this settlement from the public. They told the public this settlement is a sure thing when in reality it is a billion-dollar gamble. If this settlement was a stock prospectus, it would not pass the truth test of the Securities Exchange Act. If it was a consumer product, it would not pass the truth test of the Consumer Fraud Act.

This court must compel the Settling Plaintiffs to publish a revised notice of settlement that sets forth the true uncertain nature of the settlement so that the public can comment on it with eyes wide open. Even if the Settling Plaintiffs do republish the notice of settlement, Carneys Point and Sayreville object to it if

Political Subdivisions must still have to provide a release and contribution protection against their will.  They are being forced to give up something tangible – the right to sue the Settling Defendants directly – for something intangible – the uncertainty of year-over-year appropriations.  The Settling Plaintiffs can take that gamble.  But they cannot force Political Subdivisions to do so.

This settlement can only fairly compel a release by Political Subdivisions if it is grounded in enabling legislation that dedicates the Settlement Payments for the purposes claimed in the settlement.  Otherwise, if the settlement is based on the hope of yearly appropriations, it is unfair to make Political Subdivisions forfeit their tangible right to sue the Settling Defendants for the uncertainty of future payments.  The Settling Plaintiffs can take that gamble.  But they cannot force Political Subdivisions to do so.

Carneys Point further objects to the DuPont JCO because it seeks to have this court rule that the Township's state court actions against the Settling Defendants and DEP are subject to dismissal.  This court has no jurisdiction to make such a ruling.

## LEGAL ARGUMENTS

## POINT 1

## MANDAMUS IS APPROPRIATE

Carneys Point and Sayreville seek to have this court compel the Settling Plaintiffs to comply with the following mandatory laws that apply to the Judicial Consent Orders ("JCOs"): (1) publish the Escrow Agreements, which were intended to "govern" the mechanics of the JCOs, so the public can provide comments as required by N.J.S.A. 58:10-23.11e2; (2) allocate all or some of the undefined bulk $100M 2026 Settlement Payment to the Dedicated NRD Legislative Account or the Hazardous Discharge Site Cleanup Fund ("HDSCF") so that pollution-impacted municipalities can budget for NRD restoration projects and NRD attorney's fees can be properly calculated as required by the natural resource damages ("NRD") Constitutional Amendment, NJ Const., Art. VIII, Sec. II, Para. 9, and the 2026 Appropriations Act, P.L. 2025, c.74; (3) allocate all or some of the undefined bulk $50M 2027 NRD payment between the Chambers Works and Pompton Lakes sites as required by the NRD Constitutional Amendment; (4) allocate all or some of the bulk 2028 to 2050 yearly NRD and non-NRD Settlement Payments to identify what amounts, if any, are NRD payments for each Industrial Site so they can be credited to the Dedicated NRD Legislative Account as required by the NRD Constitutional Amendment; (5) direct

all non-NRD Settlement Payments be deposited into the New Jersey State General Fund as required by state appropriation protocols, NJ Const., Art. III, Para. 1, N.J.S.A. 52:18A-8, and N.J.S.A. 52:18-29, because the Settling Plaintiffs have not obtained enabling legislation to appropriate the 25-years of Settlement Payments to a dedicated DEP trust account; (6) remove paragraph 83 in the DuPont JCO which seeks to have this court make findings of fact and conclusions of law regarding Carneys Point's state court actions in violation of 28 U.S.C.A. §1447 and 28 U.S.C.A. §2283, since this court has no jurisdiction to make such rulings; (7) remove "Political Subdivisions" of the State and "private attorneys general" from certain definitions in the JCOs because including them violates the separation of powers clause, NJ Const., Art. III, ¶1 and the Environmental Rights Act, N.J.S.A. 2A:35A-1 et seq. ("ERA"); and (8) define "Abatement Damages" subject to the Tax Deduction Rule, 26 U.S.C. §162(f) (26 CFR §1.162-21) to exclude unspecified environmental purposes because, by the definition of "Abatement Damages," they can only be used to "restore the environment, wildlife, and natural resources" harmed by the defendant's damaging conduct at and around the Chambers Works site.

The parties agree that this court has original jurisdiction 28 U.S.C §1331 and supplemental jurisdiction 28 U.S.C §1337 to resolve federal and state law claims in the JCOs (DuPont JCO ¶1, 3M JCO ¶1). Carneys Point and Sayreville bring

their Writs of Mandamus as their pleadings to intervene to the address the above state law claims, which can be done quickly by way of motion for summary judgment because they are all legal issues.

Contrary to the claims of the Settling Plaintiffs, (1) intervenors have not asserted claims under the Mandamus Act (pertaining to federal government actions) ECF 764 at 10-11, (2) intervenors are not seeking to modify previously approved JCOs but are seeking to resolve legal issues that impact the proposed JCOs, ECF 764 at 12, and (3) this application to intervene addresses the unlawful provisions of the proposed JCOs. It is unrelated to Carneys Point's application to intervene prior to trial. The Special Master who denied that intervention application did not address the legal infirmities to the proposed JCOs because they had not been proposed at that time.

The Third Circuit has stated that the Supreme Court decided a long time ago that a District Court can hear a Writ of Mandamus when it is "in aid of the court's proper jurisdiction." *Hertz v. Record Pub. Co of Erie*, 219 F.2d 397, 398-99 (1955). In addition, the All Writs Statute, 28 U.S.C. §1651, is still applicable to address a Writ of Mandamus despite abolishment of the specific Writ of Mandamus. Fed. R. Civ. Pr. 81(b). *State ex rel. Skaggs v Brunner*, 588 F. Supp. 2d 828, 833 (D. Ohio 2008).

Given that the DuPont JCO directly requires a judicial ruling on Carneys Point's state court actions, and that the intervenors have no other avenue to seek judicial relief regarding the significant legal issues raised in both proposed JCOs that directly affect the intervenors, this court must address the Writs of Mandamus. *Harrison v. Jefferson Parish School Board*, 502 F. Supp. 3d 1088, 1102 (E.D. La 2020) ["As a general rule for claims arising under federal law, a federal district court lacks jurisdiction "to issue a writ of mandamus to direct a state [ ]officer in the performance of his duties when mandamus is the only relief sought."[citation omitted]. However, this general principle does not apply to claims arising under state law, as the requested writ of mandamus does here. When a federal court sits in diversity or hears state law pendent claims, it acts as any other court of the state, and can issue writs that the state courts are empowered to grant. [citation omitted]. Moreover, the All Writs Act grants federal courts the authority to issue writs of mandamus where there is an independent basis for subject matter jurisdiction [citation omitted]."].  This case squarely describes the situation here.

## POINT 2

**THE SETTLING PLAINTIFFS ARE MISLEADING THE PUBLIC**

The DuPont JCO states that "the Settling Defendants shall *pay the Settling Plaintiffs* $875,000,000." (¶7).  In their public notice regarding the DuPont JCO, they told the public the Settlement Payments will be "*held in a dedicated trust*

*account to be administered and used by NJDEP."* 57 N.J.R. (Sept. 2, 2025). In responses to public comments they stated, "The total abatement damages received under the 3M and DuPont Settlements—up to $795 million [] will be held in a *dedicated trust account ("PFAS Abatement Fund")* administered by DEP." ECF 746-4 at 5. In other words, the Settling Plaintiffs are telling the public they have the lawful authority to control the Settlement Payments for the benefit of the public. They do not.

Pursuant to the separation of powers clause, NJ Const., Art. III, Para. 1, all state revenues, including litigation recoveries, are deposited into the General Fund, and appropriated by the legislature.[1] See, Department of Treasury Act of 1948, N.J.S.A. 52:18A-8[2] and N.J.S.A. 52:18-29, which states that all funds "shall not be disbursed therefrom unless specifically appropriated by the legislature in an annual or supplemental appropriation act" or other legislative enactment. The Settling Plaintiffs are wrongly telling the public they control the funds when they do not.

---

[1] Article VIII, Section 2, Paragraph 2, See also, *City of Camden v. Byrne*, 82 N.J. 133 (1980), *Burgos v. State*, 222 N.J. 175 (2015), *New Jersey Department of Environmental Protection v. Exxon Mobil Corporation,* 453 N.J. Super. 272 (2018)

[2] N.J.S.A. 52:18A-8. "All State revenue collected by any department, institution, commission, board, committee or official of this State shall, except as otherwise provided by law, be deposited, in the method prescribed by the director of the Division of Budget and Accounting, to the credit of the State of New Jersey in such depositories as the State Treasurer shall designate."

Carneys Point and Sayreville told the DEP in comments to the proposed JCOs that the settlement funds must go to the General Fund.  The Settling Plaintiffs responded and stated, "*The Department <u>disagrees</u> with the comment*.  The funds will be placed in an appropriate dedicated account(s) consistent with the purposes of the Settlement and in accordance with applicable law."  ECF 746-4 at 10.

In other words, the Settling Plaintiffs are telling the public they have the authority to divert the Settlement Payments away from the General Fund and to a dedicated account administered by NJDEP.  However, this is not true.  When addressing the court, the Settling Plaintiffs admitted the truth.

In response to the applications for intervention filed by Carneys Point and Sayreville, the Settling Plaintiffs summarized the State budget process and admitted that the Settlement Payments "will be transferred to the New Jersey Department of Treasury and disbursed in accordance with the purposes of the Settlements and annual legislative appropriations." See, ECF 764 at 24.  They further stated, "it is axiomatic that there are no appropriation acts beyond 2026" (ECF 764 at 25), and that "the settlement payments in 2027 and beyond will be accounted for and incorporated into the State's annual budget process." (ECF 764, at 26).

In other words, the Settling Plaintiffs admit to the court that they have no control over how this money is going to be appropriated by future Administrations

over the next 24 years despite their *parens patriae* authority.  That power stops short of actually being able to appropriate the Settlement Payments for the purposes they wish the funds could be used.  They told the truth to the court, but they did not tell the truth to the public.

To further hype their faux control over the Settlement Payments, the Settling Plaintiffs told the public that "To ensure that water systems and publicly owned treatment works ("POTWs") have *a long-term, <u>reliable funding source</u>* available for the necessary capital upgrades to address PFAS, the Department will allocate funding from the PFAS Abatement Fund to create *a brand-new capitalization source* for the [New Jersey Water Bank] NJWB to supplement New Jersey's Clean Water and Drinking Water State Revolving Funds ("CWSRF" and "DWSRF," respectively), which will be dedicated to providing low-cost financing of water quality projects to address PFAS throughout the state. Deployment of the PFAS Abatement Fund to supplement the revolving SRFs ensures that long-term state-wide needs can be met through a *<u>stable, self-sustaining source of financing</u>* for PFAS water infrastructure."  ECF 746-4 at 6.

The Department, however, did not tell the public that this "brand new capitalization source" intended to provide a "long-term, reliable funding source," is not "dedicated," "reliable," or "stable" because the PFAS Abatement Fund is only a DEP dream and not a reality created by enabling legislation.  Appropriations

to the non-existent PFAS Abatement Fund will be subject to the unknown political priorities of each Administration over each of the next 24 years.

Carneys Point and Sayreville are not certain if the Settling Plaintiffs actually intend to unlawfully divert the Settlement Payments to an NJDEP trust account or if this was merely hype intended to give the impression to the public that the Settling Plaintiffs will have control over the Settlement Payments even though they will not have control.

This uncertainty as to the Settling Plaintiffs true intentions is made even more uncertain by their use of secret escrows. The DuPont JCO (¶7) and the 3M JCO (¶44) each require that the initial Settlement Payments be wired to secret Escrow Accounts to be held by secret Escrow Agents, pursuant to secret Escrow Agreements where the money will stay until the 45-day appeal period expires, and that the secret Escrow Agreement "will specify the terms on which any funds will be released from escrow." (¶7b). Will these instructions direct the funds to the General Fund or to an NJDEP trust account? It is a mystery because the Settling Plaintiffs are telling the public one thing and the court another thing.

The Escrow Agreements were never provided to the public, but they were attached to the final JCOs that the parties sent to the court as part of an application to approve settlement. The Escrow Agreement for the DuPont JCO provided that the $200M initial payment shall be *released to the "Settling Plaintiffs* on the

occurrence of the Effective Date (as defined in the JCO)." ECF 746-6 at 2. Do the Settling Plaintiffs really intend to divert these funds from the General Fund and into an NJDEP trust account? It is a mystery.

The DuPont JCO and 3M JCO also provide that the balance of the Settlement Payments to be paid out over the next 24 years shall be paid directly "*by wire transfer to the Settling Plaintiffs* pursuant to instructions to be provided by the Settling Plaintiffs." (¶7a). Again, will these instructions really divert the settlement funds from the General Fund and into an NJDEP trust account? It is a mystery. This subterfuge is unfair and unreasonable.

To be clear, Carneys Point and Sayreville support the Settling Plaintiffs dream to leverage existing DEP-controlled funds with Settlement Payments to provide year-over-year funding for water infrastructure projects and PFAS remediation. However, the false statements about their control over the Settlement Payments are intended to convince the public that they are getting something real in exchange for providing the Settling Defendants with a release and contribution protection even if it is against their will. These false statements are unfair and unreasonable.

Regarding the lack of enabling legislation, the Settling Plaintiffs claim in responses to public comment that enabling legislation is not necessary (ECF 746-4 at 10) and not "aways required." ECF 764 at 27. That is correct. Enabling

legislation is only required if the Settling Plaintiffs want to control the future payments made from a multi-year settlement, which is exactly what they want to do here.  Otherwise, the appropriation of future yearly payments is left to the vagaries of future Administrations.

The Settling Plaintiffs also gave the public mixed messages about the application process that would be available to access settlement funds.  The proposed DuPont JCO stated that "the Escrow Account shall be *governed* by an escrow agreement among all Parties in substantially the same form as the form agreement appended as Exhibit B (or on a form to be mutually agreed to by the Parties).  The escrow agreement will specify the terms on which any funds will be released from the escrow." (¶7).

That is not true.  The escrow agreements were not appended to the JCOs and never provided to the public.  The "terms" of the escrow agreements were never made known to the public.  They were only provided to the court.  Regardless, the escrow agreements do not "govern" where the Settlement Payments will go or how the public can access those payments.  They are silent on all details.

The Settling Plaintiffs told the public in the proposed 3M JCO that "the Department shall establish an application process for interested Persons to receive PFAS Contamination Abatement Funding provided under this JCO." (¶52).  However, in responses to comments, they told the public an application process

was already set up.  "The Water Bank has a *well-established and highly accessible process* for soliciting water infrastructure investment needs from municipalities, counties, regional authorities, and water purveyors across the State." ECF 746-1 at 26.

They further said, "By expanding and enhancing already successful statewide programs, the Department will make the best use of the abatement funds by expanding their reach and impact to reduce the occurrence of PFAS and other contaminants in the State's water cycle and prevent further pollution through well-developed processes with built-in transparency." 746-1 at 27.

This is all hype.  The Settling Plaintiffs do not know if they will unlawfully divert Settlement Payments to a DEP controlled trust account or if they will direct the funds to the General Fund.  If they get diverted to a DEP trust account, DEP can use the preexisting application processes in the Water Bank.  If they are deposited into the General Fund, DEP needs to come up with a new application process they have not yet figured out.  Enabling legislation would have solved this problem but the Settling Plaintiffs have chosen to take the gamble of yearly appropriations.

## **POINT 3**

**THE COURT CANNOT RULE ON CARNEYS POINTS' STATE COURT ACTIONS BECAUSE THIS COURT DOES NOT HAVE JURISDICTION**

Paragraph 83 of the DuPont JCO seeks to have this court take jurisdiction over Carneys Point's 2016 Environmental Rights Act ("ERA") State Court Action against Defendants and rule that it is subject to dismissal. Defendants removed that matter to Federal Court. Judge Noel L. Hillman, U.S.D.J. remanded it back to State Court and the Clerk of the District Court sent a certified copy of the remand order to the Clerk of the Salem County Superior Court. The remand order was never vacated.

In 2024, the defendants filed a motion to dismiss the State Court Action claiming this matter supersedes it. The trial court denied that motion finding that Carneys Point retains ERA jurisdiction for daily violations and penalties that occurred prior to this matter being filed in March 2019 and for claims not addressed in this matter. The Defendants appealed. On December 2, 2025, the Appellate Division affirmed the trial court's decision that confirmed Carneys Point's ERA jurisdiction. ECF 754.

According to 28 U.S.C.A. §1447, once a certified copy of a remand order is sent back to state court, the state court thereafter has jurisdiction of the matter, and the District Court no longer retains jurisdiction.[3]  Consequently, this court has no

---

[3] *Barlow v. Colgate Palmolive Co*., 750 F.3d 437 (2014), *Browning v. Navarro*, 743 F.3d 1069 (1984).

jurisdiction to make any ruling regarding the preclusive effect, if any, that the DuPont JCO has on the Township's State Court Action against Defendants.

Paragraph 83 also seeks to dismiss the Township's 2018 State Court Action against DEP as "other Claims brought by Carneys Point Township." The DEP sought to dismiss this Action claiming this matter supersedes it. The State Court denied that motion.

The State Plaintiffs Complaint in this matter does not seek the relief sought by Carneys Point in its State Court Action against DEP, and the JCO in this matter does not provide the relief the Township seeks in its State Court Action against DEP.

This court does not have jurisdiction to enjoin the State Court Action against the DEP because to do so would violate the Anti-Injunction Act, which prevents the Federal Court from enjoining state court proceedings. 28 U.S.C.A. §2283. Res judicata also does not apply because there is no commonality between the two matters.[4] For these reasons, paragraph 83 of the DuPont JCO must be stricken.

## CONCLUSION

For the reasons set forth herein, Carneys Point and Sayreville respectfully request that the court grant their applications for intervention.

MEYNER AND LANDIS LLP
By: /s/ *Albert I. Telsey*

---

[4] *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)

Albert I. Telsey, Esq.
*Attorneys for Intervenor, Carneys Point Township
and Borough of Sayreville*