Donald J. Camerson, II, Esq.
James W. Crowder, IV, Esq.
BRESSLER, AMERY & ROSS, P.C.
325 Columbia Turnpike
Florham Park, NJ 07932
Tel: (973) 514-1200
Fax: (973) 514-1660
djcamerson@bressler.com
jcrowder@bressler.com
*Attorneys for Defendant 3M Company*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>E.I. DU PONT DE NEMOURS AND COMPANY, *et al.*,<br><br>Defendants. | Civil Action No.<br>1:19-cv-14766-RMB-JBC-JS<br><br>Hon. Renée M. Bumb, U.S.D.J.<br>Hon. James B. Clark, U.S.M.J.<br>Hon. Joel Schneider (Ret.), Special Master |

# 3M COMPANY'S MEMORANDUM RESPONDING TO OPPOSITIONS TO PLAINTIFFS' MOTION TO APPROVE THE PROPOSED 3M JUDICIAL CONSENT ORDER

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.      The Sparse Opposition to Plaintiffs' Motion Suggests that the Proposed 3M JCO Is in the Public Interest ........................................................................................ 2

II.     Nothing in the Oppositions' Substantive Objections Suggests that the Proposed 3M JCO Lacks Fairness, Reasonableness, or Consistency with the Environmental Statutes' Objectives ................................................................................................. 4

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Kramer*,
 19 F. Supp. 2d 273 (D.N.J. 1998) ........................................................................................... 9

*United States v. Rohm & Haas Co.*,
 721 F. Supp. 666 (D.N.J. 1989) .............................................................................................. 8

**Statutes**

42 U.S.C. § 9622(a) ...................................................................................................................... 8

**Other Authorities**

U.S. EPA, *SDWIS [Safe Drinking Water Information System] Federal Reporting Services*, https://sdwis.epa.gov/ords/sfdw_pub/r/sfdw/sdwis_fed_reports_public/200 (last visited Dec. 22, 2025) ..................................................................................................... 3

Defendant 3M Company files this Memorandum responding to recent filings (collectively, the "Oppositions") opposing this Court's approval and entry of the proposed Judicial Consent Order as to Defendant 3M Company ("Proposed 3M JCO," Docket No. 746-7). None of these Oppositions provides any sound basis to modify or grant special exclusions from the Proposed 3M JCO, or to disapprove it outright.

The recent Oppositions include: the Amicus Brief of [the] National Association of Clean Water Agencies ("NACWA Br.," Docket No. 769) and the Brief of Amici Curiae the Association of Environmental Authorities of New Jersey and the Seven (7) Authorities[1] ("AEA Br.," Docket No. 771), as well as—to the extent that they raise substantive objections to the Proposed 3M JCO that the Court may choose to consider by either granting intervention (which 3M opposes) or sua sponte treating their intervention papers as amicus briefs (which 3M does not oppose)—the Brief in Support of Proposed Intervening Third-Party Plaintiff County of Monmouth's Motion to Intervene ("Monmouth Br.," Docket No. 568-2, Case No. 1:19-cv-14758) and the Brief in Support of Intervenor Mercer County's Motion to Intervene and Writ of Mandamus to Modify and/or Delay Approval of the Judicial Consent Orders ("Mercer Br.," Docket No. 770-2).[2]

In its December 1, 2025 Memorandum in Support of Plaintiffs' November 21, 2025 Motion to Approve the Proposed 3M Judicial Consent Order, 3M: (1) stated that it fully supported Plaintiffs' Motion to the extent it addressed the Proposed 3M JCO; and (2) asked the

---

[1] The seven Authorities that joined AEA's amicus brief are the Morris County Municipal Utilities Authority, the Rockaway Valley Regional Sewerage Authority, the Hanover Sewerage Authority, the Musconetcong Sewerage Authority, the Rahway Valley Sewerage Authority, the Stony Brook Regional Sewerage Authority, and the Somerset Raritan Valley Sewerage Authority.

[2] 3M previously filed an opposition (Docket No. 765) to Carneys Point Township's and the Borough of Sayreville's Motions to Intervene (Docket Nos. 745, 749). In this Memorandum, 3M includes among the Oppositions the Township's and Borough's motions, to properly describe the extent of the opposition to the proposed 3M JCO. *See infra* page 3.

1

Court to approve the Proposed 3M JCO, sign it, and enter it as a final judgment.  However, 3M also made a few clarifying points in that Memorandum's opening footnote, which 3M reiterates here.[3]  *See* Docket No. 751, at 1 n.1.

## ARGUMENT

As 3M noted in its December 1 Memorandum, this Court may approve and enter the Proposed 3M JCO so long as it is (i) fair, (ii) reasonable, (iii) consistent with the objectives of the environmental statutes, and (iv) in the public interest.  *See* Docket No. 751, at 2 (citing cases).

### I. The Sparse Opposition to Plaintiffs' Motion Suggests that the Proposed 3M JCO Is in the Public Interest.

Perhaps what is most notable about the Oppositions is how few of them were filed—which confirms that approving and entering the Proposed 3M JCO would serve the public interest.  Only two of New Jersey's 21 counties filed timely[4] Oppositions.  Between them, Monmouth and Mercer Counties contain 39 boroughs, 22 townships, 3 cities, and 1 village—and

---

[3] The opening footnote of 3M's December 1 Memorandum, which 3M reiterates here, stated in full:  "To the extent [Plaintiffs'] Motion addresses the Proposed DuPont JCO, 3M takes no position.  While consenting to Settling Plaintiffs' Motion as to the Proposed 3M JCO and to this Court's entry of that JCO as a binding, enforceable final judgment, 3M does not accept, endorse, or join all factual assertions or all legal arguments made in support of Plaintiffs' Motion (*see* Docket Nos. 746 to 746-11) nor, by supporting Plaintiffs' Motion, does 3M waive any of its rights, claims, defenses, or arguments in any other federal, state, or local action or proceeding (whether judicial, arbitral, regulatory, or administrative).  Furthermore, 3M filed responsive pleadings in the Chambers Works and Parlin Litigations denying liability, denying Plaintiffs' claims and allegations against 3M, and asserting various defenses to Plaintiffs' allegations; and the Parties have now agreed that no part of the Proposed 3M JCO, nor the JCO as a whole, nor any activity taken by 3M or any other Released Entity pursuant to the JCO, including the filing of this Memorandum, shall constitute, nor shall be construed, deemed, interpreted, or used as, an admission or concession by 3M of wrongdoing, fault, liability, law, or fact.  *See* JCO ¶¶ F, R, 79, 81."  Docket No. 751, at 1 n.1.

[4] Minutes before this Memorandum was to be filed by 3M, and ten days after the Court's December 12 deadline for filing any brief or motion opposing the JCOs, several counties (including, again, Monmouth) filed a new—and clearly untimely—315-page intervention motion.  Docket Nos. 783 to 783-4.

none of those 65 municipalities joined or filed amicus briefs in support of either County's intervention motion. Indeed, only two of New Jersey's 564 municipalities (boroughs, townships, cities, towns, and villages) filed Oppositions. *See supra* note 2.

Not one of the 3,431 public water systems that supply drinking water to New Jersey homes and businesses[5] filed an Opposition. Nor did any of the hundreds or thousands of private corporations, companies, partnerships, and firms that reside or do business in New Jersey. Likewise, there were no Oppositions from any of the more than nine million individuals who are citizens or residents of New Jersey.

As for *amici*, AEA describes its membership as including 85 environmental authorities in New Jersey, yet only 7 joined AEA's amicus brief. *See* AEA Br. 1, 7–8. NACWA states that it represents 16 clean-water agencies in New Jersey, but none joined NACWA's amicus brief or any of the other Oppositions. *See* NACWA Br. 2.

The sparsity of Oppositions is all the more notable given the Parties' robust public-notice process, which far exceeded what state or federal law requires, as 3M previously described in detail. *See* Docket No. 751, at 9–10. The Parties' public-notice effort resulted in sending: emails to the Department's contacts among New Jersey's 21 counties and 564 municipalities; 160 emails and regular-mail notices to counsel representing at least 680 litigants with an expressed interest in PFAS-related issues; and at least 1,070 emails and regular-mail notices to at least 11,670 interested Persons[6] who, based on research and review of databases, were believed to own, operate, manage, or control, anywhere in New Jersey, an airport, fire department,

---

[5] *See* U.S. EPA, *SDWIS [Safe Drinking Water Information System] Federal Reporting Services*, https://sdwis.epa.gov/ords/sfdw_pub/r/sfdw/sdwis_fed_reports_public/200 (last visited Dec. 22, 2025) (choose "NJ" under "Primacy Agency"; then click "Search").
[6] Definitions of capitalized terms from Paragraph 6 of the Proposed 3M JCO apply to this Memorandum.

3

Firefighting Training Academy, Hazardous Waste Facility, Solid Waste Facility, Treatment Works, Wastewater Treatment Plant, Water System, or potentially relevant industrial facility (based on U.S. EPA's list of industries that may be handling PFAS).

Moreover, as for the 56 public-comment letters that New Jersey individuals or entities submitted this summer, the vast bulk of those commenters opted *not* to file Oppositions with the Court this fall. For example, on September 19, 2025, Mercer County was one of 20 local entities that jointly submitted a public-comment letter posing more than a dozen specific questions and stating that the entities would withhold support for the JCOs unless "the New Jersey AG's office will be able to answer these questions and provide a solution that works for all parties." Docket No. 770-4, at 11–15. Of those 20 local entities, only Mercer County filed an Opposition.

All of this speaks to whether the Proposed 3M JCO is "in the public interest," one of the four prongs of the legal standard for approving a settlement of this type. *See* Docket No. 751, at 2 (stating the legal standard and citing cases). As explained below, other aspects of the Oppositions speak to the other three prongs: fairness, reasonableness, and consistency with the environmental statutes' objectives. *See id.*; *see also id.* at 2–4 (explaining that the legal standard is highly deferential).

> II. **Nothing in the Oppositions' Substantive Objections Suggests that the Proposed 3M JCO Lacks Fairness, Reasonableness, or Consistency with the Environmental Statutes' Objectives.**

The core complaint in the Oppositions is that PFAS-related claims that Political Subdivisions and their Government Entities theoretically might bring someday against 3M[7]

---

[7] Only one of the entities that filed an Opposition has a pending claim against 3M in any court, federal or state. Earlier this year, Mercer County sued 3M and 24 other companies in the AFFF Multi-District Litigation in the U.S. District Court for the District of South Carolina. *See* Complaint, *Mercer County v. 3M Co. et al.*, Case No. 2:25-cv-866 (D.S.C. Feb. 17, 2025), Docket No. 1.

4

should not be released by a JCO that provides them with little or no benefits. That objection is misplaced for at least two reasons. First, as explained in its opening brief, the State, represented by the Attorney General, clearly has authority to release its Political Subdivisions' claims. *See* Docket No. 746-1, at 57–65 (citing cases and statutes).

Second, the Proposed 3M JCO *will* provide the Political Subdivisions with meaningful benefits. To begin, Political Subdivisions and their Government Entities, like New Jersey's citizens and residents, will benefit from the $140 million in Settlement Payments[8] that will fund Restoration of New Jersey's Natural Resources, including, among others, Waters Of The State (including Surface Water and Groundwater), Drinking Water Supplies, land, fish and wildlife habitat, and the air. *See* Proposed 3M JCO ¶¶ 6, 46. And Political Subdivisions and their Government Entities will benefit directly from the $190 million to $270 million in Settlement Payments that will fund PFAS Contamination Abatement Projects. *See id.* ¶¶ 47, 50–53. Indeed, the Proposed 3M JCO expressly states that those funds can be used to benefit the very entities on which the Oppositions overwhelmingly focus: Wastewater Treatment Plants, Treatment Works (including stormwater systems), and Solid Waste Facilities (including landfills and biosolids-application sites). *See id.* ¶ 50; *see also* Docket No. 751, at 7 & nn.3–4.

AEA worries that in allocating PFAS Contamination Abatement Funding, Paragraph 51 of the JCO will drive the Department not only to "prioritize" taking actions "to treat PFAS in Public Water Systems and Private Potable Wells serving residential properties, schools, and child-care facilities," JCO ¶ 51, but to spend the entire $190 million to $270 million in PFAS Contamination Abatement Funding for those limited purposes, leaving Wastewater Treatment

---

[8] All Settlement Payments figures in this Memorandum are subject to potential credits.

Plants, Treatment Works, and Solid Waste Facilities "without any … financial relief." AEA Br. 24. But the word "prioritize" means to treat something as relatively *more* important, not as *all-important*. So AEA's concerns are misplaced. Indeed, the same Paragraph 51 mandates that the Department exercise its discretion to identify worthy projects and then allocate and disburse these funds to best "protect the public health and safety and the Environment." JCO ¶ 51. So, if the entity best positioned to assess environmental (and other) issues across the entirety of New Jersey—the State—determines that funding Wastewater Treatment Plants, Treatment Works, and Solid Waste Facilities will best protect public health and the environment, then those entities stand to benefit significantly from the Proposed 3M JCO. Indeed, the Department has repeatedly stated that these entities will remain an important priority. *See* Docket No. 746-1, at 17, 44 (planning to apply "a very substantial portion of the settlement funds" to "investments in … wastewater infrastructure improvements," publicly owned treatment works, and direct-PFAS-discharge sites, including landfills); *see also* Docket No. 746-5, at 4–5, 10–12, 14–15.

Excessive apprehension also pervades the Oppositions' arguments about the Proposed 3M JCO's timing. AEA quotes a speaker at a recent conference who, stating the obvious, "noted that 'the availability of new information [about PFAS] is continuing." AEA Br. 51. Similarly, AEA highlights a U.S. EPA website titled "Increasing Our Understanding," which states that more "[r]obust information about PFAS is needed …." *Id.* (quoting Hartman Cert. ¶ 34, Ex. AF). "Future costs and damages related to PFAS contamination throughout New Jersey," AEA explains, "are currently unknown and not fully quantifiable." *Id.* at 50. And "future [regulatory] standards for PFAS across <u>all media</u> could be changed by current or future state or national administrations." *Id.* at 52 (underlining in the original). In a similar vein, NACWA cites "regulatory uncertainty" about PFAS, states that the "full extent" of PFAS-related damages is not

6

yet calculable, and warns against "forg[ing] ahead despite known unknowns." NACWA Br. 6, 19, 28. Wholly aside from whether amici's factual assertions are accurate, NACWA and AEA draw the wrong conclusion from them: They conclude that the JCO is "premature" or "unripe"—descriptors that AEA's amicus brief uses no fewer than 25 times. *See, e.g.*, AEA Br. 15, 43, 44, 45, 46, 47, 48, 49, 50, 53, 54.

That conclusion is incorrect. A key feature of the Proposed 3M JCO is that benefits will begin flowing to the State, its environment, and its communities soon, not years or decades from now. A state environmental-protection agency is not required to wait to take action until everything about a chemical substance and its regulation is "fully understood," and "incomplete and unsettled information" is no more. *Id.* at 51, 53–54. As even AEA concedes, "scientific and medical understanding" about PFAS contamination is "constantly evolving." *Id.* at 52. So the Department is entitled to make a reasoned judgment, informed by current scientific and medical understandings, that reasonableness and the objectives of environmental law would be best served by negotiating a settlement rather than continuing to litigate. Indeed, as the first state in the country to conduct statewide occurrence studies of PFAS in Drinking Water Supplies, and the first state in the country to establish a maximum contaminant level for any PFAS substance, it is not surprising that New Jersey was also the first state in the country to conclude that the time was ripe for entering into the type of comprehensive PFAS settlement memorialized in the Proposed 3M JCO. While AEA might have preferred to wait—for who knows how long—there is nothing inappropriate about the State deciding to initiate this work today.

Indeed, that is precisely why an earlier Chief Judge of this Court stated that settlement of complex environmental cases "is in high judicial favor": because "[n]ot only the parties, but the general public as well, benefit from the saving of time and money" that can be better applied,

7

without further delay, to environmental restoration, remediation, and abatement. *United States v. Rohm & Haas Co.*, 721 F. Supp. 666, 685 n.23 (D.N.J. 1989) (Gerry, C.J.) (citation omitted); *see also* 42 U.S.C. § 9622(a) (encouraging environmental settlement agreements, to "expedite effective remedial actions and minimize litigation").

Perhaps recognizing the strong judicial preference for settlement, the Oppositions ultimately recede from their requests for outright disapproval of the JCOs and instead ask this Court to merely amend them. *But see* Docket No. 751, at 4 (citing cases explaining that courts may approve or reject a settlement as a whole but may not delete, modify, or substitute consent-decree provisions to which the parties have agreed). NACWA applauds "the valuable efforts of NJDEP in securing additional funding" for the State's environmental remediation efforts. NACWA Br. 30. AEA asks the Court "to preserve the great accomplishments of the JCOs," AEA Br. 2, proclaiming that "it is important to note that this *Amicus* Brief does not argue that the JCOs should be denied outright and in their entirety," *id.* at 6; *see id.* at 53 (calling the JCOs "historic victories" for New Jersey); *see also* Monmouth Br. 19 (encouraging the Parties to keep the Proposed 3M JCO "in substantially the same form").

The Oppositions thus switch to a form of special pleading. NACWA asks the Court to limit the Release to "claims for drinking water contamination" that have *already* been released through 3M's nationwide Public Water System Class Settlement. NACWA Br. 20–21 & n.21. AEA asks the Court to modify the definition of "Releasors" to exclude publicly owned Wastewater Treatment Plants, Treatment Works, and Solid Waste Facilities—seemingly while retaining their eligibility to compete for up to $270 million in PFAS Contamination Abatement Funding. AEA Br. 6–7, 55. Mercer County adopts a more direct tack, asking that approval of the JCOs be delayed until they can be modified to include a specific dollar allocation for each

8

Political Subdivision.  *See* Docket Nos. 770-1, at 16; Mercer Br. 1, 18.  And Monmouth County takes this special pleading to a new level, boldly asking the Court for a declaratory judgment "that Monmouth County"—and Monmouth County alone—"shall not be a 'Releasor' under the JCO or otherwise be bound by the terms of the JCO."  Docket No. 568-4, at 11, Case No. 1:19-cv-14758.  These proposed carveouts, however, are antithetical to the broad Release and Covenant Not To Sue that are essential terms of the compromise that the Parties agreed to and that is now memorialized in the Proposed 3M JCO.

The Court should reject these requests for special carveouts, "take a broad view" of the State's settlement with 3M, and hold that the JCO "represents a reasonable compromise, … bearing in mind the law's generally favorable disposition towards the voluntary settlement of [environmental] litigation."  *United States v. Kramer*, 19 F. Supp. 2d 273, 280–81 (D.N.J. 1998) (quotation marks omitted).  Doing otherwise would unravel two years of intensive, and successful, negotiations on an issue of statewide importance.

9

## CONCLUSION

3M respectfully asks the Court to approve the proposed Judicial Consent Order as to Defendant 3M Company by signing it (on page 89 of Docket No. 746-7) and entering it as a final judgment.

Dated:  December 22, 2025                              Respectfully submitted,


                                                       /s/Donald J. Camerson, II

                                                       BRESSLER, AMERY & ROSS, P.C.
                                                       Donald J. Camerson, II, Esq.
                                                       James W. Crowder, IV, Esq.
                                                       325 Columbia Turnpike
                                                       Florham Park, NJ 07932
                                                       Tel: (973) 514-1200
                                                       Fax: (973) 514-1660
                                                       djcamerson@bressler.com
                                                       jcrowder@bressler.com

                                                       KING & SPALDING LLP
                                                       Andrew J. Calica (admitted *pro hac vice*)
                                                       1290 Avenue of the Americas
                                                       New York, NY 10104
                                                       Tel: (212) 790-5390
                                                       acalica@kslaw.com

                                                       *Attorneys for Defendant 3M Company*