CERTIFICATION

June 22, 2026

I, **R. David Rousseau**, of full age certify and state as follows –

1. I am the former Treasurer of the State of New Jersey (2008-2010). In that role, I also oversaw the development of the State's Annual Appropriations Act, including having direct oversight of the operations of the Office of Management and Budget (OMB). Prior to being State Treasurer, I spent from 1987 to 2008 in various senior positions in both the Legislature and Executive Branch with direct oversight and development of the annual state budget. I was involved in the development and/or implementation of twenty-three state budgets. These positions prior to being confirmed as State Treasurer included – Director of Bud Policy Advisor to the Senate President and Senior Budget and Fiscal Policy Advisor to the Governor. . Since leaving state government in 2010, I have still been monitoring the state budget process and from time to time provide advice to both the legislature and the Executive Branch.

2. I was asked by counsel for Carneys Point Township to review the Judicial Consent Orders (JCOs) in the pending DuPont and 3M settlements, the Plaintiffs' Supplemental Report with proposed Distribution Plan, Carneys Point's Response Brief, Reply Briefs, and Carneys Point's Sure-Reply Brief.

3. I was then asked to opine on whether the proposed special revenue fund in the Governor's March proposed FY2027 Budget, called the "PFAS Abatement Fund," satisfies the intention of the settlements to provide the New Jersey Department of Environmental Protection (DEP) with control over the PFAS settlement funds to be paid over the next 25 years.

4. In my opinion, unless the PFAS Abatement Fund is created by standalone enabling legislation, including additional safeguards provided in other legislation protecting the use of those funds, instead of by annual Appropriation Acts, the PFAS Abatement Fund does not provide the lockbox control of the PFAS settlement payments required to accomplish the goals of the JCOs.

5. The JCOs provide that, for the next 25 years, the Defendants "shall deposit" yearly PFAS and other payments into an escrow account for the benefit of DEP.

6. The Distribution Plan proposed as part of the JCOs provides that DEP will receive Settlement Payments totaling up to $1.16 billion.

7. The Distribution Plan further provides that the PFAS Abatement Damages portion of the Settlement Payments will be deposited into a separate, nonlapsing

special revenue fund to be known as the "PFAS Abatement Fund" to be established as part of the pending FY2027 budget.[1]

8. The Distribution Plan further states that DEP "**will**" use PFAS Abatement funds as an additional source of revenue for the New Jersey Water Bank for PFAS Water Quality Projects .

9. The Plan further provides that DEP "**will**" use the PFAS Abatement funds to supplement the Spill Fund for PFAS abatement projects.

10.Neither the JCOs nor the Distribution Plan state that the PFAS Abatement Fund was authorized by lockbox standalone enabling legislation, nor did I find any such standalone legislation introduced or enacted that supports the PFAS Abatement Fund.

---

[1] The proposed PFAS Abatement Fund provides that, "Any funds received by the State of New Jersey of funds from Per-- and Polyfluoroalkyl Substances ("PFAS") abatement settlements are deposited into a separate, nonlapsing fund to be known as the PFAS Abatement Fund. All funds deposited into the PFAS Abatement Fund are appropriated solely for projects which are eligible abatement actions consistent with the terms of the settlement agreements, consent orders, or both, governing the use of such funds and may include administrative costs in amounts that are consistent with the terms of such settlement agreements, consent orders or both, subject to the approval of the Director of the Division of Budget and Accounting. The Commissioner of Environmental Protection shall select the projects which are eligible abatement actions consistent with the terms of the settlement agreements, consent orders, or both. Any grants awarded through new or existing grant programs shall be awarded on a competitive basis, using criteria determined by the Department of Environmental Protection."

11.By authorizing the PFAS Abatement Fund as part of the annual Appropriations Act instead of standalone legislation, the legislature and the Governor can exercise their constitutional authority to withhold approval for that Fund for any of the next 24 years of the PFAS settlement payments expected by the JCOs (FY2027 to FY2051). This creates a year-to-year vulnerability that the PFAS funds will not be used for the purposes DEP intends.

12.Absent standalone legislation with specific controls, the legislature and the Governor could direct PFAS grants to preferred municipalities and other recipients rather than by application or on a strictly competitive process.

13. In addition, even if the legislature does reappropriate the PFAS Abatement Fund in an Appropriations Act for a particular year, the Governor possesses a powerful line-item veto (N.J. Const. Art. V, Sec. I, para. 15) that allows her to strike budget items that can only be overridden by a 2/3rd supermajority vote in the Senate and Assembly. This creates an additional year-to-year vulnerability that the PFAS funds will not be used for the purposes DEP intends.

14. It is reckless to rely on a special revenue fund structure. This year-to-year vulnerability of non-funding can be avoided if the PFAS Abatement Fund is created by standalone enabling legislation.

15. The DEP is compelling all political subdivisions of the state to forever surrender their claims against defendants, while, in return, the DEP is only promising the public they can control the PFAS Abatement Funds for twelve months at a time. Relying on the annual Appropriations Act creates only the illusion that DEP controls the funds because the Fund will expire every June 30th for each of the next 25 years.

16. If a future Governor and Legislature face a severe budget crisis or a highly polarized political standoff, lawmakers could simply omit the PFAS Abatement Fund from a future annual budget. The money for that year or years would be frozen. This would leave local water utilities and others unable to access PFAS funds to upgrade treatment facilities or undertake PFAS remediation projects, despite having forfeited their own rights to sue the polluters directly.

17. The federal court controls the strings for the PFAS Funds by way of the JCOs, but only the state Legislature controls the spigot that allows the funds to flow. Standalone enabling legislation is the only way to build a permanent, multi-decade framework (like the Opioid statutory trust) that legally mandates an unbroken flow of cash to local water systems and others for PFAS Abatement Projects and PFAS remediation projects as intended by the JCOs.

18.Standalone legislation provides the lockbox assurance required by the settlements. See below Table 1:

Table 1

| PFAS Abatement Fund | |
|---|---|
| Without Enabling Legislation<br>Current path | With Enabling Legislation<br>Required path |
| DEP controls the funds only one year at a time | DEP operates under a permanent 25-year statutory mandate |
| If the budget language is omitted for any year or years, the funds are frozen and unusable | The legal framework remains intact across legislative cycles and is permanent until repealed |
| Does not protect the DEP budget and allows the PFAS Funds to be used to supplant the DEP budget instead of supplement it | Protects the DEP budget from being supplanted with the PFAS Funds since they will be dedicated for PFAS purposes |
| Subject to line-item veto | Not subject to line-item veto |
| Subject to the Governor diverting the funds to preferred PFAS projects without application or competitive bidding or to fill budget gaps unrelated to PFAS projects | Not subject to such Governor diversions |
| Political subdivisions surrender their right to sue based on a yearly political promise that may not be made year after year for 25 years | Political subdivisions surrender their rights to sue based on codified state law that protects the PFAS Funds. |

19.DEP is assuring the public that it "will" use the PFAS Abatement Funds as set forth in the Distribution Plan. However, without standalone legislation, DEP can only tell the public it "may" use the funds for those purposes since it will not control the funds over the 25-year payment plan.

20. In order to live up to the promise being made in the JCOs and the Distribution Plan, the PFAS Abatement Fund must be supported by standalone enabling legislation with strict restrictions that limit the ability for the Governor and the Legislature to divert funds for other uses and also to insure that an application and competitive process is used for awarding grants rather than future state budgets directing grants to certain municipalities and others that may not be the most urgent projects. This is the lockbox assurance required for the settlement.

I certify that the statements made by me are true and that I am subject to punishment for knowingly making false statements.

R. David Rousseau