**JENNIFER DAVENPORT**
**ATTORNEY GENERAL OF NEW JERSEY**
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 093
Trenton, New Jersey 08625-0093
*Attorney for Plaintiffs*
By: Gwen Farley
Deputy Attorney General
Attorney ID No. 000081999
Ph. (609) 376-2740
Gwen.Farley@law.njoag.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; THE COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; and THE ADMINISTRATOR OF THE NEW JERSEY SPILL COMPENSATION FUND,
Plaintiffs,

Case No.: 2:19-cv-14758-RMB-JBC
1:19-cv-14765-RMB-JBC
1:19-cv-14766-RMB-JBC
3:19-cv-14767-RMB-JBC

v.

E. I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; THE 3M COMPANY; DUPONT SPECIALTY PRODUCTS USA, LLC; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; and "ABC CORPORATIONS" 1-10 (NAMES FICTITIOUS),
Defendants.

**STIPULATION AND ORDER BETWEEN THE STATE, ASSOCIATION OF ENVIRONMENTAL AUTHORITIES, AND CERTAIN UTILITIES AUTHORITIES REGARDING PLAINTIFFS' MOTION TO APPROVE JUDICIAL CONSENT ORDERS**

**THIS MATTER** having been brought to the Court with respect to Plaintiffs New Jersey Department of Environmental Protection ("Department"), its Commissioner, and the Administrator of the New Jersey Spill Compensation Fund's (collectively, "Plaintiffs" or "State") Motion to Approve Judicial Consent Orders [("JCOs")][1] With Settling Defendants[2] in the above-captioned actions; and

**WHEREAS,** the State filed its motion for an Order to approve the proposed JCOs on November 21, 2025 (Docket No. 746) ("Plaintiffs' Motion"); and

**WHEREAS,** the Association of Environmental Authorities of New Jersey ("AEA") and seven (7) of its members identified as *Amici Curiae*[3] objected to Plaintiffs' Motion and said JCOs for binding the AEA's members and the Named

---

[1] In addition to the above-captioned matters, the JCOs also resolve *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873 (D.S.C.) ("AFFF MDL"), Member Case No. 2:19-cv-02199, as to Settling Defendants only.

[2] The Settling Defendants are 3M Company, EIDP, Inc. (f/k/a E. I. du Pont de Nemours and Company), Corteva, Inc., DuPont de Nemours Inc., Dupont Specialty Products USA, LLC, The Chemours Company, and The Chemours Company FC, LLC.

[3] The seven (7) objecting utilities and sewerage authorities are the Morris County Municipal Utilities Authority, the Rockaway Valley Regional Sewerage Authority, the Hanover Sewerage Authority, the Musconetcong Sewerage Authority, the Rahway Valley Sewerage Authority, the Stony Brook Regional Sewerage Authority, and the Somerset Raritan Valley Sewerage Authority (referred to collectively as the "AEA and the Named Objectors").

Objectors and extinguishing their existing or future potential PFAS-related claims; and

**WHEREAS,** Plaintiffs and the AEA and the Named Objectors (collectively, the "Parties") mediated before the Honorable Magistrate Judge Joel Schneider (Ret.) in order to explore terms and conditions upon which the AEA and the Named Objectors would agree not to oppose the Plaintiffs' Motion and the proposed JCOs; and

**WHEREAS,** the Parties agree to the terms herein to avoid a protracted dispute regarding approval of the proposed JCOs and to further foster collaboration on their shared objective of removing PFAS from the water cycle and protecting New Jersey residents' health; and

**WHEREAS,** the Parties agree that the terms herein are fair, reasonable, and in furtherance of the shared objectives of the Parties, and that they will take the actions necessary to implement these terms; and

**WHEREAS,** the Parties now seek an Order memorializing the terms and conditions upon which the AEA and the Named Objectors agree not to oppose Plaintiffs' Motion;

**IT IS** on this 24th day of June 2026 **ORDERED** as follows:

1. **Minimum Allocation of PFAS Abatement Funding.** The Department shall direct a minimum of **$150,000,000.00** of the PFAS Abatement

Funds for the benefit of publicly owned wastewater treatment works ("POTWs") in New Jersey for their owners to undertake projects to reduce PFAS concentrations in their effluent ("PFAS Clean Water Projects") in accordance with the following:

a. At least **$100,000,000.00** shall be allocated for use by the Department's Water Bank for the specific purpose of providing principal forgiveness in connection with loans for PFAS Clean Water Projects.

b. At least **$50,000,000.00** shall be allocated for use by the Department's Water Bank as funding to support the provision of no interest financing for PFAS Clean Water Projects.

c. Nothing herein is intended to preclude the Department and the I-Bank from dedicating additional funds toward loans, principal forgiveness, or other assistance to any clean water agencies, including POTW owners, to address PFAS, through PFAS Abatement Funding or otherwise.

d. Commencing five (5) years after the Department adopts Surface Water Quality Standards for PFAS, the Department will, on an annual basis, allocate $15 million of non-Costs/Fees/Penalties and non-NRD Settlement Payments received to date from the Settling Defendants for use by the Department's Water Bank for

PFAS Clean Water Projects for POTWs , until the total amount contributed by the Department for this purpose is at least $150 million.

e. The distribution of funds from the Department's Water Bank to publicly owned entities for PFAS Clean Water Projects will be governed by the procedures and requirements of N.J.A.C. 7:22, including any amendments thereto in the future.

2. **Reduction of the Department's Loan Origination Fee.** To reduce costs to POTW owners for PFAS Clean Water Projects, the Department agrees to reduce the current rate of its loan origination fee for PFAS Clean Water Projects financed through the Department's Water Bank under N.J.S.A. 58:11B-10.2. The Department agrees to reduce its current origination fee associated with PFAS Clean Water Projects from 2% to 1% commencing five (5) years after the Department's adoption of the Surface Water Quality Standards for PFAS.

3. **Release, Covenant not to Sue, and Contribution Protection.** In consideration of AEA's and the Named Objectors' withdrawal of their objections to the JCOs and premised upon their cooperation in efforts to reduce PFAS to New Jersey's environment, the Department and AEA and the Named Objectors have agreed to a form of release, covenant not to sue, and contribution protection relating to certain liability otherwise faced by publicly owned treatment works as

"passive receivers" of PFAS. The form of release, covenant not to sue, and contribution protection is attached to this term sheet as Appendix A. To the extent any AEA members wish to participate in the agreements set forth in this Stipulation, they must agree to a form of release, covenant not to sue, and contribution protection relating to certain liability otherwise faced by publicly owned treatment works as "passive receivers" of PFAS. The form of release, covenant not to sue, and contribution protection is attached to this term sheet as Appendix A.

a. Within 90 days of the JCOs becoming final and non-appealable, the Department and the AEA and the Named Objectors shall negotiate and agree to an Administrative Consent Order ("ACO") that includes the form of release, covenant not to sue, and contribution protection in Appendix A.

b. The ACO will permit any POTW owners[4] in New Jersey to participate in and sign onto the ACO in order to obtain its benefits. After the ACO is agreed to by the Department and the AEA and the Named Objectors, additional POTWs will have 90 days to sign onto the ACO.

[4] A "POTW owner" is a public owner of a municipal treatment works.

4. By entering into this stipulation, the AEA and the Named Objectors acknowledge and agree that certain PFAS-related claims that they might otherwise have against the Settling Defendants and Released Entities under the JCOs are released and precluded as described in the JCOs.

5. Through this stipulation, the AEA and the Named Objectors agree that within 2 business days of the entry of this Stipulation and Order they will all collectively file a withdrawal of all previously filed objections set forth in any papers filed in any of the above-captioned actions by the AEA or any of the Named Objectors and will express their unqualified support for approval of the JCOs.

6. Notwithstanding any other provision of this Stipulation, if the JCOs are not approved by this Court or reversed on appeal (if any), the Parties' obligations, including any withdrawal of the AEA's and Named Objectors' objections to the JCOs, required herein are null and void.

7. This Court shall retain jurisdiction to enforce the terms of this Order.

Respectfully Submitted,

**JENNIFER DAVENPORT**
**ATTORNEY GENERAL**
**OF NEW JERSEY**
*Attorney for Plaintiffs*

By: ______________________
Gwen Farley, Esq.
Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 093
Trenton, New Jersey 08625-0093
Tel.: (609) 376-2761
Gwen.Farley@law.njoag.gov

**MARAZITI FALCON, LLP**
*Attorneys for Amici Curiae, Association of Environmental Authorities of New Jersey and the Named Objectors (Authorities)*

By: ______________________
Diane Alexander, Esq.
240 Cedar Knolls Road, Suite 301
Cedar Knolls, New Jersey 07097
Tel: (973) 912-9008
dalexander@mfhenvlaw.com

**KELLEY DRYE & WARREN LLP**
Special Counsel to the Attorney General

By: ______________________
Geoffrey W. Castello, Esq.
7 Giralda Farms, Suite 340
Madison, NJ 07940
Tel.: (973) 503-5900
GCastello@KelleyDrye.com

David M. Reap, Esq.
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Tel.: (212) 808-7800
DReap@KelleyDrye.com

**LAW OFFICES OF JOHN K. DEMA, P.C.**
Special Counsel to the Attorney General
Scott E. Kauff, Esq.
1236 Strand Street, Suite 103
Christiansted, St. Croix
U.S. Virgin Islands 00820-5034
Ph. (202) 309-0200

**SO ORDERED** the 24th day of June 2026,

Renée Marie Bumb
CHIEF, UNITED STATES DISTRICT JUDGE

**APPENDIX A**

**DEPARTMENT'S, SPILL FUND ADMINISTRATOR'S, AND SETTLING DEFENDANTS' COVENANTS & RELEASES**

1. In consideration of the AEA's and AEA Objecting Members' withdrawal of their objections to the Court's approval of the Judicial Consent Orders, which include the State's release of the Participating POTWs' potential PFAS Claims [DEFINED TO INCORPORATE PFAS CLAIMS IN DUPONT JCO AND RELEASED CLAIMS IN THE 3M JCO] against the Settling Defendants and entry into covenants not to sue for the Participating POTWs' potential PFAS claims against the Settling Defendants, and except as otherwise provided in Paragraph 3 below, the Department fully and forever releases and covenants not to sue or take other judicial or administrative action against the Participating POTWs for all CERCLA and Spill Act claims or causes of action for Natural Resource Damages or Cleanup and Removal Costs with respect to alleged discharges of PFAS (i) at or migrating from the Participating POTWs' Facilities, including all areas to which any PFAS allegedly has migrated, and (ii) leaching or migrating from the Participating POTWs' Sewage Sludge no matter where it ultimately comes to be located. The Department reserves all rights it has under the law as to Natural Resource Damages and Cleanup and Removal Costs relative to discharges or releases of any contaminants, including hazardous substances, other than PFAS by the Participating POTWs at or from their Facilities or Sewage Sludge, and the Participating POTWs reserve all rights and defenses they may have to any claims by the Department with respect to discharges or releases of such other contaminants, including hazardous substances.

2. In further consideration of the State's releases of the Participating POTWs' potential PFAS Claims [DEFINED TO INCORPORATE PFAS CLAIMS IN DUPONT JCO AND RELEASED CLAIMS IN THE 3M JCO] against the Settling Defendants and entry into covenants not to sue for the Participating POTWs' potential PFAS claims against the Settling

Defendants, the Spill Fund Administrator fully and forever releases and covenants not to sue or take other judicial or administrative action against the Participating POTWs with respect to any claims, damages, costs, civil administrative or other penalties, attorneys' fees, interest or any other monetary amounts or form of relief arising from, relating to or based upon any claim asserted for reimbursement of amounts paid from the Spill Fund based on discharges of PFAS at or from the Participating POTWs' Facilities or Sewage Sludge, no matter where the PFAS ultimately comes to be located.

**STATE'S RESERVATION OF RIGHTS**

3. Notwithstanding anything else contained herein, the covenants and releases contained herein do not pertain to any matters other than CERCLA or Spill Act liability for PFAS contained in releases or discharges from Participating POTWs' Facilities or Sewage Sludge, no matter where it ultimately comes to be located, and the State reserves, and this ACO is without prejudice to, all rights against the Participating POTWs concerning all other matters that are not expressly released, including but not limited to the following:

a. Liability for failure to satisfy any term or provision of this ACO;

b. Liability arising from the past, present, or future release, discharge or unsatisfactory storage or containment of any contaminant, including any hazardous substance or pollutant, other than PFAS;

c. Liability arising from past, present, or future grossly negligent, reckless, or intentional acts or omissions;

d. Criminal liability; or

f. Liability under federal or state law, except under CERCLA and the Spill Act, including but not limited to regulation of wastewater discharges pursuant to the Water Pollution Control Act.

4. Participating POTWs reserve all rights and defenses they may have to any claims brought by the Department with respect to discharges or releases of contaminants, including: (i) hazardous substances, other than PFAS; and (ii) any claim or cause of action brought by the State that is reserved in Paragraph 3.

**SETTLING POTWS' COVENANTS**

5. The Participating POTWs covenant, subject to Paragraph 7 below, not to sue or assert any claim or cause of action against the State, including any department, agency, or instrumentality of the State, concerning Natural Resource Damages or Cleanup and Removal Costs for releases or discharges of PFAS covered in this ACO. This covenant shall include any direct or indirect claim for reimbursement from the Spill Fund, but shall not preclude a Spill Fund claim to remediate contaminants migrating onto a Participating POTWs' property from property owned or operated by another party. Any such Spill Fund claim will be determined according to N.J.A.C. 7:1J.

6. Each Participating POTW reserves the right to file a claim or cause of action against the State, including any department, agency, or instrumentality of the State, to compel the State to take additional actions consistent with local law or pretreatment standards of the Participating POTW where the State is a user, as defined at N.J.A.C. 7:14A-1.2, of the Participating POTWs' domestic treatment works, and the Participating POTW has a good faith belief that the State user is out of compliance with such law or pretreatment standard. The State reserves all rights with respect to any defenses to such a claim or cause of action. Nothing in this

agreement shall constitute a waiver of any rights of the Participating POTWs to take any action pertaining to the enforcement of any permit or approval issued by the Participating POTW, should the Participating POTW determine that such measures are necessary, nor shall this agreement constitute a waiver of any rights the State may have in response thereto.

**SETTLING POTWS' RESERVATIONS**

7. The Participating POTWs expressly reserve all rights, including, but not limited to, any right to contribution and indemnification, and all defenses, claims, demands, and causes of action that the Participating POTWs may have concerning any matter, transaction, or occurrence against any Person other than the State and Settling Defendants. Further, the Department agrees that it will not oppose any motion or application by any of the Participating POTWs in any subsequent action in which a Participating POTW seeks the contribution protection that this ACO provides, subject to (i) the State's reservation of rights set forth in Paragraph 3 and (ii) the Participating POTW being in compliance with the terms of this ACO and any applicable federal or state statute, regulation, rule, agreement, order, or other document covering the Participating POTW's continuing obligations.

**APPENDIX A**

**CONTRIBUTION PROTECTION**

8. Upon the Effective Date, this ACO shall constitute an administratively approved settlement within the meaning of N.J.S.A. 58:10-23.11f.a.(2)(b) and 42 U.S.C.A. § 9613(f)(2) and shall resolve the Participating POTWs' liability to the State for the purpose of providing protection to the Participating POTWs from contribution actions under the Spill Act or CERCLA against the Participating POTWs with regard to discharges or releases of PFAS from their Facilities or Sewage Sludge.

9. The Parties agree the Participating POTWs are entitled, upon the Effective Date of this ACO, to protection from contribution actions to the fullest extent possible pursuant to the Spill Act, N.J.S.A. 58:10-23.11f.a.(2)(b) and Section 113(f)(2) of CERCLA, 42 U.S.C.A. §9613(f)(2), which provide contribution protection to the Participating POTWs from contribution claims by any Person under the Spill Act or CERCLA with regard to discharges or releases of PFAS from their Facilities or Sewage Sludge.

**DEFINITIONS**

Except where otherwise expressly provided or where the specific reference or context clearly indicates otherwise, terms used in this ACO that are defined in the Spill Act, the New Jersey Water Pollution Control Act, and N.J.A.C. Chapters 7:14A-1, 7:26C, 7:26D, 7:26E, shall have their statutory and regulatory meanings. Whenever the capitalized terms listed below are used in this JCO, the following definitions apply:

- "Sewage Sludge" means the solid, semi-solid, or liquid residue generated by the processes of a domestic treatment works. Sewage sludge includes, but is not limited to, domestic septage; scum or solids removed in primary, secondary, or advanced wastewater treatment processes; and any material derived from sewage sludge. Sewage sludge does

not include ash generated during the firing of sewage sludge in a sewage sludge incinerator or grit and screenings generated during preliminary treatment of domestic sewage in a treatment works.

- "Facility" means a municipal treatment works owned and operated by any of the Participating POTWs.
- "Judicial Consent Orders" means the (i) May 12, 2025, Judicial Consent Order entered into between the New Jersey Department of Environmental Protection, its Commissioner, and the Administrator of the New Jersey Spill Compensation Fund ("Plaintiffs") and 3M Company; and (ii) August 4, 2025, Judicial Consent Order entered into between Plaintiffs and EIDP, Inc. (f/k/a E.I. du Pont de Nemours and Company), Corteva, Inc., DuPont de Nemours Inc., DuPont Specialty Products USA, LLC, The Chemours Company, and The Chemours Company FC, LLC.
- "PFAS" means, solely for purposes of this ACO, any per- or poly-fluoroalkyl substance that contains at least one fully fluorinated methyl or methylene carbon atom (without any hydrogen, chlorine, bromine, or iodine atom attached to it). For purposes of the Spill Act and CERCLA, PFAS means those PFAS that are "hazardous substances" under those laws.
- "AEA" means the Association of Environmental Authorities of New Jersey.
- "AEA Objecting Members" means Morris County Municipal Utilities Authority, Rockaway Valley Regional Sewerage Authority, Hanover Sewerage Authority, Musconetcong Sewerage Authority, Rahway Valley Sewerage Authority, Stony Brook Regional Sewerage Authority, and Somerset Raritan Valley Sewerage Authority.

- "Participating POTWs" means the public owner of a municipal treatment works that has executed this ACO.